PARKER C. FOLSE III (WA Bar No. 24895 – *Admitted Pro Hac Vice*)
pfolse@susmangodfrey.com
IAN B. CROSBY (WA Bar No. 28461 – *Admitted Pro Hac Vice*)
icrosby@susmangodfrey.com
FLOYD G. SHORT (WA Bar No. 21632 – *Admitted Pro Hac Vice*)
fshort@susmangodfrey.com
SUSMAN GODFREY, L.L.P.
1201 Third Avenue, Suite 3800
Seattle, Washington 98101-3000
(206) 516-3880 Tel
(206) 516-3883 Fax

SPENCER HOSIE (CA Bar No. 101777)
shosie@hosielaw.com
BRUCE WECKER (CA Bar No. 078530)
bwecker@hosielaw.com
HOSIE McARTHUR LLP
One Market, 22nd Floor
San Francisco, CA 94105
(415) 247-6000 Tel.
(415) 247-6001 Fax

*(additional attorneys listed on signature page)*

Attorneys for Defendant
BURST.COM, INC.

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA (SAN FRANCISCO)

| | |
|---|---|
| APPLE COMPUTER, INC., <br><br> Plaintiff/Counterdefendant, <br><br> v. <br><br> BURST.COM, INC., <br><br> Defendant/Counterclaimant. | Case No. 3:06-CV-00019 MHP <br><br> **AMENDED ANSWER AND COUNTERCLAIM** <br><br> **JURY TRIAL DEMANDED** |

Case 3:06-cv-00019-MHP    Document 42    Filed 04/27/2006    Page 2 of 15

Defendant Burst.com, Inc. ("Burst"), answers Apple's Complaint for Declaratory Judgment (the "Complaint") and counterclaims against Apple as follows:

## BURST'S ANSWER

1. Burst admits that this is a civil action arising under the Patent Laws of the United States, 35 U.S.C. §§ 101, *et seq.*, and that Apple is seeking a declaratory judgment that United States Patent Numbers 4,963,995 ("the '995 Patent"); 5,164,839 ("the '839 Patent"); and 5,995,705 ("the '705 Patent") (collectively, "the DJ Patents") are invalid and not infringed by Apple, but denies that Apple is entitled to relief.

## PARTIES

2. Burst lacks sufficient information on which to admit or deny the allegations set forth in the first two sentences in paragraph 2 of the Complaint. Burst admits the third sentence.

3. Burst admits that it owns the DJ Patents and that its principal place of business is 613 Fourth St., Suite 201, Santa Rosa, CA 95404. Burst licenses its software from its headquarters in California. Burst denies the remainder of the allegations of this paragraph.

## JURISDICTION AND VENUE

4. Admitted.

5. Admitted.

6. Admitted.

## EXISTENCE OF AN ACTUAL CONTROVERSY

7. Admitted.

8. In late 2004, Burst sent Apple copies of certain Burst patents (including, but not limited to, the '995, '932, '839, and '705 patents) via a letter from Burst's

AMENDED ANSWER AND COUNTERCLAIM    1
Case No. C 06-00019 MHP

attorneys, Carr & Ferrell LLP. Burst requested that Apple consider taking a license under those patents. The remaining allegations of paragraph 8 are denied.

9. Admitted.

10. In late 2005, in one written communication, Burst's attorneys made the following statements: "Since the settlement of our litigation with Microsoft last March, Burst has been committed to aggressively defending its intellectual property rights" and "Burst sincerely hopes that it can avoid litigation by coming to a mutually agreeable resolution of these patent issues with Apple." The remaining allegations of paragraph 10 are denied.

11. Denied.

12. Denied.

13. Burst admits that an actual and justiciable controversy exists between Apple and Burst as to whether the DJ Patents are invalid and/or infringed. The remaining allegations of paragraph 13 are denied.

## FIRST CLAIM
### DECLARATORY JUDGMENT OF NONINFRINGEMENT AND INVALIDITY OF THE '995 PATENT

14. Burst incorporates by reference its responses to paragraphs 1-13.

15. Denied.

16. Denied.

## SECOND CLAIM
### DECLARATORY JUDGMENT OF NONINFRINGEMENT AND INVALIDITY OF THE '839 PATENT

17. Burst incorporates by reference its responses to paragraphs 1-16.

18. Denied.

19. Denied.

# THIRD CLAIM
## DECLARATORY JUDGMENT OF NONINFRINGEMENT AND INVALIDITY OF THE '705 PATENT

20. Burst incorporates by reference its responses to paragraphs 1-19.

21. Denied.

22. Denied.

## PRAYER FOR RELIEF

23. Burst denies that Apple is entitled to any relief from Burst and in particular to any of the relief requested in paragraphs 1-5 of Apple's Prayer for Relief.

