forming electrical signals to fiber optic signals. Port 18
thus provides a capability for two-way communication between
high-speed data bus 34 and a fiber optic signal line. The
incorporation of fiber optic port 18 in the VCR-ET provides
a capability for receiving audio/video signals from or de-
livering audio/video signals to the fiber optic line such as
a fiber optic telephone line. The fiber optic line carries
digital signals in the form of light waves over great distances
with a high degree of accuracy and reliability and at a high
speed (e.g., about 200 megabytes/second). The VCR-ET can
receive a video program at an accelerated rate via fiber
optic port 18, e.g., from a variety of sources. For example-
a video program may be communicated at an accelerated rate
from the first VCR-ET to a second VCR-ET in less time than it
would take to view the program. Thus, it is not necessary to
access the optical fiber for long periods of time to transmit
a long video program.

It is also envisioned that in the future, a video
library may be established which downloads video programs at
an accelerated rate via optical fibers to a subscriber's
VCR-ET.

Switch 37 is provided to select connection to the
fiber optic input/output port 18. An OFF or open position is
provided. The selected signal is delivered to or supplied
from high speed data bus 34.

Analog output signals from AVRU 11 are delivered to
the common terminal 38 of a selector switch 39. When set to
position A, switch 39 delivers the output signal of AVRU 11

- 14 -

APBU-00000031

Dockets.Justia.com

directly to a video output line 41 as a standard STCS com-
posite signal; when set to position B switch 39 delivers the
output of VRU 11 to the input of RF modulator 19.  Modulator
19 converts the video signal to an RF-modulated composite signal
for delivery to such devices as televisions and conventional
VCR's.  These types of devices play back the video program on
a particular frequency channel (such as channel 4) on the
television.  Delivery to the television or VCR is via RF out-
put line 42.

    Digital output signals from VCR-ET 10 may be dispatched
from high speed data bus 34 via line 43 to input leads of
RGB converter 21 and audio-video transmitter/receiver 22.

    RGB converter 21 converts the STCS signal into an
RGB signal as required by computer monitors and similar display
devices.  The converted signal is received by a display device
connected to RGB converter output line 44.

    VCR-ET 10 includes audio/video transmitter/receiver
22 which is typically a modem.  Advantageously, the modem may
be used to communicate an audio/video program over conventional
phone lines in a manner similar to that described above with
respect to optical fibers.  The term modem is derived directly
from its functionality as a modulator-demodulator which allows
transfer of the audio/video signal over the standard telephone
line.  Modems are commonly available for computers and are
currently available in the form of a single integrated circuit.
As an example, Sierra Semiconductor offers a 2400 baud single
chip modem under its part number SC111006.  Representative
manufacturers of these single modem IC's can be found in the
April 14, 1988 issue of Engineering Design News (EDN),
pages 124-125.  Some of these single modem IC's have the

APBU-00000032

added capability of generating the tones for dialing a
phone number.  The destination phone number may be entered by
means of an optional keyboard/keypad 45 incorporated in the
video recorder 10 of the invention.  Output port 46 of trans-
mitter/receiver 22 connects directly to the telephone line.
(It is noted that the band width of a conventional phone line
is at present much *narrower* ~~smaller~~ than the signal band width of an
optical fiber, and thus the data transmission rate on tele-
phone lines is much *slower* ~~smaller~~ than the transmission rate for
an optical fiber.  Accordingly, the time required to communicate
a video program over a conventional phone line may exceed the
time it takes to view the program.)

The application and utilization of the VCR-ET may
include a number of forms or operating modes.

In its first and simplest operating mode, AVRU 11
may be operated in the manner of a conventional VCR with signals
from an antenna being received by tuner 16 and recorded
directly on media 23 in analog form.  At the same time the
received program may be viewed on the television screen with
the television connnected at video output terminal 41.  An
optional signal source for this type of operation is the
video line or camera input line 15 selectable by switch 35.

In a second operating mode a program stored *on* ~~in~~ media
23 of AVRU 11 may be played back and viewed on the connected
television set.

