Apple Computer Inc. v. Burst.com, Inc.

CPP/M-91

1   are decompressed and converted back to analog signals.
2        As a first step in the processing of the composite
3   video signals within VCU 12, the sync signals are decoded to
4   isolate signals for each picture frame for processing.
5        The video signals defining each frame may then be
6   converted to a red analog signal, a green analog signal, and
7   a blue analog signal in a conventional manner.  The red,
8   green and blue analog signals are then converted to digital
9   form by the analog to digital converter (ADC) 24.  The frame
10  is divided into a set of closely positioned rows and columns
11  of picture elements or "pixels."  Each pixel has a color
12  defined by a set of three digital values defining strength
13  of the primary color components, red, green and blue (RGB)
14  respectively.  In one embodiment, each frame is divided into
15  an array of 300 by 300 pixels, with the color and luminance
16  of each pixel being defined by a seven bit word for the red
17  component, a seven bit word for the blue component, and a
18  seven bit word for the green component.  These words are
19  generated by ADC 24.  The RGB video signal may also be
20  processed by means of hue-saturation-intensity (HSI) color
21  processing, where appropriate, as described in "Chips for
22  Real-Time Comparisons," Electronic Engineering Times, issue
23  525, February 13, 1989, page 122.
24       If each frame includes 90,000 pixels (300 x 300), and
25  each pixel is defined by 21 bits (7 bits per primary color),
26  the digital representation of a single video frame utilizes
27  a sizable block of digital information (i.e., 1.89
28  megabits/frame) which must be processed very rapidly.
29  (Approximately 30 frames/second are received from AVRU
30  11.)  Fortunately the analog to digital conversion of these
31  signals may be accomplished at the desired speed using
32  commercially available analog to digital converter
33  integrated circuits.  The analog to digital converter 24
34  (ADC) is a high-speed, high-accuracy, A to D "flash"
35  converter available as a single IC (integrated circuit).
36  Several different types of such A/D converters are available
37  from Burr-Brown, one of which is the ADC 600.  Part number
38  TIC024, manufactured by Tektronix, Inc. is also

- 7 -

APBU-00000300

CPP/M-.

1   appropriate.  Other types of devices appropriate for this
2   function are described in an article by K. Rogers entitled
3   "8-bit A/D Flash Hits 500 Msamples", Electronic Engineering
4   Times, Dec. 12, 1988, page 90, incorporated herein by
5   reference.
6         Compression of the digital data defining a video frame
7   and the reverse process (decompression) are accomplished by
8   compressor/decompressor 26.  Various algorithms may be
9   employed in the compression process which enable the
10  representation of a series of numbers by a reduced number of
11  digits.  As an example, compression algorithms like CCITT
12  Group IV may be used.
13        In one optional embodiment, to further reduce the
14  amount of memory required to store a program, the
15  compression algorithm can simply record data corresponding
16  to only those pixels which change color from one frame to
17  the next.  This results in considerable memory space
18  savings, since not all pixels change color each frame.
19  Basing calculation upon 10% of the pixels changing from one
20  frame to the next, it is estimated that memory requirements
21  using this technique are cut by about 90%.  It is also
22  estimated that on the average, the CCITT Group IV algorithm
23  can cut memory requirements by another 95%.  Thus, if no
24  data compression technique is used, it would take
25  approximately 51.03 gigabytes to store a 2 hour video
26  program, but by using the above compression techniques, it
27  is estimated that memory 13 will require only 250 megabytes.
28        Controller 27 handles timing and aids in the
29  communication between the different elements of VCU 12, and
30  between VCU 12, AVRU 11 and memory 13.
31        In one embodiment, the audio portion of the program is
32  periodically sampled and digitized by analog to digital
33  conversion.  In one embodiment, this is done at a sample
34  rate of 88,000/second, one byte per sample, to yield compact
35  disc quality sound.  The sampling rate could be dropped to
36  reduce memory requirements.  Also, the audio data can be
37  compressed with conventional algorithms.
38        The process of converting either from analog to digital

-8-

CPP/M-9.

1  or from digital to analog requires memory for intermediate
2  storage. Random Access Memory (RAM) 29 serves in this
3  capacity. For this purpose either a DRAM (Dynamic RAM) or a
4  SRAM (static RAM) may be employed. An example of a DRAM is
5  the TI (Texas Instruments) TMX4C1024; an example of a SRAM
6  is the INMOS IMS-1203. RAM 29 should have sufficient
7  capacity to store at least two full uncompressed frames
8  (e.g., about 472 KB).
9      The CPU (Central Processing Unit) 28 is a micro-
10 processor which controls the digitization process of VCU
11 12. CPU 28 works with controller 27 to control and
12 communicate with the other elements of the VCU. There are
13 numerous commercially available microprocessors that are
14 appropriate for this application. The Intel 80286, Intel
15 80386, Motorola 68020, and Motorola 68030 are examples.
16 A more complete description of the microprocessors can be
17 found in the October 27, 1988 issue of Electronic Design
18 News (EDN), pages 231 and 242, incorporated herein by
19 reference, or in the applicable data sheets.
20     Controller 27, CPU 28 and RAM 29 serve in the same
21 manner during the reverse processes, i.e., decompression and
22 digital to analog conversion. Decompression is first
23 accomplished in compressor/decompressor 26. The
24 decompressed digital signal is then converted to an analog
25 signal by digital to analog converter (DAC) 24 (assuming its
26 destination requires an analog form). In the course of
27 converting the decompressed signals from the VCU 12 for use
28 by the AVRU 11 the signals are synchronized by the time base
29 generator (TBG) or corrector 48. TBG generator 48 inserts
30 synchronization pulses into the signal provided by VCU 12 to
31 identify individual raster scan lines and frames so that the
32 resulting signal can be used by a conventional television
33 set or VCR. TBG 48 can be bypassed by shunt switch 48' for
34 the purpose of transmitting either compressed or
35 decompressed signals from VCU 12 directly to the AVRU 11 in
36 an uncorrected time based mode.
37     DAC 25 provides the inverse of the function performed
38 by A/D converter 24. DAC 25 is a high-speed, high accuracy

CPP/M-91

1   digital to analog converter.  An example of such a converter
2   is the Burr-Brown DAC60 digital to analog converter.
3        Different types of memory technologies are adaptable
4   for use in memory 13.  As mentioned earlier, DRAM and SRAM
5   semiconductor memories are commonly used for applications of
6   this type and are readily available.
7        One type of random access memory is CMOS (Complimentary
8   Metal Oxide Semiconductor).  The CMOS memory has the
9   advantage of a relatively low power requirement and is
10  readily adaptable for use of battery backup for semi-
11  permanent data storage.  Other types of memory include the
12  above mentioned optical disc memories, bubble memories and
13  magnetic disks.  Another appropriate data storage media may
14  be "Digital Paper" available from ICI Image data of
15  Wilmington, Delaware.
16       Emerging memory technologies may also prove advan-
17  tageous with capabilities for mass data storage in even
18  smaller physical dimensions.
19       Digital Control Unit (DCU) 14 comprises a CPU (Central
20  Processor Unit) 31, a ROM (Read Only Memory) 32 and a
21  controller 32.  DCU 14 is responsible for all of the digital
22  editing processes.  Through the use of DCU 14, video
23  segments may be edited and rearranged.  Thus, one may use
24  DCU 14 to rearrange the scenes in a program, alter the
25  program sound track, etc.
26       In addition, a program may be edited, one frame at a
27  time, by changing the contrast, brightness, sharpness,
28  colors, etc.  (Alteration of the contrast, brightness,
29  sharpness and colors can be automated as well.)  In one
30  embodiment, images can be rotated, scaled (i.e., made larger
31  or smaller), etc.  In addition, pixel by pixel editing can
32  be accomplished by DCU 14, e.g., in a manner similar to a PC
33  paint program.  Similar editing features can be incorporated
34  for the audio portion of each program.  In one embodiment, a
35  display such as a flat panel video display (not shown) is
36  built into the VCR-ET.  A user interface control panel of
37  DCU 14 allows a user to select a desired frame number from a
38  menu on the display.  The VCR-ET then displays a strip of

