Serial Number: 07/976,542                                    -5-

Art Unit: 2615

    Any inquiry concerning this communication or earlier
communications from the examiner should be directed to Huy Nguyen
whose telephone number is (703) 305-4775.

    Any inquiry of a general nature or relating to the status of
this application should be directed to the Group receptionist
whose telephone number is (703) 305-4700.

TOMMY P. CHIN
SUPERVISORY PATENT EXAMINER
GROUP 2600

APBU-00000512

Dockets.Justia.com

TO SEPARATE, HOLD TOP AND BOTTOM EDGES, SNAP–APART AND DISCARD CARBON

08/896727

| FORM PTO-892 (REV. 2-92) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | SERIAL NO. 07/976592 | GROUP ART UNIT | ATTACHMENT TO PAPER NUMBER 13 |
|---|---|---|---|---|

NOTICE OF REFERENCES CITED

APPLICANT(S)  *Lang*

## U.S. PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | A | 4 7 8 5 3 4 9 | 11/88 | Keith et al | 358 | 136 | |
| | B | 4 4 6 7 4 7 3 | 8/84 | Arnon et al | 270 | 109 | |
| | C | | | | | | |
| | D | | | | | | |
| | E | | | | | | |
| | F | | | | | | |
| | G | | | | | | |
| | H | | | | | | |
| | I | | | | | | |
| | J | | | | | | |
| | K | | | | | | |

## FOREIGN PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. DWG | PP. SPEC. |
|---|---|---|---|---|---|---|---|---|---|
| | L | | | | | | | | |
| | M | | | | | | | | |
| | N | | | | | | | | |
| | O | | | | | | | | |
| | P | | | | | | | | |
| | Q | | | | | | | | |

## OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| | | |
|---|---|---|
| R | | |
| S | | |
| T | | |
| U | | |

| EXAMINER | DATE |
|---|---|
| Huy Nguyen | 2/5/94 |

* A copy of this reference is not being furnished with this office action.
(See Manual of Patent Examining Procedure, section 707.05 (a).)



RECEIVED
94 JUL 22 AM 12:18
GROUP 260

#4700 217

2615

#14 (Ext of Time 3)
mas
7/29/94

IN THE

UNITED STATES PATENT AND TRADEMARK OFFICE

ART UNIT 2615

Examiner H. Nguyen

Richard A. Lang

CASE       284

SERIAL NO.  07/976,542

FILED       November 16, 1992

SUBJECT    BURST TRANSMISSION APPARATUS AND METHOD FOR AUDIO/VIDEO
           INFORMATION (AS AMENDED)

THE COMMISSIONER OF PATENTS AND TRADEMARKS
   WASHINGTON, D.C.  20231

SIR:

PETITION FOR EXTENSION OF TIME UNDER 37 C.F.R. 1.136

It is respectfully requested that an extension of time of three months
be granted in accordance with the provisions of 37 C.F.R. 1.136 to take the
action required in the application identified in caption, as reflected by the
papers submitted herewith.

A check in the amount of $420.00 (small entity) is enclosed herewith in
payment of the processing fee associated with this petition.

Respectfully submitted,

Richard A. Lang

By _William E.__
   William E. Hein
   Patent Attorney #26,465

July 12, 1994
(303) 667-6741
Loveland, Colorado

"Express Mail" mailing label number TB066138952
Date of Deposit  July 12, 1994
I hereby certify that this paper or fee is being deposited with
the United States Postal Service "Express Mail Post Office to
Addressee" service under 37 CFR 1.10 on date indicated above
and is addressed to the Commissioner of Patents and Trade-
marks, Washington, D.C. 20231.

William E. Hein
(Typed or printed name of person mailing paper or fee)

1 217  (Signature of person mailing paper or fee)

100 MG 07/20/94 07976542

1

APBU-00000514



#15/D
matt 7/29/94
RECEIVED 7/29/94
Roso
8-2-94

94 JUL 22 AM 12:19
GROUP 260

IN THE

UNITED STATES PATENT AND TRADEMARK OFFICE

ART UNIT 2615

Examiner H. Nguyen

Richard A. Lang

CASE          284

SERIAL NO.    07/976,542

FILED         November 16, 1992

SUBJECT       BURST TRANSMISSION APPARATUS AND METHOD FOR AUDIO/VIDEO
              INFORMATION (AS AMENDED)

THE COMMISSIONER OF PATENTS AND TRADEMARKS
   WASHINGTON, D.C.  20231

SIR:

AMENDMENT "B"

In response to the Office Action mailed February 10, 1994, please amend
the above-identified patent application as indicated by the following:

In the claims

Please cancel claims 26, 42, 69, 114, and 130, without prejudice, and
amend claims 27, 29-34, 43-47, 72, 74, 78, 79, 81, 83, 105-109, 115, 117-122,
131-135, 136, 138, 139, 141, 150, 157, 160, 162, 167, 169, 171, and 186-190,
as indicated by the following:

27. (amended) An audio/video transceiver apparatus [as in claim 26
further] comprising:

input means for receiving audio/video source information;

compression means, coupled to said input means, for compressing said
audio/video source information into a time compressed representation thereof;

storage means, coupled to said compression means, for storing the time
compressed representation of said audio/video source information; [and]

1

output means, coupled to said storage means, for receiving the time compressed representation of said audio/video source information stored in said storage means and for serially transmitting said time compressed representation of said audio/video source information in a burst time period that is shorter than a time period associated with real time viewing of said audio/video source information; and

editing means, coupled to said storage means, for editing the time compressed representation of said audio/video source information stored in said storage means and for storing the edited time compressed representation of said audio/video source information in said storage means;

[and wherein] said output means being [is] operative for receiving the edited time compressed representation of said audio/video source information stored in said storage means for transmission away from said audio/video transceiver apparatus.

29. (amended) An audio/video transceiver apparatus as in claim [26] 27 wherein said output means comprises a fiber optic output port for coupling said audio/video transceiver apparatus to a fiber optic transmission line.

30. (amended) An audio/video transceiver apparatus as in claim [26] 27 wherein said output means comprises a modem for coupling said audio/video transceiver apparatus to a telephone transmission line.

31. (amended) An audio/video transceiver apparatus as in claim [26] 27 wherein said storage means comprises an optical disc.

32. (amended) An audio/video transceiver apparatus as in claim [26] 27 wherein said storage means comprises a semiconductor memory.

33. (amended) An audio/video transceiver apparatus as in claim [26] 27 wherein:

said audio/video source information comprises analog audio/video source information;

said audio/video transceiver apparatus further comprises analog to digital converter means for converting said analog audio/video source

2

information to corresponding digital audio/video source information;

said compression means is operative for compressing said corresponding digital audio/video source information into a digital time compressed representation thereof; and

said storage means is operative for storing said digital time compressed representation of said corresponding digital audio/video source information.

34. (amended) An audio/video transceiver apparatus as in claim [26] 27 wherein:

said audio/video source information comprises digital audio/video source information;

said compression means is operative for compressing said digital audio/video source information into a digital time compressed representation thereof; and

said storage means is operative for storing said digital time compressed representation of said digital audio/video source information.

