1  MATTHEW D. POWERS (Bar No. 104795)
   matthew.powers@weil.com
2  GARLAND T. STEPHENS (admitted N.D.C.A.,
   Texas Bar No. 24053910)
3  garland.stephens@weil.com
   NICHOLAS A. BROWN (Bar No. 198210)
4  nicholas.brown@weil.com
   WEIL, GOTSHAL & MANGES LLP
5  Silicon Valley Office
   201 Redwood Shores Parkway
6  Redwood Shores, CA 94065
   Telephone: (650) 802-3000
7  Facsimile: (650) 802-3100

8  Attorneys for Plaintiff
   APPLE COMPUTER, INC.
9

10                     UNITED STATES DISTRICT COURT

11                     NORTHERN DISTRICT OF CALIFORNIA

12

| | |
|---|---|
| 13 APPLE COMPUTER, INC., | Case No. C 06-0019 MHP |
| 14        Plaintiff, | **APPLE COMPUTER, INC.'S MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT BASED ON THE "STORED TIME COMPRESSED REPRESENTATION" LIMITATION** |
| 15     v. | |
| 16 BURST.COM, INC., | |
| 17        Defendant. | Date: February 8, 2007<br>Time: 9:00 a.m.<br>Hon. Marilyn Hall Patel |
| 18 | |
| 19 | Complaint Filed: January 4, 2006<br>Trial Date: February 26, 2008 |

APPLE'S MSJ OF NONINFRINGEMENT OF THE "STORED
TIMED COMPRESSED REPRESENTATION" LIMITATION             Case No. C 06-0019 MHP

Dockets.Justia.com

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. LEGAL BACKGROUND ............................................................................................... 2

III. APPLE'S IPOD AND ITUNES PRODUCTS DO NOT INFRINGE BECAUSE THEY DO NOT STORE TIME COMPRESSED REPRESENTATIONS ....................... 3

    A. Each of the asserted claims requires storing a time compressed representation of a song or video ............................................................................ 3

    B. Apple's products store songs or videos on hard drives, or in the flash memory of the iPod Nano and iPod Shuffle. ........................................................ 4

        1. iTunes ................................................................................................... 4

        2. iPod ...................................................................................................... 5

        3. iTunes Store ......................................................................................... 5

    C. The media files stored by Apple's products are not the "time compressed representations" required by the claims ............................................................... 6

IV. APPLE DOES NOT INFRINGE UNDER THE DOCTRINE OF EQUIVALENTS ......... 8

    A. Prosecution History Estoppel Prevents Application Of The Doctrine Of Equivalents ............................................................................................................ 8

        1. Prosecution history estoppel applies here because Burst abandoned its claims to data compression in favor of claims limited to time compression .......................................................................................... 9

        2. Prosecution history estoppel also applies based on Burst's unequivocal statement that data-compression was not equivalent to time compression ................................................................................. 11

    B. Allowing a data-compressed representation to be equivalent to the claimed "time compressed representation" would impermissibly vitiate the "time compressed" limitation ....................................................................................... 12

V. CONCLUSION ................................................................................................................ 13

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
　457 F.3d 1293 (Fed. Cir. 2006) ................................................................................... 9, 11

*Anderson v. Liberty Lobby, Inc.*,
　477 U.S. 242 (1986) ............................................................................................................ 2

*Asyst Technologies, Inc. v. Emtrak, Inc.*,
　402 F.3d 1188 (Fed. Cir. 2005) ................................................................................. 12, 13

*Celotex Corp. v. Catrett*,
　477 U.S. 317 (1986) ............................................................................................................ 2

*Cortland Line Co. v. Orvis Co. Inc.*,
　203 F.3d at 1360 (Fed. Cir. 2000) .................................................................................... 12

*DeMarini Sports, Inc. v. Worth, Inc.*,
　239 F.3d 1314 (Fed. Cir. 2001) .......................................................................................... 2

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
　535 U.S. 722 (2002) ............................................................................................... 8, 9, 11

*Freedman Seating Co. v. American Seating Co.*,
　420 F.3d 1350 (Fed. Cir. 2005) .................................................................................. 2, 13

*Honeywell Intern. Inc. v. Hamilton Sundstrom*,
　370 F.3d 1131 (Fed. Cir. 2004) ................................................................................... 9, 11

