# EXHIBIT 7

Dockets.Justia.com

viewitem [file ://C:\Documents and Settings\pralent\Local Settings\Temporary Internet Files\OLK1\viewitem cpc)        Page 91 of 126



**LICENSE AGREEMENT**
**by and between**
**VI-FACTS, Inc.**
**and**
**Instant Video Technologies, Inc.**

THIS AGREEMENT, made and entered into as of the Effective Date as referred to hereinbelow by and between VI-FACTS, Inc. ("VI-FACTS") a Washington corporation (in formation) having his principal place of business at 330 Brockway Road, Chehalis, Washington 98532; and Instant Video Technologies, Inc., a Delaware corporation ("IVT"), having its principal place of business at 500 Sansome Street, Suite 503, San Francisco, California 94111 referred to hereinafter collectively as the "Parties".

WHEREAS, VI-FACTS is a Washington corporation (in formation) currently being established for the purpose of developing and marketing an interactive multimedia application relating to the financial services industry; and,

WHEREAS, IVT is a designer and developer and licensor of interactive network technologies, and is the owner of certain patents of proprietary technology consisting of patents ("Patent(s)"), patent(s) pending ("Patent(s) Pending") and trade secrets ("Trade Secrets"); and,

WHEREAS, IVT desires to grant to VI-FACTS a non-exclusive license ("License") to exploit ("Exploit") the Patents contained within the IVT patent portfolio ("IVT Patent Portfolio") which currently consists of: United States Patent Number 4,963,995, issued on October 16, 1990; United States Patent Number 5,057,932, issued on October 15, 1991; United States Patent Number 5,164,839, issued on November 17, 1992; United States Patent Number 5,262,875, issued on November 16, 1993; Australian Patent Acceptance Number 627,841, issued on September 3, 1992; United States Patent Pending Serial Number 07/976,542, filed November 16, 1992; and United States Patent Pending Serial Number 08/011,972, filed February 1, 1993, copies of which are attached hereto; and,

WHEREAS, VI-FACTS desires to accept a License to Exploit said Patents as contained within the IVT Patent Portfolio in the form of all video platforms, including, but not limited to interactive multimedia applications as applied to CD-based titles and/or network applications, to be distributed within the financial services industry.

WHEREAS, such Exploitation by VI-FACTS shall be limited to the financial services industry; and,

NOW THEREFORE, in consideration of the mutual covenants contained herein and other valuable consideration, receipt of which is hereby acknowledged, the Parties agree as follows:

Instant Video Technologies, Inc.    **CONFIDENTIAL**
EXHIBIT 10.12

Page 1

CONFIDENTIAL

CONFIDENTIAL-OUTSIDE ATTORNEYS EYES ONLY

BUR5019524

BURSTA0264258

Case 3:06-cv-00019-MHP    Document 150-8    Filed 08/28/2007    Page 3 of 13

viewItem [file://C:\Documents and Settings\rprater\Local Settings\Temporary Internet Files\OLK1\viewItem cpc]                          Page 92 of 126

## ARTICLE 1
### Definitions

The following terms when used herein shall have the meanings set forth below:

1.1     "Agreement" shall mean this agreement, together with all attachments hereto, as they may be amended from time-to-time in accordance with the terms contained herein.

1.2     "Relationship Manager" shall mean the respective person appointed by each of the Parties pursuant to Paragraph 2.1, to serve as the representative of each Party for the purpose of this Agreement.

1.3     "Patent(s)" shall mean any and all patents issued to, held in the name of, or owned by IVT including all additional patents developed by IVT, and/or enhancements made by IVT to said patents.

1.4     "Patent(s) Pending" shall mean any patent(s) pending, or applied for, by IVT, including all additional patents developed by IVT.

1.5     "Trade Secrets" shall mean any and all information and/or data developed and/or held by IVT, as relates to Patents Pending and/or Patents; and/or any and all information and data developed and/or held by IVT not generally known to the public.

1.6     "IVT Patent Portfolio" shall mean the collective of the Patent(s) and Patent(s) Pending of IVT.

