# EXHIBIT 8

Dockets.Justia.com

IVT-TVN CONFIDENTIAL

PATENT LICENSE AGREEMENT

THIS LICENSE AGREEMENT ("Agreement") is entered into between Instant Video Technologies, Inc., a Delaware corporation, having its principal offices at 500 Sansome Street, Suite 503, San Francisco, California 94111 ("Licensor") and TVN Entertainment Corporation, a Delaware corporation, having its principal offices at 2901 West Alameda Avenue, Burbank, California 91505 ("Licensee").

WHEREAS, Licensor has represented to Licensee that Licensor is the owner of certain United States patents relating to the delivery of video and audio content over networks in less time than is normally required to view or listen to the content;

WHEREAS, Licensee is a supplier of digital programming services to cable television systems and desires to acquire a non-exclusive license to use the Licensed Patents in connection with the delivery and distribution of programming to its cable television MSO customers;

WHEREAS, Licensor is willing to grant Licensee such a license, subject to the terms and conditions of this Agreement;

NOW, THEREFORE, in consideration of the mutual promises herein contained and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. DEFINITIONS.

   1.1. "Licensed Methods" means any transmission of digital, compressed audio/visual data via satellite transponders to satellite receivers connected to cable system head-ends that is covered by at least one method claim of any Licensed Patent.

   1.2. "Licensed Patents" means U.S. Patent Nos. 4,963,995, 5,057,932 and 5,164,839. Licensed Patents do not include any foreign counterparts of these patents.

   1.3. "Licensed Use" means the use by Licensee in the Licensed Territory of the Licensed Methods for any transmission of digital, compressed audio/visual data via satellite transponders to satellite receivers connected to cable system head-ends within TVN's digital television service network. Licensed Use does not include the right to make, sell or offer for sale apperati covered by any claim of a Licensed Patent.

   1.4. "Licensed Territory" means the United States and any of its territories or possessions.

   1.5. The "Effective Date" of this Agreement is June ___, 1999.

CONFIDENTIAL
CONFIDENTIAL-OUTSIDE ATTORNEYS EYES ONLY

BUR5094705

BURSTA0334294

IVT-TVN CONFIDENTIAL

2.  LICENSE GRANTS

   2.1.  Subject to the terms and conditions of this Agreement, Licensor grants to Licensee under the Licensed Patents a non-exclusive, non-transferable, non-assignable license, without the right to sublicense, to use the Licensed Methods solely for the Licensed Use in the Licensed Territory.

   2.2.  The license granted under Section 2.1 shall expire at the earlier of the expiration of the Term, or termination of, this Agreement.

   2.3.  No license, right or immunity is granted by Licensor to Licensee expressly or by implication, estoppel or otherwise to any patents, inventions or other intellectual property rights other than the license expressly granted in Section 2.1. Licensee expressly acknowledges that its only rights hereunder to use any Licensed Patents or Licensed Methods are those set forth in Section 2.1.

3.  IMPROVEMENTS

   3.1.  As further compensation for the license granted in this Agreement to Licensee, Licensee hereby grants to Licensor a non-exclusive, irrevocable, royalty-free license (with the right to sublicense) under all patents and pending patent applications for the full term thereof owned or licensable by Licensee for upgrades, enhancements and improvements of any kind to the Licensed Parents first conceived and actually or constructively reduced to practice during the life of this Agreement.

4.  LICENSE FEES

 $100,000 CP

   4.1.  In consideration of the license to Licensee granted herein, Licensee will pay to Licensor a non-refundable and noncreditable license fee of $150,000 ("License Fee") payable as follows: $75,000 upon execution of this Agreement; and $75,000 on or before the first anniversary of the Effective Date.   $50,000 CP                          $50,000 CP

   4.2.  In the event that during the term of this Agreement all of the method claims of the Licensed Patents are held to be invalid or unenforceable by a final, appealable judgment of a court of competent jurisdiction, Licensee shall not be required to pay any portion of the License Fee not paid as of the date of that judgment. In the event that such invalidity or unenforceability judgment is reversed by a court of competent jurisdiction that is final beyond further right of appeal, Licensee shall within fifteen (15) days pay to Licensor the full amount of any unpaid portion of the License Fee that otherwise would have been payable from the date of the final judgment of invalidity or unenforceability through the date of such final appellate decision. The payment obligations under Section 4.1 will also recommence effective with the date of such final appellate decision. In no event shall any judgment of invalidity or unenforceability result in or entitle Licensee to a refund of any portion of the License Fee paid prior to the date of that judgment. In the event that such invalidity or unenforceability judgment is not reversed the Agreement is terminated.

