# EXHIBIT 9

Dockets.Justia.com

viewItem [file //C \Documents and Settings\rprater\Local Settings\Temporary Internet Files\OLK1\viewItem.cpc]   Page 76 of 126

# MASTER LICENSE AGREEMENT
## by and between
## Burst Communications Pty Ltd
## and
## Instant Video Technologies, Inc.



THIS AGREEMENT, made and entered into as of the Effective Date as referred to hereinbelow by and between Burst Communications Pty Ltd, ACN 060 875 934, ("BCPL") having its principal place of business at 19-25 Little Bourke Street, Fifth Floor, Melbourne, Australia 3000; and Instant Video Technologies, Inc., a Delaware corporation ("IVT"), having its principal place of business at 500 Sansome Street, Suite 503, San Francisco, California 94111 referred to hereinafter collectively as the "Parties".

WHEREAS, BCPL is in the business of, among other things, developing and marketing commercial technologies; and,

WHEREAS, IVT is a designer and developer and licensor of interactive network technologies, and is the owner of certain patents of proprietary technology consisting of patents ("Patent(s)"), patent(s) pending ("Patent(s) Pending") and trade secrets ("Trade Secrets"); and,

WHEREAS, IVT desires to grant to BCPL a master license ("Master License") to exploit ("Exploit") the Patents contained within the IVT patent portfolio ("IVT Patent Portfolio") which currently consists of: United States Patent Number 4,963,995, issued on October 16, 1990; United States Patent Number 5,057,932, issued on October 15, 1991; United States Patent Number 5,164,839, issued on November 17, 1992; United States Patent Number 5,262,875, issued on November 16, 1993; Australian Patent Acceptance Number 627,841, issued on September 3, 1992; United States Patent Pending Serial Number 07/976,542, filed November 16, 1992; and United States Patent Pending Serial Number 08/011,972, filed February 1, 1993, copies of which are attached hereto; and,

WHEREAS, BCPL desires to accept a Master License to Exploit said Patents as contained within the IVT Patent Portfolio.

NOW THEREFORE, in consideration of the mutual covenants contained herein and other valuable consideration, receipt of which is hereby acknowledged, the Parties agree as follows:

---

Instant Video Technologies, Inc.    CONFIDENTIAL    Page 1
EXHIBIT 10.11

CONFIDENTIAL
CONFIDENTIAL-OUTSIDE ATTORNEYS EYES ONLY

BUR5019509
BURSTA0264243

Case 3:06-cv-00019-MHP   Document 150-10   Filed 08/28/2007   Page 3 of 16

viewItem [file://C:\Documents and Settings\rprater\Local Settings\Temporary Internet Files\OLK1\viewItem.cpc]   Page 77 of 126

# ARTICLE 1
## Definitions

The following terms when used herein shall have the meanings set forth below:

1.1  "Agreement" shall mean this agreement, together with all attachments hereto, as they may be amended from time-to-time in accordance with the terms contained herein.

1.2  "Relationship Manager" shall mean the respective person appointed by each of the Parties pursuant to Section 2.1, to serve as the representative of each Party for the purpose of this Agreement.

1.3  "Patent(s)" shall mean any and all patents issued to, held in the name of, or owned by IVT including all additional patents developed by IVT, and/or enhancements made by IVT to said patents.

1.4  "Patent(s) Pending" shall mean any patent(s) pending, or applied for, by IVT, including all additional patents developed by IVT.

1.5  "Trade Secrets" shall mean any and all information and/or data developed and/or held by IVT, as relates to Patents Pending and/or Patents; and/or any and all information and data developed and/or held by IVT not generally known to the public.

1.6  "IVT Patent Portfolio" shall mean the collective of the Patent(s) and Patent(s) Pending of IVT.

1.7  "Exploit" or "Exploitation" shall mean the sub-licensing, marketing, merchandising, and promotion of the Patents as contained within the IVT Patent Portfolio, and/or the producing, manufacturing, marketing and/or selling of products that incorporate the use same.

