1    THAN THE REAL TIME VIEWING TIME OF THE AUDIO/VIDEO SOURCE

2    INFORMATION EXISTS AT THE TIME THE TIME-COMPRESSED

3    REPRESENTATION IS MADE.

4          SO THAT WAS THE HOLDING BY JUDGE MOTZ ON THAT PART OF

5    THE QUESTION.  WHICH, OF COURSE, IS PART OF THE QUESTION

6    PRESENTED HERE AND THAT IS THE SAME REASONING WE URGE HERE AS

7    WELL.

8          LET'S GO BACK TO WHERE WE WERE.  SO BURST'S ARGUMENTS

9    TO YOUR HONOR TODAY ARE SQUARELY INCONSISTENT WITH WHAT THEY

10   TOLD THE EXAMINE IN EUROPE.

11         FIRST THEY TRIED TO MAKE THE SAME ARGUMENT, OH, NO,

12   IT'S TIME COMPRESSION BACK THERE ON PAGE SEVEN, AND THEN THEY

13   SAID, OKAY, YOU'RE RIGHT, IT'S JUST DATA COMPRESSION, SO WE'LL

14   CHANGE THE CLAIMS TO MAKE CLEAR THAT IT'S DATA COMPRESSION, BUT

15   THEN SEPARATELY, IT'S NOT JUST DATA COMPRESSION SEPARATELY

16   CAPABLE OF BEING TRANSMITTED IN THE TIME-COMPRESSED

17   REPRESENTATION.

18         AND NOW HERE'S WHAT WAS ON PAGE SEVEN EVERYBODY WAS

19   TALKING ABOUT IN THE EUROPEAN FILE HISTORY.  IT JUST SAYS,

20   REDUCED NUMBER OF DIGITS, EXACTLY THE SAME PORTION WE'RE

21   TALKING ABOUT HERE.

22         SO LET'S GO TO ASSOCIATED BURST TIME PERIOD BECAUSE,

23   IN OUR VIEW, ASSOCIATED BURST TIME PERIOD IS DIRECTLY RELEVANT

24   TO CONSTRUING TIME-COMPRESSED REPRESENTATION.

25         BECAUSE, OF COURSE, THE LAW IS CLEAR, YOU HAVE TO

JAMES YEOMANS - OFFICIAL REPORTER - (415)863-5179

1    CONSTRUE ALL THE WORDS OF A CLAIM SO THEY'RE ALL CONSISTENT

2    WITH EACH OTHER, THEY ALL FIT WITH EACH OTHER AND THEIRS

3    DOESN'T REALLY FIT WITH ASSOCIATED BURST TIME PERIOD.

4          A TRUE TIME COMPRESSION, AS THOSE IN THE ART USE IT,

5    HAS, OF COURSE, AND ASSOCIATED BURST TIME PERIOD.  AND IF YOU

6    LOOK ANY -- BECAUSE YOUR SQUEEZING IT IN TIME, THE ASSOCIATED

7    BURST TIME PERIOD, WHATEVER YOUR SQUEEZING IT INTO, THAT IS THE

8    BURST TIME PERIOD BY DEFINITION.  YOU HAVE AN ASSOCIATED BURST

9    TIME PERIOD WHICH IS WHY TIME COMPRESSION MUST MEAN WHAT IT

10   DOES.

11         THE PROBLEM, OF COURSE, IS THAT BURST'S PROPOSED

12   CONSTRUCTION OF TIME COMPRESSION HAS NO ASSOCIATED BURST TIME

13   PERIOD AS REQUIRED BY THE CLAIM.  WHY?

14         BECAUSE IT'S -- THEY'RE JUST TALKING ABOUT DATA

15   COMPRESSION, AND KNOWING HOW SMALL OR LARGE A FILE SIZE IS

16   TELLS YOU NOTHING ABOUT HOW FAST IT'S GOING TO GO.  NOTHING

17   BECAUSE YOU HAVE TO KNOW BY WHAT PIPE IT'S GOING TO GO.

18         SO THEY EVEN ADMIT THAT, THEY ADMIT THAT IN THE REPLY

19   BRIEF.  THEY SAY, DURATION CAN ONLY BE KNOWN IF BOTH THE FILE

20   SIZE AND TRANSMISSION SPEED ARE KNOWN, BUT YOU DON'T KNOW THE

21   TRANSMISSION SPEED, OF COURSE, AT THE TIME YOU'RE DOING THE

22   COMPRESSION.

23         SO THAT'S SQUARELY INCONSISTENT WITH THE WAY THE

24   MODERN DICTIONARY ELECTRONICS AND THE OTHER PEOPLE USE THE

25   WORD.  BURST TRANSMISSION IS A RADIO TRANSMISSION SENT 10 TO A

1    HUNDRED TIMES MORE THAN NORMAL SPEED RECORDED AND RETURNED AT

2    NORMAL RATE.  I THINK, WE TALKED ABOUT THAT.

3           SO, REALLY WHEN YOU GET TO THE CLAIM, THE CLAIM WE'VE

4    REPEATED ON THE LEFT, THEIR PROPOSED CONSTRUCTION FIRST, JUST

5    READS TIME OUT.  IF YOU JUST READ IT WITHOUT THE WORD TIME, IT

6    WOULD BE DIRECTLY CONSISTENT WITH THEIR CONSTRUCTION.

7           BUT, ACTUALLY, ACCORDING TO THEIR CONSTRUCTION WHOLE

8    CHUNKS OF THIS CLAIM YOU DON'T NEED.  YOU DON'T EVEN NEED

9    HAVING ASSOCIATED BURST TIME PERIOD THAT IS SHORT, ET CETERA,

10   ET CETERA.  YOU DON'T NEED ANY OF THAT, ALL OF NEED ACCORDING

11   TO THEIR CONSTRUCTION IS THIS.

12          BURST UNDER THEIR VIEW TIME COMPRESSION MEANS SENDING

13   IT FASTER THAN REAL TIME.  BURST TIME PERIOD MEANS SENDING IT

14   FASTER THAN REAL TIME.  AN ASSOCIATED BURST TIME PERIOD MEANS

15   SENDING IT FASTER THAN REAL TIME.

16          ALL THOSE THREE THINGS, THREE DIFFERENT SETS OF THAT

17   CLAIM ARE ALL -- SHOULD JUST BE CONSTRUED TO MEAN EXACTLY THE

18   SAME THING, RENDERING ALL SUPERFLUOUS AND NECESSARY, THAT'S

19   EXACTLY WHAT THEY DO.

20          THESE ARE JUST -- THESE QUOTES FROM THEIR REPLY BRIEF

21   THEY SAY TIME AND TIME COMPRESSED JUST MEANS IT'S LESS TIME

22   THEN PLAYBACK.  OKAY.  SO THAT'S WHAT THAT MEANS ACCORDING TO

23   THEM.  BURST TIME PERIOD IS, ALL RIGHT, JUST LESS TIME THAN

24   PLAYBACK, AND ASSOCIATION JUST MEANS LESS TIME THEN PLAYBACK.

25          SO THEY -- THEIR PROPOSED CONSTRUCTION VIOLATES

1    SQUARELY THE RULE THAT YOU CAN'T INTERPRET A CLAIM THAT RENDERS

2    IN THIS CASE ABOUT 30 PERCENT OF THE WORDS IRRELEVANT.

3         OTHER CLAIMS.  I THINK, WE COVERED THIS.  THEIR OTHER

4    CLAIMS, WE COVERED THIS PROPOSED CONSTRUCTION.  CLEARLY IN THE

5    DIGITAL WORLD REDUCED NUMBER OF BITS, THERE ARE NO BITS IN THE

6    ANALOG WORLD, YET MANY OF THEIR CLAIMS HAVE NO CONVERSION.

7         THERE'S NO COMPRESSION AND THERE'S NO DIGITALIZATION

8    OF IT, YET THEIR PROPOSED CONSTRUCTION ACTS AS IF THEIR

9    INVENTION IS PURELY DIGITAL, IT'S NOT TRUE AS WE DESCRIBED

10   BEFORE.

11        TAKE, FOR EXAMPLE, CLAIM 1, WHICH HAS NO A TO D

12   CONVERSION, NO EXPRESSION OF DIGITAL ANYWHERE, YET THEIR

13   PROPOSED CONSTRUCTION WOULDN'T APPLY TO IT.  THERE ARE NO BITS,

14   THERE'S NO BITS AT ALL IN THE REPRESENTATION.  A BIT WHAT

15   HAPPENS WHEN YOU CONVERT IT TO DIGITAL.

16        NOW, INTERESTING ISSUES IS A SEPARATE CLAIM, NOW

17   THERE'S A SEPARATE CLAIM THAT SAYS MERELY CAPABLE OF, DOESN'T

18   HAVE AN ASSOCIATED BURST TIME PERIOD, BUT CAPABLE OF BEING

19   SENT.

20        AND I FOUND THEIR SLIDES INTERESTING BECAUSE ONE OF

21   THE POINTS THEY TRY TO MAKE WAS, WELL, CAPABLE JUST MEANS JUST

22   CAPABLE, THAT'S ALL IT MEANS, BUT THAT'S NOT WHAT THE CLAIMS

23   SAY.

24        THEIR CONSTRUCTION SAYS SUFFICIENTLY COMPRESSED TO

25   PERMIT TRANSMISSION.  AGAIN, THAT DOESN'T MEAN ANYTHING.

1  ACCORDING TO THEM YOU COULD TAKE OUT ONE BIT OF A 17 BILLION

2  BIT FILE AND THAT'S SUFFICIENT IF YOU HAVE A FAST ENOUGH MODEM

3  OR YOU COMPRESS 200 TO ONE FASTER THAN MORE COMPRESSION THEN

4  ANYBODY BEEN ABLE TO ACHIEVE COMMERCIALLY AND THAT'S NOT

5  SUFFICIENT.

6       SO YOU DON'T REALLY KNOW WHAT SUFFICIENTLY MEANS EVER,

7  YET THAT'S WHAT CLAIM CONSTRUCTION SUPPOSE TO DO.  THE PROBLEM

8  IS, THERE'S A CLAIM THAT SAYS CAPABLE OF BEING TRANSMITTED, YET

9  THEIR CONSTRUCTION SAYS ALL IT HAS TO DO IS BE CAPABLE.

10      AND, OF COURSE, THAT VIOLATES A RULE OF CLAIM

11 CONSTRUCTION THAT SAYS IF YOU WRITE DIFFERENT CLAIMS IN

12 DIFFERENT WAYS, THOSE ARE PRESUMED TO MEAN SOMETHING DIFFERENT.

13      SO WHEN IT SAYS CAPABLE OF BEING TRANSMITTED, THAT

14 MUST MEAN SOMETHING THAT HAVING AN ASSOCIATED BURST TIME PERIOD

15 THAT'S SHORTER, YET BURST WOULD CONSTRUE THEM THE SAME.  AND

16 THEY CLEARLY MEAN SOMETHING DIFFERENT, ASSOCIATED CLEARLY HAS

17 TO BE GIVEN MEANING.

18      NOW, THE SPECIFICATION.  SPECIFICATION, OF COURSE,

19 WE'VE ALL AGREED IT'S IMPORTANT, YOU HAVE TO LOOK AT IT.  IT'S

20 SUPPOSE TO DEFINE THE CLAIM TERMS.  IT DOESN'T HERE, DOESN'T

21 EVEN CONTAIN THE CLAIM TERMS AND THE QUESTION IS, WHAT ROLE

22 DOES THE SPECIFICATION HAVE HERE?

23      AND AS I FORESHADOWED EARLIER, THE ODD THING ABOUT

24 THIS CASE, IS THAT NEITHER PARTY'S CONSTRUCTION SUPPORTED BY

25 THE SPEC.  AND BURST ARGUES THEIRS IS BECAUSE THEIRS RELATES TO

1    DATA COMPRESSION AND THE SPEC HAS DATA COMPRESSION.

2          THAT MUCH IS TRUE, BUT WHAT THE SPEC DOESN'T HAVE,

3    DOESN'T DISCLOSE THAT ALLOWS POINT.  THIS IS THE POINT I WAS

4    MAKING EARLIER, THAT THEY -- ISN'T THE CLAIM, THEIR CLAIM

5    CONSTRUCTION MERELY DATA COMPRESSION PLUS THAT'S FASTER THAN

6    REAL TIME.  THEY ADMITTED THAT'S NOT WHAT THEY INVENTED, THAT

7    WAS CLEARLY IN THE PRIOR ART.

8          WHAT MEANING, WHAT EFFECT, WHAT TEETH DOES THAT WORD

9    ALLOWS HAVE.  WE STILL HAVEN'T HEARD THAT FROM BURST, BUT

10   THAT'S WHAT A CLAIM CONSTRUCTION SUPPOSE TO DO, IT'S SUPPOSE TO

11   DEFINE WHAT'S INSIDE THE CLAIM AND WHAT'S OUTSIDE THE CLAIM,

12   BUT ALLOWS DOESN'T DO THAT.

13         ANOTHER VARIANT IS THIS VARIANT I SHOWED YOU EARLIER,

14   SUFFICIENTLY COMPRESSED.  WELL, WHAT DOES THAT MEAN?

15         IS IT ONE BIT?

16         BECAUSE YOU CAN CERTAINLY HAVE ONE BIT COMPRESSION OUT

17   OF 17 BILLION AND SEND IT OUT FASTER THAN REAL TIME.  THAT

18   DIDN'T ALLOW IT WOULD HAVE GONE FASTER THAN REAL TIME IF YOU

19   HADN'T COMPRESSED AT ALL IF IT'S A FIBEROPTIC LINE.  YOU

20   COMPRESS IT A TONE AND THAT STILL WOULDN'T ALLOW IT IF YOUR

21   TRANSMISSION MEDIUM WASN'T FAST ENOUGH.

22         EVEN, PERHAPS, MORE THE POINT, LET'S SAY, YOU HAVE A

23   NORMAL FORM OF COMPRESSION, STANDARD MP3 FOR AUDIO FILES, AND

24   IF I AM TRYING TO DOWNLOAD OVER MY DSL MODEM, MY DSL MODEM IF

25   IT'S FUNCTIONING WELL WILL DEFINITELY SEND IT OVER FASTER THAN

1    REAL TIME.

2         IF MY DSL MODEM HAPPENS TO BE FUNCTIONING BADLY THAT

3    DAY, AS IT IS OFTEN, IT WON'T.  SO UNDER THEIR CONSTRUCTION

4    SOMETHING THAT'S IN OR OUTSIDE THE CLAIM RELIES ON THE VAGARIES

5    OF WHAT'S HAPPENING DAY TO DAY, HOUR TO HOUR, MINUTE TO MINUTE

6    ON THE WHOLE NETWORK SYSTEM, YET THAT APPEARS TO BE WHAT

7    THEY'RE TALKING ABOUT.

8         THEY NEVER TOLD US, AND CAN'T FRANKLY WHAT TEETH, WHAT

9    MEANING, WHAT EFFECT SHOULD BE GIVEN TO THAT WORD ALLOWS.  THEY

10   USED THE WORD ENABLES AS A SYNONYM, BUT NOT THE SPECIFICATION

11   SHOWS ENABLEMENT.

12        WHAT THEY WANT TO DO IS JUST SHOW THE JURY THERE'S

13   DATA COMPRESSION AND SHOW THE JURY THAT THERE'S FASTER THAN

14   REAL TIME TRANSMISSION AND SAY, AHA, WE'RE DONE.

15        BUT THAT ISN'T THEIR INVENTION, THEY ADMITTED THAT'S

16   NOT THEIR INVENTION.  BUT THEY'RE TRYING TO KEEP THE

17   CONSTRUCTION SUFFICIENTLY VAGUE THAT WILL LOOK LIKE THAT'S

18   THEIR INVENTION, BUT IT'S NOT.

19        **THE COURT:**  WELL, IF YOU GO BACK THERE, IF YOU LOOK AT

20   THE STRUCTURE OF THAT SENTENCE.  ESSENTIALLY A VERSION OF THIS

21   SOURCE INFORMATION THAT HAS A REDUCED NUMBER OF BITS AND

22   SOMEHOW THAT ALLOWS, THAT IS WHAT IS ALLOWING THE DATA

23   TRANSFER, ET CETERA, ET CETERA.

24        **MR. POWERS:**  THE SOMEHOW IS WHERE THE RUB IS, EXACTLY.