## BURST'S COUNTERCLAIM

In support of its counterclaim against Apple, Burst alleges as follows:

### PARTIES

1. Burst is a corporation organized and existing under the laws of the State of Delaware. Burst maintains its principal place of business at 613 Fourth Street Suite 201, Santa Rosa, California, 95404. Burst owns and licenses patents and licenses software.

2. Apple is a corporation organized and existing under the laws of the State of California with a principal place of business at One Infinite Loop, Cupertino, California, 95014.

### JURISDICTION AND VENUE

3. Count I of this counterclaim asserts causes of action for patent infringement under the Patent Act, 35 U.S.C. § 271. This Court has subject matter jurisdiction over Count I by virtue of 28 U.S.C. § 1338(a). Venue is proper in this Court by virtue of 28 U.S.C. § 1391(b) and (c) and 28 U.S.C. § 1400(b).

4. This Court has personal jurisdiction over Apple because Apple has filed suit in this Court against Burst asserting claims that are substantially related to those asserted by Burst in Count I and because Apple provides infringing products and services in the Northern District of California.

### BACKGROUND

**Burst and the Burst Patents**

5. Burst owns patents covering aspects of audio and/or video technology. On October 16, 1990, the United States Patent and Trademark Office issued the first of these patents, United States Patent No. 4,963,995 (the "'995 Patent"), titled "Audio/Video

AMENDED ANSWER AND COUNTERCLAIM    4
Case No. C 06-00019 MHP

Transceiver Apparatus Including Compression Means." A true and correct copy of the '995 Patent is attached as Exhibit "A."

6. Thereafter, the United States Patent and Trademark Office issued other patents on Burst's technology, including U.S. Patent No. 5,057,932 (the "'932 Patent"), which issued on October 15, 1991; U.S. Patent No. 5,164,839 (the "'839 Patent"), which issued on November 17, 1992; and U.S. Patent No. 5,995,705 (the "'705 Patent"), which issued on November 30, 1999. The '995, '932, '839 and '705 Patents are collectively referred to as the "Burst Patents." Mr. Richard A. Lang is the named inventor on the Burst Patents, and all of these patents are in the same family. True and correct copies of the '932, '839 and '705 Patents are attached as Exhibits "B," "C" and "D," respectively. Burst is the legal and rightful owner of the Burst Patents.

7. The '995, '932, '839 and '705 Patents contain one-hundred eighty-six (186) patent claims covering various aspects of receiving, processing and delivering audio and/or video content. In general, the patents disclose techniques that enable efficient handling and delivery of audio and/or video content, while maintaining the integrity and quality of the content and its playback. The patents, which were filed beginning in 1988, suggest a shift in the previous broadcast paradigm of delivering audio/video content at a rate commensurate with the playback speed. In contrast to the broadcast paradigm, one aspect of the patented inventions is to transmit the audio and/or video content at a rate faster than playback speed, thereby eliminating the strict transmission time constraints required in previous audio/video transmission systems. Some of the techniques disclosed in the patents include digitization and compression of audio/video content and storage of the compressed content in memory. The audio/video content can be edited and stored or copied onto other storage media such as hard drives,

optical discs or CDs. In addition, the patents describe transmitting the digitized and compressed audio/video content to other computer systems, peripheral devices and destinations. As a part of the transmission, editing, storage, and playback of the audio/video content in a computer system, the patented technology includes various means and methodologies digital and analog conversions of content, compression and decompression of content, and storage of content in random access memory.

8. Burst began working in the 1990s to bring products and services to the marketplace that utilized certain techniques disclosed in its various patent applications. One of those products included a video and audio delivery platform called "Burstware." Burst licensed Burstware to companies that installed it on their own computer servers and client computers, in order to enable the efficient delivery of audio and video over various networks. In addition to licensing Burstware, Burst built its own video and audio hosting network. This hosting network provided a multitude of companies with a way to make video and audio content available on their own websites without using their own computers, by providing Internet links to the Burst hosting network. Individuals seeking access to video and/or audio content would access it via URL links from the websites of Burst's customers to the Burst hosting network. Burst also provided media delivery-related consulting services to various companies, as well as pure patent licenses to companies interested in implementing the inventions described in Burst's patents through their own media-delivery products and/or services.

9. The '995, '839 and '705 patents were the subject of a previous lawsuit between Burst and Microsoft Corporation. In that lawsuit, Burst accused Microsoft of infringing the '995, '839 and '705 patents. Pursuant to a settlement, Microsoft paid Burst

$60,000,000.00 for a non-exclusive license under Burst-owned patents, including the '995, '932, '839 and '705 Patents.