When it is desired to copy a program from one
recording media to another, the recording media holding the
desired program is installed in the AVRU.  The recording
media is then played back with optional viewing on a connected
television set or other TV monitor or listening through

- 16 -

APBU-00000033

speakers (as appropriate). As the recording media is played back, the analog signals from the recording media (video and/or audio) are dispatched to VCU 12 via connection 47. The analog signals are converted to digital signals by ADC 24, compressed by compressor/decompressor 26 and the compressed digital signals are stored in memory 13. The foregoing *operations are accomplished under the control of controller* 27 and CPU 28. RAM 29 is used for interim data storage during this process. Once the complete video/audio program has been stored in memory 13, the recording media from which the stored program has just been read is replaced by blank recording media upon which the stored program is to be copied. CPU 28 in cooperation with controller 27 and RAM 29 then executes the decompression and digital to analog conversion of the program stored in memory 13, decompression taking place in compressor/decompressor 26, and digital to analog conversion being accomplished by DAC 25. The resulting analog program is stored on the blank recording media which constitutes media 23 of AVRU 11.

During the foregoing copying procedures, DCU 14 may be utilized for editing operations. As the program is being read from the first or original recording media, it is simultaneously viewed on the TV screen, or listened to by means of an audio monitor, converted to digital signals, compressed and stored in memory 13. Once the digital audio/video program is stored in memory 13, editing is accomplished by the user through control of DCU 14, by means of a control panel (not shown) coupled to DCU 14. If desired, additional

- 17 -

APBU-00000034

audio/video signals may be simultaneously entered into memory 13 and added to those received from VCU 12.  The additional signals may be introduced from auxiliary digital input port 17 or from fiber optic input/output port 18 and may comprise video captions for ~~super-imposed~~ superimposed position upon the stored video images, or they may be audio commentaries to be added to silent video presentations.  In addition, as mentioned above, the order in which various segments appear in the video programs may be altered.  Certain undesired segments, such as TV commercials, may be removed.  This editing operation is accomplished under the control of DCU 14.

In still another operating mode a program stored in media 23 of AVRU 11 or being received by AVRU 11 from input line 15 (as from a video camera) may be digitized and compressed by VCU 12 and routed via bus 34, to memory 13.  The data from memory 13 is then routed to line 43, transmitter/receiver 22 and to a telephone line.  At the other end of the telephone line the signals received are processed by another VCR-ET.  As indicated above, conventional nonoptical telephone lines do not typically support high data transmission rates at the present time.  Accordingly, even compressed data may require more time to transmit over conventional phone lines than it would take to view the actual video program.

Once received in the second VCR-ET's memory 13, the digitized program can then either be viewed directly from memory or transferred to storage medium 23, either in its entirety or in random segments, based on user preference.

In the case of video camera input at input 15 the transmitted signals may comprise a live transmission.  Alter-

APBU-00000035

natively the transmitted program may be derived from a
program stored in media 23 of AVRU 11.  In this case the
stored analog program is again decoded, digitized, compressed
and transmitted via bus 34 to memory 13.  The data in memory
13 is then communicated via line 43 and transmitter/receiver
22 to telephone lines.

It follows, of course, that digitized video and
audio signals from the remote VCR-ET at the far end of the
telephone line may be received at line 46, entered into
memory 13 via transmitter/receiver 22, converted to analog
signals by VCU 12, and recorded on media 23 and then viewed,
if desired, on a television set connected at output 41.

As mentioned earlier, when any of the foregoing
operations entail the processing of unmodulated video signals,
such signals must first be processed by RF modulator 19 before
they can be accepted by devices such as a conventional VCR
or television set; when the monitoring means is a computer
monitor or a similar display device the signals are processed
by RGB converter 21.

All of the foregoing operations are performed with
enhanced quality and efficiency by virtue of the digital,
rather than analog, storage and transmission modes and the
compressed data storage mechanism, with additional advan-
tages of improved cost and reliability afforded in the case
of tape to tape (or other media to media) program transfers
by virtue of the requirement for only a single tape deck or
other storage device.