- 10 -

APBU-00000303

CPP/M-9

1  frames (including several frames before and after the
2  selected frame).  The user can delete frames in a strip,
3  select a point where other frames are to be inserted into
4  the program, or edit different frames (i.e., alter contrast,
5  brightness, sharpness, colors, etc.).  In one embodiment, a
6  user input device such as a light pen or mouse can be used
7  to select individual frames in a strip for editing.
8      Instead of incorporating a flat display into VCR-ET 10,
9  in another embodiment, a television coupled to output lead
10  42 of RF modulator 19 can be used during editing.
11      CPU 31 is a microprocessor of the type described in
12  connection with the CPU 28 of VCU 12.  Controller 33 is an
13  integrated circuit which handles the timing and interfacing
14  between DCU 14 and memory 13.  ROM 32 holds the necessary
15  step-by-step editing programs which are installed at the
16  factory.  A currently available example of a suitable ROM
17  for this application is the Texas Instruments part
18  TMS47256.  CPU 31 and controller 33 together control the
19  editing process as they execute the programs stored in
20  ROM 32.
21      The VCU 12, memory 13 and DCU 14 communicate with each
22  other via a high speed data bus 34.  The high speed data bus
23  is required in order to meet bandwidth requirements.
24  Examples of suitable data bus devices are Motorola's VME
25  bus, Intel's Multibus and the Optobuss (U.S. Patent
26  4,732,446).
27      A video line or camera input line 15 is provided to
28  enable VCR-ET 10 to receive an input signal from a source
29  such as a television camera, a conventional VCR, a
30  television tuner, or another VCR, etc.  The signals received
31  at input line 15 are typically carried by a coaxial cable
32  and are in the form of a standard television composite
33  signal.  As used throughout this specification, the words
34  "standard television composite signal" or its acronym STCS
35  shall be read to include any one of the following:  NTSC,
36  PAL, SECAM, HDTV, or any American or European broadcast
37  signal standards.  (NTSC, PAL and SECAM are discussed in
38  "Reference Data for Radio Engineers", published by Howard W.

- 11 -

APBU-00000304

CPP/M-5

1   Sams & Co. in 1983, incorporated herein by reference.) An
2   NTSC composite signal is defined as the analog signal that
3   carries the chrominance (color), luminance (brightness),
4   synchronization (timing) and audio signals that make up the
5   video signals received and displayed by television and video
6   cassette recorders.  These four components are combined into
7   one signal by modulating the components in different ways.
8   (Amplitude modulation and phase modulation are examples.)
9   The standard video line signal is such a composite signal
10  and may be received at input line 15 from one of the above-
11  mentioned sources.
12      TV RF tuner input port 16 also supplies a composite
13  signal as described in regard to video input line 15.  The
14  difference is that this signal is received from an antenna
15  or cable TV coaxial cable.  To receive such a signal, tuner
16  16 is capable of being set or tuned to receive the desired
17  carrier frequency or television channel.
18      Selector switch 35 is provided to select either video
19  input line 15 or TV RF tuner 16 as an input signal source to
20  AVRU 11.
21      Auxiliary digital input port 17 is employed to receive
22  any acceptable digital signal such as computer-generated
23  video signal or as may be supplied by another VCR-ET.  This
24  signal, for example, may be an RGB video signal such as that
25  delivered to computer monitors, or it may be a digitized
26  audio signal.  (As mentioned above, an RGB signal is a
27  signal which communicates the strength of the red, green and
28  blue color components for the pixels that make up each video
29  frame.)  Switch 36 selects whether the digital video/audio
30  input signal is chosen from auxiliary digital input port
31  17.  Switch 36 supplies the selected signal to high speed
32  data bus 34 which carries the signals in digital form.
33      Fiber optic port 18 incorporates a fiber optic
34  transceiver.  Port 18 has a capability for transforming
35  fiber optic (light) signals to electrical signals or for
36  transforming electrical signals to fiber optic signals.
37  Port 18 thus provides a capability for two-way communication
38  between high speed data bus 34 and a fiber optic signal

- 12 -

APBU-00000305

CPP/M-91

1    line. The incorporation of fiber optic port 18 in the
2    VCR-ET provides a capability for receiving audio/video
3    signals from or delivering audio/video signals to the fiber
4    optic line such as a fiber optic telephone line. The fiber
5    optic line carries digital signals in the form of light
6    waves over great distances with a high degree of accuracy
7    and reliability and at a high speed (e.g., about 200
8    megabytes/second). The VCR-ET can receive/transmit a video
9    program at an accelerated rate via fiber optic port 18
10   from/to a variety of sources. For example a video program
11   may be communicated at an accelerated rate from the first
12   VCR-ET to a second VCR-ET in less time than it would take to
13   view the program. Thus, it is not necessary to access the
14   optical fiber for long periods of time in order to transmit
15   a long video program.
16        It is also envisioned that in the future, a video
17   library may be established which downloads video programs at
18   an accelerated rate via optical fibers to a subscriber's
19   VCR-ET. After downloading, the program may be viewed,
20   stored in memory, edited and/or a hard copy of the program
21   may be made on magnetic tape, optical disk, etc.
22        Switch 37 is provided to select connection to the fiber
23   optic input/output port 18. An OFF or open position is
24   provided. The selected signal is delivered to or supplied
25   from high speed data bus 34.
26        Analog output signals from AVRU 11 are delivered to the
27   common terminal 38 of a selector switch 39. When set to
28   position A, switch 39 delivers the output signal of AVRU 11
29   directly to a video output line 41 as a standard STCS
30   composite signal; when set to position B switch 39 delivers
31   the output of VRU 11 to the input of RF modulator 19.
32   Modulator 19 converts the video signal to an RF-modulated
33   composite signal for delivery to such devices as televisions
34   and conventional VCR's. These types of devices play back
35   the video program on a particular frequency channel (such as
36   channel 4) on the television. Delivery to the television or
37   VCR is via RF output line 42.
38        Digital output signals from VCR-ET 10 may be dispatched

- 13 -

APBU-00000306

CPP/M-9

1  from high speed data bus 34 via line 43 to input leads of
2  RGB converter 21 and audio/video transmitter/receiver 22.
3      RGB converter 21 converts the STCS signal into an RGB
4  signal as required by computer monitors and similar display
5  devices. The converted signal is received by a display
6  device connected to RGB converter output line 44.
7      VCR-ET 10 includes audio/video transmitter/receiver 22
8  which is typically a built-in modem. Advantageously, the
9  modem may be used to communicate an audio/video program over
10  conventional phone lines in a manner similar to that
11  described above with respect to optical fibers. The term
12  modem is derived directly from its functionality as a
13  modulator-demodulator which allows transfer of the
14  audio/video signal in a digital format over the standard
15  telephone line. Modems are commonly available for computers
16  and are currently available in the form of a single
17  integrated circuit. As an example, Sierra Semiconductor
18  offers a 2400 baud single chip modem under its part number
19  SC111006. Representative manufacturers of these single
20  modem IC's can be found in the April 14, 1988 issue of
21  Engineering Design News (EDN), pages 124-125. Some of these
22  single IC modems have the added capability of generating the
23  tones for dialing a phone number. The destination phone
24  number may be entered by means of an optional
25  keyboard/keypad 45 incorporated in the video recorder 10 of
26  the invention. Output port 46 of transmitter/receiver 22
27  connects directly to the telephone line.
28      Also associated with Modem 22 is an auxilliary keyboard
29  45' (Fig. 1A) of buttons for commanding the modem to perform
30  tasks such as starting a transmission over phone lines
31  (45a), terminating a transmission (45b), automatic telephone
32  answering to receive transmissions (45c), using an optional
33  speaker (not shown) to monitor phone lines (45d), using an
34  optional microphone (not shown) to speak over the phone
35  lines (45e) and for controlling the baud rate (45f).
36      The application and utilization of the VCR-ET may
37  include a number of forms or operating modes. In its first
38  and simplest operating mode, AVRU 11 may be operated in the