43. (amended) An audio/video transceiver apparatus [as in claim 42 wherein] comprising:

input means for receiving audio/video source information as a time compressed representation thereof, said audio/video source information comprising a multiplicity of video frames in the form of one or more full motion video programs, said time compressed representation of said audio/video source information being received over an associated burst time period that is shorter than a time period associated with real time viewing of said audio/video source information;

storage means, coupled to said input means, for storing the time compressed representation of said audio/video source information received by said input means; and

output means, coupled to said storage means, for receiving the time compressed representation of said audio/video source information stored in

3

APBU-00000517

said storage means and for serially transmitting said time compressed

representation of said audio/video source information away from said

audio/video transceiver apparatus;

said input means [comprises] comprising a fiber optic input port; and

said input means [is] being coupled, via a fiber optic transmission

line, to a video library, said video library storing a multiplicity of

programs, each of said programs comprising a multiplicity of video frames in

the form of a full motion video program, each of said programs being stored in

said time compressed representation for selective retrieval, in said

associated burst time period over said fiber optic transmission line, by the

user.

44. (amended) An audio/video transceiver apparatus as in claim [42] 43

in combination with a video library, coupled via a communication link with

said audio/video transceiver apparatus, said video library storing a

multiplicity of programs, each of said programs comprising a multiplicity of

video frames in the form of a full motion video program, each of said programs

being stored in said time compressed representation for selective retrieval,

in said associated burst time period, over said communication link.

45. (amended) An audio/video transceiver apparatus as in claim [26] 27

further comprising:

decompression means, coupled to said storage means, for selectively

decompressing said time compressed representation of said audio/video source

information stored in said storage means; [and]

said editing means[, coupled to said storage means and decompression

means,] being operative for editing said selectively decompressed time

compressed representation of said audio/video source information[,] and for

storing said edited selectively decompressed time compressed representation of

said audio/video source information in said storage means.

46. (amended) An audio/video transceiver apparatus as in claim [26] 27

further comprising:

APBU-00000518

decompression means, coupled to said storage means, for selectively

decompressing said time compressed representation of said audio/video source

information stored in said storage means; [and]

wherein said editing means[, coupled to said storage means and

decompression means,] is operative for editing said selectively decompressed

time compressed representation of said audio/video source information;

wherein said compression means is operative for recompressing the

edited selectively decompressed time compressed representation of said

audio/video source information; and

wherein said storage means is operative for storing the recompressed

selectively decompressed time compressed representation of said audio/video

source information.

47. (amended) An audio/video transceiver apparatus as in claim [26] 27

further comprising:

decompression means, coupled to said storage means, for selectively

decompressing the time compressed representation of said audio/video source

information stored in said storage means; and

monitor means for enabling the user to view the selectively

decompressed time compressed representation of said audio/video source

information.

72. (amended) An audio/video transceiver apparatus as in claim [42] 43

further comprising recording means, including a removable recording medium,

coupled to said storage means, for storing the time compressed representation

of said audio/video source information stored in said storage means onto said

removable recording medium.

74. (twice amended) An audio/video transceiver apparatus as in claim

[26] 27 further comprising:

decompression means, coupled to said storage means, for selectively

decompressing the time compressed representation of said audio/video source

information stored in said storage means; and

APBU-00000519

recording means, including a removable recording medium, coupled to said decompression means, for recording the selectively decompressed time compressed representation of said audio/video source information stored in said random access storage means.

78. (amended) An audio/video transceiver apparatus as in claim [42] 43 wherein:

said input means comprises television RF tuner means; and

said audio/video source information comprises a time compressed representation thereof transmitted by a remotely located television transmitter.

79. (amended) An audio/video transceiver apparatus as in claim [26] 27 further comprising external video tape recorder means, coupled to said output means, for storing the time compressed representation of said audio/video source information stored in said storage means onto magnetic tape.

81. (amended) An audio/video transceiver apparatus as in claim [42] 43 further comprising external video tape recorder means, coupled to said output means, for storing the time compressed representation of said audio/video source information stored in said storage means onto magnetic tape.

83. (amended) An audio/video transceiver apparatus as in claim [26] 27 further comprising:

decompression means, coupled to said storage means, for selectively decompressing the time compressed representation of said audio/video source information stored in said storage means; and

external video tape recorder means, coupled to said output means, for storing the selectively decompressed time compressed representation of said audio/video source information stored in said storage means.

105. (amended) An audio/video transceiver apparatus as in claim [26] 27 further comprising editing means, coupled to said storage means, for editing said time compressed representation of said audio/video source information and for then storing the edited time compressed representation of said audio/video

6

source information in said storage means.

106. (amended) An audio/video transceiver apparatus as in claim [26] 27 wherein said input and output means comprise microwave transeiver means, coupled to a microwave link, for receiving said audio/video source information over said microwave link and for transmitting said time compressed representation of said audio/video source information stored in said storage means over said microwave link.

107. (amended) An audio/video transceiver apparatus as in claim [26] 27 wherein said storage means comprises a bubble memory.

108. (amended) An audio/video transceiver apparatus as in claim [26] 27 wherein said storage means comprises one or more magnetic disks.

109. (amended) An audio/video transceiver apparatus as in claim [26] 27 wherein said storage means comprises digital paper.

115. (amended) A method [as in claim 114 further] for handling audio/video source information, the method comprising the steps of:

receiving audio/video source information;

compressing the received audio/video source information into a time compressed representation thereof;

storing the time compressed representation of said audio/video source information;

serially transmitting said stored time compressed representation of said audio/video source information in a burst time period that is shorter than a time period associated with real time viewing of said audio/video source information;

editing the stored time compressed representation of said audio/video source information [stored in said storage means];

storing the edited time compressed representation of said audio/video source information [in said storage means]; and

receiving the stored edited time compressed representation of said audio/video source information [stored in said storage means] for transmission

7

APBU-00000521

away from said audio/video transceiver apparatus.

117. (amended) A method as in claim [114] 115 wherein the step of transmitting comprises transmitting said time compressed representation of said audio/video source information over an optical channel.

118. (amended) A method as in claim [114] 115 wherein the step of transmitting comprises transmitting said time compress representation of said audio/video source information over a telephone transmission channel.

119. (amended) A method as in claim [114] 115 wherein the step of storing comprises storing the time compressed representation of said audio/video source information on an optical disc.

120. (amended) A method as in claim [114] 115 wherein the step of storing comprises storing the time compressed representation of said audio/video source information in a semiconductor memory.

121. (amended) A method as in claim [114] 115 wherein:

said audio/video source information comprises analog audio/video source information;

said method further comprises the step of converting said analog audio/video source information to corresponding digital audio/video source information;

said step of compressing comprises compressing said corresponding digital audio/video source information into a digital time compressed representation thereof; and

said step of storing comprises storing said digital time compressed representation of said corresponding digital audio/video source information.