*Netword, LLC v. Centraal Corp.*,
　242 F.3d 1347 (Fed. Cir. 2001) .......................................................................................... 2

*Norian Corp., v. Stryker Corp.*,
　432 F.3d 1356 (Fed. Cir. 2005) ................................................................................. 11, 12

*Novartis Corp. v. Ben Venue*,
　271 F.3d 1043 (Fed. Cir. 2001) .......................................................................................... 2

*Nystrom v. Trex Co.*,
　424 F.3d 1136 (Fed. Cir. 2005) ................................................................................. 11, 12

*Pharmacia & Upjohn Co. v. Mylan Pharmaceuticals, Inc.*,
　170 F.3d 1373 (Fed. Cir 1999) ......................................................................................... 12

*Research Plastics v. Federal Packing*,
　421 F.3d 1290 (Fed. Cir. 2005) ................................................................................. 11, 12

*Seachange Intern., Inc. v. C-COR, Inc.*,
　413 F.3d 1361 (Fed. Cir. 2005) ........................................................................................ 12

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Warner-Jenkinson Co v. Hilton Davis Chemical*,
    520 U.S. 17 (1997) .............................................................................................. 2, 13

**I.**

**INTRODUCTION**

If the Court adopts Apple's claim construction argument that time compression should be given its ordinary meaning of compressing information in time (for example, by playing a song or video faster than it was recorded) then Apple cannot infringe the Burst patents.[1] Therefore, if the Court adopts Apple's construction, Apple is entitled to summary judgment of noninfringement of all claims in suit.[2]

Apple does not practice the limitation of "storing said time compressed representation" found in all asserted claims, because the representations stored by Apple's products are not "time-compressed representations," and they do not have the "associated burst time period" the claims require of the "time compressed representation." The song and video files stored in the accused iPod, iTunes, and iTunes Store products are either uncompressed files, in formats such as "AIFF," or more typically, data compressed files, in formats such as "MP3" or "AAC" for songs, and "MPEG-4" for video. These files are simply ordinary data files, stored on the hard drive like any other file. While MP3, AAC, and MPEG-4 files are compressed to require less storage space (data compressed), they are not "time compressed representations having an associated burst time period" as required by the claims. They are not compressed in *time* in any way while they are stored. Nothing about their time scale has been altered from real time. Moreover, these files have only one time period associated with them—their playback time. Even Burst's own expert conceded this, acknowledging that "by compressing [a] file to MP3 you aren't changing the time period associated with it."[3] A file cannot be a "time compressed

---

[1] Burst argues that time compression refers to compressing information in space, i.e. data compression. However, Burst expressly stated to the Patent Office that "data compression" is "not the equivalent, by any means, of applicant's specifically claimed time compression." *See* Apple's Claim Construction Brief at 8-15.

[2] Under Apple's proposed claim construction, Apple does not practice any of the many claim limitations that require time compression, but for simplicity moves for summary judgment based on the "storing said time compressed representation" limitation, because that limitation appears in every asserted independent claim. *See* Brown CC Decl. Exh. A ['995 patent] claims 1 and 17; Brown CC Decl. Exh. AA ['839 patent] claims 1, 17, 73, 76, 77, Brown CC Decl. Exh. O ['932 patent] claim 4; Brown CC Decl. Exh. L ['705 patent] claims 1, 12, 21.

[3] Brown CC Decl. Exh. C [Hemami Depo.] at 298:6-18.

representation . . . having an associated burst time period" when it is not compressed in time, and its only associated time period is its real-time playback time.

## II.

## LEGAL BACKGROUND

The summary judgment procedure is "designed to secure the just, speedy and inexpensive determination of every action."[4] Summary judgment is appropriate when no "reasonable jury could return a verdict for the nonmoving party."[5] Here, because Apple does not bear the ultimate burden of proof on the issue of infringement, it can prevail simply by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case."[6] In such circumstances, there is no genuine issue as to any material fact, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[7]

The Court's "construction of the claims often decides the question of infringement, whether literal or under the doctrine of equivalents."[8] After the disputed claims are construed, the Court determines "whether the accused product or process contains each limitation of the properly construed claims, either literally or by a substantial equivalent."[9] Literal infringement occurs only "when every limitation recited in the claim appears in the accused device, i.e., when the properly construed claim reads on the accused device exactly."[10] As a matter of law, an accused product cannot infringe if even a single claim limitation is not satisfied either literally or by an equivalent.[11]

---

[4] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotations omitted).