1.7     "Exploit" or "Exploitation" shall mean the developing, marketing and/or sale of products and/or productions that utilize the Patents as contained within the IVT Patent Portfolio, for distribution on all video platforms, including, but not limited to interactive multimedia applications as applied to CD-based titles and/or network applications, to be distributed within the financial services industry.

1.8     "Territory" shall mean all video platforms, including, but not limited to interactive multimedia CD-base titles and/or network applications, for distribution in and to the financial services industry, pursuant to the terms and conditions of this Agreement, or any extension thereof.

1.9     "License" shall mean the non-exclusive right to Exploit the Patents as contained within the IVT Patent Portfolio, within the Territory referred to herein, during the term of the Agreement, or any extension thereof.

Instant Video Technologies, Inc.          CONFIDENTIAL                          Page 2

CONFIDENTIAL

CONFIDENTIAL-OUTSIDE ATTORNEYS EYES ONLY

Case 3:06-cv-00019-MHP    Document 150-8    Filed 08/28/2007    Page 4 of 13
viewItem [file //C \Documents and Settings\prater\Local Settings\Temporary Internet Files\OI K1\viewItem cpc]

Page 93 of 176

## ARTICLE 2
### Relationship Managers

**2.1**    Relationship Managers.  Upon execution of this Agreement, the Parties shall each appoint one (1) Relationship Manager and shall promptly notify the other Party in writing of the identity and location of such person.

**2.2**    Responsibilities of Relationship Managers.  Each Relationship Manager shall be responsible for the following activities:

(a)  Representing its Party in matters relating to performance pursuant to the terms of this Agreement; and,

(b)  Submitting and receiving any and all documents as may be required pursuant to the terms of this Agreement; and,

(c)  Proposing and assisting in the development of modifications to this Agreement; and,

(d)  Arranging any meetings to be held between the Parties; and,

(e)  Maintaining, for record keeping purposes, a log book, in the form of a hand written journal or an electronic data base, that contains all material information relating to this Agreement, and a record of all communications between the Parties.

## ARTICLE 3
### GRANTING OF RIGHTS

**3.1**    Granting of Rights to VI-FACTS.  IVT hereby grants to VI-FACTS a non-exclusive License to Exploit the Patents as contained within the IVT Patent Portfolio, within the Territory, subject to the terms and conditions contained herein and subject to any and all applicable governmental provisions, in exchange for consideration in the form of a License Fee and Royalty, as more fully described hereinbelow.

(a)  VI-FACTS shall have the right, pursuant to the terms and conditions of this Agreement, to enter into agreements with third parties relating to its Exploitation of the Patents as contained within the IVT Patent Portfolio on such terms, covenants and conditions as VI-FACTS shall deem proper.  VI-FACTS agrees that before entering into any such agreements it shall deliver to IVT details of the proposed agreement, information pertaining to such third parties, and a copy of any such agreements with said third parties within thirty (30) days of the execution of same by VI-FACTS.

Instant Video Technologies, Inc.          **CONFIDENTIAL**

CONFIDENTIAL

CONFIDENTIAL-OUTSIDE ATTORNEYS EYES ONLY

BUR5019526

BURSTA0264260

viewitem [file //C \Documents and Settings\prateri\Local Settings\Temporary Internet Files\OLK1\viewitem cpc]

(i) Upon the expiration or termination of this Agreement any such agreements with third parties shall be automatically assigned to IVT, and said assignment shall become a provision set forth within any and all such agreements with third parties.

3.2    Rights of IVT Within the Territory.   IVT shall have the right, at all times during the term of this Agreement, and any extension thereof, to pursue any and all licensing opportunities with respect to Patents as contained within the IVT Patent Portfolio, including licensing opportunities that may result with third party entities that may be engaged in business within the Territory.

3.3    Infringement of Patents.  Each Party shall immediately bring to the attention of the other Party any third party activities believed to constitute infringement of any of the Patents as contained within the IVT Patent Portfolio which may come to that Party's attention.