CONFIDENTIAL
CONFIDENTIAL-OUTSIDE ATTORNEYS EYES ONLY

BUR5094706
BURSTA0334295



IVT-TVN CONFIDENTIAL

5. **OPTION**

    5.1.  Licensor hereby grants to Licensee a non-exclusive, non-transferable, non-assignable option to apply Licensee Fees actually paid under this Agreement to the purchase by Licensee of Licensor's Burstware® software. Licensee's option rights shall be subject to the following conditions and limitations:

    5.1.1.  Licensee's purchase price for Burstware software shall be at Licensor's then-existing commercial prices for end-users, and Licensee's purchases shall be subject to the terms and conditions of Licensor's commonly used, then-existing end-user license agreement.

    5.1.2.  Licensee may apply one hundred percent (100%) of License Fees to up to one-half (1/2) of the purchase price of copies of the Burstware software. (For example, if the commercial price for Burstware software is $30,000, Licensee can apply up to $15,000 in License Fees toward the purchase of that copy of the product.)

    5.1.3.  License Fees may be applied only to the purchase of Burstware software and not to the purchase of any other product or any support or maintenance services.

    5.1.4.  Notwithstanding any separate agreement Licensor and Licensee may enter into with respect to Licensee distributing, reselling, bundling or otherwise disposing of Burstware software, Licensee will be the end-user of any Burstware software purchased pursuant to this option and Licensee may not resell Burstware software purchased pursuant to this option other than as part of or in connection with a sale or transfer of Licensor's related business.

    5.1.5.  The option granted in this section will expire at the earlier of the expiration of the Term of, or termination of, this Agreement.

    5.1.6.  Licensor makes no warranty, representation or promise of any kind that Burstware software will be suitable for use in Licensee's business.

6. **REPRESENTATIONS AND WARRANTIES**

    6.1.  Each party warrants and represents that it has authority to enter into this Agreement and to make the covenants and promises set forth herein.

    6.2.  Licensor represents and warrants that Licensor is the sole and exclusive owner of the entire right, title and interest in the Licensed Patents, subject to certain non-exclusive licenses granted to third-parties, that Licensor has the right to grant to Licensee the rights and licenses granted hereunder and that neither Licensor's execution of this Agreement nor the performance of its obligations hereunder requires the consent of any third-party.

    6.3.  Notwithstanding anything to the contrary contained elsewhere in this Agreement, nothing contained in this Agreement shall be construed as:

    6.3.1.  A warranty or representation by Licensor as to the validity, enforceability or scope of the Licensed Patents; or

CONFIDENTIAL
CONFIDENTIAL-OUTSIDE ATTORNEYS EYES ONLY

BUR5094707
BURSTA0334296

6.3.2. A warranty or representation by Licensor that any use of the Licensed Methods hereunder by Licensee or any other entity will be free from infringement of patents or other intellectual property rights of third-parties; or

6.3.3. An agreement by Licensor to bring or prosecute actions or suits against third-parties for infringement or conferring on Licensee or any other entity any right to bring or prosecute actions or suits against third-parties for infringement; or

6.3.4. Conferring by implication, estoppel or otherwise upon Licensee or any other entity any right to use in any advertising, publicity, or otherwise, any trademark, trade dress, trade name or names, or any contraction, abbreviation or simulation thereof, of Licensor, except as expressly stated in this Agreement; or

6.3.5. An obligation on Licensor's part to furnish any technical information, assistance, training or know-how to Licensee or any other entity; or

6.3.6. A representation, warranty or requirement by Licensor to file in any country any application for patent on any invention, or to secure any patent, or once having filed an application for patent or obtained a patent, to maintain the patent application or patent in force.