1.8  "Territory" shall mean those geographic areas as set forth herein, in which BCPL shall have the right to Exploit the Patents as contained within the IVT Patent Portfolio, pursuant to the terms and conditions of this Agreement, or any extension thereof.

1.9  "Master License" shall mean the right to Exploit the Patents as contained within the IVT Patent Portfolio, within the Territory referred to herein, during the term of the Agreement, or any extension thereof.

Instant Video Technologies, Inc.    CONFIDENTIAL    Page 2

CONFIDENTIAL
CONFIDENTIAL-OUTSIDE ATTORNEYS EYES ONLY

BUR5019510
BURSTA0264244

Case 3:06-cv-00019-MHP   Document 150-10   Filed 08/28/2007   Page 4 of 16

viewItem [file //C:\Documents and Settings\rprater\Local Settings\Temporary Internet Files\OLK1\viewItem.cpc]   Page 78 of 126

## ARTICLE 2
### Relationship Managers

2.1  <u>Relationship Managers</u>.  Upon execution of this Agreement, the Parties shall each appoint one (1) Relationship Manager and shall promptly notify the other Party in writing of the identity and location of such person.

2.2  <u>Responsibilities of Relationship Managers</u>.  Each Relationship Manager shall be responsible for the following activities:

(a)  Representing its Party in matters relating to performance pursuant to the terms of this Agreement; and,

(b)  Submitting and receiving any and all documents as may be required pursuant to the terms of this Agreement; and,

(c)  Proposing and assisting in the development of modifications to this Agreement; and,

(d)  Arranging any meetings to be held between the Parties; and,

(e)  Maintaining, for record keeping purposes, a log book, in the form of a hand written journal or an electronic data base, that contains all material information relating to this Agreement, and a record of all communications between the Parties.

## ARTICLE 3
### GRANTING OF RIGHTS

3.1  <u>Granting of Rights to BCPL</u>.  IVT hereby grants to BCPL an exclusive Master License to Exploit the Patents as contained within the IVT Patent Portfolio, within the Territory, subject to the terms and conditions contained herein and subject to any and all applicable governmental provisions, in exchange for consideration in the form of a License Fee and Royalty, as more fully described hereinbelow.

(a)  BCPL shall have the right, pursuant to the terms and conditions of this Agreement, to enter into agreements with third parties relating to its Exploitation of the Patents as contained within the IVT Patent Portfolio on such terms, covenants and conditions as BCPL shall deem proper. BCPL agrees that before entering into any such agreements it shall deliver to IVT details of the proposed agreement, and information pertaining to such third party. BCPL further agrees that it shall consult with IVT with respect to any such agreements.

CONFIDENTIAL

CONFIDENTIAL-OUTSIDE ATTORNEYS EYES ONLY

BUR5019511

BURSTA0264245

Case 3:06-cv-00019-MHP   Document 150-10   Filed 08/28/2007   Page 5 of 16

viewItem [file //C:\Documents and Settings\prater\Local Settings\Temporary Internet Files\OLK1\viewItem.cpc]   Page 79 of 126

(b) It is understood and acknowledged by IVT, that IVT shall, at all times use reasonable best efforts to enhance the value of the Patents as contained within the IVT Patent Portfolio.

3.2   **Rights of IVT Within the Territory.**   Notwithstanding provisions set forth in Paragraphs 3.1 and 5.1 herein, IVT shall have the right, at all times during the term of this Agreement, and any extension thereof, to pursue world-wide licensing opportunities with respect to Patents as contained within the IVT Patent Portfolio, including licensing opportunities that may result with third party multi-national entities that may be engaged in business within the Territory. It is however, understood and agreed by and between the Parties as follows:

(a) In the event that a third party multi-national entity seeks to commercially exploit the Patents as contained within the IVT Patent Portfolio within any part of the Territory, then IVT shall refer such entities to BCPL to negotiate the terms of a sub-license arrangement within the Territory pursuant to the terms and conditions of this Agreement;

3.3   **Infringement of Patents.**   Each Party shall immediately bring to the attention of the other Party any third party activities believed to constitute infringement of any of the Patents as contained within the IVT Patent Portfolio which may come to that Party's attention.