25   AND YOUR HONOR PUT YOUR FINGER ON EXACTLY WHERE THE AWKWARD

1   TENSION IS INSIDE THE BURST CONSTRUCTION IS BECAUSE, AS I SAY,

2   THEY KNOW THEY CAN'T JUST SAY IT'S THE COMBINATION OF DATA

3   COMPRESSION AND FASTER THAN REAL TIME.  BECAUSE THERE WAS DATA

4   COMPRESSION AND FIBEROPTIC LINES THAT WOULD HAVE SENT IT FASTER

5   THAN REAL TIME.  SO THAT'S NOT WHAT THEY INVENTED, THEY

6   ADMITTED THAT.

7          SO THIS WORD ALLOWS OR ENABLES, WHICH IS THE OTHER

8   FRAMING THEY USED IN THEIR SLIDES TODAY, REQUIRES BECAUSE THEY

9   KNOW THEY HAVE TO SAVE THE CLAIM, SOME VAGUE LINK BETWEEN THE

10  FACT OF THE COMPRESSION AND THE FACT THAT IT GOES FASTER THAN

11  REAL TIME.

12         SO THERE'S SOMETHING ABOUT THE COMPRESSION, WE DON'T

13  KNOW WHAT, THAT ALLOWS OR ENABLES IT GOING FASTER THAN REAL

14  TIME, BUT THERE'S TWO PROBLEMS WITH THAT.

15         THE FIRST PROBLEM, IT'S EITHER TRYING TO PATENT THE

16  LAW OF NATURE WHICH SAYS YOU IF YOU GOT A FASTER COMMUNICATION

17  LINK, OF COURSE, IT'S GOING TO SEND SOMETHING SMALLER FASTER

18  THAN IT'S GOING TO SEND SOMETHING BIGGER.

19         AND THEY DIDN'T INVENT DATA COMPRESSION, THEY CAN'T

20  PATENT THAT.  THEY NOW -- THAT'S WHY THEY GOT THAT WORD ALLOWS

21  THERE OR THEY WANT TO KEEP IT, AS I SAID EARLIER, THEY WERE

22  TRYING TO KEEP IT VAGUE TO SAY, WELL, WE'RE NOT JUST SAYING IF

23  THEY WERE NAKED ABOUT IT AND SAID IT'S JUST DATA COMPRESSION

24  FASTER THAN REAL TIME, THIS PATENT INVALID IN THE FIRST SUMMARY

25  JUDGMENT MOTION THEY KNOW THAT.

1    SO THEY HAVE TO HAVE SOMETHING TO SAVE IT, BUT THEY

2    DON'T WANT TO HAVE IT TOO CLEAN BECAUSE THEN THERE WON'T BE ANY

3    INFRINGEMENT, BECAUSE THE FACT OF THE MATTER IS IN TODAY'S --

4    MOST OF TODAY'S TRANSMISSION MEDIUMS, IT'S SO FAST THAT IT

5    COULD BE COMPLETELY UNCOMPRESSED AND IT WILL BE FASTER THAN

6    REAL TIME.

7    SO THERE'S NO LINK TODAY BETWEEN COMPRESSION THE LEAST

8    NUMBER BITS AND FASTER THAN REAL TIME.

9    **THE COURT:**  MAYBE I MISSED SOMETHING.  THIS LANGUAGE

10    GO BACK TO, WELL, THE WORD BURST ASSOCIATED BURST TIME PERIOD.

11    **MR. POWERS:**  THE ONE IN EUROPE OR HERE?

12    **THE COURT:**  HERE.  FIRST SHOWS UP IN THE '839.

13    **MR. POWERS:**  YES.

14    **THE COURT:**  DOESN'T SHOW UP IN THE '995, NOR IN THE

15    '932, CORRECT?

16    **MR. POWERS:**  IT HAS.

17    **THE COURT:**  AND IS THERE ANYTHING ABOUT THE

18    PROSECUTION HISTORY OF THESE PATENTS THAT TELLS US WHY THAT

19    SHOWED UP IN THE '839?

20    **MR. POWERS:**  LET ME ANSWER FIRST, THAT IN THE '995 THE

21    VERY FIRST PATENT, THE WORD BURST IS NOT IN THE CLAIM, BUT AN

22    ASSOCIATED TIME PERIOD THAT IS SHORTER THAN THE TIME PERIOD IS.

23    **THE COURT:**  YES, RIGHT, RIGHT.

24    **MR. POWERS:**  EVERYBODY AGREES THAT THAT'S THE SAME

25    THING IN THIS CASE AS BURST.

1          **THE COURT:**  IS THAT WHAT IS AGREED TO?

2          **MR. POWERS:**  I BELIEVE, THAT'S AGREED TO.  CERTAINLY

3     WHAT THEIR POSITION IS, BURST IS FASTER THAN REAL TIME AND THE

4     ADDITION OF THE WORD BURST DIDN'T CHANGE THAT.

5          I THINK, WHAT HAPPENED, THEY CHANGE THE NAME OF THE

6     COMPANY BY THAT POINT.

7          **MR. FOLSE:**  I REALLY APOLOGIZE FOR INTERJECTING.  I

8     JUST WANT TO MAKE CLEAR, THE PHRASE ASSOCIATED BURST TIME

9     PERIOD DOES APPEAR IN THE CLAIMS IN THE '995 PATENT, JUST NOT

10    IN CLAIM 1.

11         **THE COURT:**  NOT IN CLAIM 1?

12         **MR. FOLSE:**  RIGHT.

13         **THE COURT:**  REFERRING TO ESSENTIALLY THE SAME LANGUAGE

14    IN THE '839, BUT THE WORD BURST IS ADDED.

15         **MR. FOLSE:**  FOR EXAMPLE, CLAIM 17 OF THE '995.

16         **THE COURT:**  BUT IS, IN FACT, WHAT IS MEANT, DO YOU

17    AGREE, WHAT IS MEANT BY BURST IS SHORTER THAN THE TIME PERIOD

18    OF ASSOCIATED WITH REAL TIME REPRESENTATION?

19         **MR. FOLSE:**  I THINK, THAT THE ADDITION OF THE WORD

20    BURST, ALTHOUGH, IT IS NOT, I DON'T THINK THAT HAS BEEN A

21    DISPUTED ISSUE AMONG THE PARTIES IN CLAIM CONSTRUCTION, THAT

22    THE REAL ISSUE, DOES THE TIME PERIOD FOR TRANSMISSION HAVE TO

23    BE KNOWN.

24         **THE COURT:**  I UNDERSTAND THAT.

25         **MR. FOLSE:**  BUT, I THINK, THE REFERENCES YOU SEE IN

1    THE CLAIMS TO ASSOCIATED TIME PERIODS AND THE ASSOCIATED BURST

2    TIME PERIODS ARE REFERRING TO A TRANSMISSION THAT IS

3    ACCOMPLISHED IN FASTER THAN THE REAL TIME PERIOD ASSOCIATED.

4            **THE COURT:**  IN OTHER WORDS, WHAT THE DEFINITION IS IN

5    THE FIRST, SO, IN ESSENCE, BY INSERTING IT THEN IN THAT

6    PARTICULAR CLAIM IN THE '839 REALLY, THE TERM BURST, THEN IF

7    THAT'S THE DEFINITION IS REALLY REDUNDANT, RIGHT?

8            **MR. POWERS:**  YES, UNDER THEIR CONSTRUCTION THAT'S

9    TRUE.

10           **THE COURT:**  IT ALREADY SAYS THAT.

11           **MR. POWERS:**  EXACTLY.

12           **THE COURT:**  SHORTER THAN PERIOD OF TIME.  ALSO, TO

13   WHAT EXTENT CAN A PARTY, IF A PARTY IS -- AND YOU CAN ADDRESS

14   IF PART OF IT AS WELL OR YOU CAN ADDRESS IT LATER, CAN A PARTY

15   GO BEFORE ONE COURT AND OFFER ONE CONSTRUCTION OF A TERM IN A

16   CLAIM AND THEN INTERPRETING THE VERY SAME CLAIM, THE VERY SAME

17   TERM, GO BEFORE ANOTHER COURT AND PROFFER A DIFFERENT

18   INTERPRETATION?

19           **MR. POWERS:**  WE HAVE NOT ARGUED ESTOPPEL IN THIS CASE

20   BECAUSE --

21           **THE COURT:**  THAT WOULD BE THE MAGIC WORD, YES, I WAS

22   AVOIDING THAT.

23           **MR. POWERS:**  WE HAVE NOT ARGUED THAT BECAUSE WE

24   THOUGHT THAT WHEN WE LOOKED AT THE WAY BOTH PARTIES ARGUED THE

25   CLAIM CONSTRUCTION IN MARYLAND BEFORE JUDGE MOTZ, WE THOUGHT IT

1    WASN'T ARGUED VERY WELL BY EITHER SIDE.

2          SO WE THOUGHT OUR JOB HERE TO GET IT RIGHT, AND SO

3    WE'LL ARGUE IT RIGHT.  SO WE HAVEN'T OBJECTED TO THEM CHANGING

4    THEIR CONSTRUCTION FROM WHAT THEY ARGUED BEFORE JUDGE MOTZ.

5          **THE COURT:**  I FIND IT TROUBLING BECAUSE -- AND THIS IS

6    ONE OF THE PROBLEMS WITH HAVING, YOU HAVE CLAIM CONSTRUCTION

7    FIRST AND NOW I KNOW THE CIRCUIT SAYS, WELL, YOU CAN TAKE A

8    PEEK, YOU CAN EVEN LOOK AT IT AND CONSIDER, YOU KNOW, THE

9    ACCUSED DEVICE.

10          WELL, YOU KNOW, I FIND THAT TROUBLING AS WELL BECAUSE,

11   WELL, THEY HAVEN'T QUITE SAID THAT, OKAY, BUT ALMOST.  AND

12   BECAUSE THEN IT'S LIKE PUTTING YELLOW OVER THE WALL, AS THEY

13   SAY, IT BECOMES -- REALLY THE CLAIMS BECOME A MOVING TARGET

14   BECAUSE THEY COULD MEAN ONE THING FOR ONE DEVICE AND ONE THING

15   FOR ANOTHER.

16          BUT IF IT'S THE VERY SAME CLAIM TERMS AND THE VERY

17   SAME CLAIM, WHY SHOULD IT MEAN ONE THING IN CONNECTION WITH ONE

18   DEVICE AND SOMETHING ELSE IN CONNECTION WITH ANOTHER?

19          BECAUSE THEN YOU'RE DEFINING IT AND YOU REALLY ARE

20   DEFINING IT IN TERMS OF THE, YOU KNOW, IN TERMS OF THE DEVICE,

21   AND THAT'S NOT WHAT WE'RE SUPPOSE TO BE DOING.

22          **MR. POWERS:**  OBVIOUSLY, NOT.  MEAN ONE THING IN

23   CONTEXT AND ANOTHER IN ANOTHER.  WE VIEW THAT AS GOING TO THE

24   CREDIBILITY OF THE POSITIONS.

25          WE GO THAT AS BEING FURTHER EVIDENCE OF BURST, BOTH

1    HERE, AND IN EUROPE, AND IN THE PTO, AND THIS COURT, SAYING AND

2    DOING WHATEVER IT CAN SAY OR DO TO GET SOMETHING THAT WILL

3    ACCOMPLISH ITS PURPOSES AT THE TIME.  BUT AS A TECHNICAL

4    ESTOPPEL WE HAVE NOT ARGUED IT.

5         **THE COURT:**  BUT I'M ASKING YOU MORE IN TERMS OF JUST A

6    PHILOSOPHICAL AND THEN -- BUT IT SEEMS TO ME, IT DOES COME INTO

7    PLAY IN CLAIM CONSTRUCTION BECAUSE, YOU KNOW, IT'S LIKE, WAIT A

8    MINUTE, I JUST THOUGHT OF ANOTHER WORD, AND SORT OF MOVING

9    AROUND.

10        IT'S THE SAME PATENT, IT'S GOT TO MEAN THE SAME THING

11   FOR ALL PURPOSES.  CAN'T BE SOMETHING DIFFERENT FOR SOME OTHER,

12   SOME PURPOSE AND NOT FOR OTHERS.

13        NOW, THERE MAY BE DIFFERENT CLAIMS THAT ARE ALLEGED

14   ARE INFRINGED, BUT THEN THAT WOULD IMPLICATE DIFFERENT

15   TERMINOLOGY WITHIN A DIFFERENT CLAIM.

16        **MR. POWERS:**  THIS CASE THAT DOESN'T APPLY.