### Apple and Apple's Infringing Products and Services

10. Burst's patents were publicly known as early as 1991, when the first of them was publicly described at the Consumer Electronics Show in Las Vegas. Apple employees visited the Burst Booth at the 1991 CES show and conducted follow-up conversations with Burst employees throughout 1991. Burst also publicized its patents to various licensees in 1992, 1994 and 1996. Burst contacted Apple directly in 1999, 2000, and 2002. Certainly no later than the year 2000, Apple became aware of Burst's patents. Despite this knowledge, Apple proceeded on a path of developing infringing products as detailed below.

11. As stated in Apple's Complaint, "Apple manufactures and sells computer hardware and software, portable digital media players under the brand name iPod, and associated software under the brand name iTunes." Apple markets these products and services together under the name "iPod + iTunes" on its website and elsewhere. These audio and video products and services (including, for example, iPod, iPod Shuffle, iPod Nano, iPod Mini, iPod Video, iPod Photo and iPod U2 models) infringe one or more of the Burst Patents. Upon information and belief, Apple sells several billion dollars of iPod devices each year. Burst is entitled to damages on these iPod sales.

12. Apple also manufactures and distributes iTunes software, which is used for audio and/or video applications. Apple preloads iTunes software along with the Mac OS operating system on Apple computers (including, for example, Mac mini, iMac, eMac, MacBook Pro, iBook, Power Book, and Power Mac models (collectively, "Macs")). Apple distributes iTunes software for use on Macs and on computers

manufactured by other companies that use the Windows operating system ("PC's"). Upon information and belief, Apple distributes millions of copies of iTunes software each year. The iTunes software (including its use in conjunction with Macs, iPod devices and the iTunes Music Store) infringes one or more of the Burst Patents, and Burst is entitled to damages for this infringement.

13. Apple is the proprietor of the iTunes Music Store. According to the Apple iTunes website, the "iTunes Music Store offers more than 3,000 music videos and select TV shows along with 2 million songs (and counting.)" The website further states:

> Always your one-stop music shop, the iTunes Music Store now features music videos and TV shows to buy and own forever. So while you browse more than 2 million songs, 35,000 podcasts and more than 16,000 audiobooks, you can also preview and download that classic '80s video or the latest episode of "The Office." Watch everything from the comfort of your Mac or PC, as many times as you like. No stuttering video streams, no advertisements, no hassle. Then sync all your songs and videos to the new iPod and take them with you wherever you go. iTunes makes growing your digital music and video collection fast, easy and legal.

The iTunes Music Store infringes one or more of the Burst Patents, and Burst is entitled to damages for this infringement.

14. Apple also manufactures and sells the QuickTime suite of products. According to Apple's "Mac OS X Server" administration guide, the QuickTime suite of products includes:

- **QuickTime Player:** The free QuickTime Player is an easy-to-use application for playing, interacting with or viewing any video, audio, virtual reality (VR), or graphics file that is compatible with QuickTime.
- **QuickTime Pro:** The powerful 'pro' version of QuickTime Player provides an abundance of media authoring capabilities. You can capture audio and video, create slideshows, encode video and audio, edit movie tracks, create hint tracks, create media skins, and assemble hundreds of different media types into one movie file.
- **QuickTime Streaming Server:** Included with Mac OS X Server, QuickTime Streaming Server (QTSS) software enables you to deliver live and on-demand

AMENDED ANSWER AND COUNTERCLAIM    8
Case No. C 06-00019 MHP

media in real time using the industry standard RTSP/RTP protocols over the Internet with no per-stream license fees. Users see streamed media as soon as it reaches the computer; they don't have to wait to download files.
- **Darwin Streaming Server:** This free, open-source version of QuickTime Streaming Server supports popular enterprise platforms such as Linux, Windows Server 2003 and Solaris. It is available for download in source and can be compiled on a variety of platforms by modifying a few platform-specific source files.

In connection with "QuickTime Streaming," Apple's website describes its "skip protection" feature as follows: "Skip Protection works by taking advantage of excess bandwidth to buffer ahead data **faster than real time** on the client computer." (Emphasis added). One or more of the QuickTime products infringes one or more of the Burst Patents, and Burst is entitled to damages for this infringement.

 15. Apple also manufactures, sells and uses Macs and servers that run iTunes software and the QuickTime suite of products. For example, as referenced above, Apple servers and their pre-installed QuickTime Streaming Server software are used to transmit audio/video content "faster than real time." Additionally, Macs are sold with infringing software (QuickTime Player and iTunes) preinstalled. The manufacturing, selling and using of Apple's servers and Macs infringes one or more of the Burst Patents, and Burst is entitled to damages for this infringement.

### COUNT I

### Patent Infringement

 16. Apple has, without authority, consent, right or license, and in direct infringement of the Burst Patents, made, used, offered for sale and/or sold the methods, products and systems claimed in the Burst Patents in this country. Apple's making, using, offering for sale, and/or selling of one or more of these methods, products and

AMENDED ANSWER AND COUNTERCLAIM   9
Case No. C 06-00019 MHP

systems directly infringes one or more claims of the Burst Patents. This conduct constitutes infringement under 35 U.S.C. § 271(a).