All of the foregoing operations, to the extent they

- 19 -

APBU-00000036

relate to the editing, playback, reception and/or transmission of video signals are also analogous to the VCR-ET's capabilities with regard to analog or digital signals containing only audio material.

An improved audio/video recorder with significantly expanded functional capabilities is thus provided in accordance with the stated objects of the invention and although but a single embodiment of the invention has been illustrated and described, it will be apparent to those skilled in the art that various changes and modifications may be made therein without departing from the spirit of the invention or from the scope of the appended claim. For example, the VCR-ET can be constructed so as to be portable. Thus, it could be carried to a location along with a video camera where it is desired to record a program, and then taken to another location where it is used to edit the program. Other modifications will be apparent to those skilled in the art in light of the present specification.

- 20 -

APBU-00000037

What is claimed is:

1. An apparatus comprising:

a first means for converting analog video signals received to first digital data signals,

an output port; and

a second means for transmitting said first digital data signals to said output port at a speed greater than the speed of the analog video signals received by said first means.

2. The apparatus set forth in claim 1 in further combination with:

means for coupling said output port to an optical fiber.

3. The apparatus set forth in claim 1 in further combination with:

means for coupling said output port to a telephone line.

4. The apparatus set forth in claim 1 wherein:

said first means sequentially compresses said first digital data signal into a second digital data signal, and

said second means transmits said second digital data signal to said output port.

5. The apparatus set forth in claim 1 in further combination with:

- 21 -

APBU-00000038

a transmission medium coupled to said output port; and

decompression means coupled to said transmission medium for receiving and decompressing said second digital data signal.

6. The apparatus set forth in claim 5 in further combination with:

a memory device coupled to said transmission medium for receiving and storing said second digital data signal; and

means for editing the data stored in said memory device.

7. The apparatus set forth in claim 5 in further combination with:

means coupled to said decompression means for displaying video images corresponding to said second digital data signal.

8. An apparatus comprising:

a data port for receiving digital signals corresponding to video information, and

means connected to said data port for receiving program information in compressed digital signals and converting the compressed digital signals to decompressed analog signals.

- 22 -

APBU-00000039

9.  The apparatus set forth in claim 8 in further combination with:

data decompression means, and

said data decompression means decompresses compressed digital signals received by said data port.

10.  The apparatus set forth in claim 8 wherein:

said means receives compressed digital signals from a video library.

11.  An apparatus comprising:

a first means for receiving analog video signals from an analog video signal storage device,

a digital memory,

a second means for receiving and digitizing said analog video signals and generating digitized data,

said second means transmitting said digitized data to said memory, and

a third means for receiving said digitized data from said digital memory and reconstructing analog video signals in response thereto.

12.  The apparatus set forth in claim 11 wherein:

said second means digitizes and compresses said analog video signals.

13.  The apparatus set forth in claim 11 wherein:

said first means receives said analog video signals from a video cassette, and

- 23 -

APBU-00000040

said third means transmits said reconstructed analog video signal to another cassette.

14.  An apparatus comprising:

a first means for receiving digital data corresponding to first video signals,

a second means for editing said digital data, and

a third means for displaying second video signals on a monitor corresponding to said edited data,

said second means permitting a user to alter the sequence of said first video signals.

15.  The apparatus set forth in claim 14 wherein:

said digital data comprises compressed digital data.

16.  An apparatus comprising:

a first means for receiving analog video/audio signals,

a second means for generating digital data corresponding to said video/audio signals, and

a third means for communicating said digital data over a telephone line.

17.  The apparatus set forth in claim 16 wherein:

said digital data comprises compressed digital data.

- 24 -

APBU-00000041

18.   A self contained analog video recorder comprising:

an analog video cassette recorder employing a data storage medium,

an analog video control unit connected to said storage medium for receiving audio video signals from said medium at a first speed and then digitizing said signals, and

a first means for transmitting the digitized signals to an output port at a second speed.

19.   The self contained audio video recorder set forth in claim 18 wherein:

said second speed is greater than said first speed.

20:   The self contained audio video recorder set forth in claim 1 wherein:

said control unit digitizing and modifies said signals.