- 14 -

CPP/M-9

1    manner of a conventional VCR with signals from an antenna
2    being received by tuner 16 and recorded directly on media 23
3    in analog form.  At the same time the received program may
4    be viewed on the television screen with the television
5    connected at video output terminal 42.  An optional signal
6    source for this type of operation is the video line or
7    camera input line 15 selectable by switch 35.
8        In a second operating mode a program stored in media 23
9    of AVRU 11 may be played back and viewed on the connected
10   television set.
11       When it is desired to copy a program from one recording
12   media to another, the recording media holding the desired
13   program is installed in the AVRU.  The recording media is
14   then played back with optional viewing on a connected
15   television set or other TV monitor or listening through
16   speakers (as appropriate).  As the recording media is played
17   back, the analog signals from the recording media (video
18   and/or audio) are dispatched to VCU 12 via connection 47.
19   The analog signals are converted to digital signals by ADC
20   24, compressed by compressor/decompressor 26 and the
21   compressed digital signals are stored in memory 13.  The
22   foregoing operations are accomplished under the control of
23   controller 27 and CPU 28.  RAM 29 is used for interim data
24   storage during this process.  Once the complete video/audio
25   program has been stored in memory 13, the recording media
26   from which the stored program has just been read is replaced
27   by blank recording media upon which the stored program is to
28   be copied.  CPU 28 in cooperation with controller 27 and RAM
29   29 then executes the decompression and digital to analog
30   conversion of the program stored in memory 13, decompression
31   taking place in compressor/decompressor 26, and digital to
32   analog conversion being accomplished by DAC 25.  The
33   resulting analog program is stored on the blank recording
34   media which constitutes media 23 of AVRU 11.
35       In an alternate mode of operation, the decompression
36   circuitry of VCU 12 can be bypassed.  Thus, a user has the
37   option of downloading the stored program from memory 13 onto
38   recording media 23 in compressed digital format.  The user

- 15 -

APBU-00000308

CPP/M-914

1  can then reload the program from media 23 into memory 13 at
2  a future time for viewing, editing or recording back onto
3  recording media 23 in analog form. This capability allows
4  the user to quickly clear memory 13 for other interim uses
5  and also provides the user with a hard copy of the program
6  in digital format. The hard copy in compressed digital
7  format has a number of uses, e.g. it could be archived for
8  later viewing, transmitted by an appropriate independent
9  transmitter, etc.

10     During the foregoing procedures, DCU 14 may be utilized
11  for editing operations. As the program is being read from
12  the first or original recording media, it is simultaneously
13  viewed on the TV screen, or listened to by means of an audio
14  monitor, converted to digital signals, compressed and stored
15  in memory 13. Once the digital audio/video program is
16  stored in memory 13, editing is accomplished by the user
17  through control of DCU 14, by means of a control panel (not
18  shown) coupled to DCU 14. If desired, additional
19  audio/video signals may be simultaneously entered into
20  memory 13 and added to those received from VCU 12. The
21  additional signals may be introduced from auxiliary digital
22  input port 17 or from fiber optic input/output port 18 and
23  may comprise video captions for super imposed position upon
24  the stored video images, or they may be audio commentaries
25  to be added to silent video presentations. In addition, as
26  mentioned above, the order in which various segments appear
27  in the video programs may be altered. Certain undesired
28  segments, such as TV commercials, may be removed. This
29  editing operation is accomplished under the control of
30  DCU 14.

31     In still another operating mode, a program stored in
32  media 23 of AVRU 11 or being received by AVRU 11 from input
33  line 15 (as from a video camera) may be digitized and
34  compressed by VCU 12 and routed via bus 34, to memory 13.
35  The data from memory 13 is then routed to line 43,
36  transmitter/ receiver 22 and to a telephone line. At the
37  other end of the telephone line the signals received are
38  processed by another VCR-ET.

APBU-00000309

CPP/M-9:

1   Once received in the second VCR-ET's memory 13, the
2   digitized program can then either be viewed directly from
3   memory or transferred to storage medium 23, either in its
4   entirety or in random segments, based on user preference.
5   In the case of video camera input at input 15 the
6   transmitted signals may comprise a live transmission.
7   Alternatively the transmitted program may be derived from a
8   program stored in media 23 of AVRU 11. In this case the
9   stored analog program is again decoded, digitized,
10  compressed and transmitted via bus 34 to memory 13. The
11  data in memory 13 is then communicated via line 43 and
12  transmitter/receiver 22 to telephone lines.
13  It follows, of course, that digitized video and audio
14  signals from the remote VCR-ET at the other end of the
15  telephone line may be received at line 46, entered into
16  memory 13 via transmitter/receiver 22, converted to analog
17  signals by VCU 12, and recorded on media 23 and then viewed,
18  if desired, on a television set connected at output 42. A
19  hard copy of the program may also be made for later viewing.
20  As mentioned earlier, when any of the foregoing
21  operations entail the processing of unmodulated video
22  signals, such signals must first be processed by RF
23  modulator 19 before they can be accepted by devices such as
24  a conventional VCR or television set; when the monitoring
25  means is a computer monitor or a similar display device the
26  signals are processed by RGB converter 21.
27  All of the foregoing operations are performed with
28  enhanded quality and efficiency by virtue of the digital,
29  rather than analog, storage and transmission modes and the
30  compressed data storage mechanism, with additional
31  advantages of improved cost and reliability afforded in the
32  case of tape to tape (or other media to media) program
33  transfers by virtue of the requirement for only a single
34  tape deck or other storage device.
35  Fig. 3 illustrates an alternative embodiment invention
36  in which AVRU 11 is not integral with VCU 12, memory 13 or
37  editor 14. In this embodiment, AVRU 11 is a conventional,
38  commercially available VCR which receives a modulated video

- 17 -

APBU-00000310

CPP/M-9

1   input signal on an input cable 50.  In this embodiment
2   AVRU 11 includes a RF tuner 51 for demodulating the input
3   signal so it can be stored in media 23.  AVRU 11 also
4   includes a RF modulator 52 for modulating the signal
5   received from media 23 and providing the RF modulated output
6   signal on an output cable 53, which can be coupled to a
7   television set.  (TV RF tuner 51 and RF modulator 52 are
8   provided in typical commercially available VCR's.)  A switch
9   54 is provided to couple input cable 50 to output cable 53
10  when media 23 is not serving as a video signal source.  The
11  VCR-ET of this embodiment includes a TV RF tuner 55 which
12  receives and demodulates the signal on cable 53, and
13  provides the resultant analog audio/video signal on a
14  lead 56, which is digitized and compressed as described
15  above.  In this alternative embodiment, the digitized
16  compressed signal may be processed as described above, e.g.
17  stored in memory 13 (via high speed bus 34), edited,
18  transmitted by the fiber optic port 18 to another VCR-ET,
19  etc.  When it is desired to view a program stored in
20  memory 13, data from memory 13 is decompressed and converted
21  to an analog signal by VCU 12, and the resulting signal is
22  provided on an output lead 57 to a RF modulator 58, which
23  modulates the video signal so that it can be received and
24  stored by AVRU 11 or viewed on a television coupled to cable
25  53.  (As mentioned above, in the Fig. 3 embodiment, AVRU 11
26  is a conventional VCR.)
27       One advantage of the embodiment of Fig. 3 is that many
28  people already own VCR's.  Rather than buying apparatus
29  which duplicates much of the hardware already present in
30  their VCR, the embodiment of Fig. 3 would provide to owners
31  of conventional VCR's capabilities which are otherwise
32  currently unavailable in an economical manner.
33       In one embodiment, analog auxiliary audio and video
34  input terminals 62, 64 are provided so that analog signals
35  may be provided by alternate sources to VCU 12.
36       The embodiments described above include means for
37  transmitting/receiving video programs over fiber optic
38  cables.  However, in an alternative embodiment, either in