122. (amended) A method as in claim [114] 115 wherein:

said audio/video source information comprises digital audio/video source information;

said step of compressing comprises compressing said digital audio/video source information into a digital time compressed representation thereof; and

said step of storing comprises storing said digital time compressed

8

APBU-00000522

representation of said digital audio/video source information.

131. (amended) A method [as in claim 130 wherein] for handling audio/video source information, the method comprising:

receiving audio/video source information as a time compressed representation thereof, said audio/video source information comprising a multiplicity of video frames in the form of one or more full motion video programs, said time compressed representation of said audio/video source information being received over an associated burst time period that is shorter than a time period associated with real time viewing of said audio/video source information;

storing the time compressed representation of said audio/video source information received by said input means; and

serially transmitting said stored time compressed representation of said audio/video source information away from said audio/video transceiver apparatus;

said audio/video source information [comprises] comprising information received from a video library, said video library storing a multiplicity of programs, each of said programs comprising a multiplicity of video frames in the form of a full motion video program, each of said programs being stored in said time compressed representation for selective retrieval, in said associated burst time period, over a fiber optic transmission line, by the user.

132. (amended) A method [as in claim 130 wherein] for handling audio/video source information, the method comprising:

receiving audio/video source information as a time compressed representation thereof, said audio/video source information comprising a multiplicity of video frames in the form of one or more full motion video programs, said time compressed representation of said audio/video source information being received over an associated burst time period that is shorter than a time period associated with real time viewing of said

9

APBU-00000523

audio/video source information;

storing the time compressed representation of said audio/video source information received by said input means; and

serially transmitting said stored time compressed representation of said audio/video source information away from said audio/video transceiver apparatus;

said audio/video source information [comprises] comprising information received from a video library, said video library storing a multiplicity of programs, each of said programs comprising a multiplicity of video frames in the form of a full motion video program, each of said programs being stored in said time compressed representation for selective retrieval, in said associated burst time period, over a communication link.

133. (amended) A method as in claim [114] 115 further comprising the steps of:

selectively decompressing said stored time compressed representation of said audio/video source information [stored in said storage means]; and

editing said selectively decompressed time compressed representation of said audio/video source information; and

storing said edited selectively decompressed time compressed representation of said audio/video source information [in said storage means].

134. (amended) A method as in claim [114] 115 further comprising the steps of:

selectively decompressing said stored time compressed representation of said audio/video source information [stored in said storage means];

editing said selectively decompressed time compressed representation of said audio/video source information;

recompressing the edited selectively decompressed time compressed representation of said audio/video source information; and

storing the recompressed selectively decompressed time compressed representation of said audio/video source information.

10

APBU-00000524

135. (amended) A method as in claim [114] 115 further comprising the steps of:

selectively decompressing the stored time compressed representation of said audio/video source information [stored in said storage means]; and

visually displaying the selectively decompressed time compressed representation of said audio/video source information for viewing by a user.

136. (amended) A method as in claim 121 further comprising the steps of:

selectively decompressing the stored digital time compressed representation of said corresponding digital audio/video source information [stored in said storage means];

editing the decompressed digital time compressed representation of said corresponding digital audio/video source information; and

storing the edited decompressed digital time compressed representation of said corresponding digital audito/video source information [in said storage means].

138. (amended) A method as in claim 121 further comprsing the steps of:

selectively decompressing the stored digital time compressed representation of said corresponding digital audio/video source information [stored in said storage means]; and

visually displaying the decompressed digital time compressed representation of said corresponding digital audio/video source information for selective viewing by a user.

139. (amended) A method as in claim 122 further comprising the steps of:

selectively decompressing the stored digital time compressed representation of said digital audio/video source information [stored in said storage means];

editing the decompressed digital time compressed representation of said digital audio/video source information; and



11

storing the edited decompressed digital time compressed representation

of said digital audio/video source information [in said storage means].

141. (amended) A method as in claim 122 further comprising the steps
of:

selectively decomprssing the stored digital time compressed

representation of said digiatl audio/video source information [stored in said

storage means]; and

visually displaying the decompressed digital time compressed

representation of said digital audio/video source information for selective

viewing by a user.

150. (amended) A method as in claim 143 further comprising the steps
of:

decompressing the stored time compressed representation of said

audio/video source information [stored in said storage means]; and

storing the decompressed time compressed [format] representation of

said audio/video source information onto a removable recording medium.

157. (amended) A method as in claim [114] 115 further comprising the

step of recording the stored time compressed representation of said

audio/video source information onto a removable recording medium.

160. (amended) A method as in claim [130] 131 further comprising the

step of recording said stored time compressed representation of said

audio/video source information [stored in said storage means] onto a removable

recording medium.

162. (amended) A method [as in claim 114 further] for handling

audio/video source information, the method comprising the steps of:

receiving audio/video source information;

compressing the received audio/video source information into a time

compressed representation thereof;

storing the time compressed representation of said audio/video source

information;

12

**APBU-00000526**

serially transmitting said stored time compressed representation of
said audio/video source information in a burst time period that is shorter
than a time period associated with real time viewing of said audio/video
source information;

selectively decompressing the stored time compressed representation of
said audio/video source information [stored in said storage means]; and

recording the selectively decompressed time compressed representation
of said audio/video source information [stored in said random access storage
means] onto a removable recording medium.

167. (amended) A method as in claim [114] 115 further comprising the
step of recording the stored time compressed representation of said
audio/video source information onto a magnetic recording medium.

169. (amended) A method as in claim [130] 131 further comprising the
step of recording the stored time compressed representation of said
audio/video source information onto a magnetic recording medium.

171. (amended) A method as in claim [114] 115 further comprising the
steps of:

selectively decompressing the stored time compressed representation of
said audio/video source information [stored in said storage means]; and

recording the selectively decompressed time compressed representation
of said audio/video source information [stored in said storage means] onto a
magnetic storage medium.

186. (amended) A method as in claim [114] 115 further comprising the
steps of:

editing said time compressed representation of said audio/video source
information; and

storing the edited time compressed representation of said audio/video
source information [in said storage means].

187. (amended) A method as in claim [114] 115 wherein said audio/video
source information is received over a microwave link and wherein said stored

13

time compressed representation of said audio/video source information [stored in said storage means] is transmitted over a microwave link.

188. (amended) A method as in claim [114] 115 wherein said time compressed representation of said audio/video source information is stored in a bubble memory.

189. (amended) A method as in claim [114] 115 wherein said time compressed representation of said audio/video source information is stored on one or more magnetic disks.

190. (amended) A method as in claim [114] 115 wherein said time compressed representation of said audio/video source information is stored on digital paper.

14

APBU-00000528

<u>Remarks</u>

Applicant notes with appreciation the specifically recited allowance of claims 55-68, 85-104, 113, 143-156, 175-185, and 194 and the presumed allowance or allowability of claims 33-40, 79-84, 105, 161, 163, 170, 173, and 174, which stand neither rejected nor objected to.