[5] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freedman Seating Co. v. American Seating Co.*, 420 F.3d 1350, 1356 (Fed. Cir. 2005).

[6] *Celotex*, 477 U.S. at 325; *Novartis Corp. v. Ben Venue*, 271 F.3d 1043 (Fed. Cir. 2001).

[7] *Celotex*, 477 U.S. at 323.

[8] *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1350 (Fed. Cir. 2001).

[9] *Freedman Seating Co. v. American Seating Co.*, 420 F.3d 1350, 1357 (Fed. Cir. 2005).

[10] *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1331 (Fed. Cir. 2001) (internal citation omitted).

[11] *Freedman Seating*, 420 F.3d at 1358 (*citing Warner-Jenkinson Co. v. Hilton Davis Chemical*, 520 U.S. 17, 29 (1997)).

### III.

### APPLE'S IPOD AND ITUNES PRODUCTS DO NOT INFRINGE BECAUSE THEY DO NOT STORE TIME COMPRESSED REPRESENTATIONS

**A. Each of the asserted claims requires storing a time compressed representation of a song or video.**

As discussed in Apple's claim construction brief, the asserted claims of the Burst patents claim methods and apparatuses for handling audio/video source information, where the end result is transmitting a "time-compressed representation" of the source information faster than its "real-time" playback time. The independent claims asserted by Burst in this case are claims 1 and 17 of the '995 patent, claims 1, 17, 73, 76, and 77 of the '839 patent, claim 4 of the '932 patent, and claims 1, 12, and 21 of the '705 patent.[12]

Claim 1 of the '839 patent is set forth below:

> 1. A method for handling audio/video source information, the method comprising:
> receiving audio/video source information;
> compressing the received audio/video source information into a time compressed representation thereof having an associated burst time period that is shorter than a time period associated with a real time representation of the received audio/video source information;
> storing said time compressed representation of the received audio/video source information; and
> transmitting, in said burst time period, the stored time compressed representation of the received audio/video source information to a selected destination.

Most of the asserted independent claims, like claim 1 of the '839 patent, require receiving "audio/video source information" and then compressing it "into a time compressed representation having an associated [burst] time period." All of the other asserted independent claims require receiving an already "time compressed representation" in "an associated burst time period."[13] Whether they require receiving and time-compressing, or receiving time-compressed,

---

[12] Brown CC Decl., Exh. B [Burst's Preliminary Infringement Contentions].

[13] *See* Brown CC Decl. Exh. A ['995 patent] claims 1 and 17; Brown CC Decl. Exh. AA ['839 patent] claims 1, 17, 73, 76, 77, Brown CC Decl. Exh. O ['932 patent] claim 4; Brown CC Decl. Exh. L ['705 patent] claims 1, 12, 21.

<u>all</u> of the asserted independent claims require "storing *said* time compressed representation" or "storing *the* time compressed representation." Thus, each claim requires storing the "time compressed representation having an associated [burst] time period" that was created (or received) in the previous step.[14] This motion is based on this "storing said time compressed representation" limitation.[15]

### B. Apple's products store songs or videos on hard drives, or in the flash memory of the iPod Nano and iPod Shuffle.

Burst's infringement contentions against the iPod, iTunes, and iTunes Store products allege that the "storing said time compressed representation" limitation is satisfied by the fact that these products store media files on hard drives or in the flash memory of the iPod Nano and iPod Shuffle.[16] Burst's contentions fail because the media files stored by Apple's products are not "time compressed representations" and because they do not have "associated burst time periods."

#### 1. iTunes.

iTunes is a computer program for organizing and playing media files, particularly music, TV shows, or movies, but also "podcasts" and audiobooks. It can be thought of as a virtual jukebox, though it provides more functionality than a jukebox. The media files that iTunes organizes and plays can be obtained from a variety of sources. Often, music is "ripped" from a CD and then encoded (data compressed) so it will occupy less space in storage. Music and video can also be purchased from Apple's online iTunes Store, which is accessed through the iTunes software. Music and video purchased from the iTunes Store is downloaded to the

---

[14] *Id.*

[15] Apple and Burst agree that the claimed "time compressed representation" must be a representation of an audio or video "work," such as a song, movie, or television program. *See* Apple's Claim Construction Brief at 39; Burst Opening Claim Construction Brief at 37.