(a) VI-FACTS agrees to assist IVT in the event that IVT elects to institute and prosecute an action against such infringement within the Territory.

(b) To the extent that proceeds result from any judgment or settlement as referred to in Paragraph 3.3(a) hereinabove, VI-FACTS shall be entitled to receive reimbursement for the expenses that it may incur in assisting IVT in such action, provided that IVT has requested said assistance, and IVT has agreed in advance, and in writing to same. All such reimbursements to be paid to VI-FACTS shall be paid only from such judgment or settlement and after IVT has recouped from the proceeds of such judgment or settlement all costs that it may have incurred with respect to such matter.

(c) The Parties agree to execute all documents and do such things as may be necessary to assist each other in the prosecution of any such action as referred to in Paragraph 3.3(a) hereinabove.

3.4    Registration of Patents.  IVT agrees to:

(a) Execute all documents as it deems may be necessary to maintain the registration of Patents as contained within the IVT Patent Portfolio;

(b) Pay, in a timely manner all renewal fees necessary to keep the Patents as contained within the IVT Patent Portfolio in good standing.

W.H.J.

CONFIDENTIAL

CONFIDENTIAL-OUTSIDE ATTORNEYS EYES ONLY

BUR5019527

BURSTA0264261

viewitem [file://C \Documents and Settings\praten\Local Settings\Temporary Internet Files\OLK1\viewitem cpe]

Page 9b of 126

## ARTICLE 4
### Ownership of IVT Patents, Patents Pending and Trade Secrets

4.1    Ownership of IVT Patents, Patents Pending and Trade Secrets.  IVT represents and warrants, and as a result thereof it is understood and agreed by and between the Parties, that all right, title and interest in and to IVT's Patents, Patents Pending and Trade Secrets shall, at all times, and notwithstanding any language contained herein, remain with IVT.

## ARTICLE 5
### The Territory

5.1    Territory.    VI-FACTS is hereby granted a non-exclusive License, subject to the terms and conditions of this Agreement to utilize the Patents as may be contained within the IVT Patent Portfolio for interactive multimedia applications within the financial services industry.

(a)    Notwithstanding any activities in which VI-FACTS may become engaged, the Parties hereby acknowledge, and VI-FACTS agrees that it shall, with respect to its activities pursuant to this Agreement, at all times abide by, and be bound by any and all governmental regulations as may apply to the utilization of the Patents as may be contained within the IVT Patent Portfolio.

(b)    To the extent that VI-FACTS engages in Exploitation activities relating to the Patents as contained within the IVT Patent Portfolio in territories other than those set forth in Paragraph 5.1 hereinabove, he understands that he may do so only with the written approval of IVT.

## ARTICLE 6
### Term

6.1    Term.    The Term of this Agreement shall be for a period of five (5) years commencing upon the Effective Date referred to hereinbelow, and shall provide VI-FACTS with a non-exclusive License for the Territory as set forth in Paragraph 5.1 hereinabove.

6.2    Right to Extend the Term.  VI-FACTS shall have the right to extend the term of this Agreement for an additional five (5) years provided that;

(a)    VI-FACTS shall notify IVT in writing of its desire to extend the term of this agreement no later than One Hundred Eighty (180) days prior to the expiration of the initial term of this Agreement; and,

(b)    IVT and VI-FACTS shall mutually agree upon the terms and conditions of said extension.

---

Instant Video Technologies, Inc.         **CONFIDENTIAL**                    Page 5

CONFIDENTIAL

CONFIDENTIAL-OUTSIDE ATTORNEYS EYES ONLY

BUR5019528

BURSTA0264262

## ARTICLE 7
### Consideration

7.1    License Fee. In consideration for IVT granting VI-FACTS a non-exclusive License to Exploit the Patents as contained within the IVT Patent Portfolio, within the Territory and pursuant to the terms and conditions of this Agreement, VI-FACTS agrees to cause to be paid to IVT a License Fee in the following manner:

(a)   VI-FACTS shall cause that certain IVT Promissory Note, in the principal amount of Twenty-Five Thousand Dollars ($25,000.00), payable to William Fuller ("Fuller"), maturity date March 27, 1994; and, that certain IVT Promissory Note, in the principal amount of Twenty-Five Thousand Dollars ($25,000.00), payable to Fuller, maturity date April 29, 1994, to be converted into IVT Common Stock at a conversion price of one dollar and twenty-five cents ($1.25) per share, said conversion price representing the market price of IVT Common Stock at the close of business on the date of May 6, 1994. Said conversion shall become effective upon the Effective Date of this Agreement as referred to hereinbelow; and,

(b)   Fuller agrees to forgive the payment of all interest that has accrued on each of the IVT Promissory Notes referred to in paragraph 7.1(a) hereinabove from the date of issue to the Effective Date of this Agreement as referred to hereinbelow; and,

(c)   The Parties hereto agree to modify the terms of that certain IVT Promissory Note, in the principal amount of One Hundred Fifty Thousand Dollars ($150,000.00), payable to Fuller, maturity date December 31, 1993, as follows;

(i)   The maturity date shall be extended to December 31, 1995.

(ii)   The conversion price shall be changed to read, " one dollar twenty-five cents ($1.25) per share."

(iii)   The payment of all interest that has accrued from the date of issue to December 31, 1994, on said IVT Promissory Note in the principal amount of One Hundred Fifty Thousand Dollars ($150,000.00), shall be forgiven.

7.2    Royalties. In addition to the payment of the License Fee as referred to in Paragraph 7.1 hereinabove, VI-FACTS agrees to cause to be paid to IVT a royalty equal to the amount of four percent (4%) of all gross revenue as may be earned by VI-FACTS, during the term of this Agreement, or any extension thereof as a result of the Exploitation of the Patents as contained within the IVT Patent Portfolio.

(a)   VI-FACTS shall pay to IVT any and all such royalties as referred to in Paragraph 7.2 hereinabove, in the manner as described hereinbelow.

---

Instant Video Technologies, Inc.          **CONFIDENTIAL**          Page 6

CONFIDENTIAL

CONFIDENTIAL-OUTSIDE ATTORNEYS EYES ONLY

Case 3:06-cv-00019-MHP     Document 150-8     Filed 08/28/2007     Page 8 of 13

viewItem [file //C \Documents and Settings\prator\Local Settings\Temporary Internet Files\OLK1\viewItem cpc]                                                        Page 87 of 126

(i)   Within thirty (30) days from the end of each calendar quarter ending August 31st, October 31st, December 31st and March 31st, VI-FACTS shall deliver to IVT a quarterly income statement ("Statement") for the previous calendar quarter that shall set forth all gross income received by VI-FACTS from its activities pursuant to this Agreement, and the royalties payable to IVT from same.

(ii)   VI-FACTS shall cause all such payments as referred to in such Statements referred to in Paragraph 7.1(a)(i) hereinabove to be delivered to IVT within thirty (30) days from the date upon which each respective Statement is due to be delivered to IVT.

(iii)   All royalty payments shall be paid to IVT in US Dollars. In the event that payments received by VI-FACTS are in a currency other than US dollars then the amount US dollars payable to IVT shall be calculated by using the US dollar exchange rate as posted by the Bank of America, in San Francisco, California, USA on the day of receipt by VI-FACTS of such other currency.

(iv)   All payments made to IVT shall be made in the form of a wire transfer of US dollars to a bank account as shall be designated by IVT, and shall be wire transferred with instructions so that the funds being wired will be available for use by IVT within 4 hours from the initiation of said wire transfer.

(g)   All payments due to IVT shall be made in compliance with any governmental regulations as may be in effect at the time of same without the right of VI-FACTS to set-off, or withhold from IVT for any applicable taxes, the payment of which are the sole responsibility of VI-FACTS.