7. DISCLAIMER OF WARRANTY AND LIMITATION OF LIABILITY

7.1. LICENSOR ACKNOWLEDGES AND AGREES THAT THE LICENSED PATENTS, LICENSED METHOD AND LICENSED USES ARE BEING LICENSED "AS IS". LICENSOR MAKES NO EXPRESS OR IMPLIED REPRESENTATIONS OR WARRANTIES OF ANY KIND WHATSOEVER WITH RESPECT TO THE LICENSED PATENTS, LICENSED METHODS OR LICENSED USES, INCLUDING, WITHOUT LIMITATION, ANY WARRANTIES THAT THE LICENSED PATENTS, LICENSED METHODS OR LICENSES USES DO NOT INFRINGE UPON THE PATENT OR OTHER INTELLECTUAL PROPERTY RIGHTS OF THIRD PARTIES AND THAT THE LICENSED PATENTS, LICENSED METHODS OR LICENSED USES WILL BE SUFFICIENT OR SUITABLE TO PERFORM THE ACTIVITIES CONTEMPLATED BY LICENSEE IN ENTERING INTO THIS AGREEMENT. LICENSOR HEREBY DISCLAIMS ANY AND ALL WARRANTIES THAT MAY BE IMPLIED BY LAW.

7.2. IN NO EVENT SHALL LICENSOR BE LIABLE FOR ANY DAMAGE, WHETHER DIRECT, CONSEQUENTIAL, SPECIAL, EXEMPLARY OR PUNITIVE OR OTHER, ARISING OUT OF THIS AGREEMENT OR RESULTING FROM LICENSEE'S OR LICENSEE'S CUSTOMERS USE OF OR INABILITY TO USE THE LICENSED PATENTS, LICENSED METHODS AND LICENSED USE, REGARDLESS OF WHETHER LICENSOR WAS ADVISED OF THE POSSIBILITY OF SUCH DAMAGE.

8. INDEMNITY

8.1. Licensee assumes all responsibility for its use of the Licensed Patents, Licensed Methods and Licensed Use. Licensee agrees to defend, indemnify and hold harmless Licensor from and against any claims, losses, damages, liabilities, causes of action, fines, costs or expenses of every kind and description (including, without limitation, attorneys' fees) ("Claims")

- 4 -

arising from, connected with or in any manner incidental to Licensee's use of the Licensed Patents, Licensed Methods and Licensed Uses. Notwithstanding the foregoing, Licensee shall not be obligated to indemnify Licensor for Claims arising from the negligence or willful misconduct of Licensor, or for Claims arising from a breach of Licensor's representations hereunder.

8.2. Licensor agrees to defend, indemnify and hold harmless Licensee from and against any Claims incurred by Licensee by reason of any breach by Licensor of any of its obligations under this Agreement. Notwithstanding the foregoing, Licensor shall not be obligated to indemnify Licensee for Claims arising from the negligence or willful misconduct of Licensee, or for Claims arising from a breach of Licensee's representations hereunder. Licensor's total liability under this Section 8.2 shall be limited to the License Fee actually paid to Licensor under this Agreement.

9. TERM

9.1. The Term of this Agreement shall begin on the Effective Date and, unless terminated in accordance with Section 9.2, end two (2) calendar years later.

9.2. Licensor may terminate this Agreement at any time by written notice to Licensee if (a) Licensee fails to pay License Fees when due, (b) Licensee discloses to any third-party the terms of Section 4.1 of this Agreement; or (c) Licensee otherwise breaches any provision of this Agreement and fails to remedy such breach within ten (10) days after written notification of such breach by Licensor.

10. PUBLICITY

10.1. Licensor and Licensee will issue a joint press release promptly after the Effective Date to announce the relationship created by this Agreement. However, in no case shall Licensee disclose to any third-party the financial terms of this Agreement.

11. CONFIDENTIALITY

11.1. Except as provided in Section 10, the parties agree that they shall not, without the prior written consent of the other, make any news release, public announcement, advertisement or other statement regarding this Agreement, its terms or the discussions or negotiations leading to this Agreement.