(a) BCPL agrees to assist IVT in the event that IVT elects to institute and prosecute an action against such infringement within the Territory.

(b) To the extent that proceeds result from any judgment or settlement as referred to in Paragraph 3.3(a) hereinabove, BCPL shall be entitled to receive reimbursement for the expenses that it may incur in assisting IVT in such action, provided that IVT has requested said assistance, and IVT has agreed in advance, and in writing to same. All such reimbursements to be paid to BCPL shall be paid only from such judgment or settlement and after IVT has recouped from the proceeds of such judgment or settlement all costs that it may have incurred with respect to such matter.

(c) The Parties agree to execute all documents and do such things as may be necessary to assist each other in the prosecution of any such action as referred to in Paragraph 3.3(a) hereinabove.

Instant Video Technologies, Inc.   CONFIDENTIAL   Page 4

CONFIDENTIAL

CONFIDENTIAL-OUTSIDE ATTORNEYS EYES ONLY

BUR5019512

BURSTA0264246

Case 3:06-cv-00019-MHP   Document 150-10   Filed 08/28/2007   Page 6 of 16

viewItem [file //C:\Documents and Settings\prater\Local Settings\Temporary Internet Files\OLK1\viewItem.cpc]   Page 80 of 126

3.4 **Registration of Patents.** IVT agrees to maintain all Patents as contained within the IVT Patent Portfolio as relates to the Territory, and shall:

(a) Execute all documents as it deems may be necessary to maintain the registration of Patents as contained within the IVT Patent Portfolio;

(b) Pay, in a timely manner all renewal fees necessary to keep the Patents as contained within the IVT Patent Portfolio in good standing; and,

(c) Use reasonable best efforts to stop or prevent any interference with BCPL's rights pursuant to this Agreement.

## ARTICLE 4
### Ownership of IVT Patents, Patents Pending and Trade Secrets

4.1 **Ownership of IVT Patents, Patents Pending and Trade Secrets.** IVT represents and warrants, and as a result thereof it is understood and agreed by and between the Parties, that all right, title and interest in and to IVT's Patents, Patents Pending and Trade Secrets shall, at all times, and notwithstanding any language contained herein, remain with IVT.

## ARTICLE 5
### The Territory

5.1 **Territory.** The countries to which BCPL is hereby granted an exclusive Master License, subject to the terms and conditions of this Agreement, are: People's Republic of China, Taiwan, Hong Kong, Singapore, Thailand, Malaysia, Australia, New Zealand, Indonesia, India, Vietnam, Papuya New Guinea (PNG) and the Philippines.

(a) Notwithstanding any activities in which BCPL may become engaged, the Parties hereby acknowledge, and BCPL agrees that it shall, with respect to its activities pursuant to this Agreement, at all times abide by, and be bound by the constraints of the United States Export Control Act.

(a) To the extent that BCPL engages in Exploitation activities relating to the Patents as contained within the IVT Patent Portfolio in territories other than those set forth in Paragraph 5.1 hereinabove, it understands that it may do so, subject to the discretion of IVT, on a non-exclusive basis.

CONFIDENTIAL
CONFIDENTIAL-OUTSIDE ATTORNEYS EYES ONLY

BUR5019513
BURSTA0264247

# ARTICLE 6
## Term

6.1  **Term.**  The Term of this Agreement shall be for a period of five (5) years commencing upon the Effective Date referred to hereinbelow, and shall provide BCPL with an exclusive Master License for the Territories set forth in Paragraph 5.1 hereinabove, provided that;

(a)  In the event that BCPL fails to deliver to IVT royalty revenue of at least Five Hundred Fifty Thousand US Dollars ($US550,000.00) by the end of the first three (3) years of the term of this Agreement, then the Master License granted hereunder shall become non-exclusive within the Territories set forth in Paragraph 5.1 hereinabove for the final two (2) years of this Agreement.