17        **THE COURT:**  BUT IF, IN FACT, YOUR -- IT'S THE SAME

18   CLAIM AND THE SAME TERMS YOU OUGHT TO HAVE ONE MEANING AND

19   STICK TO IT.

20        **MR. POWERS:**  WE DON'T DISAGREE.  WE THINK THERE'S A

21   PATTERN OF THAT OCCURRING.  WE LAID OUT IN THE FILE HISTORY IN

22   THE COURTS IN EUROPE VERSUS HERE, AND WE THINK WHEN LOOKED AT

23   PROPERLY SHOULD BE CONSTRUED AS WE ARGUE IT.

24        BEFORE YOUR HONOR IN THEIR REPLY BRIEF HERE, THIS IS

25   ON THIS LINKAGE POINT, THIS IS THEIR ENTIRE CITATION OF

1    PORTIONS FROM THE SPECIFICATION TO SUPPORT THE IDEA THAT QUOTE

2    "THE DATA COMPRESSION ALLOWS OR ENABLES FASTER THAN REAL TIME

3    TRANSMISSION."

4           THIS IS THE PORTION FROM THEIR BRIEF WHERE THEY

5    ATTEMPT TO ADDRESS THAT.  YOU NOTICE THEIR THREE EXCERPTS THEY

6    CITED, I'M GOING TO GO THROUGH EACH OF THE THREE QUICKLY, BUT

7    NONE OF THE THREE DO THAT.

8           THE FIRST, DATA COMPRESSION MAXIMIZES STORAGE

9    CAPACITY.  SAYS NOTHING ABOUT FASTER THAN REAL TIME, SAYS

10   NOTHING ABOUT DATA COMPRESSION ENABLING FASTER THAN REAL TIME.

11          THE SECOND ONE, ALSO FROM COLUMN TWO, THE ONE WE

12   LOOKED AT EARLIER, DATA COMPRESSION FOR EFFICIENT STORAGE.  WE

13   JUST TALKED ABOUT THAT.

14          TRANSMISSION AND RECEPTION BY SATELLITE OR TELEPHONE

15   LINES, THAT SAYS NOTHING ABOUT FASTER THAN REAL TIME.  AND, IN

16   FACT, THE USE OF TELEPHONE LINES IMPLICIT WOULDN'T BE FASTER

17   THAN REAL TIME NECESSARILY.

18          THE THIRD AND LAST, THIS IS THEIR PORTION THAT THEY

19   QUOTE, USING THE ABOVE COMPRESSION TECHNIQUES THE MEMORY WILL

20   ONLY REQUIRES 250 MEGABYTES.

21          WELL, THAT'S JUST SAYING YOU HAVE DATA COMPRESSION

22   THAT REDUCES IT FROM A 50 GIGABYTE FILE 250 MEGABYTES, SAYS

23   NOTHING ABOUT THAT ENABLING, OR FACILITATING, OR ALLOWING

24   TRANSMISSION FASTER THAN REAL TIME.

25          THAT'S REALTY, RIGHT, BECAUSE ALLOWING IT TO BE GIVEN

1    TEETH MUST REALLY MEAN THAT.  BUT FOR THE COMPRESSION IT

2    WOULDN'T HAVE GONE FASTER THAN REAL TIME, BUT IN THEIR OPTICAL

3    FIBER THAT'S NOT TRUE TOTALLY, UNCOMPRESSED GO WAY FASTER THAN

4    REAL TIME, UNDER MOST MODERN MEANS OF TRANSMISSION TOTALLY

5    UNCOMPRESSED IT WILL GO FASTER THAN REAL TIME.

6         THIS IS FROM THE SPECIFICATION, THAT 200-MEGABYTE

7    350-MEGABYTE MOVIE IT WILL GO IN FOUR MINUTES, TWO-HOUR MOVIE

8    GOES IN FOUR MINUTES, TOTALLY UNCOMPRESSED, MUCH FASTER THAN

9    REAL TIME COMPRESSED GOES IN ONE SECOND.  BUT WASN'T THE

10   COMPRESSION THAT MADE IT, THAT ALLOWED IT TO GO FASTER THAN

11   REAL TIME, IT WENT REGARDLESS.

12        NOW, PHONE LINES, TWO-HOUR MOVIE IF IT WAS

13   UNCOMPRESSED TOOK 6,000 HOURS, IF IT'S COMPRESSED IT TAKES 29

14   HOURS.  IN NEITHER CASE WAS COMPRESSION ENABLING, ALLOWING,

15   FACILITATING, SENDING IT FASTER THAN REAL TIME.  SO, I THINK,

16   WE'VE TALKED ABOUT THAT.

17        WE DON'T NEED TO DO THIS.

18        AND THIS IS -- THIS PART FROM THE TUTORIAL WHERE

19   EXPLAINED THE DATA RATES FROM THE VARIOUS PARTS OF THE FIGURE 2

20   AND SET UP THIS PROBLEM.

21        IF YOU HAD DRAM CHIPS OR SRAM CHIP OPERATING SLOW,

22   RIGHT, GOING ON THE BUS OPERATING FASTER RATE, GOING OUT A

23   FIBEROPTIC CHANNEL YOU CAN'T GET IT OUT FAST ENOUGH.

24        WHEN THEY WERE BUILDING THE PROTOTYPE THEY CREATED,

25   THIS IS THE ACTUAL WORDS THEY USED IN THEIR DOCUMENTS, A SEA OF

1    DRAM.  NOT JUST ONE DRAM CHIP, THEY CALLED IT A SEA OF DRAM.

2         SO THEY GET IT UP TO A 500 MEGABYTES FOR SECOND

3    FIBEROPTIC LINE, THEY USE THAT MULTIPLEXER, THAT HOT HOD CHIP

4    SET THEY TALKED ABOUT THAT HAD 40 BITS INSTEAD OF ONE, THEY

5    CREATED A MULTIPLEX CHANNEL, THAT'S EXACTLY WHAT THEY DID.

6         SO LOOKING AT FIGURE 2 WHERE IT SAYS MEMORY RIGHT DOWN

7    THERE, THAT BECAME THE SEA OF DRAM, BUT IT HAD A WHOLE BUNCH OF

8    THOSE CHIPS.

9         NOW, YOU HAVE TO MULTIPLEX IT USING TIME-COMPRESSION

10   MULTIPLEXING TO GET IT OUT TO THE FIBEROPTIC PORT.  SO THEY HAD

11   TO USE TIME-COMPRESSION MULTIPLEXING, ACTUALLY, IN ORDER TO

12   MAKE THEIR PROTOTYPE WORK.

13        TALKED ABOUT THAT FILE HISTORY.  FILE HISTORY EXCLUDES

14   ANY INTERPRETATION THAT WAS DISCLAIMED DURING PROSECUTION.  AND

15   YOU HAVE TO LOOK AT WHAT THEY'RE SAYING IS IN THEIR PATENTS AND

16   IS NOT.

17        I FOUND ONE COMMENT BY MR. HEIM INTERESTING.  HE SAID,

18   THAT WHEN HE'S LOOKING AT THE BEGINNING OF THE CLAIMS, HE SAID,

19   YEAH, SOMETHING WAS DISCLAIMED, BECAUSE THEY AMENDED THE CLAIMS

20   TO TAKE OUT SOMETHING.  NOW, WE'RE JUST DEBATING WHAT WAS

21   DISCLAIMED.

22        IT'S CLEAR THAT THE ORIGINAL CLAIMS COVERED DATA

23   COMPRESSION AND FASTER THAN REAL TIME, THEY DROPPED THOSE

24   CLAIMS.  THEY'RE NOW TRYING TO GET THOSE CLAIMS BACK UNDER THE

25   GUISE OF CLAIM CONSTRUCTION.  AND THAT'S EXACTLY WHAT THE LAW

1    DOESN'T ALLOW.

2         HERE'S IZEKI.  THIS IS THE QUOTE THEY'RE TRYING TO

3    DISTINGUISH, BUT IT'S UNAMBIGUOUS AND CLEAR.  WHILE IZEKI

4    MENTIONED DATA COMPRESSION, THAT IS NOT THE EQUIVALENT BY ANY

5    MEANS.

6         THEY'RE NOT JUST CASUAL ABOUT THIS, THEY'RE DRAWING A

7    LINE IN THE SAND.  DATA COMPRESSION IS NOT OUR TIME

8    COMPRESSION, WHICH IS EXACTLY CONSISTENT WHAT THEY DO IN

9    EUROPE.

10         THEY SAY, OKAY, WE'RE CHANGING IT FROM TIME

11    COMPRESSION TO DATA COMPRESSION, BUT WE'RE GOING TO ADD STILL

12    SEPARATELY THE CONCEPT OF TIME COMPRESSION IN.  THEY'RE

13    SEPARATE DIFFERENT CONCEPTS, THEY'RE TRYING TO MAKE THEM THE

14    SAME CONCEPT HERE.

15         NOW, THERE'S, I THINK, WE COVERED THIS IN THE

16    SPECIFICATION DISCUSSION AND THE FILE HISTORY DISCUSSION.

17    THERE'S NO DEBATE IZEKI DISCLOSED DATA COMPRESSION.

18         NOW, HERE'S THE ONE THING THAT I DO WANT TO ADDRESS,

19    IS THEIR ARGUMENT THE EXAMINER INTERPRETED TIME COMPRESSION TO

20    BE DATA COMPRESSION.  AND IF YOU GO TO SLIDE 67 IN THEIR BOOK,

21    I THINK, THAT'S WHERE THEY WERE MAKING THAT POINT.

22         IF YOU GET THAT PARTICULAR SLIDE OUT.

23         **THE COURT:**  WHAT NUMBER IS IT?

24         **MR. POWERS:**  67, YOUR HONOR.

25         **THE COURT:**  YES.

1          **MR. POWERS:**  NOT FROM THE -- IS THAT THE TUTORIAL?

2     THE ONE JUST HANDED YOU UP TODAY?

3          **THE COURT:**  I THINK, WE HAVE THAT.  DO YOU HAVE THAT?

4     YEAH.  THANK YOU.  OKAY.

5          **MR. POWERS:**  NOW, MR. HEIM ARGUED SEVERAL TIMES THAT

6     EVERYBODY KNEW THAT TIME COMPRESSION, DATA COMPRESSION WERE

7     EXACTLY THE SAME THING IN THE FILE HISTORY, AND THAT'S THE

8     TITLE OF THIS SLIDE, IS EXAMINER INTERPRETS TIME COMPRESSED AS

9     DATA COMPRESSION.

10          BUT IF YOU READ IT, THAT'S NOT WHAT'S GOING ON.  LOOK

11     AT THE FIRST PARAGRAPH.  THE EXAMINER SAYS SQUARELY IZEKI FAILS

12     TO TEACH THE COMPRESSED AUDIO/VIDEO INFORMATION IS THE

13     TIME-COMPRESSED INFORMATION.

14          SO FIRST OFF, IZEKI, WHICH IS DATA COMPRESSION,

15     EVERYBODY AGREE ON THIS, THAT EXAMINER DOESN'T SAY EQUALS TIME

16     COMPRESSION, EXAMINER SAYS IZEKI TEACH TIME COMPRESSION.

17          THE NEXT PARAGRAPH MAKES OBVIOUS ARGUMENT HERE.

18     EMPLOY MEANS FOR TIME COMPRESSING, ET CETERA, IS WELL-KNOWN AND

19     AS ADMITTED BY THE APPLICANT SOMETHING OBVIOUS TO ONE OF

20     ORDINARY SKILL IN THE ART, EMPLOY MEANS FOR TIME COMPRESS --

21     HOWEVER, EMPLOYING MEANS FOR TIME COMPRESSING AUDIO/VIDEO

22     INFORMATION, SO THAT THE COMPRESSED AUDIO/VIDEO INFORMATION CAN

23     BE TRANSMITTED AT HIGH SPEED IN FLASH OR BURST PERIOD, AN

24     INCREASE IN THE CAPACITY OF THE STORAGE MEDIUM IS WELL-KNOWN IN

25     THE ART AND AVAILABLE IN THE MARKET, IN MARKET AT THE TIME THE

1    INVENTION WAS MADE.

2         THAT IS ADMITTED BY THE APPLICANT IN THE

3    SPECIFICATION, PAGE SEVEN AND EIGHT.  THEREFORE, IT WOULD HAVE

4    BEEN OBVIOUS TO ONE OF ORDINARY SKILL IN THE ART TO EMPLOY

5    MEANS FOR TIME COMPRESSING AUDIO/VIDEO INFORMATION AS

6    ALTERNATIVE COMPRESSED DEVICE FOR THE COMPRESSING MEANS OF

7    IZEKI TO TIME COMPRESS.

8         SO WHAT THE EXAMINER'S SAYING, THERE IS NOT THAT DATA

9    COMPRESSION EQUALS TIME COMPRESSION.  HE'S SAYING IT WOULD,

10   OBVIOUS, TO USE IN HIS VIEW, TIME COMPRESS AS ALTERNATIVE OR

11   INSTEAD OF DATA COMPRESSION.

12        NOW, ULTIMATELY HE GAVE THEM CLAIMS TO TIME

13   COMPRESSION, BUT THAT'S NOT WHAT -- THE EXAMINER WAS NOT SAYING

14   WHAT BURST WAS SAYING HE WAS SAYING.  SO, I THINK, WE'VE DONE

15   THAT.

16        NOW, BURST'S RESPONSE HERE TO YOUR HONOR IN THEIR

17   REPLY BRIEF, SAYS THAT EXACT STATEMENT I JUST SHOWED YOU FROM

18   IZEKI, SAYING IT'S NOT EQUIVALENT BY ANY MEANS, TIME

19   COMPRESSION.

20        THAT STATEMENT INDICATES DATA COMPRESSION ALONE

21   INSUFFICIENT TO MEAN THE CLAIMS IF THE RESULTING COMPRESSION

22   CANNOT BE SENT FASTER THAN REAL TIME.

23        THAT GOES BACK TO THIS, WHERE THE LINE BETWEEN THE

24   RELATIONSHIP BETWEEN DATA COMPRESSION AND SENDING FASTER THAN

25   REAL TIME.  THE SPEC DOESN'T GIVE YOU THAT LINE.  TOTALLY

1    UNCOMPRESSED GO WAY FASTER OR REALLY SERIOUSLY COMPRESSED AND

2    NOT GO WAY FASTER, NOT GO FASTER AT ALL.

3            SO THEIR BRIEF STILL DOESN'T HELP YOU DRAW THAT LINE.

4    YET THAT'S WHAT THE CLAIM CONSTRUCTION MUST DO.  IT MUST GIVE

5    YOU A STAKE IN THE GROUND THAT SAYS, HERE'S WHAT'S INSIDE THE

6    CLAIM AND HERE'S WHAT'S OUT.

7            THEIRS JUST SAYS DATA COMPRESSION SOMEHOW ALLOWS IT TO

8    BE SENT FASTER THAN REAL TIME.  THAT DOESN'T TELL YOU ANYTHING

9    ABOUT WHAT'S IN OR OUT.

10           **THE COURT:**  CAN WE WIND IT UP.