17. In addition, Apple has in this country, through its sale of computer hardware and software, actively induced others to make, use, and/or sell the systems, products and methods claimed in one or more claims of the Burst Patents. This conduct constitutes infringement under 35 U.S.C. § 271(b).

18. Apple has also provided computer hardware and software designed for use in practicing one or more claims in the Burst Patents, where the software and/or hardware constitute a material part of the invention and are not staple articles of commerce, and which have no use other than infringing one or more claims of the Burst Patents. Apple has committed these acts with knowledge that the software and hardware it makes and sells are specially made for use in a manner that directly infringes the Burst Patents. This conduct constitutes contributory infringement under 35 U.S.C. § 271(c).

19. Apple's infringing conduct is unlawful and willful and will continue unless enjoined by this Court. Apple's willful conduct makes this an exceptional case as provided in 35 U.S.C. § 285.

20. As a result of Apple's infringement, Burst has been damaged, and will continue to be damaged, until Apple is enjoined from further acts of infringement.

21. Burst faces real, substantial and irreparable damage and injury of a continuing nature from Apple's infringement for which Burst has no adequate remedy at law.

WHEREFORE, Burst prays:

(a) That this Court find Apple has committed acts of patent infringement under the Patent Act, 35 U.S.C. § 271;

(b) That this Court enter judgment that:

    (i) the Burst Patents are valid and enforceable; and

    (ii) Apple has willfully infringed the Burst Patents;

(c) That this Court issue an injunction enjoining Apple, its officers, agents, servants, employees and attorneys, and any other person in active concert or participation with them, from continuing the acts herein complained of, and more particularly, that Apple and such other persons be permanently enjoined and restrained from further infringing the Burst Patents;

(d) That this Court require Apple to file with this Court, within thirty (30) days after entry of final judgment, a written statement under oath setting forth in detail the manner in which Apple has complied with the injunction;

(e) That this Court award Burst the damages to which it is entitled due to Apple's patent infringement with both pre-judgment and post-judgment interest;

(f) That Apple's infringement of Burst Patents be adjudged willful and that the damages to Burst be increased by three times the amount found or assessed pursuant to 35 U.S.C. § 284;

(g) That this be adjudged an exceptional case and that Burst be awarded its attorney's fees in this action pursuant to 35 U.S.C. § 285;

(h) That this Court award Burst its costs and disbursements in this civil action, including reasonable attorney's fees; and

(i) That this Court grant Burst such other and further relief, in law or in equity, both general and special, to which it may be entitled.

## DEMAND FOR JURY TRIAL

Burst, by its undersigned attorneys, demands a trial by jury on all issues.

Dated: April 27, 2006

Respectfully submitted,

/s/ Floyd G. Short
PARKER C. FOLSE III (WA Bar No. 24895-
*Admitted Pro Hac Vice*)
pfolse@susmangodfrey.com
IAN B. CROSBY (WA Bar No. 28461-
*Admitted Pro Hac Vice*)
icrosby@susmangodfrey.com
FLOYD G. SHORT (WA Bar No. 21632-
*Admitted Pro Hac Vice*)
fshort@susmangodfrey.com
SUSMAN GODFREY, L.L.P.
1201 Third Avenue, Suite 3800
Seattle, Washington 98101-3000
(206) 516-3880 Tel
(206) 516-3883 Fax

SPENCER HOSIE (CA Bar No. 101777)
shosie@hosielaw.com
BRUCE WECKER (CA Bar No. 078530)
bwecker@hosielaw.com
HOSIE McARTHUR LLP
One Market, 22nd Floor
San Francisco, CA 94105
(415) 247-6000 Tel.
(415) 247-6001 Fax

MICHAEL F. HEIM (TX Bar No. 9380923-
*Admitted Pro Hac Vice*)
LESLIE V. PAYNE (TX Bar No. 0784736-
*Admitted Pro Hac Vice*)
HEIM, PAYNE & CHORUSH, L.L.P.
600 Travis Street, Suite 6710
Houston, TX 77002
(713) 221-2000 Tel.
(713) 221.2021 Fax

ROBERT J. YORIO (CA Bar No. 93178)
V. RANDALL GARD (CA Bar No. 151677)
COLBY B. SPRINGER (CA Bar No. 214868)
CARR & FERRELL LLP
2200 Geng Road
Palo Alto, CA 94303
(650) 812-3400 Tel.
(650) 812-3444

ATTORNEYS FOR DEFENDANT
BURST.COM, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on the date written above, that I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. The Court or the CM/ECF system will send notification of such filings to all CM/ECF participants. I further certify that a true and correct copy of this document was sent via U.S. first-class mail, postage pre-pad to all non-CM/ECF participants.

                                              /s/ Floyd G. Short