21.   The self contained audio video recorder set forth in claim 18 wherein:

said output port comprises a receiver.

22.   A self contained audio video recorder comprising:

an audio video cassette recorder employing a data storage medium,

an audio video control unit connected to said storage medium for receiving audio video signals from said medium and digitizing and modifying said signals,

- 25 -

APBU-00000042

a memory,

a first means for transmitting the digitized and modified signals to said memory,

a second means for editing said signals in said memory, and

a third means for transmitting the edited signals to said medium.

23.  The self contained audio video recorder set forth in claim 22 wherein:

said audio video signals are received from said medium at a first speed, and

said third means transmits said edited signals to said medium at a second speed.

24.  The self contained audio video recorder set forth in claim 23 wherein:

said second speed is higher than said first speed.

25.  A digital editing audio video recorder transmitter comprising:

an audio video recorder comprising a data storage medium,

an audio video control unit connected to said storage medium for receiving audio video signals from said medium and digitizing said signals.

- 26 -

APBU-00000043

a memory,

a first means for transmitting the digitized signals to said memory,

a second means for editing the digitized signals in said memory, and

a third means for transmitting the edited digitized signals to a receiver.

26. The digital editing audio video recorder/transmitter, set forth in claim 25 wherein:

said audio video control unit digitizes and modifies the audio video signals received from said storage medium.

27. The digital editing audio video recorder/transmitter set forth in claim 25 wherein:

said audio video recorder comprises a video cassette recorder having a single deck for receiving a cassette.

28. The digital editing audio video recorder/transmitter set forth in claim 25 wherein:

said audio video control unit digitizes and compresses said audio video signals.

29. The digital editing audio video recorder/transmitter set forth in claim 28 in further combination with:

a fourth means for selectively transmitting the edited digitized signals to said audio video control unit,

- 27 -

APBU-00000044

said audio video control unit expanding said
edited digitized signals, and

a fifth means for transmitting the expanded
edited digitized signals to said medium.

30.  A digital editing audio video recorder/trans-
mitter comprising:

an audio video recorder employing a data storage
medium,

an audio/video control unit,

said audio video control unit comprising an
analog to digital converter, a digital to analog converter, a
compressor/decompressor, a controller, a central processor
unit, and a random access memory,

means for transmitting audio video signals from
said storage medium to said analog to digital converter for
conversion to signals of a digital form,

said controller, central processor unit and
random access memory modifying said signals in said digital
form in said compressor/decompressor,

a memory,

means for transmitting the modified digitial
signals from said compressor/decompressor to said memory,

a digital control unit,

said digital control unit editing said compressed
digital signals, and

means for transmitting the edited compressed
digital signals to a receiver.

- 28 -

APBU-00000045

31.   The digital editing video recorder/trans-
mitter set forth in claim 30 wherein:

      said controller of said audio video control
unit comprises the digital form of said signals.

32.   The digital editing video recorder/trans-
mitter set forth in claim 30 in further combination with:

      means for transmitting said modified signals
to said medium.

- 29 -

APBU-00000046



ABSTRACT OF THE DISCLOSURE

An improved video recorder/transmitter with expanded functionality including a capability for editing and/or copying from one video tape to another using only a single tape deck.  The increased functionality is realized through the use of analog to digital conversion, signal compression and intermediate storage in an integrated circuit, random access memory.  The recorder/transmitter has capabilities to transmit and receive program information in either a compressed or decompressed format over fiber optic lines.

- 30 -

APBU-00000047

9160—Patent application: sole or joint: declare'  ~83                    Gr    TRIES DIV. EXCELSIOR-LEGAL
S.      .O., INC., 62 WHITE ST., NYC 10013

## Declaration, Power of Attorney, and Petition

As a below named inventor, I hereby declare that:

My residence, post office address and citizenship are as stated below next to my name,

I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention entitled _____ VIDEO RECORDER/TRANSMITTER _____

_____ the specification of which

**(check one)** ☒ is attached hereto.  ☐ was filed on _____ as
Application Serial No. _____ and was amended on _____ (if applicable).