-18-

APBU-00000311

CPP/M-91

1   place of fiber optic port 18 or in addition to fiber optic
2   port 18, means are provided for transmitting and/or
3   receiving a video program via microwave.  In conventional
4   microwave technology, satellite systems and microwave
5   transmitters transmit data using a low power/high frequency
6   signal.  In an embodiment of the invention designed to
7   receive microwaves, the VCR-ET includes an amplifier for
8   amplifying the microwave signal and a demodulator for
9   obtaining the video program signal from the microwave
10  signal.  Receiving, amplifying and demodulating the
11  microwave signal can be accomplished with conventional
12  microwave transceiver equipment.  The video program signal
13  is typically in digital form, and may be stored, viewed or
14  edited as in the above-described embodiments.  Program data
15  from memory 13 can also be transmitted by the microwave
16  transciever, thereby providing the capability for microwave
17  transmission of stored video programs in compressed digital
18  format.  Thus, the invention can be used to receive and
19  transmit programs via microwaves at an accelerated rate
20  similar to and at least as fast as, the transmission and
21  reception of programs over optical fibers.  This feature
22  allows transmission and reception of programs in a few
23  minutes or seconds using currently available technology.
24  Both point-to-point microwave transceivers and satellite
25  transceivers may be used.
26       The embodiments described include means for receiving,
27  storing and transmitting both audio and video signals.
28  However, the invention encompasses apparatus which can store
29  and transmit video signals only and apparatus which can
30  store and transmit audio signals only.  An embodiment
31  designed to store and compress audio signals is illustrated
32  in Fig. 4.  Referring to Fig. 4, an audio signal source 70
33  (a tape recorder, microphone, record player, etc.) is
34  coupled to a digitizer and compressor circuit 72, which
35  converts the analog signal to a digital signal and
36  compresses the digital signal in a manner similar to VCU 12
37  described above.  The digital compressed signal can then be
38  stored in a memory 74.  Of importance, data from memory 74

- 19 -

APBU-00000312

CPP/M-91

1    can be transmitted by a fiber optic transceiver 76, or by a
2    microwave transceiver 78 at an accelerated rate. This is
3    important not only in a home entertainment application, but
4    in other applications as well. For example, a user can
5    dictate an audio presentation and send it to a remote
6    location (e.g. an office) at an accelerated rate without
7    having to monopolize the transmission medium (e.g. the fiber
8    optic cable) for an extended length of time.
9        The business uses of the embodiment illustrated in Fig.
10   4 makes home offices feasible for many workers now confined
11   to more traditional offices and also opens new possibilities
12   to business people who are traveling.
13       In the embodiment of Fig. 4, data can also be loaded
14   from memory 74, via a modem 79 over a conventional phone
15   line 80. Data can also be received from phone line 80,
16   fiber optic transceiver 76 or microwave transceiver 78,
17   loaded into memory 74, and converted to an analog signal by
18   circuit 72, to be listened to via an audio monitor 82, or to
19   be stored on an audio tape cassette 84 or other storage
20   media.
21       An editor 86 is optionally provided so that the data in
22   memory 74 may be edited, e.g., by rearranging the order of
23   portions of the audio program, increasing or decreasing the
24   volume of portions (or different frequency components) of
25   the audio program, or enhancing the audio program through
26   filtering techniques (e.g. to remove static and noise).
27       An improved audio/video recorder with significantly
28   expanded functional capabilities is thus provided in
29   accordance with the stated objects of the invention and
30   although but a single embodiment of the invention has been
31   illustrated and described, it will be apparent to those
32   skilled in the art that various changes and modifications
33   may be made therein without departing from the spirit of the
34   invention or from the scope of the appended claim. For
35   example, the VCR-ET can be constructed so as to be
36   portable. Thus, it could be carried to a location where it
37   is desired to record a program, and used to edit the program
38   after it is recorded with a video camera. Other

- 20 -

APBU-00000313

CPP/M-9.

1   modifications will be apparent to those skilled in the art
2   in light of the present specification.
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38

APBU-00000314

CPP/M-91

CLAIMS

What is claimed is:

1. Apparatus comprising:
   first means for receiving a video signal from a
VCR and digitizing said received signal;
   memory means coupled to said first means for
storing said digitized video signal; and
   second means coupled to said memory means for
converting said stored digitized signal to an analog
video signal and providing said analog video signal to
said VCR.

2. Apparatus of Claim 1 further comprising an editor
for editing said digitized video signal stored in said
memory means.

3. Apparatus of Claim 1 further comprising an I/O
port for receiving data and storing said data in said memory
means so that said received data can be converted to an
analog video signal by said second means, and so that said
data in said memory means can be communicated to said I/O
port, whereby said apparatus facilitates communication of
signals between said VCR and an auxiliary device coupled to
said I/O port.

4. Apparatus of Claim 3 wherein said I/O port is an
optic fiber I/O port.

5. Apparatus of Claim 3 wherein said I/O port is a
modem.

6. Apparatus of Claim 3 wherein said I/O port is a
microwave transceiver.

7. Apparatus of Claim 3 wherein said I/O port
transmits and receives data corresponding to said video

- 22 -

APBU-00000315

CPP/M-91

1  signal at an accelerated rate.

2

3      8.   Apparatus of Claim 1 wherein said first means

4  compresses said digitized video signal prior to storage in

5  said memory means.

6

7      9.   Apparatus comprising:

8          means for receiving an analog audio signal;

9          means for digitizing said analog audio signal,

10  thereby generating digital data corresponding to said

11  audio signal and for compressing said digitized data;

12          means for storing said compressed digital data;

13  and

14          transceiver means for transmitting said compressed

15  digital data.

16

17      10.  Apparatus of Claim 9 wherein said transceiver

18  means also receives and stores compressed digital data in

19  said means for storing, said apparatus also including means

20  for converting the data stored in said means for storing

21  into an analog audio signal.

22

23      11.  Apparatus of Claim 10 wherein the time required by

24  said transceiver means to transmit or receive said

25  compressed digital data is less than the time required to

26  monitor the audio signal corresponding to said data.

27

28      12.  Apparatus comprising:

29          first means for receiving and converting an analog

30  video signal to a digital video signal;

31          second means for storing said digital video

32  signal, wherein said first means also receives said

33  digital video signal back from said second means and

34  reconverts said digital video signal back to an analog

35  video signal for viewing;

36          third means for storing data; and

37          fourth means for transferring said digital video

38  signal from said second means to said third means,

- 23 -

APBU-00000316

CPP/M-91

1      thereby makng said second means available for receiving
2      and storing additional digital video signals.

3

4      13.  Apparatus of Claim 12 wherein said first means
5   also compresses data, so that said digital video signal is a
6   compressed video signal, and wherein said third means is a
7   video tape cassette capable of receiving said digital video
8   signal from said second means, and third means also being
9   capable of receiving and storing said reconverted analog
10  video signal from said first means.

11

12     14.  Apparatus of Claim 12 wherein said third means is
13  remote from said first and second means and said fourth
14  means comprises a microwave transceiver.

15

16     15.  Apparatus of Claim 12 wherein said third means is
17  remote from said first and second means and said fourth
18  means comprises an optical fiber.

19

20     16.  Apparatus of Claim 12 wherein said third and
21  fourth means is remote from said first and second means and
22  said fourth means comprises a telephone line.

23

24     17.  Apparatus comprising:
25         first means for receiving and converting an analog
26  audio signal to a digital audio signal;
27         second means for storing said digital audio
28  signal, wherein said first means also receives said
29  digital audio signal from said second means and
30  reconverts said digital audio signal back to an analog
31  audio signal for listening;
32         third means for storing data; and
33         fourth means for transferring said digital audio
34  signal from said second means to said third means,
35  thereby makng said second means available for receiving
36  and storing additional digital audio signals.

37     18.  Apparatus of Claim 17 wherein said first means
38

- 24 -

APBU-00000317

CPP/M-91

1  also compresses data, so that said digital audio signal is a
2  compressed digital audio signal, and wherein said third
3  means is a audio tape cassette capable of receiving said
4  digital audio signal from said second means, and third means
5  also being capable of receiving and storing said reconverted
6  analog audio signal from said first means.
7
8      19.  Apparatus of Claim 17 wherein said third means is
9  remote from said first and second means and said fourth
10 means comprises a microwave transceiver.
11
12     20.  Apparatus of Claim 17 wherein said third means is
13 remote from said first and second means and said fourth
14 means comprises an optical fiber.
15
16     21.  Apparatus of Claim 17 wherein said third and
17 fourth means is remote from said first and second means and
18 said fourth means comprises a telephone line.
19
20     22.  Apparatus comprising:
21         receiving means for receiving and storing an audio
22 signal in a first memory means during a first time
23 period;
24         communication means for communicating said stored
25 audio signal during a second time period substantially
26 less than said first time period.
27
28     23.  Apparatus of Claim 22 wherein said receiving means
29 converts said received audio signal from an analog to
30 digital format prior to storage, and said communication
31 means transmits said stored audio signal to a location
32 remote from said apparatus.
33
34     24.  Apparatus comprising:
35         receiving means for receiving and storing an audio
36 signal in a first memory means during a first time
37 period;
38         means for providing said stored audio signal to a