Claim 162 has been rejected under 35 U.S.C. 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention. Specifically, the Examiner has stated that there is no antecedent basis for the phrases "said storage means" and "random access storage means" at lines 3 and 5. It is believed that claim 162, as amended, now fully complies with the requirements of 35 U.S.C. 112 and is therefore allowable, in accordance with the Examiner's comments.

Claims 26, 29-32, 41-42, 76-78, 106-112, 114, 117-129, 130, 142, 157, 160, 164-169, and 187-193 have been rejected as being unpatentable under 35 U.S.C. 103 over Keith et al. (reference A) in view of Arnon et al. (reference B.). This rejection is believed moot in view of applicant's present amendment, in which the rejected claims have variously been cancelled or amended to depend from allowed claims or claims indicated as being allowable if rewritten in independent form. Accordingly, rejected base claims 26, 42, 69, 114, and 130 have been cancelled without prejudice. Claims 27, 29-34, 43-47, 72, 74, 78, 79, 81, 83, 105-109, 115, 117-122, 131-135, 136, 138, 139, 141, 150, 157, 160, 162, 167, 169, 171, and 186-190 have been variously amended to incorporate the limitations of the cancelled base claims and any intervening claims and to change their dependencies so as to place them in condition for allowance. Specifically, claim 27 has been amended to incorporate the subject matter of cancelled base claim 26. Claims 29-34 have been amended to make them dependent on claim 27. Dependent claim 43 has been amended to incorporate the subject matter of cancelled base claim 42. Claim 44 has been amended to make it dependent on claim 43. Claims 45-47 have been

15

APBU-00000529

amended to make them dependent on claim 27. Claim 72 has been amended to make it dependent on claim 43. *Claim 74 has been amended to make it dependent on claim 27.* Claim 78 has been amended to make it dependent on claim 43. Claim 79 has been amended to make it dependent on claim 27. Claim 81 has been amended to make it dependent on claim 43. Claim 83 has been amended to make it dependent on claim 27. Claims 105-109 have been amended to make them dependent on claim 27. Claims 110-112, among several claims *on which the outstanding Office Action is silent,* are believed allowable as depending from allowed claim 55. Claim 115 has been amended to incorporate the subject matter of cancelled base claim 114. Claims 116-122 have been amended to make them dependent on claim 115. Claims 131 and 132 have been amended to incorporate the subject matter of cancelled base claim 130. Claims 133-135 have been amended to make them dependent on claim 115. Claims 157, 167, 171, and 186-190 have been amended to make them dependent on claim 115. Claim 162 has been amended to incorporate the subject matter of cancelled base claim 114 and to correct the deficiency under 35 U.S.C. 112 noted above. Claim 169 has been amended to make it dependent on claim 131. Claims 191-193, *on which the outstanding Office Action is also silent,* are believed allowable as depending from allowed claim 143.

In view of the foregoing amendment and remarks, it is believed that claims 27-41, 43-68, 70-113, 115-129, and 131-194, as variously amended, are patentable to applicant and that this case is now in condition for allowance. *Favorable action is accordingly solicited.*

Respectfully submitted,

Richard A. Lang

By _____
William E. Hein
Patent Attorney #26,465

July 11, 1994
(303) 667-6741
Loveland, Colorado

16

$# 74^{-0}$ $102$ $# 2615$

MAIL ROOM
32 JUL 12 1994 PAT. & TRADEMARK OFF.

"Express Mail" mailing label number TB066138952
Date of Deposit July 12, 1994

I hereby certify that this paper or fee is being deposited with the United States Postal Service "Express Mail Post Office to Addressee" service under 37 CFR 1.10 on date indicated above and is addressed to the Commissioner of Patents and Trademarks, Washington, D.C. 20231.

William E. Hein
(Typed or printed name of person mailing paper or fee)

(Signature of person mailing paper or fee)

RECEIVED
94 JUL 22 AM 12: 19
GROUP 260

| AMENDMENT TRANSMITTAL LETTER | | | Docket Number (Optional) 284 |
|---|---|---|---|
| Application Number 07/976,542 | Filing Date 11/16/92 | Examiner H. Nguyen | Group Art Unit 2615 |

**Invention Title**
BURST TRANSMISSION APPARATUS AND METHOD FOR AUDIO/VIDEO INFORMATION (AS AMENDED)

**TO THE COMMISSIONER OF PATENTS AND TRADEMARKS**
Transmitted herewith is an amendment in the above - identified application.

[XX] Small Entity status of this application has been established under 37 CFR 1.27 by a verified statement previously submitted.

[ ] A verified statement to establish Small Entity status under 37 CFR 1.27 is enclosed.

[ ] No additional fee is required.

[XX] The fee has been calculated as shown below:

**CLAIMS AS AMENDED**

| | (1) CLAIMS REMAINING AFTER AMENDMENT | | (2) HIGHEST NUMBER PREVIOUSLY PAID FOR | | (3) PRESENT NUMBER EXTRA | RATE | FEE |
|---|---|---|---|---|---|---|---|
| TOTAL CLAIMS | * 164 | minus | ** 169 | | 0 | x $22 | |
| INDEPENDENT CLAIMS | * 12 | minus | *** 10 | | 2 | x $74 | 148 |
| MULTIPLE DEPENDENT CLAIM ADDED | | | | | $230 | | |
| | | | | | | TOTAL | $ 148 |
| If applicant has small entity status under 37 CFR 1.9 and 1.27, then divide total fee by 2, and enter amount here. | | | | | | SMALL ENTITY TOTAL | $ 74 |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3
** If the highest number previously paid for IN THIS SPACE is less than 20, enter "20".
*** If the highest number previously paid for IN THIS SPACE is less than 3, enter "3".
The "highest number previously paid for" (total or independent) is the highest number found in the appropriate box in column 1.

[ ] Please charge Deposit Account Number _____ in the amount of $ _____ .
A duplicate copy of this sheet is enclosed.

[XX] A check in the amount of $ 74.00 to cover the filing fee is enclosed.  A second check in the amount of $420 to cover the processing fee is also enclosed.
[ ] The Commissioner is hereby authorized to charge payment of the following fees associated with this communication or credit any overpayment to Deposit Account Number _____ .
A duplicate copy of this sheet is enclosed.

[ ] Any additional filing fees required under 37 CFR 1.16.

[ ] Any patent application processing fees under 37 CFR 1.17.
100 NG 07/20/94 07976542

July 12, 1994
Date                                    Signature

74.00 0

Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

APBU-00000531



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|

07/976,542    11/16/92    LANG                            8    284

|  | EXAMINER |
|---|---|
|  | NGUYEN, H |
| ART UNIT | PAPER NUMBER |

WILLIAM E. HEIN                26M2/0227
ATTORNEY AT LAW
P.O. BOX 335
LOVELAND, COLORADO 80539                2615

*16*

DATE MAILED:
02/27/95

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☒ This application has been examined    ☒ Responsive to communication filed on *Jul 2, 1994*    ☐ This action is made final.