[16] *See e.g.*, Brown CC Decl. Exh. B [Burst's Preliminary Infringement Contentions] at Exh. A p.1 ("iPod Device stores the time compressed representation on its flash drive (iPod Shuffle and iPod Nano) and/or hard drive (other iPod models)"); *id.* at Exh. B p.2 ("Hard drive and/or other system memory in Apple Computer or Windows Computer with iTunes software installed (which stores the time compressed representation)"); *id.* at Exh. C p.1 ("Hard drive and/or other system memory in computer executing software used by the iTunes Music Store (which stores the time compressed representation)").

1  customer's computer by iTunes. Media files in iTunes can be organized, played, transferred to an
2  iPod, or "burned" onto another CD. iTunes stores a user's media files on a mass storage device,
3  which is almost always the hard drive of the computer running iTunes.[17]

### 2.  iPod.

The iPod is a portable music/video player with an intuitive user interface that has a characteristic circular touchpad for scrolling through lists of songs, playlists, etc. A large number of music files—often a user's entire music collection—can be stored on an iPod. This is allowed both by data compression of the media files, i.e. by encoding them into MP3 or AAC format, and by the large amount of mass storage an iPod contains in the form of either a hard drive, in the case of most iPods, or flash memory, in the case of the iPod Nano and the iPod Shuffle. Both the iPods that use an actual hard drive and those that use flash memory present themselves "like a hard drive to the host computer."[18] The hard drive or flash memory of the iPod is the place where songs or videos are stored.[19]

### 3.  iTunes Store.

As mentioned above, Apple's online iTunes Store is accessed through the iTunes software. Music and video purchases from the iTunes Store are downloaded to the customer's computer by iTunes. The media files sold by the iTunes Store are encoded with an AAC codec (for audio) and an H.264 codec (for video). Both of these types of files are contained in a file in the MPEG-4 format.[20]

Apple receives media to be sold in the iTunes Store either by physical delivery of a mass storage device, such as a hard drive, or by transferring them across a network, typically as a

---

[17] Kalay Decl. Exh. 1 [Robbin Depo.] at 285:13-25 (explaining that "iTunes stores content" in files that "reside on the hard drive of the computer"); *id.* at 228:3-229:5 (same); *id.* at 59-61 (explaining that as iTunes downloads songs onto the hard drive, system memory is only used as a buffer); *id.* at 113:21-114:25 (during playback, iTunes keeps only a <u>portion</u> of a song in memory).

[18] *Id.* at 190:8-13.

[19] Brown CC Decl. Exh. B [Burst's Preliminary Infringement Contentions] at Exh. A ('995 patent) p.1 ("Flash drive (iPod Shuffle and iPod Nano); and/or Hard drive (iPod models other than Shuffle and Nano) (which stores the time compressed representation)."); *id.* at Exh. A ('839 patent) p.1; *see also id.* at Exh. A p.2 ("iPod Device stores the time compressed digital representation on its hard drive."); *id.* at Exh. A ('705 patent) p.1.

[20] Kalay Decl. Exh. 1 [Robbin Depo.] at 47:13-17.

type of FTP download.[21]  Audio is normally received already data compressed into "AAC" format.[22]  Videos for the iTunes Store are typically received in the MPEG-2 format.[23]  Those files are then further data compressed into a uniform MPEG-4 format using H.264 data compression.[24]  The media files offered for sale by the iTunes Store are stored as files on hard drives in a master asset repository.[25]  Copies of the audio and video files are also stored on hard drives in server computers controlled by a third party, Akamai, who actually provides the media files to customers.[26]  The downloaded media file is stored on the user's hard drive for use with iTunes.[27]

### C.  The media files stored by Apple's products are not the "time compressed representations" required by the claims.

Apple's accused products do not use "time compressed representations."  The media files stored by Apple's iPod, iTunes and iTunes Store products are typically data compressed files, in formats such as "MP3" or "AAC" for songs, and "MPEG-4" for video, though songs can also be stored in uncompressed formats.[28]  These media files are simply ordinary data files, stored on a hard drive (or in flash memory) like any other file.[29]  These files are typically data-compressed.[30]  But they are not "time compressed representations having an associated burst time period" as required by the claims, because they are not compressed in *time* in any way while they are stored.  Nothing about their time scale has been altered.  Nor do they have any "burst time period" associated with them.