(h)   The accuracy of all Statements provided to IVT by VI-FACTS shall be certified by an officer of VI-FACTS. IVT shall have the right to audit said Statements, and to the extent that IVT elects to do so VI-FACTS shall make all of the books and records relating to same available to IVT, at the offices of VI-FACTS during normal business hours. In the event that an audit of the books and records discloses a deficiency of more than five percent (5%) in the amount of royalty paid to IVT, then VI-FACTS shall be responsible for all of the costs associated with such audit and shall pay such deficiency forthwith, in addition to interest on the amount of said deficiency calculated at the rate of six percent (6%) per annum, for the period of time from when such payment was due and the date on which said deficiency is delivered.

w.H.J.

_____
Instant Video Technologies, Inc.          **CONFIDENTIAL**                    Page 7

CONFIDENTIAL

**CONFIDENTIAL-OUTSIDE ATTORNEYS EYES ONLY**

BUR5019530

BURSTA0264264

### ARTICLE 8
#### Termination

8.1     Termination.  Either Party may, at its option, immediately terminate this Agreement if: (i) a receiver is appointed for the other Party, or its property; or, (ii) the other Party become insolvent, or makes an assignment for the benefit of creditors; or, (iii) the other Party seek relief, or if proceedings are commenced against the other Party, or on its behalf under any bankruptcy, insolvency or debtor's relief law, and such proceedings have not been vacated or set aside within sixty (60) days from the date of commencement thereof; or, (iv) the other Party is liquidated or dissolved; or, (v) the other Party is in material breach of its obligations pursuant to the terms of this Agreement, in the event of such material breach, the Party in such breach shall have a period of thirty (30) days from the receipt of notice of such breach, to cure same.

8.2     Obligations of the Parties Beyond Termination.  The Parties hereby acknowledge that VI-FACTS shall have the right to receipt of revenue from third party contracts that result from the activities of VI-FACTS pursuant to this Agreement for a period of two (2) years after the termination of this Agreement. In the event that revenue results from such third party contracts beyond a period of two (2) years following the expiration or termination of this Agreement, then all such revenue, and each such third party contract shall revert to IVT, and IVT shall pay to VI-FACTS an amount equal to twenty percent (20%) of all such revenue that it actually receives from said third party contracts. In the event that IVT may receive such revenue it shall report the receipt of same to VI-FACTS, and pay any amounts that may be due pursuant to the provisions contained herein, in the manner as provided for VI-FACTS to make its reporting and payments to IVT as described more fully in Paragraph 7.2 hereinabove.

8.3     No Waiver. The election of either party to terminate this Agreement pursuant to Paragraph 8.1 hereof shall not serve to waive, limit, bar or otherwise extinguish any rights that Party may have to pursue and recover any damages that said party may have suffered or incurred due to the breach of any term or condition of this Agreement.

### ARTICLE 9
#### Representations and Warranties

9.1     Representations and Warranties. The Parties represent and warrant that:

(a)     Each Party respectively possesses full power and authority to enter into this Agreement and to fulfill its obligations hereunder; and,

(b)     The performance of the Parties hereto shall not breach any separate agreement by which any of the Parties is bound at the time of this Agreement.

Instant Video Technologies, Inc.          **CONFIDENTIAL**                    Page 8

CONFIDENTIAL

CONFIDENTIAL-OUTSIDE ATTORNEYS EYES ONLY

BUR5019531

BURSTA0264265

Case 3:06-cv-00019-MHP    Document 150-8    Filed 08/28/2007    Page 10 of 13

viewItem [file //C.\Documents and Settings\prajes\Local Settings\Temporary Internet Files\OLK1\viewItem cpc]                                    Page 99 of 126

9.2    IVT represents that it shall continue to use reasonable best efforts to actively prosecute and expand the scope of its Intellectual Properties world-wide.

9.3    IVT represents that to the degree that it develops additional patents relevant to its business that it will add same to the IVT Patent Portfolio.

9.4    The Parties agree to keep each other advised, on a quarterly basis, as to their respective marketing activities, and agree to share all relevant marketing information that each may obtain with respect to said activities.

9.5    VI-FACTS Represents that it shall use its best efforts to Exploit the Patents and Patents Pending that are contained within the IVT Patent Portfolio.