11.2. Licensee agrees and understands that the disclosure of information to any person of the financial terms of this Agreement could result in serious and irreparable damage to Licensor, that the remedy at law for any breach will be inadequate, and that Licensor will be entitled to injunctive relief, without prejudice to any other rights and remedies to which it may be entitled.

12. GENERAL PROVISIONS

12.1. Any notice or other written communication required hereunder shall be sent by registered or certified mail, postage prepaid, or by express delivery service, addressed as follows: (a) if to Licensor, to Instant Video Technologies, Inc., 500 Sansome Street, Suite 503, San

CONFIDENTIAL
CONFIDENTIAL-OUTSIDE ATTORNEYS EYES ONLY

BUR5094709
BURSTA0334298

Francisco, California 94111; or (b) if to Licensee, TVN Entertainment Corporation, 2901 West Alameda Avenue, Burbank, California 91505, or to such other address or addresses as either party may specify in writing from time to time, and each party has authorized and directed their respective attorneys to execute and deliver such other and further documents as may be required to carry out the terms and conditions of this Agreement.

12.2. The parties to this Agreement represent and acknowledge that each of them has been represented by counsel with respect to this Agreement and all matters covered by or related to this Agreement. Each party has been fully advised with respect to all rights that are affected by this Agreement.

12.3. Licensee and Licensor expressly submit to the exclusive jurisdiction of the federal and state courts in San Francisco County and Los Angeles County, California, for purposes of resolving any claims arising out of or relating to this Agreement or any breach thereof, and expressly waive any objections as to venue.

12.4. Each party and counsel for each party have reviewed this Agreement, and thus agree that the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement.

12.5. The paragraph headings in this Agreement are included solely for the convenience of the parties hereto, and shall not affect or be used in connection with the construction and interpretation of this Agreement.

12.6. This Agreement shall be governed and construed under the laws of the State of California and the United States without regard to conflicts of law principles.

12.7. This Agreement does not constitute and shall not be construed as constituting an agency, partnership or joint venture between Licensor and Licensee, including any of their divisions, partnerships, officers, directors, attorneys, employees or stockholders. No party shall have the right to obligate or bind any other in any manner whatsoever, without the other's prior written consent therefor.

12.8. In the event that any of the provisions, or portion thereof, of this Agreement are held to be unenforceable or invalid by any court of competent jurisdiction, the validity and enforceability of the remaining provisions or portions thereof shall not be affected thereby.

12.9. The failure by either party to enforce any provision of this Agreement shall not be deemed a waiver of such provision.

12.10. The provisions of Sections 3, 6, 7, 8, 11, 12.3 and 12.6 shall survive any termination of this Agreement.

12.11. This Agreement may not be amended or modified except in a writing signed by the parties.

CONFIDENTIAL
CONFIDENTIAL-OUTSIDE ATTORNEYS EYES ONLY

BUR5094710
BURSTA0334299

IVT-TVN CONFIDENTIAL

12.12. This is the entire agreement between the parties relating to its subject matter and there are no other agreements or understandings regarding the same, whether oral or written, expressed or implied, except as set forth herein and therein.

12.13. Each signatory to this Agreement who signs on behalf of a party expressly represents and warrants that he or she has the authority to sign on behalf of that party.

12.14. This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, and all of which together shall be deemed one and the same instrument.

12.15. No provisions of this Agreement, expressed or implied, are intended or shall be construed to confer upon or give to any person other than the parties hereto any rights, remedies or other benefits under or by reason of this Agreement unless expressly provided otherwise herein. Except as so provided, all provisions hereof shall be personal solely between the parties.

IN WITNESS WHEREOF, the parties have caused their duly authorized officers to execute this Agreement, on the date below indicated.

INSTANT VIDEO TECHNOLOGIES, INC.

By _____
Name   Richard Lang
Title   Chairman + CEO
Date   6-18-99

TVN ENTERTAINMENT CORPORATION

By _____
Name   Gregory Pasetta
Title   Sr. Vice President
Date   6/22/99

-7-

CONFIDENTIAL
CONFIDENTIAL-OUTSIDE ATTORNEYS EYES ONLY

BUR5094711
BURSTA0334300