6.2  **Right to Extend the Term.**  BCPL shall have the right to extend the term of this Agreement for an additional five (5) years provided that: (i) BCPL shall cause to be delivered to IVT royalty revenue of not-less-than Five Hundred Fifty Thousand US Dollars ($US550,000.00) during the three (3) year period commencing upon the Effective Date of this Agreement referred to hereinbelow; and, (ii) BCPL shall cause to be delivered to IVT royalty revenue of not-less-than One Million Five Hundred Thousand US Dollars ($US1,500,000.00) during the two (2) year period commencing April 15, 1997, and concluding April 15, 1999.

(a)  In the event that BCPL elects to extend the term of this Agreement for an additional five (5) years, consisting of the period of April 15, 1999 to April 15, 2004, and it meets the conditions precedent to same as set forth in Paragraph 6.2 hereinabove, then:

(i)  The election to extend must be exercised no later than April 1, 1999; and,

(ii)  BCPL must deliver written notice of said election to extend to IVT no later than April 14, 1999.

(b)  For the license to remain exclusive during the five (5) year extension of this Agreement BCPL shall be required to cause to be delivered to IVT royalty revenue of not-less-than One Million Dollars ($1,000,000.00) for each calendar year of said extension. In the event that BCPL does not cause to be delivered said amount of royalty revenue during each such year then the Master License granted hereunder shall become non-exclusive within the Territories for the remainder of the term of said extension.

Case 3:06-cv-00019-MHP   Document 150-10   Filed 08/28/2007   Page 8 of 16

viewItem [file //C:\Documents and Settings\rprater\Local Settings\Temporary Internet Files\OLK1\viewItem cpc]   Page 82 of 126

# ARTICLE 7
## Consideration

7.1  License Fee. In consideration for IVT granting BCPL a Master License to Exploit the Patents as contained within the IVT Patent Portfolio, within the Territory and pursuant to the terms and conditions of this Agreement, BCPL agrees to cause to be paid to IVT a License Fee in the total amount of Two Hundred Fifty Thousand US Dollars ($US250,000.00) as follows:

(a)  BCPL shall cause to be delivered, via wire transfer to a bank account that has been designated to BCPL by IVT, the amount of Fifty Thousand US Dollars ($US50,000.00) no later than the the Close of Business in Australia, on May 2, 1994. Notwithstanding any provisions contained herein, in the event that said wire transfer does not cause said amount to be credited to said bank account by the close of business in San Francisco, California on May 2, 1994, this Agreement shall become null-and-void; and,

(b)  A payment shall be made to IVT in the amount of Twenty-Five Thousand US Dollars ($US25,000.00), on or before June 15, 1994, which BCPL shall cause to be delivered to IVT via wire transfer into a bank account that has been designated to BCPL IVT; and,

(c)  A payment shall be made to IVT in the amount of Twenty-Five Thousand US Dollars ($US25,000.00), on or before August 1, 1994, which BCPL shall cause to be delivered to IVT via wire transfer into a bank account that has been designated to BCPL by IVT; and,

(d)  A payment shall be made to IVT in the amount of Twenty-Five Thousand US Dollars ($US25,000.00), on or before September 15, 1994, which BCPL shall cause to be delivered to IVT via wire transfer into a bank account that has been designated to BCPL by IVT; and,

(e)  A payment shall be made to IVT in the amount of Twenty-Five Thousand US Dollars ($US25,000.00), on or before November 1, 1994, which BCPL shall cause to be delivered to IVT via wire transfer into a bank account that has been designated to BCPL by IVT; and,

(f)  A payment shall be made to IVT in the amount of Fifty Thousand US Dollars ($US50,000.00), on or before January 1, 1995, which BCPL shall cause to be delivered to IVT via wire transfer into a bank account that has been designated to BCPL by IVT; and,



Instant Video Technologies, Inc.         CONFIDENTIAL         Page 7

CONFIDENTIAL
CONFIDENTIAL-OUTSIDE ATTORNEYS EYES ONLY

BUR5019515
BURSTA0264249

Case 3:06-cv-00019-MHP   Document 150-10   Filed 08/28/2007   Page 9 of 16

viewitem (file //C:\Documents and Settings\prato\Local Settings\Temporary Internet Files\OLK1\viewitem.cpc]   Page 83 of 126

(e) A payment shall be made to IVT in the amount of Fifty Thousand US Dollars ($US50,000.00), on or before June 1, 1995, which BCPL shall cause to be delivered to IVT via wire transfer into a bank account that has been designated to BCPL by IVT.