11           **MR. POWERS:**  YES.  I THINK, WE COVERED THAT.

12           AND, I THINK, WE COVERED THAT.

13           THE ONLY OTHER POINT I WANT -- I WANTED TO SHOW YOUR

14   HONOR, JUST REMIND YOU THIS CHART THAT WE SHOWED YOU IN THE

15   TUTORIAL, WHICH DEMONSTRATES THERE'S NO RELATIONSHIP AT ALL

16   BETWEEN COMPRESSION AND FASTER THAN REAL TIME.  IT'S ALL DRIVEN

17   BY HOW FAST THE TRANSMISSION MEDIUM IS AT, I THINK, TIME IN ANY

18   LEVEL OF COMPRESSION.

19           ONE INTERESTING POINT FROM THEIR BRIEF, I THOUGHT THIS

20   WAS WORTH MAKING, BECAUSE IT SHOWS THE INDEFINITENESS OF THEIR

21   POSITION.

22           THEY SAY, EVEN COMPRESSED DATA MAY REQUIRE MORE TIME

23   TO TRANSMIT OVER CONVENTIONAL PHONE LINES.  THAT'S FROM, OF

24   COURSE, THE SPEC.

25           THEY SAY, THE CONTEXT SUCH COMPRESSED REPRESENTATION

1   WOULD NOT BE A TIME COMPRESSED REPRESENTATION BECAUSE THE

2   TRANSMISSION TIME IS GREATER THAN PLAYBACK TIME.

3        WHAT THAT MEANS, YOU'RE NOT GOING TO KNOW IN A CLAIM

4   WHETHER IT'S TIME COMPRESSED UNTIL IT'S TRANSMITTED, MAYBE

5   YEARS LATER, SO EVEN UNDER THEIR CONSTRUCTION, AND MR. LANG'S

6   DEPOSITION IS QUITE FRANK ABOUT ADMITTING IT, YOU COULD HAVE

7   COMPRESSION THAT EXISTS, SAY, IN THE 1950'S, NOTHING COULD GO

8   FASTER THAN REAL TIME, AND JUST WAIT, YOU COMPRESS IT, YOU

9   STORE IT AND WAIT 20 YEARS, LO AND BEHOLD, SOMEONE COMES UP

10  WITH A NEW FIBEROPTIC CHANNEL, NOW THEY CAN SEND IT FASTER THAN

11  REAL TIME UNDER THEIR CONSTRUCTION BECAUSE NOW IT'S BEING

12  TRANSMITTED FASTER.  THAT'S -- THE THING WAS NOT TIME

13  COMPRESSED FOR 25 YEARS IS ALL OF A SUDDEN TIME COMPRESSED.

14       MY STORED FILE, MY SONG I STORED IN COMPRESSED FORM,

15  IF ANY DSL LINE IS WORKING WELL ON TUESDAY IS TIME COMPRESSED,

16  BUT IT WAS WORKING BADLY ON WEDNESDAY IT'S NOT TIME COMPRESSED.

17  WHY?

18       BECAUSE IT'S NOT SENT FASTER THAN REAL TIME.  THAT'S,

19  OBVIOUSLY, AND INDEFINITE CLAIM CONSTRUCTION, YET IT IS THEIR

20  CLAIM CONSTRUCTION.

21       IF I MAY SPEND ONLY THREE MINUTES ON THE ASSOCIATED

22  BURST TIME PERIOD?  I THINK, WE TALKED ABOUT MOST OF THIS.

23       **THE COURT:**  YES.  OKAY.

24       **MR. POWERS:**  THE KEY WORD IS HAVING.  THEIR PROPOSED

25  CONSTRUCTION DOESN'T ADDRESS THAT, BUT THE KEY WORD IS HAVING.

1    WHAT DOES THAT MEAN?

2         JUDGE MOTZ SAID IN MARYLAND HAVING HAS TO BE GIVEN A

3    MEANING, IT IS AN -- IN THE TENSE, AS WE GRAMMARIANS WOULD

4    KNOW, THAT APPLIES EXISTED AT TIME, SO THEY'RE STUCK WITH THAT

5    WORD, THEY'RE STUCK WITH THAT MEANING.

6         WHAT DOES IT MEAN?  THAT'S TOTALLY CONSISTENT WITH

7    TIME COMPRESSION.  WHEN YOU DO ACTUALLY TIME COMPRESS THE WAY

8    ALL THE EXPERTS KNOW THAT TERM IS USED, DO YOU HAVE ASSOCIATED

9    BURST TIME PERIOD, YOU KNOW EXACTLY WHAT IT IS, IT'S EITHER THE

10   TWO, DIVIDED BY THREE, WHATEVER IT WAS, DATA COMPRESSION DOES

11   NOT.  WE'VE SHOWN THAT.

12        I THINK, WE DON'T NEED TO DO THAT.

13        WE COVERED THAT.

14        NOW, THEIR PROPOSED CONSTRUCTION THAT REALLY READS OUT

15   ASSOCIATED BURST TIME PERIOD AND PARTICULARLY HAVING ONE, BUT

16   BECAUSE THEIR CONSTRUCTION SAYS IS EVENTUALLY, IF IT'S SENT

17   FASTER THAN REAL TIME, THEN WE'RE GOING TO STAY BACK, HOWEVER

18   LONG AGO IT WAS STORED IT HAD AN ASSOCIATED BURST TIME PERIOD.

19   AND WE THINK THAT READS THAT LANGUAGE OUT OF THE CLAIM AND

20   IMPROPERLY SO.

21        **THE COURT:**  WE THINK THAT'S THREE MINUTES.

22        **MR. POWERS:**  AND, I THINK, THAT'S THREE MINUTES.

23        **THE COURT:**  OKAY.  I HAVE COUPLE OF -- I HAVE A

24   QUESTION OF THE EXPERTS.  START WITH DR. HEMAMI AND THEN IS IT

25   MR., OR DR., OR WHATEVER, HALPERN?

1          **MR. HALPERN:**  MR. HALPERN, YOUR HONOR.

2          **THE COURT:**  OKAY.  BY REDUCING THE NUMBER OF BITS THAT

3     INFORMATION THAT'S GOING TO GO BY, THAT'S GOING TO BE

4     TRANSMITTED; IN OTHER WORDS, BY THIS DATA COMPRESSION, USING

5     THE SAME EXACT SAME METHOD OF TRANSMISSION FOR THE UNCOMPRESSED

6     AND THE COMPRESSED, WILL THE COMPRESSED GET THERE MORE QUICKLY,

7     GET, YOU KNOW, TO THE RECEPTION POINT MORE QUICKLY?

8          PROBABLY, SO THAT'S PROBABLY A GOOD IDEA.

9          **DR. HEMANI:**  LET ME REPEAT THE QUESTION TO MAKE SURE I

10    HAVE IT CORRECT.

11         **THE COURT:**  GOOD TEACHER DOES THAT.

12         **DR. HEMANI:**  SORRY.  WE HAVE THE FILE AND WE DATA

13    COMPRESS IT, SO IT BECOMES SMALLER, AND THE QUESTION IS, WILL

14    THE COMPRESSED FILE BE TRANSMITTED IN A SHORTER TIME PERIOD

15    THAN THE UNCOMPRESSED FILE?

16         **THE COURT:**  YES.  USING THE SAME METHOD OF

17    TRANSMISSION.

18         **DR. HEMANI:**  USING THE EXACT SAME DIGITAL

19    COMMUNICATION LINK, YES, IT WILL BE FASTER.  SIMPLY BECAUSE IT

20    IS SMALLER AND HAS FEWER BITS.

21         **THE COURT:**  OKAY.  BUT IS IT THEN A FUNCTION, WHETHER

22    IT GETS THERE FASTER OR NOT, IS IT A FUNCTION OF THE

23    TRANSMISSION?

24         **DR. HEMANI:**  THAT IS EXACTLY CORRECT.  IT'S THE

25    FUNCTION OF THE SPEED OF THE PIPE.  SO IF WE CONSIDER THE TWO

1    EXTREMES, THE FIBEROPTIC LINK EVERYTHING GETS THERE FASTER THAN

2    REAL TIME BECAUSE IT'S SO FAST, AND THE TELEPHONE EVERYTHING

3    GETS THERE SLOWER THAN REAL TIME, WHETHER UNCOMPRESSED OR

4    COMPRESSED BECAUSE IT'S SO SLOW.

5         WHAT BECOMES INTERESTING, ARE THOSE TRANSMISSION

6    BANDWIDTHS IN THE MIDDLE OF THE TWO EXTREMES, WHERE THE

7    UNCOMPRESSED FILE IS SO LARGE THAT IT CAN'T GET THERE FASTER

8    THAN REAL TIME, BUT THE COMPRESSION OPERATION GETS THE FILE

9    SMALL ENOUGH SUCH THAT IT'S NOW GONE BELOW THE THRESHOLD AT

10   WHICH IT CAN GET THERE FASTER THAN REAL TIME.

11        **THE COURT:**  OKAY.  THANK YOU.  THAT'S VERY, VERY

12   HELPFUL.

13        MR. HALPERN, WOULD YOU ANSWER THAT ANY DIFFERENTLY?

14        FINALLY WILL GET THEIR MONIES WORTH.

15        **MR. HALPERN:**  THANK YOU, YOUR HONOR.

16        **THE COURT:**  I'M SURE THEY GOT THEIR MONIES WORTH.  ALL

17   RIGHT.

18        **THE WITNESS:**  THE ANSWER IS STILL THE SAME ANSWER THAT

19   DR. HEMAMI JUST GAVE.  ALL OTHER THINGS BEING EQUAL, A LARGER

20   FILE WILL TAKE LONGER TO SEND THEN A SMALLER FILE.

21        SO, IF I TAKE A FILE AND I DATA COMPRESS IT AND I SHIP

22   IT OVER A NETWORK WHERE EVERYTHING IS BEHAVING THE SAME WAY,

23   AND SOMETIMES THAT'S A LOT OF DIFFERENT FACTORS, AND INTERNET

24   IN PARTICULAR, PREDICTING HOW LONG THINGS WILL TAKE GETS VERY

25   COMPLICATED, BUT ASSUMING EVERYTHING ELSE WAS THE SAME, THEN BY

1  DEFINITION, A SHORTER FILE WILL GET THROUGH FASTER THAN THE

2  LONGER FILE.

3        **THE COURT:**  OKAY.  THANK YOU VERY MUCH.  AND, I

4  GATHER, YOU KNOW, I HEARD YOU USE THE WORD, THE EXPERTS,

5  INCLUDING THE EXPERTS, USED THE WORD PIPES, I GUESS, THAT WE'RE

6  ALL LAUGHING ABOUT SENATOR STEVENS REFERRING TO COMPUTERS AND

7  PIPES AND WE ALL HAD A CHUCKLE, BUT I GUESS MAYBE HE KNEW MORE

8  THAN WE THOUGHT HE DID.

9        **MR. POWERS:**  IT'S FREQUENTLY USED AS WITH SOMETIMES

10  TRYING TO EXPLAIN AS A WATER ANALOGY WHERE THE SIZE OF PIPE

11  WILL ALLOW YOU TO PUMP MORE WATER THROUGH MORE BANDWIDTH.

12        **THE COURT:**  BUT IT IS A TERM THAT IS USED BY EVEN THE

13  EXPERTS.

14        NOW, THE NEXT PERSON IN LINE ON BEHALF OF BURST IS

15  YOU.  AND HOW LONG DO YOU EXPECT YOU WILL BE IN YOUR

16  PRESENTATION?

17        **MR. FOLSE:**  I THINK, I CAN'T BE LONGER THAN 30

18  MINUTES.  AND STILL A LOW --

19        **THE COURT:**  I THINK, YOU CAN'T BE.  SO WHY DON'T WE GO

20  AHEAD AND DO THAT NOW AND THEN WE'LL TAKE A BREAK AT 1:00

21  O'CLOCK FOR LUNCH AND COME BACK AND WE'LL JUST HAVE TO KEEP

22  GOING UNTIL WE FINISH.

23        **MR. FOLSE:**  SO, YOUR HONOR, THE NEXT GROUP OF TERMS

24  THAT WE'RE TURNING TO ARE TERMS RELATED TO TRANSMISSION.

25        **THE COURT:**  RIGHT.

1      **MR. FOLSE:**  THESE COME UP WITH A VARIETY OF FLAVORS.