I hereby state that I have reviewed and understand the contents of the above identified specification, including the claims, as amended by any amendment referred to above.

I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, § 1.56(a).

I hereby claim foreign priority benefits under Title 35, United States Code § 119 of any foreign application(s) for patent or inventor's certificate listed below and have also identified below any foreign application for patent or inventor's certificate having a filing date before that of the application on which priority is claimed:

### Prior Foreign Application(s)

Priority claimed

| (Number) | (Country) | Day/month/year filed | ☐ Yes | ☐ No |
| (Number) | (Country) | Day/month/year filed | ☐ Yes | ☐ No |
| (Number) | (Country) | Day/month/year filed | ☐ Yes | ☐ No |

I hereby claim the benefit under Title 35, United States Code, § 120 of any United States application(s) listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States application in the manner provided by the first paragraph of Title 35, United States Code, § 112, I acknowledge the duty to disclose material information as defined in Title 37, Code of Federal Regulations, § 1.56(a) which occurred between the filing date of the prior application and the national or PCT international filing date of this application:

(Application Serial No.)    (Filing date)                                           (Status)  (patented, pending, abandoned)

(Application Serial No.)    (Filing date)                                           (Status)  (patented, pending, abandoned)

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

And I hereby appoint

Warren F. B. Lindsley        Reg. No. 16,141
Camel Square, Suite 200E
4350 E. Camelback Road
Phoenix, AZ  85018
(602) 840-7310

my attorney with full power of substitution and revocation, to prosecute this application and to transact all business in the Patent and Trademark Office connected therewith.

Wherefore I pray that Letters Patent be granted to me for the invention or discovery described and claimed in the foregoing specification and claims, and I hereby subscribe my name to the foregoing specification and claims, declaration, power of attorney, and this petition.

Full name of sole or first inventor _____ RICHARD A. LANG _____
Inventor's signature _____ Date 12-22-88
Residence _____ Cave Creek, Arizona _____
Citizenship _____ USA _____
Post Office Address _____ HC 04, Box 10560, Cave Creek, Arizona  85331 _____

Full name of second joint inventor, if any _____
Second Inventor's signature _____ Date _____
Residence _____
Citizenship _____
Post Office Address _____

(Supply similar information and signature for third and subsequent joint inventors.)

MAIL ROOM
DEC 27
45

| | | |
|---|---|---|
| Applicant or Patentee: | Richard A. Lang | Attorney's |
| Serial or Patent No.: | | Docket No.: 1352L |
| Filed or Issued: | | |
| For: | VIDEO RECORDER/TRANSMITTER | |

VERIFIED STATEMENT (DECLARATION) CLAIMING SMALL ENTITY
STATUS (37 CFR 1.9(f) and 1.27(b)) - INDEPENDENT INVENTOR

As a below named inventor, I hereby declare that I qualify as an independent inventor
as defined in 37 CFR 1.9(c) for purposes of paying reduced fees under section 41(a)
and (b) of Title 35, United States Code, to the Patent and Trademark Office with
regard to the invention entitled ___ VIDEO RECORDER/TRANSMITTER ___
described in

[X]  the specification filed herewith
[ ]  application serial no. _____, filed _____.
[ ]  patent no. _____, issued _____.

I have not assigned, granted, conveyed or licensed and am under no obligation under
contract or law to assign, grant, convey or license, any rights in the invention to
any person who could not be classified as an independent inventor under 37 CFR 1.9(c)
if that person had made the invention, or to any concern which would not qualify as a
small business concern under 37 CFR 1.9(d) or a nonprofit organization under 37 CFR
1.9(e).