- 25 -

APBU-00000318

CPP/M-91

1  speaker so that said signal can be listened to during a
2  second time period substantially greater than said
3  first time period.
4
5      25.   Apparatus of Claim 24 wherein said receiving means
6  receives said audio signal in digital format and converts
7  said received audio signal from said digital format to an
8  analog format, said receiving means receiving said audio
9  signal from a location remote from said apparatus.
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38

- 26 -

APBU-00000319

CPP/M-91

1
2
3   AUDIO/VIDEO RECORDER/TRANSCEIVER
4
5       Richard A. Lang
6
7   ABSTRACT OF THE DISCLOSURE

8       An improved video recorder/transceiver with expanded
9   functionality ("VCR-ET") including a capability for storing
10  video and video programs in digital format, editing such
11  programs, transferring such programs onto a hard copy
12  magnetic media, and transmitting such programs to a remote
13  location using a second VCR-ET. The increased functionality
14  is realized through the use of analog to digital conversion,
15  signal compression and intermediate storage in an integrated
16  circuit, random access memory. The recorder/transmitter has
17  capabilities to transmit and receive program information in
18  either a compressed or decompressed format over fiber optic
19  lines, conventional phone lines or microwaves.

I hereby certify that this correspondence is being deposited with the United States
Postal Service as express mail in an envelope addressed to the Commissioner of
Patents and Trademarks, Washington, D.C. 20231, on MAY 5
19 89 . Express Mail Receipt No. 82-DB 949 497

5/5/89        Karen Ferrara
Date of Signature

APBU-00000320

*775182*

CPM/M914-DEC

Docket No.: M-914 US

DECLARATION FOR PATENT APPLICATION

As a below named inventor, I hereby declare that:

My residence, post office address and citizenship are as stated below next to my name.

I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention entitled "AUDIO/VIDEO RECORDER/TRANSCEIVER" the specification of which

(check one)    [ ] is attached hereto.
               [XX] was filed

on May 5, 1989_____ as Application Serial No. 07/347,629_____

                    and was amended

on _____ (if applicable).

I hereby state that I have reviewed and understand the contents of the above identified specification, including the claims, as amended by any amendment referred to above.

I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, code of Federal Regulations, §1.56(a).

I hereby claim foreign priority benefits under Title 35, United States Code, §119 of any foreign application(s) for patent or inventor's certificate listed below and have also identified below any foreign application for patent or inventor's certificate having a filing date before that of the application on which priority is claimed:

Prior Foreign Application(s)

    n/a
 (Number)              (Country)      (Day/Month/Year Filed)

I hereby claim the benefit under Title 35, United States Code, §120 of any United States application(s) listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States application in the manner provided by the first paragraph of Title 35, United States Code, §112, I acknowledge the duty to disclose material information as defined in Title 37, Code of Federal Regulations,

- 1 -

APBU-00000321

CPM/M914-DEC

§1.56(a) which occurred between the filing date of the prior application and the national or PCT international filing date of this application:

| 07/289,776 | 12/27/88 | Pending |
|---|---|---|
| (Serial No.) | (Filing Date) | (Status-patented, pending, abandoned) |

I hereby appoint the following attorney(s) and/or agent(s) to prosecute this application and to transact all business in the Patent and Trademark Office connected therewith:

Alan H. MacPherson (24,423); Thomas S. MacDonald (17,774); Richard Franklin (19,128); Kenneth E. Leeds (30,566); Walter J. Madden, Jr., (16,661); Nathan N. Kallman (19,405); Paul J. Winters (25,246); Brian D. Ogonowsky (31,988); Edel M. Young (32,451); David W. Heid (25,875); Gideon Gimlan (31,955); Guy W. Shoup (26,805); Stephen L. Malaska (32,655); Forrest E. Gunnison (32,899); and Norman K. Klivans (33,003).

Address all telephone calls to    Kenneth E. Leeds
at telephone no.    (408) 283-1222
Address all correspondence to    Kenneth E. Leeds
SKJERVEN, MORRILL, MacPHERSON,
FRANKLIN & FRIEL
25 METRO DRIVE, SUITE 700
SAN JOSE, CALIFORNIA  95110

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

40100

Full name of sole or first Inventor  RICHARD A. LANG
Inventor's signature _____    Date  6/5/89
Residence  Cave Creek, Arizona    Citizenship  United States
Post Office Address  29209 N. 56th St., Cave Creek, Arizona 85331

AZ

- 2 -

APBU-00000322



IN THE

UNITED STATES PATENT AND TRADEMARK OFFICE

ART UNIT 235

Examiner W. Daniel Swayze

Richard A. Lang

CASE        211

SERIAL NO.  07/347,629

FILED       May 5, 1989

SUBJECT     AUDIO/VIDEO RECORDER/TRANSCEIVER

---

THE COMMISSIONER OF PATENTS AND TRADEMARKS
  WASHINGTON, D.C.  20231

SIR:

### REVOCATION OF POWER OF ATTORNEY AND
### APPOINTMENT OF SUBSTITUTE ATTORNEY

The undersigned sole inventor named in the above-identified patent
application hereby revokes all previous powers of attorney and appoints in
their stead William E. Hein, Registration No. 26,465, P.O. Box 335, Loveland,
Colorado 80539, as his attorney, with full power of substitution and
revocation, to prosecute said application, to make alterations and amendments
therein, to receive the Letters Patent, and to transact all business in the
U.S. Patent and Trademark Office in connection therewith.

Please forward all future written communications to:

        William E. Hein
        Attorney at Law
        P.O. Box 335
        Loveland, Colorado 80539

Please direct telephone calls to William E. Hein at (303) 667-6741.

                              Respectfully submitted,

                              _____
                              Richard A. Lang

May 3, 1990

POA.211
#27

APBU-00000323



APBU-00000324



FIG - 3

FRONT

APBU-00000325



FIG-4
BACK

APBU-00000326



FIG-5



FIG-6



FIG-7

APBU-00000327



07/470394

FIG-9

FIG-10

FIG-8

APBU-00000328

07 775182



APBU-00000329

07 775182



FIG 2

VIDEO OUT

RF OUT

RGB OUT

A/V TRANS/REC IN/OUT

07 775182



Fig. 3

APBU-00000331

0T 775182



Figure 4

APBU-00000332



"Express Mail" mailing label number  RB10345221X    07 775182

Date of Deposit  October 11, 1991

I hereby certify that this paper or fee is being deposited with the United States Postal Service "Express Mail Post Office to Addressee" service under 37 CFR 1.10 on date indicated above and is addressed to the Commissioner of Patents and Trademarks, Washington, D.C. 20231.

William E. Hein
(Typed or printed name of person mailing paper or fee)

(Signature of person mailing paper or fee)

RULE 60 DIVISION-CONTINUATION PROGRAM APPLICATION TRANSMITTAL FORM

Attorney's Docket No. 249
Prior Application: 07/347,629
Examiner: H. Nguyen
Group Art Unit 235

THE COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

Dear Sir:

This is a request for filing a divisional application under Rule 60 of pending prior U.S. Patent Application Serial No. 07/347,629 entitled AUDIO/VIDEO RECORDER/TRANSCEIVER filed May 5, 1989, by Richard A. Lang.

1.  Enclosed is a copy of U.S. Patent Application Serial No. 07/347,629, including the declaration, as originally filed.  The undersigned attorney of record hereby verifies the enclosed papers to be a true copy of application Serial No. 07/347,629 as originally filed.  The undersigned states that all statements made herein of his own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issuing thereon.

2.  Cancel in this application original claims 2-25 of the prior application before calculating the filing fee.

3.  The filing fee is calculated below:

    TOTAL CLAIMS:  1-20 = 0 EXTRA
    INDEPENDENT CLAIMS:  1-3 = 0 EXTRA
    BASIC FEE (SMALL ENTITY)        = $315.00

    TOTAL FILING FEE ENCLOSED     = $315.00

4.  A verified statement claiming small entity status was filed in prior application Serial No. 07/347,629.  Small entity status is still proper and desired in this Rule 60 divisional application.