A shortened statutory period for response to this action is set to expire __*03*__ month(s), _____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☐ Notice of References Cited by Examiner, PTO-892.        2. ☐ Notice of Draftsman's Patent Drawing Review, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449.            4. ☐ Notice of Informal Patent Application, PTO-152.
5. ☐ Information on How to Effect Drawing Changes, PTO-1474..   6. ☐ _____.

**Part II    SUMMARY OF ACTION**

1. ☒ Claims __*27 – 41, 43 – 68, 70 – 113, 115 – 129, 131 – 194*__ are pending in the application.

   Of the above, claims _____ are withdrawn from consideration.

2. ☒ Claims __*26, 42, 69, 114 and 130*_____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☒ Claims __*27 – 41, 43 – 68, 70 – 113, 115 – 129, 131 – 194*__ are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings
   are ☐ acceptable; ☐ not acceptable (see explanation or Notice of Draftsman's Patent Drawing Review, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____, has (have) been ☐ approved by the
    examiner; ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed _____, has been ☐ approved; ☐ disapproved (see explanation).

12. ☐ Acknowledgement is made of the claim for priority under 35 U.S.C. 119. The certified copy has ☐ been received ☐ not been received
    ☐ been filed in parent application, serial no. _____ ; filed on _____.

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in
    accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

**EXAMINER'S ACTION**

PTOL-326 (Rev. 2/93)

APBU-00000532

Serial Number: 07/976,542                                      -2-

Art Unit: 2615

1.    Claims 43, 61, 74, 99, 105, 115 and 187 are rejected under
35 U.S.C. § 112, second paragraph, as being indefinite for
failing to particularly point out and distinctly claim the
subject matter which applicant regards as the invention.

     Claim 43, line 2, is "video library" is the same or different
from "video library" recited at line 40 of claim 43.

     Claims 61 and  74, lines 3-4 and 9,respectively, the
phrase"said random access storage means" lack an antecedent
basis.

     Claim 99, lines 2-10, what is the cooperative structural
relationship between the means recited in claim 99 and the means
recited in claim 85.. Thus claim 99 is rejected  as being
incomplete for omitting essential structural cooperative
relationships of elements, such omission amounting to a gap
between the necessary structural connections.  MPEP § 706.03(f).

     Claim 105, lines 2-5, what is the difference between "editing
means" and "editing means" recited in claim 27, lines 14-17.

     Claims 115 and 187 are indefinite because they are dependent
on the canceled claim 114.

2.    The following is a quotation of 35 U.S.C. § 103 which forms
the basis for all obviousness rejections set forth in this Office
action:

          A patent may not be obtained though the invention is not
          identically disclosed or described as set forth in
          section 102 of this title, if the differences between the
          subject matter sought to be patented and the prior art are
          such that the subject matter as a whole would have been
          obvious at the time the invention was made to a person

APBU-00000533

Serial Number: 07/976,542                                    -3-

Art Unit: 2615

having ordinary skill in the art to which said subject
matter pertains.  Patentability shall not be negatived by
the manner in which the invention was made.

Subject matter developed by another person, which qualifies
as prior art only under subsection (f) or (g) of section 102
of this title, shall not preclude patentability under this
section where the subject matter and the claimed invention
were, at the time the invention was made, owned by the same
person or subject to an obligation of assignment to the same
person.

3.    Claims 27-41, 43-68,70-113,115-129 and 131-194 are rejected

under 35 U.S.C. § 103 as being unpatentable over Izeki et al in

view of the admitted prior art in the specification and Éggers et

al.

    Regarding claims 27, 43, 85, 105, 115, 131, 132, 143,

148, 158-161, 162, 169, 170, 172, 173, 176, 186, 189, 192 and

194, Izeki et al discloses and a video and audio apparatus, Figs

1-5,  for receiving audio /video information and  compressing the

audio and video information and storing the compressed

audio/video information in a storage means for later selectively

retrieving for transmitting the audio/video information to

another audio/video apparatus comprising input means (43 and 44)

for receiving audio and video signals ; compressing means (46)

for compressing the audio/video information to produce the

compressed video and audio and video information; means (53,52,

110)) for storing the compressed audio/video information; means

for retrieving the compressed audio and video information; and

editing means (47) for editing the compressed audio and video

Serial Number: 07/976,542                                   -4-

Art Unit: 2615

signals from and for storing the edited audio or video sigma in

the storage means; and  output means (80) for output the edited

audio/video information away from the audio and video apparatus

to a another audio/video apparatus.

   Izeki et al fails to specifically teach the compressed

audio/video information is the time compressed audio/video

information as recited in claims 27,43,55,85, 105, 115, 131, 132,

143, 162, 173 and 194.

   However employing  means for time compressing audio/video

information so that the compressed audio/video information can

transmitted at high speed (in flash or burst period) and

increasing the capacity of a storage medium is well known in the

art and available in market at the time the invention was made

that is admitted by the applicant in the specification , page 7

and 8. Therefore it would have been obvious to one of ordinary

skill in the art to employ means for time compressing

audio/video information as alternative compressing device for the

compressing means of Izeki et al to time compress the audio/video

information of Izeki et al in order to increasing the speed

transmission of the audio/video signals as well as increasing the

capacity of  storing the audio/video information of the storing

means.

   Further for claims 43, 44, 55, 60, 131, 132 and 148, Izeki et

al fails to teach that the input audio/video information are

Serial Number: 07/976,542                                    -5-

Art Unit: 2615

compressed video motion programs from a video library. However,
it is noted that audio/video information comprising compressed
motion video programs from a video library ( video on demand) or
from broadcast via a tuner and compressed motion video
information are  well known in the art. For example Eggers et al
teach a video library which stores the motion video programs.
Therefore it would have been obvious to one of ordinary skill in
the art to use the audio/video apparatus of Izeki et al to
receive the compressed motion video programs as alternative video
source information for the audio/video information of Izeki et al
to process and store the motion video program for later viewing.

     Regarding claims 105, 48, 50, 51, 62, 83, 133, 138, 134, 135
and 136 Izeki et al fails to specifically teach the use of
decompress means for decompressing the stored compressed
audio/video information. However, it is noted that employing a
decompressing means to reverse the compressed signal to the
original signal is well known in the art and as as admitted by
the applicant the specification . Therefore it would have been
obvious to one of ordinary skill in the art to employ
decompressing means into Izeki et al device to reverse the stored
compressed audio/video information of Izeki et al to the original
audio/video information to accommodate with receiving devices
such as television monitor or recorder device.

Serial Number: 07/976,542                                    -6-

Art Unit: 2615

   Regarding claims 28, 49, 53, 71, 75, 116, 135, 137, 138,

140, 141, Izeki et al further discloses monitor(48) for

monitoring the editing and the stored audio/video information.

   Regarding claims 29, 30,37,38,39, 41, 56, 57, 77- 78,95,

96, 97, 98, 117, 118, 124, 126, 127, 129,142, 144, 145, 166, 183-185

and 187, Izeki et al fails to teach the use of fiber optic ,

telephone and microwave lines to couple to the input or the

output port for receiving the audio/video information from a

tuner or cable channel and for transmitting audio/video

information. However, it is noted that employ fiber optic,

telephone and microwave for transmitting information is well

known in the art. Therefore it would have been obvious to one of

ordinary skill in the art to employ the teaching of Pocock into

Izeki et al by using fiber optic,telephone and microwave line

for receiving audio/video information at the input port or

transmitting the audio/video information from the output port.