---

[21] Kalay Decl. Exh. 2 [Gautier Depo.] at 31:22-32:15.

[22] *Id.* at 33:25-34:5.

[23] *Id.* at 48:23-49:8; *see also id.* at 49:17-19 (Apple occasionally receives video in other formats).

[24] Kalay Decl. Exh. 1 [Robbin Depo.] at 51:6-11.

[25] Kalay Decl. Exh. 2 [Gautier Depo.] at 56:19-24 ("Q.  Where is the content actually – on what hardware is the content actually stored?  Hard drives?  You mentioned hard drives.  A.  Yes, it's all hard drives.  Q.  All hard drives?   A.  Yeah.").

[26] *Id.* at 58:20-59:4.

[27] Kalay Decl. Exh. 1 [Robbin Depo.] at 60:21-24.

[28] Ehrlich Decl., Exh. 4 [Screens from iTunes Help].

[29] Kalay Decl., Exh. 1 [Robbin Depo.] at 38:18-22, 285:10-286:12.

[30] Ehrlich Decl., Exh. 5 [Apple Website Screenshots]; Ehrlich Decl., Exh. 4 [Screens from iTunes Help].

As described in Apple's claim construction brief, time compression is what happens when one plays a regular 33 rpm record at 45 rpm. If one records this playback on a tape recorder, the resulting recording is a "time compressed representation" of the original recording. The resulting tape recording is a stored time compressed representation. The song's time scale has been altered: when played back, it would take 33/45ths of the time of the original song, and it would sound odd because the frequency of the audio has been increased.

Nothing like this has been done to any of the media files that are stored by Apple's products. The videos and songs stored by the iPod, iTunes, and iTunes Store play back at normal speed. These media files are stored in formats that contain internal data fields that tell the playback engine what that normal speed is.[31] Just like a record store does not modify the content of the CDs it sells, Apple does not alter the content of the media it sells through the Music Store—other than to remove "black bars" from the top and bottom of some videos.[32] In short, the media files stored by Apple's products have their original, unaltered time scales.

Furthermore, the media files stored by Apple's products do not have any "associated burst time period." The only time period that is "associated" with songs or videos stored by Apple's products is information about their real-time playback, such as the song length and bit rate.[33] The amount of time it takes to load a media file onto the iPod or into iTunes from the iTunes Store or any other source—which can be faster than real-time—is not stored or associated with the media file in any way. Indeed, the file formats for the media files that are compatible with the iPod and iTunes do not contain any field for storing a value that reflects transmission time.[34] Nor does iTunes or the iPod store any information on the hard drive (or in

---

[31] Ehrlich Decl., Exh. 6 [Standards showing AAC and MP3 file formats].

[32] *See* Kalay Decl., Exh. 2 [Gautier Depo.] at 82:5-19.

[33] Bit rate refers to the number of bits of data used for each second of the media file, and generally is a measure of quality—using more bits per unit time allows a higher quality reproduction of sound or video. *See* Ehrlich Decl. Exh. 4 ["AAC settings" and "MP3 settings" from iTunes Help Screens].

[34] *See* Ehrlich Decl., Exh. 6 [Standards showing AAC, and MP3 file formats]; Kalay Decl., Exh. 1 [Robbin Depo.] at 72:3-14 and 72:19-22 (stating that Apple uses the "open standard" AAC for songs from the iTunes Store, and it is not "customized or extended at all.").

1  flash memory) about how long it takes to transfer a file.[35]  Even Burst's own expert has

2  acknowledged that the time period associated with a data-compressed media file, such as an MP3

3  file, is its real-time period, not a faster-than-real-time period.[36]

4          In short, the media files stored by Apple's products are not "time compressed

5  representations," nor do they have an "associated burst time period."  Therefore, Burst cannot

6  carry its burden of proving infringement.