## ARTICLE 10
### Confidentiality

10.1    Confidential Information Defined.  Each party hereto (the "Disclosing Party") may disclose to the other party ("Recipient") Confidential Information to further the performance of this Agreement.  Confidential Information includes, but is not limited to, technical and business information relating to the Disclosing Party's products, research and development, production, costs, engineering processes, profit or margin information, finances, customers, marketing, and future business plans regarding this project.  Confidential Information may also include proprietary or confidential information of another party that the Disclosing Party is under an obligation to keep confidential.  All Confidential Information shall remain the sole property of the Disclosing Party and Recipient shall have no rights to the Confidential Information.  Recipient further agrees that it shall not make any disclosure of the Confidential Information (including methods or concepts utilized in the Confidential Information) to anyone without the express written consent of the Disclosing Party, except to employees, consultants or agents to whom disclosure is necessary to the performance of this Agreement.  Recipient shall take all reasonable steps to ensure the confidentiality of all Confidential Information.

10.2    Exceptions.  Notwithstanding the other provisions of this Agreement, nothing received by Recipient shall be considered to be Confidential Information of the other, if:  (i) it has been published or is otherwise readily available to the public other than by a breach of this Agreement;  (ii) it has been rightfully received by Recipient from a third party without confidentiality limitations;  (iii) it was known to Recipient prior to its first receipt by Recipient, as shown by files existing at the time of initial disclosure;  (iv) it has been intentionally disclosed by Disclosing Party to a third party without restriction on disclosure;  or, (v) it is required to be disclosed in the context of any administrative or judicial proceeding.

10.3    Return of Information.  After any termination of this Agreement, and upon written request, Recipient shall return, within ten (10) business days all originals and copies thereof of any Confidential Information disclosed by Disclosing Party which has been provided to Recipient during the term of this Agreement.

Instant Video Technologies, Inc.          CONFIDENTIAL                    Page 9

CONFIDENTIAL

CONFIDENTIAL-OUTSIDE ATTORNEYS EYES ONLY

BUR5019532

BURSTA0284266

Case 3:06-cv-00019-MHP    Document 150-8    Filed 08/28/2007    Page 11 of 13

viewltom [filo.//C.\Documents and Settings\praler\Local Settings\Temporary Internet Files\OLK1\viewltom.cpc]                Page 100 of 126

**10.4** No Disclosure of Terms of this Agreement. Each party agrees that, without the prior written consent of the other party, it will not disclose to any third party the terms of this Agreement, except as may be required by regulation and/or law.

## ARTICLE 11
## Miscellaneous

**11.1** Notice and Service. All notices or requests, including communications and statements which are required or permitted under the terms of this Agreement, shall be in writing and shall be sent by recognized commercial overnight courier, or mailed by United States registered or certified mail. Notices shall be effective upon receipt.

Notices shall be sent to the Parties at the following addresses:

For IVT:    Instant Video Technologies, Inc.
            500 Sansome Street, Suite 503
            San Francisco, California 94111
            Attention:    Mr. Richard Lang, Chairman/CEO
            Telephone:    (415) 391-4455
            Facsimile:    (415) 391-3392

For VI-FACTS: Mark Althauser              William Fuller
            1004 Swanson Drive             330 Brockway Road
            Centralia, Washington 98531    Chehalis, Washington 98532
            Telephone:    (206) 736-6923   Telephone:  (206) 748-4882
            Facsimile:    (206) 748-8868   Fax:

**11.2** Captions. All indices, titles, subject heading, section titles and similar items contained in this Agreement are provided for the purpose of reference and convenience only and are not intended to be inclusive, definitive or to affect the meaning, content or scope of this Agreement.

**11.3** Binding Agreement. This Agreement is binding upon the Parties hereto, their successors, permitted assigns and personal representatives. VI-FACTS shall not be entitled to sign, pledge or transfer any of its rights and obligations under this Agreement without the expressed written approval of IVT. In the event that IVT is sold, merged and/or in any other way combined with another entity, then all of the obligations of IVT to VI-FACTS as contained herein shall become the obligation of the remaining and/or surviving entity that may result from said sale, merger or combination.