7.2 **Recoupment.** It is understood and agreed by and between the Parties that all payments made by BCPL to IVT pursuant to Paragraph 7.1 hereinabove shall be fully recoupable by BCPL from the first dollar of gross revenue earned by BCPL, as more fully described in Paragraph 7.4 hereinbelow, before any payment is made to IVT, pursuant to the provisions contained therein.

7.3 **All Due Provision.** In the event that any of the abovementioned payments are not made in a timely manner as set forth herein, BCPL shall have a grace period of thirty (30) calendar days to make such payment. If said payment is not made during said grace period then the entire amount of Two Hundred Fifty Thousand US Dollars ($US250,000.00), less any payments previously made by BCPL to IVT pursuant to this Agreement, shall become immediately due and payable, and paid forthwith to IVT.

7.4 **Royalties.** In addition to the payment of the License Fee as referred to in Paragraph 7.1 hereinabove, BCPL agrees to pay royalties earned from the Exploitation of Patents as contained within the IVT Patent Portfolio as follows:

(a) BCPL shall pay to IVT in the manner as described hereinbelow royalties in an amount equal to fifty percent (50%) of all gross income that is earned by BCPL resulting from any sub-license that BCPL may grant to a third party(s) during the term of this Agreement, or any extension thereof.

(b) BCPL shall pay to IVT in the manner as described hereinbelow, royalties in an amount equal to between five percent (5%) to ten percent (10%), the specific amount shall be determined by mutual agreement of the Parties on a case-by-case basis, of all gross income that is earned by BCPL that results from the sale of products consisting of hardware and/or software produced by, or produced on behalf of BCPL during the term of this Agreement, or any extension thereof.

(c) Within thirty (30) days from the end of each calendar quarter ending June 30, September 30, December 31 and March 31 BCPL shall deliver to IVT a quarterly income statement ("Statement") for the previous quarter that shall set forth all gross income received by BCPL from its activities resulting from this Agreement and the royalties payable to IVT from same.

Instant Video Technologies, Inc.   CONFIDENTIAL   Page 8

CONFIDENTIAL

CONFIDENTIAL-OUTSIDE ATTORNEYS EYES ONLY

BUR5019516

BURSTA0264250

Case 3:06-cv-00019-MHP   Document 150-10   Filed 08/28/2007   Page 10 of 16

viewItem [file //C \Documents and Settings\rprater\Local Settings\Temporary Internet_Files\OLK1\viewItem.cpc]                                Page 84 of 126

(d) BCPL shall cause all such payments as referred to in the Statements referred to in Paragraph 7.4(c) hereinabove to be delivered to IVT within thirty (30) days from the date upon which the Statement as referred to in Paragraph 7.4(c) hereinabove, is due to be delivered to IVT.

(e) All royalty payments shall be paid to IVT in US Dollars. In the event that payments received by BCPL are in a currency other than US dollars then the amount US dollars payable to IVT shall be calculated by using the US dollar exchange rate as posted by the Bank of America, in San Francisco, California, USA on the day of receipt by BCPL of such other currency.

(f) All payments made to IVT shall be made in the form of a wire transfer of US dollars to a bank account as shall be designated by IVT, and shall be wire transferred with instructions so that the funds being wired will be available for use by IVT within 4 hours from the initiation of said wire transfer.

(g) All payments due to IVT shall be made in compliance with any governmental regulations as may be in effect at the time of same without the right of BCPL to set-off, or withhold from IVT for any applicable taxes, the payment of which are the sole responsibility of BCPL.