2    THERE ARE A COUPLE OF THREE OR FOUR TERMS THAT REFER TO

3    TRANSMISSION OF SOMETHING AWAY FROM THE TRANSCEIVER APPARATUS.

4            THERE IS A ONE CLAIM THAT REFERS TO TRANSMITTING USING

5    THE PARTICIPLE "AWAY."  THERE ARE SOME CLAIMS THAT REFER TO

6    TRANSMITTING SOMETHING TO A SELECTED DESTINATION.

7            AND SO WITH RESPECT TO THE TERMS, THE CLAIMS THAT USE

8    THE TRANSMISSION AWAY LANGUAGE AND THE TRANSMISSION TO A

9    SELECTED DESTINATION LANGUAGE, THERE'S AN ISSUE ABOUT WHERE IS

10    THE INFORMATION BEING TRANSMITTED.

11            THE PARTIES AGREE THAT TRANSMISSION REFERS TO SENDING

12    INFORMATION OUTSIDE THE TRANSMITTING DEVICE.  THE ISSUE IS

13    WHERE?

14            FIRST POSITION, IS THAT WITH RESPECT TO THE CLAIM

15    TERMS THAT REFER TO TRANSMISSION AWAY FROM THE DEVICE OR

16    TRANSMISSION TO A SELECTED DESTINATION, THAT WHAT IS BEING

17    REFERRED TO WITHIN THE CONTEXT OF THE PATENT IS AN EXTERNAL

18    DEVICE THAT IS CAPABLE OF PLAYBACK.

19            APPLE'S POSITION IS THAT TRANSMISSION UNDER ALL

20    CIRCUMSTANCES IS SENDING TO A REMOTE LOCATION.  THEN WE HAVE A

21    SPECIFIC CARVE OUT THAT THEY WANT THE COURT TO ADOPT, WHICH IS

22    TO EXCLUDE TRANSFERS THROUGH AN INTERFACE TO A STORAGE DEVICE,

23    WHICH IS NOT SUGGESTED BY THE CLAIM LANGUAGE OR THE

24    SPECIFICATION AT ALL.

25            AND WHAT I'VE DONE IS, AND THE INTEREST OF TIME I

1   WON'T GO THROUGH THESE ONE-BY-ONE, BUT THE SLIDES INCLUDE THE

2   VARIOUS ITERATIONS OF THESE TRANSMISSION TERMS AND THE PARTYS'

3   PROPOSED CONSTRUCTION.

4           THIS IS AN EXAMPLE OF CLAIM 1 OF THE '995 PATENT WHICH

5   REFERS TO TRANSMISSION OF THE TIME-COMPRESSED AUDIO/VIDEO

6   SOURCE INFORMATION THAT HAS BEEN STORED AND THEN TRANSMITTED

7   AWAY FROM SAID AUDIO/VIDEO TRANSCEIVER APPARATUS.  SO THAT'S A

8   AN EXAMPLE OF THE TRANSMITTING AWAY TERM.

9           AND THERE'S ONE, AS I SAID, ONE CLAIM THAT TALKS ABOUT

10  TRANSMITTING AWAY, WHICH IS CLAIM 1 OF THE '705 PATENT, WHICH

11  REFERS TO TRANSMISSION MEANS COUPLED TO STORAGE MEANS FOR

12  TRANSMITTING SAID DIGITAL TIME-COMPRESSED REPRESENTATIONS BY

13  SAID AUDIO/VIDEO SOURCE INFORMATION AWAY FROM THE APPARATUS IN

14  SAID BURST TRANSMISSION TIME PERIOD.

15          **THE COURT:**  BUT THAT TRANSMITTING AWAY ESSENTIALLY IS

16  THE SAME AS THE TRANSMISSION AWAY IN THE '995 CLAIM 1, IN THAT

17  IT IDENTIFIES MOST OF THESE, EITHER IDENTIFY WHAT IT IS AWAY

18  FROM, AND IT HAS TO BE TAKEN IN CONTEXT THEN, AWAY FROM

19  SOMETHING, OR AWAY TO, OR TRANSMITTING TO SOMETHING.

20          SO WHEREVER YOU'RE USING THE WORD TRANSMISSION OR

21  TRANSMITTING, IT CAN'T BE ESSENTIALLY CONSTRUED IN A VACUUM,

22  YOU HAVE TO LOOK AT IT IN THE CONTEXT.  NAMELY, WHAT IS BEING

23  TRANSMITTED AWAY FROM OR TRANSMITTED TO, RIGHT?

24          **MR. FOLSE:**  I THINK, THAT IS CORRECT.  AND THE

25  PARTIES, FOR EXAMPLE, WE DO BELIEVE THE CLAIM TERMS WHICH REFER

TO TRANSMISSION AWAY -- LET ME FIND ONE THAT SHOWS TRANSMITTED

TO A SELECTED DESTINATION.

HERE'S AN EXAMPLE.  CLAIM 1 OF THE '839, TRANSMITTING

IN SAID BURST TIME PERIOD THE STORED TIME-COMPRESSED

REPRESENTATION OF THE RESET AUDIO/VIDEO SOURCE INFORMATION TO A

SELECTED DESTINATION.  SO THE ISSUE IS, WHERE?

**THE COURT:**  EXACTLY.  IN BOTH CASES.

**MR. FOLSE:**  I THINK, IN BOTH CASES.

**THE COURT:**  IT'S NOT WHAT, IT'S PRETTY CLEAR WHAT IT

IS, AND THAT'S NOT IN DISPUTE, I THINK.  WHERE IS IT GOING?

**MR. FOLSE:**  SO LOOKING AT THE INTRINSIC EVIDENCE AT

THE SPECIFICATION, THE BURST PATENT DESCRIBE TRANSMISSION TO

PLAYBACK DEVICES.  THE EXAMPLE GIVEN AT COLUMN 7, LINE 58 OF

THE '995 PATENT REFERS TO A VCRET, WHICH IS THE NAME, SHORTHAND

NAME FOR THE APPARATUS DESCRIBED IN THE PREFERRED EMBODIMENT,

CAN RECEIVE A VIDEO PROGRAM AT AN ACCELERATED RATE VIA

FIBEROPTIC PORT 18 FROM A VARIETY OF SOURCES.

FOR EXAMPLE, A VIDEO PROGRAM MAYBE COMMUNICATED AT AN

ACCELERATED RATE FROM THE FIRST VCRET TO A SECOND IN LESS TIME

THAN IT WOULD TAKE TO VIEW THE PROGRAM.

NOW, WHAT DOES THE SECOND VCRET DO?

AT COLUMN 10, LINE ONE, ONCE SERVED IN THE SECOND

VCRET MEMORY 13, THE DIGITIZED PROGRAM CAN EITHER BE VIEWED

DIRECTLY FROM MEMORY OR TRANSFERRED TO STORAGE MEDIUM 23,

EITHER IN ITS ENTIRETY OR IN RANDOM SEGMENTS BASED ON USER

1  PREFERENCE.

2       THIS IS GOING TO BE IMPORTANT A BIT LATER IN MY

3  DISCUSSION BECAUSE THE VCRET, AS IS CLEAR FROM THE

4  SPECIFICATION, AS IS CLEAR FROM THE PATENT CLAIMS, IS A DEVICE

5  THAT IS CAPABLE OF DOING MANY THINGS, BUT IT'S CAPABLE OF DOING

6  TWO THINGS RELEVANT HERE.

7       IT'S CAPABLE OF PERMITTING THE INFORMATION TO BE

8  VIEWED THAT IS PLAYED BACK AND IT IS CAPABLE OF STORING IT, IT

9  CAN DO BOTH THINGS.  AND THAT'S THE CONTEXT IN WHICH

10  TRANSMISSION IS DISCUSSED.

11       THE PROSECUTION HISTORY ALSO SUPPORTS THE SAME IDEA.

12  AND THESE ARE STATEMENTS FROM THE PROSECUTION HISTORY OF THE

13  '705 PATENT.

14       IN THE FIRST THERE IS A REFERENCE, AND YOU SEE THIS

15  COMING UP ON MANY OCCASIONS, PARTICULARLY IN THE CONTEXT OF

16  BURST'S EFFORTS TO DISTINGUISH THE IZEKI PATENT, WHICH I'M

17  ACTUALLY GOING TO COME TO IN A SLIGHTLY DIFFERENT CONTEXT THEN

18  THE ONE JUST DISCUSSED, WHEN THERE'S A CONSTANT EMPHASIS ON THE

19  NOTION THAT THE PATENTS ARE BEING DIRECTED TO THE TRANSMISSION

20  OF AUDIO AND VIDEO IN A BURST TRANSMISSION TIME PERIOD, WHICH

21  IS SUBSTANTIALLY SHORTER THEN THE TIME ASSOCIATED WITH REAL

22  TIME VIEWING OF THE PROGRAM BY A RECEIVER.

23       IT IS THAT THE OBJECT OF THE INVENTION WAS TO TRANSMIT

24  AUDIO AND VIDEO, SO THAT IT ULTIMATELY COULD BE VIEWED, AND

25  THAT THE TECHNOLOGY THAT WAS BEING CLAIMED WOULD PERMIT THE

1    TRANSMISSION TO OCCUR IN A WAY THAT WOULD BE FASTER THAN IT

2    WOULD TAKE TO VIEW THE PROGRAM IN A CONTINUOUS BROADCAST TYPE

3    FEED.

4         AND IN ADDITION, BURST DISTINGUISHED REAL TIME

5    TRANSMISSION BY EXPLAINING, AND THIS IS, I THINK, SOMETHING I

6    QUOTED AT THE VERY BEGINNING OF TODAY, THAT SYSTEM DESIGNERS

7    DID NOT RECOGNIZE THAT TIME-COMPRESSED REPRESENTATIONS COULD BE

8    SENT IN A BURST TIME PERIOD SHORTER THAN THE TIME NEEDED FOR

9    REAL TIME VIEWING BY THE RECEIVER.

10        AND IT REFERS TO THE ABILITY OF THE RECEIVER TO PAUSE

11   OR REWIND THE PROGRAM WHICH, AGAIN, ASSUMES THE RECEIVING

12   DEVICE IS CAPABLE OF PLAYBACK, SO IN THE CONTEXT OF

13   TRANSMITTING TO SELECTED DESTINATION IS TRANSMITTING AWAY THE

14   CONTEXT OF THE PATENT IS TALKED ABOUT A DEVICE THAT PLAYS BACK.

15        IF YOU LOOK AT THE EMBODIMENT THAT'S REFLECTED IN

16   FIGURE 2, THERE ARE A VARIETY OF PORTS HERE.  I GOT YELLOW

17   LINES NEXT TO 17, 18 AND 22 WHICH ARE DIFFERENT MECHANISMS FOR

18   TRANSMITTING INFORMATION.  LOOK AT TWO EXAMPLES, 18 AND 22,

19   WHAT DOES THE PATENT SAY ABOUT THEM?

20        IT SAYS, THE INCORPORATION OF FIBEROPTIC PORT 18 IN

21   THE VCRET PROVIDES THE CAPABILITY FOR DELIVERING THE

22   AUDIO/VIDEO SIGNALS FOR THE FIBEROPTIC LINE.  FOR EXAMPLE, A

23   VIDEO PROGRAM MAYBE COMMUNICATED AT AN ACCELERATED RATE FROM

24   THE FIRST VCRET TO A SECOND VCRET IN LESS TIME THAN IT WOULD

25   TAKE TO VIEW THE PROGRAM.  THAT'S ONE OF THE THREE PORTS.

1    SECOND OUTPUT PORT 22, IS DATA FROM MEMORY 13, IS THEN

2    ROUTED TO LINE 43, TRANSMITTER RECEIVER 22 AND TO A PHONE LINE.

3    AT THE OTHER END OF THE PHONE LINE THE SIGNALS RECEIVED ARE

4    PROCESSED BY ANOTHER VCRET.

5    ONCE RECEIVED IN THAT VCRET'S MEMORY THE DIGITAL

6    PROGRAM CAN THEN BE VIEWED DIRECTLY FROM MEMORY.  IT'S TALKING

7    ABOUT PLAYBACK.

8    **THE COURT:**  THE PATENT, AT LEAST, INSOFAR AS LOOK IN

9    THE '995, HOLDING TO CLAIM 1 HERE FOR AWHILE, THE TRANSCEIVER

10    OR TRANSMITTER RECEIVER WHICH, I ASSUME, THAT'S WHAT THAT

11    MEANS?

12    **MR. FOLSE:**  YES.

13    **THE COURT:**  IS A DEVICE, WHICH BOTH HAS THE INPUT FOR

14    RECEIVING AND THEN ALL OF THESE OTHER THINGS ARE HAPPENING

15    INCLUDING STORAGE, ET CETERA, ET CETERA, THEN TRANSMITTING IN

16    THE OUTPUT MEANS, IT HAS THE OUTPUT MEANS ALSO?

17    **MR. FOLSE:**  CORRECT.

18    **THE COURT:**  IS ABLE TO TRANSMIT, BUT IT'S TRANSMITTING

19    AWAY FROM THE, YOU KNOW, THAT PARTICULAR DEVICE?

20    **MR. FOLSE:**  YES.

21    **THE COURT:**  SO CONTEMPLATES SOME OTHER KIND OF DEVICE

22    SOMEWHERE ELSE.  COULD BE RIGHT NEXT DOOR, COULD BE MILES AWAY,

23    RIGHT?

24    **MR. FOLSE:**  EXACTLY.  BOTH SIDES AGREE TRANSMISSION IN

25    THE CONTEXT OF THESE CLAIMS MEANS SENDING THE INFORMATION AWAY,

1    AND WE THEN RUN INTO THIS DISAGREEMENT ABOUT WHERE?

2          AND OUR POSITION WHICH IS, I THINK, YOUR HONOR JUST

3    ARTICULATED QUITE WELL, IS THAT THE CLAIM TERMS WHICH USE THOSE

4    REFERENCES, USE THAT TERMINOLOGY, ARE TALKING ABOUT SENDING THE

5    OTHER DEVICES THAT ARE CAPABLE OF PLAYBACK, AND THERE'S NOTHING

6    IN THE PATENT LANGUAGE THAT SUGGESTS IT HAS TO BE AT A QUOTE

7    "REMOTE LOCATION," THIS IS JUST AN EXTRANEOUS GRAFTING ON.

8          **THE COURT:**  WHEN YOU SAY CAPABLE OF PLAYBACK OR WOULD

9    YOU SAY CAPABLE OF RECEIVING, WHATEVER IT DOES WITH IT.  COULD

10   BE RESTORING IT, IT COULD -- IT COULD PLAY IT BACK, DO ANY OF

11   NUMBER OF THINGS.

12         **MR. FOLSE:**  IT COULD DO ANY NUMBER OF THINGS.  IN

13   FACT, THERE ARE DEVICES SUCH AS THE VCRET ITSELF THAT CAN

14   STORE, BUT THAT IS CAPABLE OF PLAYING BACK.

15         AND WE THINK THAT GIVEN THE FREQUENT REFERENCES IN THE

16   PATENTS THEMSELVES, IN THE PROSECUTION HISTORY THAT THE REAL

17   OBJECT OF THIS FASTER THAN REAL TIME TRANSMISSION WAS TO ENABLE

18   VIEWING, THAT THE DEVICE HAS TO BE CAPABLE OF PLAYBACK,

19   REGARDLESS OF WHAT ELSE IT MIGHT DO.

20         **THE COURT:**  NOW, IS THAT IN THE CLAIM OR IS THAT

21   ESSENTIALLY WHAT WE READ FROM THE SPECS?

22         **MR. FOLSE:**  IT'S WHAT WE READ FROM THE SPECIFICATION,

23   TO ANSWER THE QUESTION OF WHAT DOES TRANSMISSION AWAY FOR A

24   SELECTED DESTINATION REFER TO.

25         **THE COURT:**  THAT WOULD EXCLUDE MR. POWERS' DEVICE

1    WHERE HE'S GOING TO HOLD ONTO SOMETHING THAT HE RECORDED BACK

2    IN THE 80'S AND THEN WAIT FOR THE DAY WHEN HE CAN SPEED IT UP

3    AND PLAY IT BACK AND --

4            **MR. FOLSE:**  YOUR HONOR, I HAVE --

5            **THE COURT:**  -- AND JUST STORED FOR HALF AN ETERNITY.