Each person, concern or organization to which I have assigned, granted, conveyed, or
licensed or am under an obligation under contract or law to assign, grant, convey, or
license any rights in the invention is listed below:

[X]  no such person, concern, or organization
[ ]  persons, concerns or organizations listed below*

*NOTE:  Separate verified statements are required from each named
person, concern or organization having rights to the invention averring
to their status as small entities. (37 CFR 1.27)

FULL NAME _____
ADDRESS _____
[ ] INDIVIDUAL       [ ] SMALL BUSINESS CONCERN      [ ] NONPROFIT ORGANIZATION

FULL NAME _____
ADDRESS _____
[ ] INDIVIDUAL       [ ] SMALL BUSINESS CONCERN      [ ] NONPROFIT ORGANIZATION

FULL NAME _____
ADDRESS _____
[ ] INDIVIDUAL       [ ] SMALL BUSINESS CONCERN      [ ] NONPROFIT ORGANIZATION

I acknowledge the duty to file, in this application or patent, notification of any
change in status resulting in loss of entitlement to small entity status prior to
paying, or at the time of paying, the earliest of the issue fee or any maintenance fee
due after the date on which status as a small entity is no longer appropriate. (37 CFR
1.28(b))

I hereby declare that all statements made herein of my own knowledge are true and that
all statements made on information and belief are believed to be true; and further
that these statements were made with the knowledge that willful false statements and
the like so made are punishable by fine or imprisonment, or both, under section 1001
of Title 18 of the United States Code, and that such willful false statements may
jeopardize the validity of the application, any patent issuing thereon, or any patent
to which this verified statement is directed.

RICHARD A. LANG
NAME OF INVENTOR              NAME OF INVENTOR              NAME OF INVENTOR

Signature of Inventor         Signature of Inventor        Signature of Inventor
12-22-88
Date                          Date                         Date

APBU-00000049



APBU-00000050

11/289776



FIG-2

APBU-00000051

Print of Drawing
As Original Filed

07/289776



FIG. 1A

FIG. 1

APBU-00000052



VIDEO OUT

RF OUT

RGB OUT

A/V
TRANS/REC
IN/OUT

40)

42)

44)

46)

RF
MODULATOR
19)

RGB
CONVERTER
WITH SYNC.
2)

AUDIO/VIDEO
TRANS/REC.
22)

KEYPAD
45)

FIG-2



07/289776

Case Docket No. 1352L

WARREN F. B. LINDSLEY
CAMEL SQUARE — SUITE 200 E
4350 E. CAMELBACK ROAD
PHOENIX, ARIZONA  85018

THE COMMISSIONER OF PATENTS
Washington, D.C. 20231

Sir:

Transmitted herewith for filing is the patent application of

Inventor:    RICHARD A. LANG

For:        VIDEO RECORDER/TRANSMITTER

Enclosed are:

[X]   2   sheets of drawing.   (three copies each)

[ ]  An assignment of the invention to_____

_____

[ ]  A certified copy of a _____ application.

[ ]  Associate power of attorney.

| CLAIMS AS FILED | | | | |
|---|---|---|---|---|
| (1)<br>FOR | (2)<br>NUMBER FILED | (3)<br>NUMBER EXTRA | (4)<br>RATE | (5)<br>BASIC FEE<br>$170.00 |
| TOTAL<br>CLAIMS | 32 — 20 = | 12 | X<br>$6.00 | 72.00 |
| INDEPENDENT<br>CLAIMS | 9 — 3 = | 6 | X<br>$17.00 | 102.00 |
|  |  |  | TOTAL FILING<br>FEE ➝ | $ 344.00 |

[ ]  Please charge my Deposit Account No. _____ in the amount of
    $_____. A duplicate copy of this sheet is enclosed.

[ ]  The Commissioner is hereby authorized to charge any additional fees which may
    be required, or credit any overpayment to Account No. _____.
    A duplicate copy of this sheet is enclosed.

[ ]  A check in the amount of $ 7.00 to cover recording fee enclosed.

[X]  A check in the amount of   $344.00   to cover the filing fee is enclosed.

[X]  Verified Statement Claiming Small Entity Status enclosed.

[X]  Prior Art Form PTO-1449 and
    copies of cited patents
    are enclosed.