5.  A check in the amount of $315.00 is enclosed in payment of the filing fee calculated above.

6.  Amend the specification by canceling the paragraph immediately preceding the section heading BACKGROUND OF THE INVENTION on page 1 of the specification and by substituting therefor the following new heading:  --Reference to Related Applications-- and the paragraph:  --This is a division of application Serial No. 07/347,629 filed May 5, 1989, which is, in turn, a continuation-in-part of application Serial No. 07/289,776 filed December 27, 1988.--.

APBU-00000333

7.  Copies of the informal drawings as originally filed are enclosed.

8.  The prior application is assigned of record to Explore Technology, Inc., 7950 East Acoma Drive, Suite 211, Scottsdale, Arizona 85260.

9.  The power of attorney in the prior application is to William E. Hein, Registration No. 26,465, P.O. Box 335, Loveland, Colorado 80539.  Since this power does not appear in the original papers, a copy of the power of attorney to Mr. Hein in the prior application is enclosed herewith.  Please address all future communications to the attorney of record in the prior application, William E. Hein, P.O. Box 335, Loveland, Colorado 80539.

10.  A Preliminary Amendment is enclosed.

Respectfully submitted,

Richard A. Lang

By _____
William E. Hein
Patent Attorney No. 26,465
P.O. Box 335
Loveland, Colorado 80539

October 4, 1991
(303) 667-6741
Loveland, Colorado

2

APBU-00000334

07 775182

2/a
William
12-9-91

"Express Mail" mailing label number RB18045221X
Date of Deposit October 11, 1991

I hereby certify that this paper or fee is being deposited with
the United States Postal Service "Express Mail Post Office to
Addressee" service under 37 CFR 1.10 on date indicated above
and is addressed to the Commissioner of Patents and Trade-
marks, Washington, D.C. 20231.

William E. Hein
(Typed or printed name of person mailing paper or fee)

(Signature of person mailing paper or fee)

MAIL ROOM
OCT
69  11
1991
PAT. & TRADEMARK OFF.

## RULE 60 DIVISION-CONTINUATION PROGRAM APPLICATION TRANSMITTAL FORM

Attorney's Docket No. 249
Prior Application: 07/347,629
Examiner: H. Nguyen
Group Art Unit 235

THE COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

Dear Sir:

This is a request for filing a divisional application under Rule 60 of pending prior U.S. Patent Application Serial No. 07/347,629 entitled AUDIO/VIDEO RECORDER/TRANSCEIVER filed May 5, 1989, by Richard A. Lang.

1.  Enclosed is a copy of U.S. Patent Application Serial No. 07/347,629, including the declaration, as originally filed.  The undersigned attorney of record hereby verifies the enclosed papers to be a true copy of application Serial No. 07/347,629 as originally filed.  The undersigned states that all statements made herein of his own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issuing thereon.

2.  Cancel in this application original claims 2-25 of the prior application before calculating the filing fee.

3.  The filing fee is calculated below:

    TOTAL CLAIMS:  1-20 = 0 EXTRA
    INDEPENDENT CLAIMS:  1-3 = 0 EXTRA
    BASIC FEE (SMALL ENTITY)               = $315.00

    TOTAL FILING FEE ENCLOSED              = $315.00

4.  A verified statement claiming small entity status was filed in prior application Serial No. 07/347,629.  Small entity status is still proper and desired in this Rule 60 divisional application.

5.  A check in the amount of $315.00 is enclosed in payment of the filing fee calculated above.

6.  Amend the specification by canceling the paragraph immediately preceding the section heading BACKGROUND OF THE INVENTION on page 1 of the specification and by substituting therefor the following new heading:  --Reference to Related Applications-- and the paragraph:  --This is a division of application Serial No. 07/347,629 filed May 5, 1989, which is, in turn, a continuation-in-part of application Serial No. 07/289,776 filed December 27, 1988.--.

a'

APBU-00000335

7.  Copies of the informal drawings as originally filed are enclosed.

8.  The prior application is assigned of record to Explore Technology, Inc., 7950 East Acoma Drive, Suite 211, Scottsdale, Arizona 85260.

9.  The power of attorney in the prior application is to William E. Hein, Registration No. 26,465, P.O. Box 335, Loveland, Colorado 80539.  Since this power does not appear in the original papers, a copy of the power of attorney to Mr. Hein in the prior application is enclosed herewith.  Please address all future communications to the attorney of record in the prior application, William E. Hein, P.O. Box 335, Loveland, Colorado 80539.

10.  A Preliminary Amendment is enclosed.

Respectfully submitted,

Richard A. Lang

By _____
William E. Hein
Patent Attorney No. 26,465
P.O. Box 335
Loveland, Colorado 80539

October 4, 1991
(303) 667-6741
Loveland, Colorado

2

APBU-00000336

*3/B*
*Williams*
*12-9-91*



IN THE

UNITED STATES PATENT AND TRADEMARK OFFICE

ART UNIT 235

Examiner H. Nguyen

"Express Mail" mailing label number RB18845221X

Date of Deposit October 11, 1991

I hereby certify that this paper or fee is being deposited with the United States Postal Service "Express Mail Post Office to Addressee" service under 37 CFR 1.10 on date indicated above and is addressed to the Commissioner of Patents and Trademarks, Washington, D.C. 20231.

William E. Hein
(Typed or printed name of person mailing paper or fee)

(Signature of person mailing paper or fee)

Richard A. Lang

CASE      249

SERIAL NO.

FILED     October 11, 1991

SUBJECT   AUDIO/VIDEO RECORDER/TRANSCEIVER

THE COMMISSIONER OF PATENTS AND TRADEMARKS
 WASHINGTON, D.C.   20231

SIR:

#### Preliminary Amendment

Please amend the above-identified Rule 60 divisional patent application by canceling claim 1 and adding claim 26 as follows:

26.   A method for handling audio/video source information, the method comprising:

receiving audio/video source information;

compressing said received audio/video source information into a time compressed representation thereof having an associated burst time period that is shorter than a time period associated with a real time representation of said received audio/video source information;

storing the time compressed representation of said received audio/video source information; and

transmitting, in said burst time period, the stored, time compressed representation of said received audio/video source information to a selected destination.

*3⁄B*

1

APBU-00000337

<u>Remarks</u>

Claim 1, remaining in this application following cancellation of original claims 2-25 by way of applicant's attached RULE 60 DIVISION-CONTINUATION PROGRAM APPLICATION TRANSMITTAL FORM, has been canceled, and new method claim 26 is presented herewith to provide the scope of claims coverage to which applicant believes he is entitled.

Respectfully submitted,

Richard A. Lang

By _____
William E. Hein
Patent Attorney #26,465

October 11, 1991
(303) 667-6741
Loveland, Colorado

2

APBU-00000338

07 775182

PATENT APPLICATION SERIAL NO. _____

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
FEE RECORD SHEET

080 KJ 10/21/91 07775182                          1 201     315.00 CK 249

PTO-1556
(5/87)

APBU-00000339



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 07/775,182 | 10/11/91 | LANG | R 242 |

|  | EXAMINER |
|---|---|
|  | NGUYEN. H |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2305 | 4 |

WILLIAM E. HEIN
P.O. BOX 335
LOVELAND, CO 80539

DATE MAILED:
12/17/91

## NOTICE OF ALLOWABILITY

**PART I.**

1. ☐ This communication is responsive to *Applicant's amendment dated 10/11/91*

2. ☐ All the claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice Of Allowance And Issue Fee Due or other appropriate communication will be sent in due course.

3. ☑ The allowed claims are *is 2-6*

4. ☐ The drawings filed on _____ are acceptable.

5. ☐ Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has (__) been received. (__) not been received. (__) been filed in parent application Serial No. _____, filed on _____

6. ☐ Note the attached Examiner's Amendment.

7. ☐ Note the attached Examiner Interview Summary Record, PTOL-413.

8. ☑ Note the attached Examiner's Statement of Reasons for Allowance.

9. ☐ Note the attached NOTICE OF REFERENCES CITED, PTO-892.

10. ☐ Note the attached INFORMATION DISCLOSURE CITATION, PTO-1449.