   Regarding claims 31, 32, 59, 65, 67, 68, 91, 92, 93,

102, 103, 104, 106, 107, 108, 109, 110, 112, 119, 120, 146,

147, 154, 155, 156, 164, 165, 179, 180, 188, 190, 191 and 193,

Izeki et al fails to specifically teach that the storage means

comprising a optical disc, or a WORM memory, a semiconductor

memory, or a bubble memory, or a erasable optical disc, or a CD-

ROM or digital paper. However, it is noted that employing a

optical disc, semiconductor memory, bubble memory, erasable

APBU-00000537

Serial Number: 07/976,542                                    -7-

Art Unit: 2615

optical disc, CD-ROM or a digital paper for storing information
is well known in the art (see Izeki et al column 7, lines 23-31)
and as admitted by applicant in the specification. Therefore it
would have been obvious to one of ordinary skill in the art to
employ a optical disc, semiconductor memory, erasable optical
disc, CD-ROM, WORM memory  or a digital paper as alternative
storage device for the storage means of Izeki et al to store the
audio/video information of Izeki et al.

   Regarding claims 33,34 and further for claims 85, 172, Izeki
et al  teaches  means for converting the input audio/video
information into digital audio/video information and for stored
digital audio/video information (column 3, lines 39-43) and means
for converting the digital audio/video information into analog
audio/video information (column 5, lines 40-51).

   Regarding claims 36, 54, 94, 182 Izeki et al fails to teach
that the audio/video information is taken from a tape recorder.
However, it is noted that a tape recorder which capable of
producing audio/video information is well known in the art.
Therefore, it would have been obvious to one of ordinary skill in
the art to use the input means of Izeki et al to receive the
audio/video information from a tape recorder as an alternative
audio/video information source for the audio/video apparatus of
Izeki et al.

APBU-00000538

Serial Number: 07/976,542                                        -8-
Art Unit: 2615

Regarding claims 35 and 123, Izeki et al teaches that the
input audio/video information from a video camera (column 3,
lines 37-40).

Regarding claim 40 and 128, Izeki et al fails to specifically
teach that the input audio/video information receive from a
computer. However, it is noted that audio/video information which
are generated by a computer is well known in the art. Therefore,
it would have been obvious to one of ordinary skill in the art to
supplying the generated audio/video information from a computer
as alternative the audio/video information source of Izeki et al.

Regarding claims 61, 63, 70, 73, 75, 79, 80, 81, 82, 84,
84, 88, 89, 90, 149, 150, 151, 152, 157, 158, 159, 162, 163,
167, 168, 177, 178, Izeki et al further teach a removable
recorder such as tape recorder (54) for storing the audio/video
information from the storage means.

Regarding claims 86 and , Izeki et al further discloses
character generating means for generating title by a user which
is associated with audio/video information but fails to
specifically that the title is indicating timing information.
However it would have been obvious to one of ordinary skill in
the art to employ the character generating means of Izeki et al
for generating character indicating the date or time, considered
as the claimed timing information, of receiving the audio/video

APBU-00000539

Serial Number: 07/976,542                                    -9-

Art Unit: 2615

information of Izeki et al through the input by a user (key board)(column 2, lines 65-68.

Regarding claim 99 and 100, Izeki et al further disclose an digital control unit means (41, 56) for controlling editing functions but including a memory for storing instruction to perform editing functions but fails to specifically teach that the memory is a ROM. However, it is noted that employ a ROM for storing necessary instruction in a control device to perform the control of a apparatus is well known in the art. Therefore it would have been obvious to one of ordinary skill in the art to employ a ROM in the digital control unit of Izeki et al for storing the necessary instruction as alternative memory for the memory (56) of Izeki et al in order to accurately edit audio/video audio information.

4.    Claims 101 is rejected under 35 U.S.C. § 103 as being unpatentable over Izeki et al as applied to claims 98 above, and further in view of Muramoto et al.

Izeki et al fails to teach a RGB converter for converting the stored information into RGB format. However it is noted that employing a RBG converter for converting information into RGB format is well known in the art. For example, Muramoto et al disclose a RGB converter for converting stored information. Therefore it would have been obvious to one of ordinary skill in the art to employ the well known RGB converter as taught by

Serial Number: 07/976,542                                         -10-

Art Unit: 2615


Muramoto et al for converting the stored information into RGB

format and for outputting the RGB format in order to reproducing

the RGB format on an appropriate monitor.

5.    The prior art made of record and not relied upon is

considered pertinent to applicant's disclosure.

    Bennet discloses and apparatus in which the audio/video

information is trasmitted by a microwave link. Way  teaches the

audio/video information are transmitted by optical fiber.

McCalley et al teach the use of telephone line for transmitting

information. Takuechi et al teaches the use of a key board for

generating timing information.


6.    Any inquiry concerning this communication or earlier
communications from the examiner should be directed to Huy Nguyen
whose telephone number is (703) 305-4775.


TOMMY P. CHIN
SUPERVISORY PATENT EXAMINER
GROUP 2600

H.N
February 20, 1995

TO SEPARATE, HOLD TOP AND BOTTOM EDGES, SNAP–APART AND DISCARD CARBON

08/896727

| FORM PTO-892 (REV. 2-92) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | SERIAL NO. 07776542 | GROUP ART UNIT 2615 | ATTACHMENT TO PAPER NUMBER 16 |
|---|---|---|---|---|
| | NOTICE OF REFERENCES CITED | APPLICANT(S) LANG. | | |

## U.S. PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | A | 4 9 7 4 1 7 8 | 11/90 | Izeki et al | 364 | 523 | 11/87 |
| | B | 4 9 2 0 4 3 2 | 4/90 | Eggers et al | 348 | 8 | 1/88 |
| | C | 4 9 4 1 0 5 4 | 7/90 | Muramoto | 358 | 310 | 10/87 |
| | D | 5 0 6 8 7 3 3 | 11/91 | Bennett | 348 | 7 | 10/86 |
| | E | 4 8 2 9 3 7 2 | 5/89 | McColley et al | 348 | 7 | 8/87 |
| | F | 4 8 9 1 6 9 4 | 1/90 | Way | 348 | 7 | 11/88 |
| | G | 4 8 8 8 6 4 8 | 12/89 | Takeuchi et al | 358 | 225 | 12/87 |
| | H | | | | | | |
| | I | | | | | | |
| | J | | | | | | |
| | K | | | | | | |

## FOREIGN PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. DWG | PP. SPEC. |
|---|---|---|---|---|---|---|---|---|---|
| | L | | | | | | | | |
| | M | | | | | | | | |
| | N | | | | | | | | |
| | O | | | | | | | | |
| | P | | | | | | | | |
| | Q | | | | | | | | |

## OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| | | |
|---|---|---|
| | R | |
| | S | |
| | T | |
| | U | |

| EXAMINER Huey Nguyen | DATE 2/19/95 |
|---|---|

A copy of this reference is not being furnished with this office action.
(See Manual of Patent Examining Procedure, section 707.05 (a).)