## IV.

## APPLE DOES NOT INFRINGE UNDER THE DOCTRINE OF EQUIVALENTS

There can be no genuine dispute that time compression is not equivalent to data compression.  Moreover, the law forbids Burst from recapturing in litigation through the doctrine of equivalents claim coverage that it surrendered during prosecution to obtain allowance of the patents-in-suit.  Burst is attempting to do just that through its assertion that a "time compressed representation" is stored in the hard drives (or flash memory) used by iTunes, the iPod and the iTunes Store.  This is impermissible.

### A.  Prosecution History Estoppel Prevents Application Of The Doctrine Of Equivalents

The doctrine of prosecution history estoppel precludes patentees from recapturing through the doctrine of equivalents any claim scope that was surrendered to obtain allowance of their patent.  In *Festo*, the Supreme Court explained the rationale underlying the doctrine of prosecution history estoppel:

> Prosecution history estoppel ensures that the doctrine of equivalents remains tied to its underlying purposes. The doctrine of equivalents is premised on language's inability to capture the essence of innovation, but a prior application describing the precise element at issue undercuts that premise.  In that instance the prosecution history has established that the inventor turned his attention to the subject matter in question, knew the words for both the broader and

---

[35] *See id*. at 78:23-25 ("Q.  Does Apple have any -- keep track in any way of the download times or download durations?  A.  Not that I'm aware of.")

[36] Brown CC Decl. Exh. C [Hemami Depo.] at 298:6-14 (stating that "by compressing the file to MP3 you aren't changing the time period associated with it").

narrower claim, and affirmatively chose the latter.[37]

Here, Burst is estopped from asserting that storage of data-compressed media infringes the "storing said time compressed representation" limitation under the doctrine of equivalents because Burst originally filed claims covering data compression and then abandoned them. Burst is also estopped because its emphatic statement during prosecution that "data compression" is "not the equivalent by any means of applicant's specifically claimed time compression" shows that Burst "knew the words" to describe data compression, and affirmatively chose to claim time compression instead.[38]

### 1. Prosecution history estoppel applies here because Burst abandoned its claims to data compression in favor of claims limited to time compression.

The file history shows that Burst's original claims included claims directed at data compression, and then cancelled them in favor of claims limited to time compression. Cancellation of claims in favor of claims with a narrower literal scope creates the same presumptive bar to the application of the doctrine of equivalents as amending the claims directly.[39]

The phrase "time compressed" does not appear in the specification or in the originally filed claims of either the December 1988 application or the May 1989 continuation-in-part application.[40] The originally filed claims do, however, claim data compression. Original claim 9 of the '932 patent describes an apparatus where audio data is received, digitized, and then "compressed"—not time compressed—before being stored and then transmitted:

> 9. Apparatus comprising:
> means for receiving an analog audio signal;

---

[37] *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 734-35 (2002).

[38] Brown CC Decl., Exh. L ['705 File History] at APBU 551; *Festo*, 535 U.S. at 734-35.

[39] *Honeywell Intern. Inc. v. Hamilton Sundstrom*, 370 F.3d 1131, 1143 (Fed. Cir. 2004) (explaining that prosecution history estoppel applies when a "narrower rewritten claim had been substituted for the broader original independent claim"); *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 457 F.3d 1293, 1309-1311 (Fed. Cir. 2006) (applying the *Festo* prosecution history estoppel analysis to claims that had not been amended but had replaced cancelled claims).

[40] *See* Brown CC Decl. Exh. A ['995 File History] at APBU 18-46; Brown CC Decl. Exh. O ['932 File History] at APBU 166-70.

> means for digitizing said analog audio signal, thereby generating digital data corresponding to said audio signal and for compressing said digitized data;
>
> means for storing said compressed digital data; and
>
> transceiver means for transmitting said compressed digital data.[41]

The compression of this claim is data compression because "compression" alone without the word "time" implies data compression. Similarly, original claim 4 of the '995 patent required data compression, because it required "sequentially compress[ing]" one data signal into another:

> 4.  The apparatus set forth in claim 1 wherein said first means sequentially compresses said first digital data signal into a second digital data signal and
>
> said second means transmits said second digital data signal to said output port.[42]

Thus, Burst's original claims included claims directed to data compression.