CONFIDENTIAL

CONFIDENTIAL-OUTSIDE ATTORNEYS EYES ONLY

BUR5019533

BURSTA0264267

Case 3:06-cv-00019-MHP    Document 150-8    Filed 08/28/2007    Page 12 of 13
viewitem [file://C.\Documents and Settings\praten\Local Settings\Temporary Internet Files\OLK1\viewitem cpc]

Page 101 of 120

11.4  _Governing Law._  The validity of this Agreement, the construction of its terms and the interpretation of the rights and duties of the Parties hereto shall be governed by and be construed in accordance with the substantive laws of the City and County of San Francisco, State of California, United States of America. Any and all claims, controversies or disputes which may arise by reason of this Agreement shall be resolved by way of litigation, and the Parties hereto agree to be subject to, and bound by the judgment of any court of competent jurisdiction with respect to same located in the City of San Francisco, State of California.

11.5  _Entire Agreement._  This Agreement constitutes the entire agreement and understanding between the Parties hereto with respect to the subject matter of the Agreement and supersedes any and all other agreements, written or oral, that the Parties heretofore may have had with respect to the subject matters herein.

11.6  _Incorporation._  The attachments hereto are made a part hereof and hereby incorporated into this Agreement by reference.

11.7  _Amendments._  No amendment, modification or waiver of the terms of this Agreement shall be binding unless reduced to writing and signed by all of the Parties.

11.8  _Counterparts._  This Agreement may be executed in any number of counterparts, and each executed counterpart shall have the same force and effect as an original instrument.

11.9  _Force Majeure._  The Parties shall not be deemed to be in default of this Agreement to the extent that performance of its obligations or attempts to cure any breach are delayed or prevented by reason of any act of God, fire, natural disaster, civil disobedience, riots, labor disputes, accident, act of government, shortage of materials or supplies, or any other cause beyond the reasonable control of such Party; provided, that the Party interfered gives the other Parties written notice thereof within ten (10) working days of any such event or occurrence.

11.10  _Limitation on Liabilities._  The Parties shall not be liable to the other Parties for any incidental, consequential, special, or punitive damages of any kind or nature, including, without limitation, the breach of this Agreement, whether such liability is asserted on the basis of contract, tort (including negligence or strict liability), or otherwise, even if any other party has warned or been warned of the possibility of any such loss or damage.

11.11  _Assignment._  VI-FACTS shall have the right to assign and/or sell the non-exclusive License referred to herein to a third party provided that IVT approves of such assignment and/or sale in advance and in writing, said approval shall not be unreasonably withheld.

Instant Video Technologies, Inc.                **CONFIDENTIAL**                Page 11

CONFIDENTIAL

CONFIDENTIAL-OUTSIDE ATTORNEYS EYES ONLY

BUR5019534

BURSTA0264268

Case 3:06-cv-00019-MHP    Document 150-8    Filed 08/28/2007    Page 13 of 13

viewitem [file://C:\Documents and Settings\vprater\Local Settings\Temporary Internet Files\OLK1\viewitem.cpc]    Page 102 of 126

**11.12 <u>Severability.</u>**  In the event any provision of this Agreement (or portion thereof) is determined by a court of competent jurisdiction to be invalid, illegal, or otherwise unenforceable, such provision shall be deemed to have been deleted from this Agreement, while the remainder of this Agreement shall remain in full force and effect according to its terms.

IN WITNESS WHEREOF, THIS AGREEMENT HAS BEEN EXECUTED TO BE EFFECTIVE ON THE DATE OF June 15, 1994, ("Effective Date").

Instant Video Technologies, Inc., a Delaware corporation

By: _____

Title: _____Chairman + CEO_____

Date: _____

VI-FACTS, a Washington corporation (in formation)

By: _____
    William Fuller

By: _____
    Mark Althauser

Date: _____August 24, 1994_____