(h) The accuracy of all Statements provided to IVT by BCPL shall be certified by an officer of BCPL. IVT shall have the right to audit said Statements, and to the extent that IVT elects to do so BCPL shall make all of the books and records relating to same available to IVT, at the offices of BCPL during normal business hours. In the event that an audit of the books and records discloses a deficiency of more than five percent (5%) in the amount of royalty paid to IVT, then BCPL shall be responsible for all of the costs associated with such audit and shall pay such deficiency forthwith, in addition to interest on the amount of said deficiency calculated at the rate of six percent (6%) per annum, for the period of time from when such payment was due and the date on which said deficiency is delivered.

Instant Video Technologies, Inc.        CONFIDENTIAL         Page 9

CONFIDENTIAL                                                             BUR5019517
CONFIDENTIAL-OUTSIDE ATTORNEYS EYES ONLY                                 BURSTA0264251

viewItem [file //C \Documents and Settings\rprator\Local Settings\Temporary Internet Files\OLK1\viewItem cpt]

## ARTICLE 8
## Termination

8.1     **Termination.** Either Party may, at its option, immediately terminate this Agreement if: (i) a receiver is appointed for the other Party, or its property; or, (ii) the other Party become insolvent or unable to pay its debts as they mature, or makes an assignment for the benefit of creditors; or, (iii) the other Party seek relief, or if proceedings are commenced against the other Party, or on its behalf under any bankruptcy, insolvency or debtor's relief law, and such proceedings have not been vacated or set aside within sixty (60) days from the date of commencement thereof; or, (iv) the other Party is liquidated or dissolved; or, (v) the other Party is in material breach of its obligations pursuant to the terms of this Agreement, in the event of such material breach, the Party in such breach shall have a period of thirty (30) days from the receipt of notice of such breach, to cure same.

8.2     **Obligations of the Parties Beyond Termination.** The Parties hereby acknowledge that BCPL shall have the right to receipt of royalty payments resulting from revenue from third party contracts that result from the activities of BCPL pursuant to this Agreement, as set forth in Paragraphs 7.3(a) and 7.3(b) hereinabove, for a period of two (2) years after the termination of this Agreement. In the event that revenue results from such third party contracts beyond a period of two (2) years following the termination of this Agreement, then all such revenue, and each such third party contract shall revert to IVT, and IVT shall pay to BCPL an amount equal to twenty percent (20%) of all such revenue that it actually receives from said third party contracts. In the event that IVT may receive such revenue it shall report the receipt of same to BCPL, and pay any amounts that may be due pursuant to the provisions contained herein, in the manner as provided for BCPL to make its reporting and payments to IVT as described more fully in Paragraphs 7.3(a) and 7.3(b) hereinabove.

8.3     **No Waiver.** The election of either party to terminate this Agreement pursuant to Paragraph 8.1 hereof shall not serve to waive, limit, bar or otherwise extinguish any rights that Party may have to pursue and recover any damages that said party may have suffered or incurred due to the breach of any term or condition of this Agreement.

viewitem [file //C:\Documents and Settings\rprater\Local Settings\Temporary Internet Files\OLK1\viewitem.spc]    Page 86 of 126

## ARTICLE 9
### Representations and Warranties

9.1  <u>Representations and Warranties</u>. The Parties represent and warrant that:

(a) Each Party respectively possesses full power and authority to enter into this Agreement and to fulfill its obligations hereunder; and,

(b) The performance of the Parties hereto shall not breach any separate agreement by which any of the Parties is bound at the time of this Agreement.

9.2  IVT represents that it shall continue to use reasonable best efforts to actively prosecute and expand the scope of its Intellectual Properties world-wide.

9.3  IVT represents that to the degree that it develops additional patents relevant to its business that it will add same to the IVT Patent Portfolio.

9.4  The Parties agree to keep each other advised, on a quarterly basis, as to their respective world-wide marketing activities, and agree to share all relevant marketing information that each may obtain with respect to said activities.