6            **MR. FOLSE:**  I HAVE TO SAY AND I --

7            **THE COURT:**  I'M BEING SOMEWHAT FACTITIOUS HERE,

8    OBVIOUSLY.

9            **MR. FOLSE:**  I FEEL LISTENING TO MR. POWERS I GO DOWN

10   THE RABBIT HOLES, UP WAS DOWN AND DOWN WAS UP.  I WAS HEARING

11   DESCRIPTION THINGS REGARDING A 33 AT 45, THEN STORING IT ON

12   SOME FORM OF DIGITAL FORMAT, AS IF ANYONE WOULD EVER WANT TO DO

13   THAT, BUT IN FACT --

14           **THE COURT:**  HE WAS DOING THAT BECAUSE HE DIDN'T --

15   EXCUSE ME, HE WAS DOING THAT BECAUSE HE DIDN'T THINK I

16   UNDERSTAND ANYTHING MORE COMPLICATED THAN THAT.

17           **MR. FOLSE:**  IT'S MORE THAN THAT.  IT'S THE ONLY

18   EXAMPLE THEY EVER TRIED TO COME UP WITH HOW THEIR VERSION OF

19   TIME COMPRESSION COULD ACTUALLY MAKE SENSE IN OUR CLAIMS, WHICH

20   REQUIRES STORAGE FIRST.

21           AND NONE OF THE REFERENCES THEY CITE TO ESTABLISH THE

22   MEANING OF THE TERM TIME COMPRESSION REFER TO ANYTHING REMOTELY

23   LIKE THAT.  THEY DON'T REFER TO THE ORDER OF STEPS THAT ARE

24   REFLECTED IN THESE PATENT CLAIMS.

25           SO IF YOU ASKING, WELL, WHAT DOES TIME COMPRESSION

1    MEAN?  ACTUALLY, THE WRONG QUESTION BECAUSE THE PATENT TERMS

2    DON'T USE, THE PATENT CLAIMS DON'T USE THE WORD TIME

3    COMPRESSION, WHATEVER THAT WAS MEANT IN THE ART.

4         AND, IN FACT, I ALSO WANT TO CLARIFY SOMETHING ELSE

5    MR. POWERS SAID, DR. HEMAMI DOES NOT AGREE, HE IMPLIED THE

6    EXPERTS ARE IN AGREEMENT THAT THE TERM TIME COMPRESSION HAD

7    THIS ACCEPTED MEANING IN THE ART IN 1988 AND IT IS APPLE'S

8    DEFINITION --

9         **THE COURT:**  WE'RE NOT GOING TO GO BACK TO TIME

10   COMPRESSION, SORRY TO INTERRUPT YOU THERE.  I THOUGHT IT WAS

11   PRETTY CLEAR AS TO WHAT TRANSMITTING TO AND TRANSMITTING AWAY

12   MEANS, BUT SO GO AHEAD.

13        **MR. FOLSE:**  APPLE'S POSITION ON REMOTE LOCATION IS, I

14   THINK, AGAIN, AN ATTEMPT TO GRAPH A LIMITATION ONTO THE CLAIM,

15   WHICH IS NOWHERE SUGGESTED IN THE LANGUAGE AT ALL.

16        THERE ARE PLACES THAT THEY SAY PATENTS REPEATEDLY

17   ASSOCIATED TRANSMISSION WITH REMOTE LOCATION, IN THEIR BRIEF

18   THEY MADE THREE CITES FOR THIS NOTION OF REPEATED REFERENCE.

19   ONE IS THE ABSTRACT WHICH IS DOES REFER TO TRANSMITTING

20   PROGRAMS TO A REMOTE LOCATION USING A SECOND VCRET.

21        THEY REFER TO THE '995 PATENT AT CLAIM 10, THAT

22   LANGUAGE APPEARS IN THE SPECIFICATION OF THE OTHER PATENTS AS

23   WELL, TALKING ABOUT AN OPTIONAL EMBODIMENT WHERE DIGITIZED

24   VIDEO AND AUDIO SIGNAL FROM THE REMOTE VCRET AT THE FAR END OF

25   A PHONE LINE MAYBE RECEIVED.

1    THAT'S AN EXAMPLE, WHAT THEY WANT TO DO IS TAKE THE

2    REFERENCES TO REMOTE LOCATION IN THE PATENT AND ADD THEM ONTO

3    THE CLAIM, SO THAT THEY MODIFY THE CLAIM LANGUAGE.  IT'S A

4    CLASSIC EXAMPLE OF TRYING TO TAKE SOMETHING FROM ONE EMBODIMENT

5    AND LIMIT THE CLAIM BY THE LANGUAGE.

6    THE THIRD CITATION I WOULD ADD, YOUR HONOR, DOESN'T

7    ACTUALLY MAKE A REFERENCE TO REMOTE LOCATION AT ALL.  THAT JUST

8    UNDERSCORES THE TERM REMOTE DOESN'T APPEAR ANYWHERE IN ANY OF

9    THE TRANSMISSION LIMITATIONS OF THE CLAIMS THEMSELVES.

10    THE CLAIMS, OF COURSE, CAN BE BROADER THEN THE

11    DESCRIPTION OF THE PREFERRED EMBODIMENT.

12    THE OTHER PROBLEM THE WORD REMOTE IT INTRODUCE THESE

13    AMBIGUITIES, WHICH THEIR EXPERT MR. HALPERN HAS AGREED WITH THE

14    BURST PATENTS THEMSELVES REFER TO ON THE ONE HAND, RECEIVING

15    DEVICE ON THE OTHER END OF THE PHONE LINE, BUT THEY ALSO TALK

16    ABOUT A TRANSCEIVER COUPLED WITHIN THE SAME NETWORK, WHICH

17    COULD BE NEXT DOOR IN YOUR HOUSE, COULD BE NEXT TO THE DEVICE

18    ON A SINGLE DESK.  THEY WANT TO CARVE OUT STORAGE DEVICES.

19    AND THE REASON IS BECAUSE THEY ARGUE THE IPOD IS A

20    STORAGE DEVICE.  THEY'RE THE ONES INTRODUCING INFRINGEMENT

21    ISSUES INTO CLAIM CONSTRUCTION.  THEY'VE BEEN FAIRLY OVERT

22    ABOUT IT.

23    THEY WANT TO TAKE THE POSITION THE IPOD IS A STORAGE

24    DEVICE, THAT'S WHY THEY WANT THE COURT TO EXPRESSLY CARVE OUT

25    FROM TRANSMISSION, TRANSMISSION OF AUDIO AND VIDEO TO A STORAGE

1    DEVICE.

2         AND WE'VE GOT SOME LEGAL CITATIONS HERE WHICH POINT

3    OUT THAT IS A FORM, THAT IS AN APPROACH TO CLAIM CONSTRUCTION

4    WHICH IS FROWNED ON.  HERE IS THE REAL IMPACT OF THIS

5    DISAGREEMENT.

6         IT'S A DIAGRAM, WHAT WE HAVE DONE IS TO SUGGEST THAT

7    TRANSMISSION TERMS BE CONSTRUED IN THE WAY THAT MAKE REFERENCE

8    TO TRANSMISSION TO DEVICE CAPABLE OF PLAYBACK.

9         THEY SAY TRANSMISSION TO REMOTE LOCATIONS, SO ANY

10   DEVICES THAT ARE LESS THAN REMOTE, WHATEVER THAT MEANS, GO OUT

11   THE WINDOW, AND THE OTHER THING THAT GOES OUT THE WINDOW IS ANY

12   DEVICE, ANY STORAGE DEVICE.

13        SO THERE ARE DEVISES LIKE THE VCRET THAT DO BOTH, I

14   WOULD SUGGEST, BY THE WAY, I THINK, THE IPOD DOES BOTH.  BUT

15   THEY WOULD TRY TO DO, I ASSUME, WHAT THEY'RE TRYING TO DO, IS

16   TO DEVELOP A BASIS FOR ARGUING THAT ANY DEVICE THAT STORES,

17   REGARDLESS OF WHAT ELSE IT DOES, IT IS EXCLUDED, EVEN IF IT

18   ALSO PLAYS BACK.

19        THEIR SOLE BASIS FOR THIS IS REPEAT OF MR. POWERS

20   ATTEMPT TO TALK ABOUT LEFT TURNS AND RIGHT TURNS IN THE

21   PROSECUTION HISTORY, WHEN IN FACT THAT IS NOT AT ALL SUPPORTED

22   BY CAREFUL READING OF THE HISTORY, EITHER IN THIS CASE OR IN

23   THE OTHER ONE.

24        THE IZEKI INVENTION, BY THE WAY, THAT'S BEEN TALKED

25   ABOUT A LOT, I DON'T THINK ANYBODY REALLY EXPLAINED TO THE

1    COURT WHAT THE THING WAS.  EXPLICITLY DESCRIBED BY THE INVENTOR

2    IN THE BACKGROUND AS AN APPARATUS FOR EDITING INFORMATION,

3    INCLUDING PICTURES, SOUNDS, CHARACTERS AND OTHERS AND PROVIDES

4    FOR A FILLING SYSTEM.

5        THE INFORMATION IS SOMETIMES EDITED AND PROCESSED

6    BEFORE BEING FILLED INTO A RECORDING MEDIUM OR A STORAGE UNIT.

7    THIS BECOMES A KEY POINT OF DISTINCTION WITH THIS PATENT ALL

8    THE WAY THROUGH THE PROSECUTION HISTORY.  THIS DEVICE, THIS

9    INVENTION WAS NOT DESIGNED TO TRANSMIT AUDIO AND VIDEO OUTSIDE

10   THE DEVICE FOR VIEWING BY OTHER USERS.

11       AND THIS IS A -- THIS PREMASTERING UNIT AT THE BOTTOM

12   HERE WHICH IS CONNECTED TO THIS INTERFACE 80, WHAT IS IT FOR?

13   IT OUTPUTS THE INFORMATION FOR FILES IN THE FORM OF A MASTER

14   TAPE.

15       THE FINAL PROGRAM AND THE FINAL DATA FILES ARE

16   TRANSFERRED FROM THE HARD DISK UNIT TO THE PREMASTERING UNIT

17   VIA THE INTERFACES 79 AND 80, AND THE SYSTEM BUS IT PRODUCES A

18   MASTER TAPE HOLDING THE TRANSFERRED FILES, WHICH IS THEN USED

19   IN MANUFACTURING A RECORDING MEDIUM.

20       THE ONLY WAY THE IZEKI DEVICE YOU COULD TRANSMIT

21   INFORMATION IN FASTER THAN REAL TIME, I SUPPOSE, WOULD BE TO

22   PULL THE MASTER TAPE OUT OF THE APPARATUS AND RUN REALLY FAST

23   NEXT DOOR WITH IT.  IT DID NOT TEACH TRANSMISSION AWAY FROM THE

24   APPARATUS FOR EITHER STORAGE OR PLAYBACK.  SO IT DOES COME UP

25   IN THE PROSECUTION HISTORY.

1    THE VERY FIRST, THE FEBRUARY 27TH '95 OFFICE ACTION

2    THE EXAMINER SIMPLY ASSOCIATED, THIS IS PORTION THAT IS CITED

3    BY APPLE, THAT IZEKI DEVICES AN OUTPUT MEANS FOR OUTPUTTING THE

4    EDITING INFORMATION AWAY FROM THE APPARATUS.  DOESN'T SAY WHERE

5    MR. POWERS SAID, EXAMINER REJECTED  ON THE BASIS TRANSMITTED

6    INFORMATION AWAY FROM THE DEVICE.

7         HERE'S IZEKI FIGURE ONE AND DOWN HERE THIS IS THE

8    OUTPUT PORT 80, WHICH IS THE SOLE REFERENCE THAT APPLE REFERS

9    TO.  AND WHERE DOES IT GO?  THIS PREMASTERING UNIT WHICH MAKES

10   THE TAPE.  SO BURST RESPONDED TO THAT.  I'M GOING TO HAVE TO

11   FLY THROUGH THIS.

12        **THE COURT:**  YES, YOU'RE RIGHT.