_____
Attorney of Record

Warren F. B. Lindsley

FORM PO-1082 (1-70)                                    USCOMM-DC 60898-P70

APBU-00000054

FORM PTO-1449
(REV. 7-80)

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE

| ATTY. DOCKET NO. | SERIAL NO. |
|---|---|
| 1352L | 07/289776 |

LIST OF PRIOR ART CITED BY APPLICANT
*(Use several sheets if necessary)*

| APPLICANT |
|---|
| RICHARD A. LANG |

| FILING DATE | GROUP |
|---|---|

## U.S. PATENT DOCUMENTS

| EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| WPS | AA | 4 76 8 11 0 | 8/30/88 | DUNLAP ET AL. | 360 | 33.1 | |
| | AB | | | | | | |
| | AC | | | | | | |
| | AD | | | | | | |
| | AE | | | | | | |
| | AF | | | | | | |
| | AG | | | | | | |
| | AH | | | | | | |
| | AI | | | | | | |
| | AJ | | | | | | |
| | AK | | | | | | |

## FOREIGN PATENT DOCUMENTS

| | | DOCUMENT NUMBER | DATE | COUNTRY | CLASS | SUBCLASS | TRANSLATION YES | NO |
|---|---|---|---|---|---|---|---|---|
| | AL | | | | | | | |
| | AM | | | | | | | |
| | AN | | | | | | | |
| | AQ | | | | | | | |
| | AP | | | | | | | |

## OTHER PRIOR ART *(Including Author, Title, Date, Pertinent Pages, Etc.)*

| | | |
|---|---|---|
| | AR | |
| | AS | |
| | AT | |

| EXAMINER | DATE CONSIDERED |
|---|---|
| W P Swan | 9-28-89 |

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

USCOMM-DC 80-3055

APBU-00000055

PATENT APPLICATION SERIAL NO. 07/289776

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
FEE RECORD SHEET

1 201    344.00 CK

140  01/04/89  289776

PTO-1556
(5/87)

APBU-00000056



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office

Address : COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 07/289,776 | 12/27/88 | LANG | R | 1352L |

WARREN F. B. LINDSLEY
CAMEL SQUARE - SUITE 200E
4350 E. CAMELBACK ROAD
PHOENIX, AZ 85018

| EXAMINER |
|---|
| SWAYZE,W |

| ART UNIT | PAPER NUMBER |
|---|---|
| 235 | 3 |

DATE MAILED:

10/11/89

This is a communication from the examiner in charge of your application.

COMMISSIONER OF PATENTS AND TRADEMARKS

☐ This application has been examined    ☑ Responsive to communication filed on _12-27-88_    ☐ This action is made final.

A shortened statutory period for response to this action is set to expire _____ month(s), _____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☑ Notice of References Cited by Examiner, PTO-892.    2. ☐ Notice re Patent Drawing, PTO-948.
3. ☑ Notice of Art Cited by Applicant, PTO-1449    4. ☐ Notice of Informal Patent Application, Form PTO-152
5. ☐ Information on How to Effect Drawing Changes, PTO-1474    6. ☐ _____

**Part II    SUMMARY OF ACTION**

1. ☑ Claims ___1-32___ are pending in the application.

   Of the above, claims _____ are withdrawn from consideration.

2. ☐ Claims _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☑ Claims ___1-32___ are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings which are acceptable for examination purposes until such time as allowable subject matter is indicated.

8. ☐ Allowable subject matter having been indicated, formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. These drawings are ☐ acceptable; ☐ not acceptable (see explanation).

10. ☐ The ☐ proposed drawing correction and/or the ☐ proposed additional or substitute sheet(s) of drawings, filed on _____ has (have) been ☐ approved by the examiner. ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed _____, has been ☐ approved. ☐ disapproved (see explanation). However, the Patent and Trademark Office no longer makes drawing changes. It is now applicant's responsibility to ensure that the drawings are corrected. Corrections MUST be effected in accordance with the instructions set forth on the attached letter "INFORMATION ON HOW TO EFFECT DRAWING CHANGES", PTO-1474.