**PART II.**

A SHORTENED STATUTORY PERIOD FOR RESPONSE to comply with the requirements noted below is set to EXPIRE THREE MONTHS FROM THE "DATE MAILED" indicated on this form. Failure to timely comply will result in the ABANDONMENT of this application. Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

1. ☐ Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL APPLICATION, PTO-152, which discloses that the oath or declaration is deficient. A SUBSTITUTE OATH OR DECLARATION IS REQUIRED.

2. ☐ APPLICANT MUST MAKE THE DRAWING CHANGES INDICATED BELOW IN THE MANNER SET FORTH ON THE REVERSE SIDE OF THIS PAPER.

   a. ☑ Drawing informalities are indicated on the NOTICE RE PATENT DRAWINGS, PTO-948, attached hereto or to Paper No. _4_. CORRECTION IS REQUIRED.

   b. ☐ The proposed drawing correction filed on _____ has been approved by the examiner. CORRECTION IS REQUIRED.

   c. ☐ Approved drawing corrections are described by the examiner in the attached EXAMINER'S AMENDMENT. CORRECTION IS REQUIRED.

   d. ☑ Formal drawings are now REQUIRED.

---

Any response to this letter should include in the upper right hand corner, the following information from the NOTICE OF ALLOWANCE AND ISSUE FEE DUE: ISSUE BATCH NUMBER, DATE OF THE NOTICE OF ALLOWANCE, AND SERIAL NUMBER.

Attachments:
__ Examiner's Amendment
✓ Examiner Interview Summary Record, PTOL- 413
✓ Reasons for Allowance
__ Notice of References Cited, PTO-892
__ Information Disclosure Citation, PTO-1449

__ Notice of Informal Application, PTO-152
✓ Notice re Patent Drawings, PTO-948
__ Listing of Bonded Draftsmen
__ Other

Roy N. Envall, Jr.
Supervisory
Patent Examiner
Art Unit 235

APBU-00000340

Serial No. 775,182

Art Unit 235                                    -2-


        The following is an Examiner's Statement of Reasons for
Allowance: The claim is considered allowable over the prior art
of record since none of the prior art of record alone or in
combination disclose or suggest a method for handling
audio/video source information including the step of storing the
time compressed representation of the received audio/video source
information.

        Any comments considered necessary by applicant must be
submitted no later than the payment of the Issue Fee and, to
avoid processing delays, should preferably accompany the Issue
Fee.  Such submissions should be clearly labeled "Comments on
Statement of Reasons for Allowance."


        Inquiries relative to the merits of this Office action
should be directed to Huy Nguyen, at (703)-308-1547. Other
inquiries of a general nature, and status inquiries, should be
directed to the Group 230 receptionist at (703)-308-0754.


Roy N. Envall, Jr.
Supervisory
Patent Examiner
Art Unit 235

TO SEPARATE, HOLD TOP AND BOTTOM EDGES, SNAP–APART AND DISCARD CARBON

| FORM PTO-892 (REV. 3–78) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | SERIAL NO. 07/775182 | GROUP ART UNIT | ATTACHMENT TO PAPER NUMBER 4 |
|---|---|---|---|---|

NOTICE OF REFERENCES CITED

APPLICANT(S) RICHARD A. LANG

### U.S. PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE, IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| ✓ | A | 4724491 | 2/88 | Lambert | 358 | 310 | 8/84 |
| ✓ | B | 4768110 | 8/88 | Dunlap et al | 360 | 15 | 5/87 |
| ✓ | C | 4774574 | 9/88 | Daly et al | 358 | 133 | 6/87 |
| ✓ | D | 5006936 | 4/91 | Hooks Jr | 360 | 8 | 11/88 |
| | E | | | | | | |
| | F | | | | | | |
| | G | | | | | | |
| | H | | | | | | |
| | I | | | | | | |
| | J | | | | | | |
| | K | | | | | | |

### FOREIGN PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. DWG. | PP. SPEC. |
|---|---|---|---|---|---|---|---|---|---|
| | L | | | | | | | | |
| | M | | | | | | | | |
| | N | | | | | | | | |
| | O | | | | | | | | |
| | P | | | | | | | | |
| | Q | | | | | | | | |

### OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| | | |
|---|---|---|
| R | | |
| S | | |
| T | | |
| U | | |

| EXAMINER Huy Nguyen | DATE 12/12/91 |
|---|---|

\* A copy of this reference is not being furnished with this office action. (See Manual of Patent Examining Procedure, section 707.05 (a).)

APBU-00000342

PTO FORM 948
(Rev 6-91)

**U.S. DEPARTMENT OF COMMERCE**
Patent and Trademark Office

ATTACHMENT TO PAPER NUMBER
_4_

APPLICATION NUMBER
_775/82_

GROUP _235_

## NOTICE OF DRAFTSMAN'S PATENT DRAWING REVIEW

The PTO Draftsmen review all originally filed drawings regardless
of whether they were designated as informal or formal.

The drawings filed _10/11/91_

A. ☐ are approved.

B. ☑ are objected to under 37 CFR 1.84 for reason(s) checked below. The examiner will require submission of new,
corrected drawings at the appropriate time. Corrected drawings must be submitted according to the instructions
listed on the back of this Notice.

1. Paper and Ink. 37 CFR 1.84(a)
   ☐ Poor Quality Paper. Must Be White.
   Transparent Paper Not Allowed.
   Sheet(s) _____

2. Size of Sheet and Margins. 37 CFR 1.84(b)
   Acceptable Paper Sizes and Margins

   Paper Size

   | Margin | 8 1/2 by 14 inches | 8 1/2 by 13 inches | DIN size A4 21 by 29.7 cm. |
   |--------|--------------------|--------------------|----------------------------|
   | Top    | 2 inches           | 1 inch             | 2.5 cm.                    |
   | Left   | 1/4 inch           | 1/4 inch           | 2.5 cm.                    |
   | Right  | 1/4 inch           | 1/4 inch           | 1.5 cm.                    |
   | Bottom | 1/4 inch           | 1/4 inch           | 1.0 cm.                    |

   ☐ Proper Size Paper Required. All
   Sheets Must Be Same Size.
   Sheet(s) _____

   ☑ Proper Margins Required.
   Sheet(s) _1,4_       Fig
   ☑ Top          ☐ Right
   ☐ Left         ☑ Bottom

3. Character of Lines. 37 CFR 1.84(c)
   ☑ Lines Pale, Rough and Blurred, or
   Jagged. Fig(s) _4_

   ☐ Solid Black Shading Not Allowed.
   Fig(s) _____

4. ☐ Photographs Not Approved.
   _____

5. Hatching and Shading. 37 CFR 1.84(d)
   ☐ Shade Lines are Required.
   Fig(s) _____

   ☐ Criss-Cross Hatching Not Allowed.
   Fig(s) _____

   ☐ Double Line Hatching Not Allowed.
   Fig(s) _____

   ☐ Parts in Section Must be Hatched
   Properly. Fig(s) _____

6. Reference Characters. 37 CFR 1.84(f)
   ☑ Reference Characters Poor or Rough
   and Blurred. Fig(s) _4_

   ☐ Minimum 1/8 inch (3.2 mm.) in height
   is required. Fig(s) _____

   ☐ Figure Legends Poor or Placed
   Incorrectly. Fig(s) _____

7. Views. 37 CFR 1.84(i) & (j)
   ☐ Figures Must be Numbered Separately.

   ☐ Figures Must Not be Connected
   Fig(s) _____

8. Identification of Drawings. 37 CFR 1.84(l)
   ☐ Extraneous Matter or Copy Machine
   Marks Not Allowed. Fig(s) _____

9. ☐ Changes Not Completed from Prior
   PTO-948 dated _____

☐ Comments:

Telephone inquires concerning this review should be directed to the Chief Draftsman at telephone number (703) 557-6404.

_____
Reviewing Draftsman

_10/29/91_
_____
Date

APBU-00000343

## INFORMATION ON HOW TO EFFECT DRAWING CHANGES

**1. Correction of Informalities—37 CFR 1.85**

File new drawings with the changes incorporated therein. The art unit number, serial number and number of drawing sheets should be written on the drawings in accordance with 37 CFR 1.84(l). Applicant may delay filing of the new drawings until receipt of the "Notice of Allowability" (PTOL-37). If delayed, the new drawings **MUST** be filed within the **THREE MONTH** shortened statutory period set for response in the "Notice of Allowability" (PTOL-37). Extensions of time may be obtained under the provisions of 37 CFR 1.136. The drawing should be filed as a separate paper with a transmittal letter addressed to the Official Draftsman.