APBU-00000542

$435.00 - 217



IN THE

UNITED STATES PATENT AND TRADEMARK OFFICE

ART UNIT 2615

Examiner H. Nguyen

#17
Rose
9-20-95

95 SEP 19 AM 7:26
GROUP 260    RECEIVED

Richard A. Lang

CASE         284

SERIAL NO.   07/976,542

FILED        November 16, 1992

SUBJECT      BURST TRANSMISSION APPARATUS AND METHOD FOR AUDIO/VIDEO
             INFORMATION (AS AMENDED)

THE COMMISSIONER OF PATENTS AND TRADEMARKS
    WASHINGTON, D.C.   20231

SIR:

## PETITION FOR EXTENSION OF TIME UNDER 37 C.F.R. 1.136

It is respectfully requested that an extension of time of three months

be granted in accordance with the provisions of 37 C.F.R. 1.136 to take the

action required in the application identified in caption, as reflected by the

papers submitted herewith.

A check in the amount of $435.00 (small entity) is enclosed herewith in

payment of the processing fee associated with this petition.

Respectfully submitted,

Richard A. Lang

By _____
        William E. Hein
        Patent Attorney #26,465

"Express Mail" mailing label number __TB066139601__

Date of Deposit __August 28, 1995__

August 28, 1995
(303) 667-6741
Loveland, Colorado

hereby certify that this paper or fee is being deposited with
the United States Postal Service "Express Mail Post Office to
Addressee" service under 37 CFR 1.10 on date indicated above
and is addressed to the Commissioner of Patents and Trade-
marks, Washington, D.C. 20231.

__William E. Hein__
(Typed or printed name of person mailing paper or fee)

_____
(Signature of person mailing paper or fee)

1

APBU-00000543



IN THE

UNITED STATES PATENT AND TRADEMARK OFFICE

ART UNIT 2615

Examiner H. Nguyen

#8
Rose
9-2095

Richard A. Lang

CASE        284

SERIAL NO.  07/976,542

FILED       November 16, 1992

SUBJECT     BURST TRANSMISSION APPARATUS AND METHOD FOR AUDIO/VIDEO
            INFORMATION (AS AMENDED)

THE COMMISSIONER OF PATENTS AND TRADEMARKS
   WASHINGTON, D.C.  20231

SIR:

                    INFORMATION DISCLOSURE STATEMENT

        Pursuant to the provisions of 37 CFR 1.56, 1.97, and 1.98, enclosed
herewith are copies of six U.S. patent references that have recently come to
applicant's attention.  Enclosed is one sheet of Form PTO-1449 on which these
references are cited.

                              Respectfully submitted,

                              Richard A. Lang

                              By _____
                                    William E. Hein
                                 Patent Attorney #26,465

August 28, 1995                "Express Mail" mailing label number TB066139601
(303) 667-6741                 Date of Deposit  August 28, 1995
Loveland, Colorado             I hereby certify that this paper or fee is being deposited with
                               the United States Postal Service "Express Mail Post Office to
                               Addressee" service under 37 CFR 1.10 on date indicated above
                               and is addressed to the Commissioner of Patents and Trade-
                               marks, Washington, D.C. 20231.
                                    William E. Hein
                               (Type or printed name of person mailing paper or fee)
                               _____
                               (Signature of person mailing paper or fee)

                                    1

| LIST OF PATENTS, PUBLICATIONS, AND OTHER INFORMATION DISCLOSED BY APPLICANT (Use several sheets if necessary) | | ATTY. DOCKET NO. 284 | | SERIAL NO. 08/896727 07/976,542 | | Sheet 1 of 1 |
|---|---|---|---|---|---|---|
| | | APPLICANT Richard A. Lang | | | | |
| | | FILING DATE November 16, 1992 | | GROUP 2615 | | |

**U.S. PATENT DOCUMENTS**

| *EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | AA | 2,987,614 | 1961 | Roberts et al. | 250 | 6 | |
| | AB | 4,300,161 | 1981 | Haskell | 358 | 142 | |
| | AC | 4,521,806 | 1985 | Abraham | 358 | 86 | |
| | AD | 4,897,717 | 1/1990 | Hamilton | 358 | 133 | 3/30/88 |
| | AE | 5,220,420 | 6/1993 | Hoarty et al. | 358 | 86 | 9/27/90 |
| | AF | 5,006,936 | 4/1991 | Hooks, Jr. | 358 | 335 | 8/13/84 |
| | AG | | | | | | |
| | AH | | | | | | |
| | AI | | | | | | |
| | AJ | | | | | | |
| | AK | | | | | | |

**FOREIGN PATENT DOCUMENTS**

| | | DOCUMENT NUMBER | DATE | COUNTRY | CLASS | SUBCLASS | TRANSLATION YES | NO |
|---|---|---|---|---|---|---|---|---|
| | AL | | | | | | | |
| | AM | | | | | | | |
| | AN | | | | | | | |
| | AO | | | | | | | |
| | AP | | | | | | | |

**OTHER DOCUMENTS** (Including Author, Title, Date, Pertinent Pages, Etc.)

| | | |
|---|---|---|
| | AR | |
| | AS | |
| | AT | |

| EXAMINER  HUY NGUYEN | DATE CONSIDERED  11/22/95 |
|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

APBU-00000545

*Ap. 2615*



IN THE

UNITED STATES PATENT AND TRADEMARK OFFICE

ART UNIT 2615

Examiner H. Nguyen

#19 E
Rose
9-20-95

"Express Mail" mailing label number <u>TB066139601</u>
Date of Deposit <u>August 28, 1995</u>

I hereby certify that this paper or fee is being deposited with the United States Postal Service "Express Mail Post Office to Addressee" service under 37 CFR 1.10 on date indicated above and is addressed to the Commissioner of Patents and Trademarks, Washington, D.C. 20231.