The PTO rejected all of the claims in the May 1989 continuation-in-part application, citing among other references the Fabris[43] and Workman[44] patents, both of which disclose storing data-compressed video and subsequent transmission thereof.[45] As the examiner stated, "Fabris shows data transmission in a <u>data compression</u> context and use of optic fibers as a transmission means."[46] The examiner also rejected all of the claims in the December 1988 application.[47]

---

[41] Brown CC Decl. Exh. O ['932 File History] at APBU 167.

[42] Brown CC Decl., Exh. A ['995 File History] at APBU 38. Burst acknowledged in its claim construction briefing that this claim "claimed data compression." Burst Claim Construction Reply at 24 n.19. Burst's expert also agreed that this claim described data compression. Brown CC Decl., Exh. C [Hemami Depo.] at 213-214.

[43] Brown CC Decl. Exh. Q [Fabris patent] (U.S. Patent No. 4,516,156 titled "Teleconferencing Method and System.").

[44] Brown CC Decl. Exh. P [Workman patent] (U.S. Patent No. 4,179,709 titled "Video Information Bandwidth Compression.").

[45] Brown CC Decl., Exh. O ['932 File History] at APBU 199-207; *see also* Brown CC Decl., Exh. P [Workman patent] at 2:23-64 (disclosing both the "interframe encoding" and the "intra-frame encoding" described in the specification of the Burst patents); *id.* at 17:41-51 (disclosing storage facility 52") Brown CC Decl., Exh. Q [Fabris patent] at 10:25-47 (describing "motion codec 45" that was used for "transmission to the remote site"); *id.* at 10:67-11:2 ("The digitally compressed document is stored and buffered in a compressor protocol interface from which it is transmitted to the distance teleconference room through a 448 KBPS digital data port.").

[46] Brown CC Decl., Exh. O ['932 File History] at APBU 203.

[47] Brown CC Decl., Exh. A ['995 File History] at APBU 57-65.

In response to these rejections, Burst cancelled all the existing claims in both applications and submitted new claims that included, for the first time, the limitation that the audio/video program which is received, stored, and transmitted must be a "<u>time</u> compressed representation."[48]

Thus, Burst originally included claims directed at data compression, and then cancelled them in favor of claims limited to time compression. This constitutes a surrender of claim scope that is presumed to give rise to an estoppel.[49] Borrowing the words of the Supreme Court, Burst is estopped from recapturing data compression because "the prosecution history has established that the inventor turned his attention to the subject matter in question, knew the words for both the broader and narrower claim, and affirmatively chose the latter."[50] The file history shows that Burst knew the words for both data compression and time compression and affirmative cancelled its claims to the former in favor of the latter, in response to the examiner's rejection of the claims. Consequently, Burst cannot now argue that storage of data compressed representations is equivalent to storage of a "time compressed" representation.

### 2. Prosecution history estoppel also applies based on Burst's unequivocal statement that data-compression was not equivalent to time compression.

Burst is also estopped from recapturing data compression through the doctrine of equivalents because Burst stated to the Patent Office that "data compression" is "not the equivalent, by any means, of applicant's specifically claimed time compression."[51]

The Federal Circuit has repeatedly held that an applicant must be held to the

---

[48] Brown CC Decl., Exh. A ['995 File History] at APBU 73 (Amendment canceling all pending claims); Brown CC Decl., Exh. O ['932 File History] at APBU 212 (Amendment canceling all pending claims). Prior to canceling its claims in the original application, Burst submitted the Fabris and Workman patents to the Patent Office. Brown CC Decl., Exh. A ['995 File History] at APBU 69-71.

[49] *Honeywell Intern. Inc. v. Hamilton Sundstrom*, 370 F.3d 1131, 1143 (Fed. Cir. 2004) (explaining that prosecution history estoppel applies when a "narrower rewritten claim had been substituted for the broader original independent claim"); *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 457 F.3d 1293, 1309-1311 (Fed. Cir. 2006) (applying the *Festo* prosecution history estoppel analysis to claims that had not been amended but had replaced cancelled claims).

[50] *Festo*, 535 U.S. at 734-35.