9.5  BCPL Represents that it shall use its best efforts to Exploit the Patents and Patents Pending that are contained within the IVT Patent Portfolio.



Instant Video Technologies, Inc.        CONFIDENTIAL        Page 11

CONFIDENTIAL                                                          BUR5019519
CONFIDENTIAL-OUTSIDE ATTORNEYS EYES ONLY                              BURSTA0264253

Case 3:06-cv-00019-MHP   Document 150-10   Filed 08/28/2007   Page 13 of 16

viewItem [file //C.\Documents and Settings\rpraler\Local Settings\Temporary Internet Files\OLK1\viewItem.cpc].   Page 87 of 126

## ARTICLE 10
### Confidentiality

10.1 <u>Confidential Information Defined.</u> Each party hereto (the "Disclosing Party") may disclose to the other party ("Recipient") Confidential Information to further the performance of this Agreement. Confidential Information includes, but is not limited to, technical and business information relating to the Disclosing Party's products, research and development, production, costs, engineering processes, profit or margin information, finances, customers, marketing, and future business plans regarding this project. Confidential Information may also include proprietary or confidential information of another party that the Disclosing Party is under an obligation to keep confidential. All Confidential Information shall remain the sole property of the Disclosing Party and Recipient shall have no rights to the Confidential Information. Recipient further agrees that it shall not make any disclosure of the Confidential Information (including methods or concepts utilized in the Confidential Information) to anyone without the express written consent of the Disclosing Party, except to employees, consultants or agents to whom disclosure is necessary to the performance of this Agreement. Recipient shall take all reasonable steps to ensure the confidentiality of all Confidential Information.

10.2 <u>Exceptions.</u> Notwithstanding the other provisions of this Agreement, nothing received by Recipient shall be considered to be Confidential Information of the other, if: (I) it has been published or is otherwise readily available to the public other than by a breach of this Agreement; (ii) it has been rightfully received by Recipient from a third party without confidentiality limitations; (iii) it was known to Recipient prior to its first receipt by Recipient, as shown by files existing at the time of initial disclosure; (iv) it has been intentionally disclosed by Disclosing Party to a third party without restriction on disclosure; or, (v) it is required to be disclosed in the context of any administrative or judicial proceeding.

10.3 <u>Return of Information.</u> After any termination of this Agreement, and upon written request, Recipient shall return, within ten (10) business days all originals and copies thereof of any Confidential Information disclosed by Disclosing Party which has been provided to Recipient during the term of this Agreement.

10.4 <u>No Disclosure of Terms of this Agreement.</u> Each party agrees that, without the prior written consent of the other party, it will not disclose to any third party the terms of this Agreement, except as may be required by regulation and/or law.

---

Instant Video Technologies, Inc.   CONFIDENTIAL   Page 12

CONFIDENTIAL
CONFIDENTIAL-OUTSIDE ATTORNEYS EYES ONLY

BUR5019520
BURSTA0264254

## ARTICLE 11
### Miscellaneous

11.1 <u>Notice and Service.</u> All notices or requests, including communications and statements which are required or permitted under the terms of this Agreement, shall be in writing and shall be sent by recognized commercial overnight courier, or mailed by United States registered or certified mail. Notices shall be effective upon receipt.

Notices shall be sent to the Parties at the following addresses:

For IVT:   Instant Video Technologies, Inc.
           500 Sansome Street, Suite 503
           San Francisco, California 94111
           Attention:   Mr. Richard Lang, Chairman/CEO
           Telephone:   (415) 391-4455
           Facsimile:   (415) 391-3392

For BCPL:  Burst Communications Pty Ltd
           19-25 Little Bourke Street, Fifth Floor
           Melbourne, Australia 3000
           Attention:   Ms. Elizabeth Parsons, Chief Executive
           Telephone:   (011) 61-3639-2381
           Facsimile:   (011) 61-3639-2943

11.2 <u>Captions.</u> All indices, titles, subject heading, section titles and similar items contained in this Agreement are provided for the purpose of reference and convenience only and are not intended to be inclusive, definitive or to affect the meaning, content or scope of this Agreement.