13        **MR. FOLSE:**  WHAT HAPPENS IN A NUTSHELL, YOUR HONOR, IS

14   WHICH SEEMS TO HAPPEN A LOT, THE EXAMINER MAKES A REJECTION,

15   THE APPLICANT COMES BACK AND EXPLAINS WHY IT'S NOT, WHY THE

16   PRIOR ART, IN FACT, IS DISTINGUISHABLE.

17        THE EXAMINER COMES BACK MAKES THE EXACT SAME REJECTION

18   AGAIN, IT'S LIKE NO DIALOGUE HAPPENING AT ALL.  THIS GOES ON

19   SEVERAL TIMES HERE, BUT WHAT BURST IS POINTING OUT IS THAT THE

20   STORAGE DEVICE, WHAT IZEKI DOES TRANSFERRING INFORMATION FROM

21   INTERFACE TO A STORAGE DEVICE SUCH AS A MAGNETIC TAPE.

22        AND IT CONTRASTS THAT WITH THE BURST INVENTION WHICH

23   DOES STORE BUT ALSO TRANSMITS A TIME-COMPRESSED REPRESENTATION

24   OF THE INFORMATION AWAY FROM THE TRANSCEIVER, IN THIS BURST

25   TIME PERIOD THAT'S SHORTER THAN THE TIME PERIOD ASSOCIATED WITH

1    REAL TIME VIEWING.

2           EXAMINER REJECTS AGAIN, BURST AGAIN RESPONDS BY

3    EMPHASIZING, COMES BACK AND MAKES SOME AMENDMENTS EMPHASIZING

4    THAT THE INFORMATION CAN BE RECEIVED AND VIEWED BY A RECEIVER

5    UNDER THE BURST PATENT.  AND, IN FACT, THE EXAMINER AGREES THAT

6    THAT AMENDMENT, WHICH ACTUALLY ADDED THE WORD RECEIVER,

7    OVERCOMES THE ART.

8           BUT GOES ON, BURST GOES ON AFTER MAKING THESE

9    AMENDMENTS, TO EMPHASIZE THE INVENTION IS A DELIVERY TECHNIQUE

10   THAT USES COMPRESSION TO TRANSMIT A TIME-COMPRESSED

11   REPRESENTATION IN A BURST TIME PERIOD FOR VIEWING BY A

12   RECEIVER.

13          THE EXAMINER AGAIN REJECTS AND MAKES THIS POINT, THAT

14   ACCORDING TO THE EXAMINER IT WOULD HAVE BEEN OBVIOUS TO MODIFY

15   IZEKI BY PROVIDING SOME FAST TRANSFER MEANS THAT WOULD ALLOW

16   DATA TO BE TRANSFERRED WITH HIGH SPEED.

17          IN RESPONSE TO THAT BURST CANCELLED ALL ITS ORIGINAL

18   CLAIMS AND ADDED NEW ONES AND SAID AS FOLLOWS:

19       "THE PRESENT INVENTION TEACHES A SYSTEM AND METHOD

20       FOR TRANSMITTING AUDIO/VIDEO SOURCE INFORMATION,

21       NAMELY, FULL MOTION VIDEO PROGRAMS."

22          REMEMBER THERE IS THE '705 PATENT BETWEEN DEVISES,

23   IT'S TIME COMPRESSED TO ALLOW TRANSMISSION IN A BURST

24   TRANSMISSION TIME PERIOD, WHICH IS SUBSTANTIALLY SHORTER THAN

25   THE TIME ASSOCIATED WITH VIEWING.

1      GOES ONTO STAY ABOUT WHAT IZEKI TEACHES, WHICH IS

2   CONVEYANCE VIA INTERFACE TO A STORAGE DEVICE SUCH AS A TAPE,

3   DOESN'T PROVIDE FOR BURST TRANSMISSION OF VIDEO PROGRAMS OVER

4   COMMUNICATIONS CHANNEL, IT'S INTENDED TO FACILITATE PRODUCTION

5   OF A MASTER TAPE.

6      IT REFERS TO REPEATEDLY TO THE NOTION OF TRANSFERRING

7   CONTENT THAT HAS AN INHERENT ELEMENT, YOU HAVE TO TAKE TIME TO

8   PROCESS IT, TO LISTEN TO IT, TO VIEW IT, AND IT CORRELATES THAT

9   WITH THE COMPRESSION AND THE FASTER THAN REAL TIME

10  TRANSMISSION.  AND IT SAYS IZEKI JUST DOESN'T TEACH THIS, NOT

11  CONCERNED WITH TRANSMITTING AUDIO/VIDEO INFORMATION AWAY FROM

12  THE APPARATUS TO ONE OR MORE RECEIVERS.

13      SO EVENTUALLY THE CLAIMS ARE ALLOWED AND THESE ARE THE

14  CONCLUSIONS, AND THE SLIDES LAYOUT THE FILE HISTORY IN SOME

15  DETAIL, THOUGH, I'M NOT TAKING TIME TO READ THEM.

16      BUT WHAT YOU SEE FROM IT, IS THAT BURST EMPHASIZED THE

17  TEMPORAL ASPECT OF THE AUDIO/VIDEO SOURCE INFORMATION TO WHICH

18  THE INVENTION WAS DIRECTED, IT HAS A TEMPORAL CONTENT.

19      IT EMPHASIZED THE TRANSMISSION OF THE INFORMATION TO A

20  RECEIVER FOR THE PURPOSE OF PLAYBACK OR VIEWING.  IT EMPHASIZED

21  THE INVENTION PROVIDED FOR TRANSFERRED INFORMATION BETWEEN

22  DEVICES AND IT DISTINGUISHED IZEKI ON THOSE GROUNDS THAT IZEKI

23  DID NOT TEACH TRANSMISSION OF TEMPORAL CONTENT BETWEEN DEVICES

24  FOR VIEWING, BUT SOLELY PROVIDED FOR CREATION OF A STORAGE

25  MEDIUM WITHIN THE APPARATUS.

1          BURST DID NOT CLEARLY DISCLAIM TRANSFERS OF

2     INFORMATION TO THE DEVICES CAPABLE OF -- ONLY OF STORING

3     INFORMATION AND IT CLEARLY DID NOT DISCLAIM TRANSFERS TO

4     DEVICES THAT WERE CAPABLE OF BOTH STORAGE AND PLAYBACK.

5          IN FACT, THE PATENT AS I'VE SHOWN TALKS REPEATEDLY

6     ABOUT TRANSFERS OF INFORMATION TO THE DEVICES THAT BOTH STORE

7     AND PLAYBACK.  THERE'S NOTHING IN THE PATENT THAT REQUIRES AN

8     EXCLUSION OF TRANSFERS TO DEVICES THAT STORE.

9          NOW, WHAT APPLE DOES IS TO SAY, WELL, THE STORAGE

10    DEVICE YOU CAN DEDUCE FROM THE FIGURES OF THE IZEKI PATENT THAT

11    IZEKI DID PROVIDE FOR TRANSFERS TO AN EXTERNAL DEVICE.  SO

12    LET'S LOOK.

13         WE'RE GOING TO LOOK AT EACH OF THE FIGURES IN THE

14    IZEKI PATENT, IN EACH OF THE FIGURES THAT DESCRIBE THE ENTIRE

15    APPARATUS AND ALTERNATIVE EMBODIMENTS THERE ARE COMPONENTS THAT

16    HAVE DOTTED LINES AROUND IT.  IN FIGURE ONE I'VE GOT YELLOW

17    ARROWS THAT SHOW TWO COMPONENTS THAT HAVE DOTTED LINES AROUND

18    IT.

19         WHAT APPLE WANTS TO SAY THIS COMPONENT DOWN HERE ON

20    THE LEFT-HAND CORNER IS A SEPARATE DEVICE BECAUSE IT HAS A

21    DOTTED LINE AROUND IT.  BUT I THINK ONE THING YOU CAN NOTICE

22    FROM THIS FIGURE, YOUR HONOR, IS THAT ONE THING THAT

23    DISTINGUISHES THESE COMPONENTS WITH DOTTED LINES AROUND THEM

24    FROM EVERYTHING ELSE IS THAT THEY HAVE MULTIPLE COMPONENTS

25    INSIDE THEM.

1    FIGURE 3 THERE'S AGAIN ONE COMPONENT THAT HAS A DOTTED

2  LINE AROUND IT, IT HAS MORE THAN ONE COMPONENT INSIDE.

3    SAME FOR FIGURE 4.

4    FIGURE 5 HAS THREE COMPONENTS WITH DOTTED LINES AROUND

5  IT.

6    THE ONLY THING JUST LOOKING AT IT THAT THEY HAVE IN

7  COMMON IS THAT THEY HAVE MULTIPLE COMPONENTS INSIDE THEM, WHICH

8  ARE CLEARLY DESIGNED TO WORK TOGETHER.

9    APPLE WANTS TO REACH THE CONCLUSION BECAUSE THEY HAVE

10  A DOTTED LINE AROUND IT THEY MUST BE A SEPARATE DEVICE.  JUST

11  SUGGESTED THAT IS NOT AT ALL A NECESSARY CONCLUSION.

12    FIGURE 6, AGAIN, HAS GOT THE ONE THING THAT HAS DOTTED

13  LINES AROUND IT, HAS MULTIPLE COMPONENTS.

14    SO GOING BACK TO THIS REPRODUCTION DEVICE 55, WHAT THE

15  IZEKI PATENT DOES IN DESCRIBING THE PRE-PRODUCTION DEVICE, IT

16  PERFORMS STEPS THAT ARE OCCURRING WITHIN THE APPARATUS AS A

17  WHOLE, AND IT TAKES FILES, IT THEN DOES CHECKS ON THE FINAL

18  STORING SEQUENCE AND ARRANGEMENT, RETURNS THE FILES BACK TO THE

19  HARD DISK UNIT AND TO THE PREMASTERING UNIT.

20    THERE ARE SOME DEVICES DESCRIBED IN IZEKI THAT CLEARLY

21  ARE EXTERNAL TO THE APPARATUS.  IT REFERS TO AN IMAGE PICK UP

22  DEVICE NOT SHOWN, SUCH AS A TELEVISION CAMERA GENERATING A

23  VIDEO SIGNAL WHICH IS APPLIED TO THE VIDEO INPUT UNIT 43.

24    JUST REMEMBER THAT NUMBER 43 IT REFERS TO AN EXTERNAL

25  UNIT NOT SHOWN WHICH GENERATES A VIDEO SIGNAL REPRESENTATIVE OF

1    A GRAPH ANIMATION AND ALIKE.  WHERE DOES THAT COME?  IN INPUT

2    UNIT 43.

3            REFERS TO AUDIO REPRODUCTION DEVICE NOT SHOWN AS SUCH

4    AS AUDIO TAPE RECORDER, WHICH GENERATES AN AUDIO SIGNAL THAT

5    COMES IN THROUGH AUDIO INPUT UNIT 45.

6            SO WE GOT 45 AND 43 WHICH IS WHERE TRULY EXTERNAL

7    DEVICES CONNECT TO THE APPARATUS AND, THERE'S 43 AND 45 AND YOU

8    CAN SEE THESE ARE EXTERNAL DEVICES THEY DON'T HAVE DOTTED LINES

9    AROUND THEM.  THEY'RE CLEARLY DEEMED TO BE EXTERNAL TO THE

10   APPARATUS.

11           HERE'S A DEVICE THAT ARGUABLY IS EXTERNAL, IT'S A

12   PRINTER.  YOU CAN CONCEIVE OF A MACHINE BEING BUILT WITH A

13   PRINTER INSIDE THE HOUSING, SO DOESN'T NECESSARILY MEAN THAT

14   IT'S EXTERNAL, BUT IT COULD BE.  AND YET IT DOESN'T HAVE A

15   DOTTED LINE AROUND IT.  THE POINT IS THAT THE DOTTED LINES IN

16   IZEKI DO NOT CLEARLY INDICATE EXTERNAL DEVICES.

17           THE POINT OF WHICH IS THAT THIS, LIKE MANY OF APPLE'S

18   ARGUMENTS, PUTS A TREMENDOUS AMOUNT OF WEIGHT ON A PROSECUTION

19   HISTORY, THAT AT THE ABSOLUTE BEST FOR THEM IS AMBIGUOUS.

20           AND, IN FACT, I THINK, IT IS NOT AMBIGUOUS, I THINK,

21   IF THE PROSECUTION HISTORY AS READ IT'S QUITE CLEAR WHERE BURST

22   IS DRAWING THE DISTINCTION WITH IZEKI PATENT, BOTH IN THE

23   CONTEXT OF TRANSMISSION AND IN THE CONTEXT OF WHAT MR. POWERS

24   DISCUSSED EARLIER.

25           AND WHAT THEY'RE ATTEMPTING TO DO IS MANIPULATE THE

1   PROSECUTION HISTORY, WHICH IF YOU READ IT IS ABSOLUTELY CLEAR

2   THAT BURST WAS NOT EMBRACING THIS CONCEPT OF TIME COMPRESSION

3   WHICH IS REFERRED TO NOWHERE IN THE PATENT, WHICH BURST DOES

4   NOT REFER TO ANYWHERE IN THE FILE HISTORY AS A TECHNICIAN

5   INTENDS TO EMPLOY.

6          HE USED THE PHRASE TIME-COMPRESSED REPRESENTATION AND

7   REFERS TO TRANSMISSION FOR THE PURPOSE OF PLAYBACK.  SO, YOUR

8   HONOR, THAT CONCLUDES THAT SECTION ON TRANSMISSION TERMS.

9          I THINK, THERE'S WAS A SECOND PIECE I WAS GOING TO

10  COME TO, I THINK, IT'S -- PROBABLY SINCE IT'S FIVE AFTER 1:00

11  I'M GOING TO GO THROUGH IT IN MAYBE FIVE OR 10 MINUTES.  IT

12  RELATES TO AUDIO VISUAL SOURCE INFORMATION AND THE HANDLING OF

13  THAT INFORMATION.

14          **THE COURT:**  WELL --

15          **MR. FOLSE:**  I CAN DO IT NOW, IF YOU PREFER.

16          **THE COURT:**  DO IT VERY QUICKLY.

17          **MR. FOLSE:**  LET'S MOVE TO THAT.  THESE ARE THE FOUR

18  TERMS.  I THINK, FRANKLY, I'LL SAY NOTHING ABOUT THIS LAST

19  MAYBE TWO SENTENCES, ABOUT THAT ONE.

20          AND SO THE AUDIO VISUAL SOURCE INFORMATION THIS IS A

21  TERM THAT COMES UP OFTEN, THE PARTIES ARE IN AGREEMENT THAT

22  AUDIO/VIDEO ARE THE SAME THING AND THEY MEAN AUDIO ONLY, VIDEO

23  ONLY OR AUDIO AND VIDEO.  AND HENCE THE TERM AUDIO AND/OR

24  VIDEO.

25          AND I THINK THE PARTIES ALSO AGREE, IF I'M READING THE

1  BRIEFS CORRECTLY, THAT AUDIO/VIDEO SOURCE INFORMATION AT A

2  MINIMUM MEANS THIS.  AN AUDIO AND/OR VIDEO WORK THAT HAS A

3  TEMPORAL DIMENSION.

4      **THE COURT:**  SOMEBODY WENT TO GET THE LUNCH.