12. ☐ Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has ☐ been received ☐ not been received ☐ been filed in parent application, serial no. _____ ; filed on _____

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

PTOL-326 (Rev. 7-82)                                    EXAMINER'S ACTION

APBU-00000057

Serial No. 289776                              -2-

Art Unit   235

The title of the invention is not descriptive. A new title

is required that is clearly indicative of the invention to which

the claims are directed.

The Examiner requires a copy of the references (The

Electronic System Design and Infoworld) on page 7 lines 3-11 of

the specification.

The following is a quotation of the appropriate paragraphs
of 35 U.S.C. § 102 that form the basis for the rejections under
this section made in this Office action:

A person shall be entitled to a patent unless --
(b) the invention was patented or described in a printed
publication in this or a foreign country or in public use or
on sale in this country, more than one year prior to the
date of application for patent in the United States.

Claims 1,4-10, 18-24 are rejected under 35 U.S.C. § 102(b)

as being anticipated by Baldwin.

Baldwin inherently includes the first means because Baldwin

discloses a digital signal , the signal must have originally been

converted from analog to digital.Baldwin in fig 5 discloses the

output port(60) and the second means(col 2 lines 33-38) of claim

1.

Baldwin in fig 5 discloses the sequential compression of the

first means(col 2 lines 33-37) and the transmittal of the second

digital signal(58 and 59) of claim 4.

Baldwin in fig 5 discloses the transmission medium(60) and

the decompression means col 2 lines 33-37) of claim 5.

Baldwin in fig 5 discloses the memory device(53 and 54) and

APBU-00000058

Serial No. 289776                              -3-

Art Unit   235

the editing means(fig 4) of claim 6.

    Baldwin discloses the display means (col 1 lines 8-13) of claim 7.

    Baldwin in fig 5 discloses the data port(input to 51 and 52) and the connecting means (col 2 lines 33-37) of claim 8.

    Baldwin in fig 5 discloses the data decompression means(col 2 lines 33-40) of claim 9

    Baldwin inherently includes the receiving means from a video library of claim 10 because a tape is disclosed (fig 1)having many video images. These images are the equivalent of a video library.

    Baldwin discloses the analog video cassette recorder( col 2 lines 27-30)of claim 18. Baldwin in fig 5 discloses the analog video control unit (51 and 52) of claim 18.

    Baldwin inherently includes the digitizing of the analog video control unit of claim 18 because the digital signals  must originally have been converted from analog to digital. Baldwin in fig 5 discloses the first means (55 & 56) and the medium claim 18. The Baldwin system is inherently self contained absent a teaching to the contrary. Baldwin discloses the second speed (col 3 lines 50-58) of claim 19.

    Baldwin inherently includes the control unit of claim 20 because analog to digital is a form of signal modification. Baldwin discloses the receiver(60) of claim 21 because the

APBU-00000059

Serial No. 289776                                    -4-

Art Unit   235

Baldwin receiver receives data from other circuits.    Baldwin

discloses the audio video cassette recorder( col 1 lines 8-13)the

audio video control unit(see the reasons in claim 18) of claim

22. Baldwin in fig 5 discloses the memory( 53 and 54), the first

means(51 and 52), the second means(fig 4). Baldwin inherently

includes the third transmitting means because the Baldwin system

is for recording.

        Baldwin discloses the first and second speeds (col3 lines

40-49) of claim 23.

        Baldwin discloses the second speed (col3 lines 40-49) of

claim 24.

        The following is a quotation of the appropriate paragraphs
of 35 U.S.C. § 102 that form the basis for the rejections under
this section made in this Office action:

        A person shall be entitled to a patent unless --

                (e) the invention was described in a patent granted on
                an application for patent by another filed in the
                United States before the invention thereof by the
                applicant for patent, or on an international
                application by another who has fulfilled the
                requirements of paragraphs (1), (2), and (4) of section
                371(c) of this title before the invention thereof by
                the applicant for patent.

        Claims 11-15 and 25 -32 are rejected under 35 U.S.C.

§ 102(e) as being anticipated by Nichols.


        Nichols in fig 4 discloses the first means(90), the digital

memory(98,120 and 124), the second means(96,118 and 122) and the

third means (142 144 and 146) of claim 11.

APBU-00000060