**Timing of Corrections**

Applicant is required to submit acceptable corrected drawings within the three month shortened statutory period set in the "Notice of Allowability" (PTOL-37). Within that three month period, two weeks should be allowed for review by the Office of the correction. If a correction is determined to be unacceptable by the Office, applicant must arrange to have acceptable correction re-submitted within the original three month period to avoid the necessity of obtaining an extension of time and paying the extension fee. Therefore, applicant should file corrected drawings as soon as possible.

Failure to take corrective action within set (or extended) period will result in **ABANDONMENT** of the Application.

**2. Corrections other than Informalities Noted by the Draftsman on the PTO-948**

All changes to the drawings, other than informalities noted by the Draftsman, **MUST** be made in the same manner as above except that, normally, a red ink sketch of the changes to be incorporated into the new drawings **MUST** be approved by the examiner before the application will be allowed. No changes will be permitted to be made, other than correction of informalities, unless the examiner has approved the proposed changes.



UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
Address: Box ISSUE FEE
COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

WILLIAM E. HEIN
P.O. BOX 335
LOVELAND, CO 80539

**NOTICE OF ALLOWANCE
AND ISSUE FEE DUE**

☐ Note attached communication from the Examiner
☐ This notice is issued in view of applicant's communication filed _____

| SERIES CODE/SERIAL NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | | DATE MAILED |
|---|---|---|---|---|---|
| 07/775,182 | 10/11/91 | 001 | NGUYEN, H | 2305 | 12/17/91 |

First Named Applicant: LANG, RICHARD A.

TITLE OF INVENTION: AUDIO/VIDEO RECORDER/ TRANSCEIVER

| ATTY'S DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN. TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|
| 2 249 | 358-335.000 | V65 | UTILITY | YES | $565.00 | 03/17/92 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT.
PROSECUTION ON THE MERITS IS CLOSED.**

**THE ISSUE FEE MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS
APPLICATION SHALL BE REGARDED AS ABANDONED.  THIS STATUTORY PERIOD CANNOT BE EXTENDED.**

**HOW TO RESPOND TO THIS NOTICE:**

I. Review the SMALL ENTITY Status shown above.

If the SMALL ENTITY is shown as YES, verify your
current SMALL ENTITY status:
  A. If the Status is changed, pay twice the amount of the
    FEE DUE shown above and notify the Patent and
    Trademark Office of the change in status, or
  B. If the Status is the same, pay the FEE DUE shown
    above.

If the SMALL ENTITY is shown as NO:
  A. Pay FEE DUE shown above, or
  B. File verified statement of Small Entity Status before, or with,
    payment of 1/2 the FEE DUE shown above.

II. Part B of this notice should be completed and returned to the Patent and Trademark Office (PTO) with your ISSUE FEE.
Even if the ISSUE FEE has already been paid by a charge to deposit account, Part B should be completed and returned.
If you are charging the ISSUE FEE to your deposit account, Part C of this notice should also be completed and returned.

III. All communications regarding this application must give series code (or filing date), serial number and batch number.
Please direct all communications prior to issuance to Box ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Patents issuing on applications filed on or after Dec. 12, 1980 may require payment of
maintenance fees.**

PTOL-85 (REV 12-88)(OMB Clearance is pending)    **PATENT AND TRADEMARK OFFICE COPY**

APBU-00000345

5/C

IN THE

UNITED STATES PATENT AND TRADEMARK OFFICE

ART UNIT 2305

Examiner H. Nguyen

Richard A. Lang

CASE        249

SERIAL NO.   07/775,182

FILED        October 11, 1991

SUBJECT      AUDIO/VIDEO RECORDER/TRANSCEIVER

THE COMMISSIONER OF PATENTS AND TRADEMARKS
  WASHINGTON, D.C.   20231

SIR:

Supplemental Preliminary Amendment

Please amend the above-identified Rule 60 divisional patent application
as follows:

In the specification

Page 1, line 1, cancel the present title and substitute the title --
METHOD FOR HANDLING AUDIO/VIDEO SOURCE INFORMATION--.

In the claims

Please amend claim 26 and add new claims 27-102 as follows:
claim 1 of the above-identified Rule 60 divisional patent application and add
new claims 27-100 as follows:

26. (amended) A method for handling audio/video source information, the
method comprising:

receiving audio/video source information;

compressing [said] the received audio/video source information into a

040 RP 01/22/92 07775182                    1 202    216.00 CK
040 RP 01/22/92 07775182                    1 203    570.00 CK

1

APBU-00000346

time compressed representation thereof having an associated burst time period
that is shorter than a time period associated with a real time representation
of [said] the received audio/video source information;

storing [the] said time compressed representation of [said] the
received audio/video source information; and

transmitting, in said burst time period, the stored[,] time compressed
representation of [said] the received audio/video source information to a
selected destination.

2 27. A method as in claim 26 further comprising the steps of:

editing the stored time compressed representation of said audio/video
source information; and

storing the edited time compressed representation of said audio/video
source information.

3 28. A method as in claim 27 further comprising the step of monitoring
the stored time compressed representation of said audio/video source
information during editing.

4 29. A method as in claim 28 wherein the step of transmitting comprises
transmitting said time compressed representation of said audio-video source
information over an optical channel.

5 30. A method as in claim 28 wherein the step of transmitting comprises
transmitting said time compressed representation of said audio-video source
information over a telephone transmission channel.

6 31. A method as in claim 28 wherein the step of storing comprises
storing the time compressed representation of said audio/video source
information on an optical disk.

7 32. A method as in claim 28 wherein the step of storing comprises
storing the time compressed representation of said audio/video source
information in a semiconductor memory.

8 33. A method as in claim 28 wherein:

said audio/video source information comprises analog audio/video source

2

APBU-00000347

information;

said method further comprises the step of converting said analog audio/video source information to corresponding digital audio/video source information;

said step of compressing comprises compressing said corresponding digital audio/video source information into a digital time compressed representation thereof having an associated burst time period that is shorter than a time period associated with a real time representation of said digital audio/video source information; and

said step of storing comprises storing said digital time compressed representation of said corresponding digital audio/video source information.

34. A method as in claim 26 wherein:

said audio/video source information comprises digital audio/video source information;

said step of compressing comprises compressing said digital audio/video source information into a digital time compressed representation thereof having an associated burst time period that is shorter than a time period associated with a real time representation of said digital audio/video source information; and

said step of storing comprises storing said digital time compressed representation of said digital audio/video source information.

35. A method as in claim 33 wherein said audio/video source information comprises information received from a television camera.

36. A method as in claim 33 wherein said audio/video source information comprises information received from an analog video tape recorder.

37. A method as in claim 33 wherein said audio/video source information comprises information received from a television RF tuner.

38. A method as in claim 33 wherein said audio/video source information comprises information transmitted by a remotely located television transmitter.

3

APBU-00000348

14.
39. A method as in claim 33 wherein said audio/video source
information comprises information received from a cable television system.

15.
40. A method as in claim 34 wherein said audio/video source
information comprises information received from a computer.

16.
41. A method as in claim 34 wherein said audio/video source
information comprises information received over a fiber optic transmission
line.

17.
42. A method for handling audio/video source information, the method
comprising:

receiving audio/video source information as a time compressed
representation thereof, said time compressed representation of said
audio/video source information being received over an associated burst time
period that is shorter than a real time period associated with real time
playback of said audio/video source information;

storing the time compressed representation of said received audio/video
source information; and

transmitting, in said burst time period, the stored time compressed
representation of said received audio/video source information to a selected
destination.

18.
43. A method as in claim 42 wherein said audio/video source
information comprises information received over an optical channel from a
video library storing a multiplicity of programs of audio/video source
information as time compressed representations thereof for selective retrieval
by a user in an associated burst time period.

19.
44. A method as in claim 42 wherein said audio/video source
information comprises information received over a communications link from a
video library storing a mutlitplicity of programs of audio/video source
information as time compressed representations thereof for selective retrieval
by a user in an associated burst time period.

20.
45. A method as in claim 28 further comprising the steps of:

4