William E. Hein
(Type or printed name of person mailing paper or fee)

(Signature of person mailing paper or fee)

Richard A. Lang

CASE        284

SERIAL NO.  07/976,542

FILED       November 16, 1992

SUBJECT     BURST TRANSMISSION APPARATUS AND METHOD FOR AUDIO/VIDEO INFORMATION (AS AMENDED)

---

THE COMMISSIONER OF PATENTS AND TRADEMARKS
    WASHINGTON, D.C. 20231

SIR:

95 SEP 19 GROUP
RECEIVED

<u>AMENDMENT "C"</u>

In response to the Office Action mailed February 27, 1995, please amend the above-identified patent application as indicated by the following:

<u>In the claims</u>

Please amend claims 27, 43, 44, 61, 74, 99, and 105 as follows:

27. (twice amended) An audio/video transceiver apparatus comprising:

input means for receiving audio/video source information, said audio/video source information comprising a multiplicity of video frames in the form of one or more full motion video programs;

compression means, coupled to said input means, for compressing said audio/video source information into a time compressed representation thereof, said time compressed representation having an associated burst time period that is shorter than a time period associated with real time viewing of said audio/video source information;

storage means, coupled to said compression means, for storing the time

1

APBU-00000546

compressed representation of said audio/video source information;

output means, coupled to said storage means, for receiving the time compressed representation of said audio/video source information stored in said storage means and for serially transmitting said time compressed representation of said audio/video source information away from said audio/video transceiver apparatus in [a] said burst time period that is shorter than [a] said time period associated with real time viewing of said audio/video source information; and

editing means, coupled to said storage means, for editing the time compressed representation of said audio/video source information stored in said storage means and for storing the edited time compressed representation of said audio/video source information in said storage means;

said output means being operative for receiving the edited time compressed representation of said audio/video source information stored in said storage means for transmission away from said audio/video transceiver apparatus in a burst time period that is shorter than a time period associated with real time view of said edited time compress representation of said audio/video source information.

43. (twice amended) An audio/video transceiver apparatus comprising:

input means for receiving audio/video source information as a time compressed representation thereof, said audio/video source information comprising a multiplicity of video frames in the form of one or more full motion video programs, said time compressed representation of said audio/video source information being received over an associated burst time period that is shorter than a time period associated with real time viewing of said audio/video source information;

storage means, coupled to said input means, for storing the time compressed representation of said audio/video source information received by said input means; and



output means, coupled to said storage means, for receiving the time

2

APBU-00000547

compressed representation of said audio/video source information stored in

said storage means and for serially transmitting said time compressed

representation of said audio/video source information away from said

audio/video transceiver apparatus;

[said input means comprising a fiber optic input port; and]

said input means being coupled, via a communication link [fiber optic

transmission line], to a remotely located video library, said video library

storing a multiplicity of programs, each of said programs comprising a

multiplicity of video frames in the form of a full motion video program, each

of said programs being stored in said time compressed representation for

selective retrieval, in said associated burst time period over said

communication link [fiber optic transmission line], by the user.

44. (twice amended) An audio/video transceiver apparatus as in claim 43

wherein said input means comprises a fiber optic input port and wherein said

input means is coupled via a fiber optic transmission line to said remotely

located video library [in combination with a video library, coupled via a

communication link with said audio/video transceiver apparatus, said video

library storing a multiplicity of programs, each of said programs comprising a

multiplicity of video frames in the form of a full motion video program, each

of said programs being stored in said time compressed representation for

selective retrieval, in said associated burst time period, over said

communication link].

Claim 61, line 3, cancel "random access";

Claim 74, line 9, cancel "random access";

99. (amended) An audio/video transceiver apparatus as in claim 85

further comprising:

digital control unit means, coupled to said storage means, said digital

control unit means comprising:

additional central processing unit means;

read-only memory means coupled to said additional central processing

3

unit means for storing microinstructions defining a plurality of selected

editing functions; and

     additional controller means, coupled to said additional central

processing unit means, for enabling communication between said additional

central processing unit means and said read-only memory means;

     said additional central processing unit means being operative for

selectively executing the microinstructions stored in said read-only memory

means to perform one or more of said plurality of selected editing functions.

*E3 concl*

     105. (twice amended) An audio/video transceiver apparatus as in claim

27 [further comprising editing means, coupled to said storage means,] wherein

said editing means is further operative for editing said time compressed

representation of said audio/video source information before it is stored in

said storage means and for then storing the edited time compressed

representation of said audio/video source information in said storage means.

*E4 concl*

4

APBU-00000549

<u>Remarks</u>

Claims 43, 61, 74, 99, 115, and 187 have been rejected under 35 U.S.C. 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention. Specifically, the Examiner has questioned whether the reference to "video library" at line 2 of claim 42 is to the same element recited at line 40 of claim 43. Since line 2 of claim 42 does not contain the recitation noted by the Examiner, applicant assumes that the Examiner intended to cite line 2 of claim 44. Assuming that to be the case, applicant has amended both claims 43 and 44 to remove any possibility of ambiguity with respect to this terminology. The Examiner has also stated that claims 61 and 74, lines 3-4 and 9, respectively, lack antecedent basis for the phrase "said random access storage means." Accordingly, these claims have been amended to provide proper antecedent basis. The Examiner has questioned the cooperative structural relationship between the means recited in claim 99, lines 2-10, and the means recited in claim 85. Accordingly, claim 99 has been amended to specifically recite the structural interconnection between the claimed elements, in accordance with the requirements of MPEP 706.03(f). The Examiner has questioned the difference between the "editing means" recited in claim 105, lines 2-5, and the "editing means" recited in claim 27, lines 14-17. Accordingly, claim 105 has been amended to clarify that both recitations are to the same element. Finally, claims 115 and 187 have been deemed by the Examiner to be indefinite because they are dependent on cancelled claim 114. The Examiner is respectfully referred to applicant's Amendment "B" filed July 12, 1994, in which claim 115 was amended to be independent in form and in which claim 187 was amended to be dependent on claim 115. For the foregoing detailed reasons, it is respectfully submitted that claims 43, 61, 74, 99, 105, 115, and 187, as variously amended, all fully comply with the requirements of 35 U.S.C. 112, second paragraph.

Claims 27-41, 43-68, 70-113, 115-129, and 131-194 have been rejected

5

APBU-00000550

under 35 U.S.C. 103 as being unpatentable over Izeki et al. in view of the admitted prior art in the specification and Eggers et al. This rejection is respectfully traversed, particularly with respect to these claims, as variously amended. Claim 27, as amended, for example, is specifically directed to an audio/video transceiver having the ability to receive audio/video source information in the form of one or more full motion video programs, compress the received audio/video source information into a time compressed representation thereof having an associated burst time period that is shorter than the time required to effect real time viewing of the audio/video source information, store the time compressed representation of the audio/video source information, and then transmit the stored, time compressed representation of the audio/video source information away from the transceiver in the associated burst time period. Remaining independent claims 43, 55, 85, 113, 115, 131, 132, 143, 162, 173, and 194 contain substantially the same limitations. These very important specifically recited features of applicant's claimed invention are simply not shown or suggested by any of the cited references, taken alone or in any combination.

The Izeki et al. reference teaches an audio/video editing system whose primary purpose is to facilitate production of a new master tape containing the edited information. Izeki et al. contains absolutely no showing or suggestion whatsoever of compressing audio/video source information into a time compressed represenation thereof having an associated burst time period that is shorter than the time required to effect real time viewing of the audio/video source information, as specifically taught and claimed by applicant. Element 46 of Izeki et al., cited by the Examiner, is a conversion unit that does nothing more than convert the inputted video and/or audio data into a prescribed format (see column 2, lines 47-56 and column 7, lines 3-14 of Izeki et al.). While Izeki et al. mentions data compression as one type of conversion process, this is not the equivalent by any means of applicant's specifically claimed time compression. Izeki et al. contains absolutely no

6

APBU-00000551