[51] Brown CC Decl., Exh. L ['705 File History] at APBU 551.

statements it makes during prosecution to distinguish the prior art.[52] In *Cortland Line Co. v. Orvis Co. Inc.*, the Federal Circuit considered a situation where the patentee for a fishing reel told the examiner that the prior art was "completely different than the applicant's reel both in structure and function."[53] The Federal Circuit held that such a statement "evinces a clear and unmistakable surrender."[54] In such circumstances "prosecution history estoppel precludes a patentee from obtaining under the doctrine of equivalents coverage of subject matter that has been relinquished during the prosecution of its patent application."[55]

Here, Burst expressly told the Patent Office that "data compression" is "not the equivalent, by any means, of applicant's specifically claimed time compression."[56] Burst made this statement to distinguish U.S. Patent No. 4,974,178 to Izeki et al. ("Izeki"),[57] which the examiner cited in rejecting Burst's claims. Burst's statement constitutes a clear and unmistakable surrender of coverage of data compression that gives rise to an estoppel that prevents recapture of data compression, just as the applicant's statement in *Cortland* gave rise to an estoppel that prevented recapture of the prior art disclaimed there.

### B. Allowing a data-compressed representation to be equivalent to the claimed "time compressed representation" would impermissibly vitiate the "time compressed" limitation.

Even if prosecution history estoppel did not apply, the Court could still not find Apple's data-compressed files equivalent to the stored "time compressed representation" required by the claims.

The law is clear that "[i]f a theory of equivalence would vitiate a claim limitation . . . then there can be no infringement under the doctrine of equivalents as a matter of law."[58]

---

[52] *Nystrom v. Trex Co.*, 424 F.3d 1136, 1144 (Fed. Cir. 2005); *Research Plastics v. Federal Packing*, 421 F.3d 1290 (Fed. Cir. 2005); *Norian Corp., v. Stryker Corp.*, 432 F.3d 1356, 1361-62 (Fed. Cir. 2005).

[53] *Cortland Line Co. v. Orvis Co. Inc.*, 203 F.3d 1351, 1360 (Fed. Cir. 2000).

[54] *Id.*

[55] *Pharmacia & Upjohn Co. v. Mylan Pharmaceuticals, Inc.*, 170 F.3d 1373, 1376 (Fed. Cir 1999).

[56] Brown CC Decl., Exh. L ['705 File History] at APBU 551.

[57] Brown CC Decl., Exh. M [Izeki patent] (Titled "Editing Apparatus for Audio and Video").

[58] *Seachange Intern., Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1378 (Fed. Cir. 2005) (citing *Asyst*

This "all elements" rule stems from the Supreme Court's holding in *Warner-Jenkinson*:

> It is important to ensure that the application of the doctrine [of equivalents], even as to an individual element, <u>is not allowed such broad play as to effectively eliminate that element in its entirety</u>.[59]

Under the circumstances here, application of the doctrine of equivalents to find Apple's data-compressed files equivalent to the claimed "time compressed representation" amounts to reading the phrase "time compressed representation" as if it merely required a "compressed representation." That would vitiate the "time compressed" limitation, and is impermissible under *Warner-Jenkinson*.[60]

## V.

## CONCLUSION

For the reasons set forth herein, Apple does not infringe the asserted claims of the Burst patents under Apple's proposed construction of the phrase "time compressed representation."

Dated:   January 4, 2007            WEIL, GOTSHAL & MANGES LLP

                                    By:    */s/ Nicholas A. Brown*
                                           Nicholas A. Brown
                                           Attorney for Plaintiff
                                           Apple Computer, Inc.

---

*Technologies, Inc. v. Emtrak, Inc.,* 402 F.3d 1188, 1195 (Fed. Cir. 2005)).

[59] *Warner-Jenkinson Co. v. Hilton Davis Chemical*, 520 U.S. 17, 29 (1997).

[60] *See Freedman Seating Co. v. American Seating Co.*, 420 F.3d 1350, 1361-1362 (finding that a "rotatably mounted" device could not be equivalent to a "slidably mounted" limitation because that would because it would vitiate that limitation); *Asyst Technologies,* 402 F.3d at 1195 (finding that an "unmounted" device could not be equivalent to the "mounted on" limitation because it would vitiate that limitation).