11.3 <u>Binding Agreement.</u> This Agreement is binding upon the Parties hereto, their successors, permitted assigns and personal representatives. BCPL shall not be entitled to sign, pledge or transfer any of its rights and obligations under this Agreement without the expressed written approval of IVT. In the event that IVT is sold, merged and/or in any other way combined with another entity, then all of the obligations of IVT to BCPL as contained herein shall become the obligation of the remaining and/or surviving entity that may result from said sale, merger or combination.

11.4 <u>Governing Law.</u> The validity of this Agreement, the construction of its terms and the interpretation of the rights and duties of the Parties hereto shall be governed by and be construed in accordance with the substantive laws of the City and County of San Francisco, State of California, United States of America.

Instant Video Technologies, Inc.         CONFIDENTIAL         Page 13

CONFIDENTIAL

CONFIDENTIAL-OUTSIDE ATTORNEYS EYES ONLY

BUR5019521

BURSTA0264255

11.5 <u>Entire Agreement</u>. This Agreement constitutes the entire agreement and understanding between the Parties hereto with respect to the subject matter of the Agreement and supersedes any and all other agreements, written or oral, that the Parties heretofore may have had with respect to the subject matters herein.

11.6 <u>Incorporation</u>. The attachments hereto are made a part hereof and hereby incorporated into this Agreement by reference.

11.7 <u>Amendments.</u> No amendment, modification or waiver of the terms of this Agreement shall be binding unless reduced to writing and signed by all of the Parties.

11.8 <u>Counterparts.</u> This Agreement may be executed in any number of counterparts, and each executed counterpart shall have the same force and effect as an original instrument.

11.9 <u>Force Majeure.</u> The Parties shall not be deemed to be in default of this Agreement to the extent that performance of its obligations or attempts to cure any breach are delayed or prevented by reason of any act of God, fire, natural disaster, civil disobedience, riots, labor disputes, accident, act of government, shortage of materials or supplies, or any other cause beyond the reasonable control of such Party; provided, that the Party interfered gives the other Parties written notice thereof within ten (10) working days of any such event or occurrence.

11.10 <u>Limitation on Liabilities</u>. The Parties shall not be liable to the other Parties for any incidental, consequential, special, or punitive damages of any kind or nature, including, without limitation, the breach of this Agreement, whether such liability is asserted on the basis of contract, tort (including negligence or strict liability), or otherwise, even if any other party has warned or been warned of the possibility of any such loss or damage.



Instant Video Technologies, Inc.    CONFIDENTIAL    Page 14

CONFIDENTIAL
CONFIDENTIAL-OUTSIDE ATTORNEYS EYES ONLY

BUR5019522
BURSTA0264256

Case 3:06-cv-00019-MHP   Document 150-10   Filed 08/28/2007   Page 16 of 16

viewItem [file://C:\Documents and Settings\prater\Local Settings\Temporary Internet Files\OLK1\viewItem.cpc]   Page 90 of 170

**11.11 Severability.** In the event any provision of this Agreement (or portion thereof) is determined by a court of competent jurisdiction to be invalid, illegal, or otherwise unenforceable, such provision shall be deemed to have been deleted from this Agreement, while the remainder of this Agreement shall remain in full force and effect according to its terms.

IN WITNESS WHEREOF, THIS AGREEMENT HAS BEEN EXECUTED TO BE EFFECTIVE ON THE DATE OF April 26, 1994, ("Effective Date").

Instant Video Technologies, Inc.

By: _[signature]_

Title: Chairman + CEO

Date: May 9, 1994

Burst Communications Pty Ltd

By: _[signature]_

Title: Chairman

Date: 21 June 1994.

IVT040204AYM

Instant Video Technologies, Inc.   CONFIDENTIAL   Page 15

CONFIDENTIAL

CONFIDENTIAL-OUTSIDE ATTORNEYS EYES ONLY

BUR5019523

BURSTA0264257