5      **MR. FOLSE:**  LET ME GET BACK TO THAT.  BOTH PARTIES

6  AGREE TO THIS EXTENT.  THAT IT IS AN AUDIO AND/OR VIDEO WORK

7  THAT HAS A TEMPORAL DIMENSION.

8      APPLE THINKS TEMPORAL DIMENSION REALLY ISN'T

9  NECESSARY, THAT THE TERM AUDIO/VIDEO WORK EVERYBODY WOULD

10  UNDERSTAND THAT TO MEAN SOMETHING THAT HAS A TEMPORAL

11  DIMENSION.

12      BUT, AT LEAST, THEY DON'T OBJECT TO IT, THEY JUST

13  THINK IT'S SUPERFLUOUS.  SO WE REFER, WE USE THIS SAME BASIC

14  TERMINOLOGY THAT HAS A TEMPORAL INVENTION THAT CAN BE RECEIVED

15  FROM ONE OR MORE SOURCES, WHICH WE THINK IS AN IMPORTANT

16  CLARIFICATION.

17      THEY DISAGREE WITH THAT AND THEY WANT TO, AGAIN,

18  ENGRAFT THIS PROVISO ONTO THE DEFINITION, SUCH THAT IT SAYS THE

19  ENTIRETY OF THE DATA INTENDED TO BE TRANSMITTED, NOT SEGMENTS

20  OF THAT DATA.

21      AND, I THINK, I'M GOING TO SKIP PAST -- THAT WAS JUST

22  ONE EXAMPLE WHERE AUDIO/VIDEO SOURCE INFORMATION SHOWS UP, BUT

23  IT SHOWS UP IN EACH OF THE STEPS THAT IS PERFORMED IN THE

24  PATENT.

25      SO THE BASIS FOR OUR REQUEST THAT THE CONSTRUCTION

1    INCLUDE A REFERENCE TO WORKS THAT CAN BE RECEIVED FROM ONE OR

2    MORE SOURCES, THAT HAS TWO CONNOTATIONS, YOUR HONOR.

3         ONE IS THAT A SINGLE WORK, LET'S SAY, A MOVIE CAN BE

4    OBTAINED BY THE APPARATUS FROM MULTIPLE SOURCES, THE SAME

5    MOVIE, DOESN'T ONLY HAVE TO COME FROM ONE PLACE.  AND, IN FACT,

6    THERE IS A DESCRIPTION IN THE PATENT OF ALL OF THESE DIFFERENT

7    METHODS FOR RECEIVING INPUT THAT THE APPARATUS EMBODIES.  AND

8    THEY'RE LISTED ON THIS SLIDE HERE.

9         IT'S ALSO -- THERE'S ANOTHER ISSUE AND, BY THE WAY, I

10   DON'T KNOW THIS IS REALLY CONTESTED, I THINK, APPLE CONCEDES

11   THAT THE PROSECUTION HISTORY, THE PATENTS THEMSELVES REFER TO

12   THE FACT THAT WORKS CAN BE OBTAINED FROM MULTIPLE, FROM MORE

13   THAN ONE SOURCE, THOUGH, EVEN THE CLAIM LANGUAGE JUST TALKS

14   ABOUT AUDIO/VISUAL SOURCE INFORMATION COULD COME FROM MULTIPLE

15   SOURCES.

16        BUT THEY ARGUE THAT THERE'S NO SUPPORT FOR THE CONCEPT

17   THAT A SINGLE WORK COULD BE RECEIVED FROM A VARIETY OF SOURCES.

18   I'M NOT A HUNDRED PERCENT SURE I UNDERSTAND WHAT THAT MEANS.  I

19   THINK, THE IDEA OF WORKS COMING FROM MORE THAN ONE SOURCES TWO

20   CONNOTATION.  ONE THE SAME WORK CAN BE ACCESSED FROM MULTIPLE

21   SOURCES, ONE IS THAT PART OF A SINGLE WORK COULD BE RECEIVED

22   FROM DIFFERENT SOURCES.

23        AND, I THINK, IT'S THE LATTER THAT APPLE OBJECTS TO,

24   DESPITE THE FACT THAT THERE ARE EXAMPLES IN WHICH VIDEO INPUT

25   COULD COME FROM A CAMERA AND AUDIO INPUT FOR THE SAME SCENE

1    COME FROM A PHONE.

2         THE PATENTS THEMSELVES AND THE SPECIFICATION TALK

3    ABOUT TAKING PARTS OF WORKS AND BLENDING THEM TOGETHER, USES

4    THE TERM MIXING.  TAKING AUDIO FROM ONE FILE, VIDEO FROM

5    ANOTHER FILE, CALLING UP ONLY APART OF THE VIDEO, EDITING

6    PARTICULAR FRAMES FROM THE VIDEO, THEN PUTTING IT BACK TOGETHER

7    INTO SOMETHING ELSE THEN TRANSMITTING THAT'S DESCRIBED IN THE

8    SPECIFICATION.

9         THERE IS CERTAINLY NOTHING IN THE CLAIM LANGUAGE WHICH

10   SUGGESTS THAT WHAT IS BEING TRANSMITTED, OR WHAT IS BEING

11   EDITED, OR WHAT IS BEING STORED HAS TO CONSTITUTE THE ENTIRETY

12   OF WHAT SOMEBODY CHOOSES TO DEFINE AS A WORK, AND YET, THAT IS

13   WHAT APPLE INTENDS TO ENGRAFF.

14        IT IS A CONCEPT THAT IS NOT PRESENT OR SUGGESTED BY

15   THE CLAIMS, SUPPORTED BY THE SPECIFICATION OR BY THE FILE

16   HISTORY.  AND, I THINK, I PROBABLY LEAVE IT AT THAT.

17        THEY DO REFER REPEATEDLY THEIR FAVORITE PART OF THE

18   SPECIFICATION IS REFERENCE TO A TWO-HOUR MOVIE, WHICH IS AN

19   EXAMPLE THAT'S GIVEN.  BUT THERE'S NO -- THERE'S NOTHING IN THE

20   SPECIFICATION, MUCH LESS THE PATENT CLAIMS WHICH SUGGESTS THAT

21   THE TWO-HOUR MOVIE BECOMES THE TEMPLATE FOR CLAIM CONSTRUCTION.

22        YES, THE PATENT TALKS ABOUT PEOPLE VIEWING ENTIRE

23   MOVIES, AND HOW THAT COULD BE MADE EASIER BY HAVING FASTER THAN

24   REAL TIME TRANSMISSION OF MOVIE FILES, AND THEN THEY CAN VIEW

25   IT AT THEIR PLEASURE, THEY CAN SAVE ON A DEVICE LIKE THIS, BUT

1    IT IN NO WAY SUGGESTS THAT THE ONLY THING THAT CLAIMS COVERED

2    ARE FASTER THAN REAL TIME TRANSMISSION OF WHOLE MOVIES, OR

3    WHOLE SONGS, IT REFERS TO AUDIO/VISUAL INFORMATION.

4         **THE COURT:**  I GUESS, WE'LL HEAR FROM THEM ON THAT AS

5    TO WHAT IT IS THAT THEY HAVE IN MIND.

6         **MR. FOLSE:**  THE ONLY THING THAT I WANT TO SAY ABOUT

7    EDITING --

8         **THE COURT:**  DOES THIS DEVICE, ESSENTIALLY, THAT IS

9    CONTEMPLATED BY THE PATENT, SLICE AND DICE AND ALL THAT KIND OF

10   STUFF?  DO ALL KINDS OF ELABORATE MIXING AND SO FORTH?

11        IF THAT -- IS IT DISCLOSED EITHER IN THE CLAIMS FOR

12   THE SPECIFICATION?

13        **MR. FOLSE:**  I ONLY WANT TO SAY ONE THING ABOUT

14   EDITING.  THIS IS ANOTHER KIND OF OUT OF LEFT FIELD ATTEMPT TO

15   GRAPH ON LIMITATION TO THE CLAIM LANGUAGE.

16        WE DON'T THINK THE WORD EDITING NEEDS TO BE CONSTRUED.

17   IF THEY DO, WE THINK IT MEANS MODIFYING.  THEY THINK IT MEANS

18   MODIFYING, THAT'S PART OF THEIR CONSTRUCTION.

19        BUT THEY WANT TO ADD THIS PARENTHETICAL:  MODIFYING

20   PAREN DOES NOT INCLUDE THE FUNCTION OF CREATING A PLAY LIST.

21   WHY WOULD THEY WANT TO PUT THAT PARENTHETICAL?

22        **THE COURT:**  WITH THAT, WE'LL STOP.

23        **MR. FOLSE:**  THANK YOU.

24        **THE COURT:**  WE'LL SEE YOU, WHAT DO WE NEED, 45

25   MINUTES?

1    **MR. POWERS:** UP TO YOU.

2    **THE COURT:** IT'S -- WE'LL COME BACK, IS THAT RIGHT,

3    1:15? 2:00 O'CLOCK.

4                          (RECESS TAKEN.)

5                          (PROCEEDINGS RESUMED.)

6    **MR. BROWN:** GOOD AFTERNOON.

7    NICK BROWN FOR APPLE. I'M GOING TO BE ADDRESSING --

8    **THE COURT:** DID YOU PUT YOUR NAME ON THE RECORD?

9    I JUST DIDN'T HEAR IT. MAKE SURE THAT COURT REPORTER

10   GETS IT DOWN, PLEASE.

11   **MR. BROWN:** NICK BROWN FOR APPLE, YOUR HONOR.

12   **THE COURT:** OKAY. THANK YOU.

13   **MR. BROWN:** AND I'M GOING TO BEGIN BY ADDRESSING THE

14   TRANSMISSION TERMS. THE DISPUTE HERE, AS THE COURT WILL

15   RECALL, IS WHERE THE TRANSMISSION GOES. THERE'S NO ARGUMENT

16   ABOUT WHAT THE DISPUTE IS.

17   THERE'S ANOTHER DISPUTE, WHICH IS A SECONDARY DISPUTE

18   IN MY MIND, WHICH IS WHETHER THE TRANSMISSION HAS TO BE A

19   DEVICE THAT IS CAPABLE OF PLAYBACK. AND I'LL COME TO THAT

20   NEXT, THE MAJOR ISSUE IS THE EFFECT OF THE FILE HISTORY.

21   THERE'S NO ARGUMENT THERE WAS A DISCLAIMER IN THE FILE HISTORY

22   AND THE QUESTION IS THE SCOPE OF THAT DISCLAIMER.

23   I'M GOING TO BEGIN BY TALKING ABOUT THAT. AS YOUR

24   HONOR WILL RECALL FROM THE TUTORIAL, DURING THE PROSECUTION OF

25   THE PATENT BURST DISTINGUISHED THE IZEKI REFERENCE, AND THE

1    EXAMINER FOCUSED PARTICULARLY ON INTERFACE 80 TO A PREMASTERING

2    UNIT WHICH WAS A TAPE DRIVE.

3            AND BURST MADE VARIOUS REMARKS TO DISTINGUISH THE

4    EXAMINER'S COMMENTS, BUT BURST DIDN'T LIMIT ITS REMARKS TO THAT

5    PARTICULAR INTERFACE FOR THE PREMASTERING UNIT.  HERE'S WHAT

6    THE EXAMINE SAID TO BEGIN WITH.

7            THE EXAMINE SAID THAT IZEKI DISCLOSED THE LIMITATION

8    TO THE CLAIM, INCLUDING RECEIVING, COMPRESSING, STORING,

9    TRANSMITTING.

10           EXAMINER EMPHASIZED THAT THE OUTPUT MEANS 80 OF IZEKI

11   OUTPUT THE EDITED AUDIO INFORMATION AWAY FROM THE AUDIO/VIDEO

12   APPARATUS TO ANOTHER AUDIO/VIDEO APPARATUS.

13           IN RESPONSE TO THAT REJECTION BURST STATED THAT THAT

14   ELEMENT 80 OF IZEKI IS NOTHING MORE THAN INTERFACE TO A FORAGE

15   DEVICE SUCH AS MAGNETIC TAPE.

16           THEN SAID NEITHER INTERFACE 80 OF IZEKI OR ANY OTHER

17   EMBODIMENT DESCRIBED IN THAT REFERENCE HAS THE CAPABILITY OF

18   APPLICANT'S OUTPUT MEANS TO SERIALLY TRANSMIT A TIME-COMPRESSED

19   REPRESENTATION.

20           GO BACK TO THE CONSTRUCTION WE'VE PROPOSED, THAT IS

21   THE SOURCE OF THE LANGUAGE EXCLUDES TRANSFERRING THROUGH AN

22   INTERFACE TO A STORAGE DEVICE.

23           WHAT BURST TOLD THE EXAMINER IS THAT ITS INVENTION DID

24   NOT INVOLVE TRANSFERRING THROUGH AN INTERFACE TO A STORAGE

25   DEVISE SUCH AS MAGNETIC TAPE.

1          **THE COURT:** WHICH OF THE PAGES OF OUR SLIDES IS THIS?

2          **MR. BROWN:** I APOLOGIZE, YOUR HONOR, LET ME HAND THAT

3    UP.

4          **THE COURT:** THAT IS A ATTACHMENT TO A -- I SEE, OKAY.

5    YOU HAVE YOUR OWN BOOK HERE.

6          **MR. BROWN:** I HAVE MY OWN BOOK, WHICH I FORGOT.  I

7    APOLOGIZE.  WE'RE PAGE SIX, THERE'S A SEVEN AND THERE IS A

8    CITATION THERE.  IT'S IN ALL OF THESE REMARKS THAT WE'RE GOING

9    TO BE WALKING THROUGH OCCUR IN THE FILE HISTORY OF THE '705

10   PATENT.

11         BUT THERE'S NO DISPUTE BETWEEN THE PARTIES THAT THESE

12   REMARKS PERTAIN TO THE INTERPRETATION OF ALL THE ASSERTED

13   CLAIMS.

14         **THE COURT:** WITH RESPECT TO THAT PARTICULAR PAGE, IT'S

15   TALKING ABOUT ESSENTIALLY THE TRANSCEIVER OR THE -- STRIKE

16   THAT.

17         THE OUTPUT -- WHERE THE OUTPUT COMES FROM, NOT WHERE

18   IT DOESN'T, DOES IT SAY BECAUSE ONLY HAVE PART OF THIS WAS

19   BURST -- DID BURST RESPONSE ALSO SAY WHERE IT WAS GOING TO?

20         **MR. BROWN:** NO, IT DID NOT.  I WILL COME TO THAT

21   POINT.  I THINK, YOUR EXACTLY RIGHT ABOUT THAT, TALKS ABOUT

22   WHERE IT COMES FROM.

23         AND THE EMPHASIS THERE IT WASN'T AN INTERFACE TO A

24   STORAGE DEVICE, BURST REPEATED THAT SEVERAL TIMES BECAUSE THE

25   EXAMINER REPEATED THE SAME REJECTION I JUST SHOWED YOU AND