1   RELYING ON OUTPUT MEANS 80 OF IZEKI.

2        FOLLOWING THOSE REMARKS WE JUST LOOKED AT EXAMINER

3   REPEATED THAT TEACHES OUTPUTTING AWAY FROM THE AUDIO/VIDEO

4   APPARATUS IN IZEKI.

5        THIS TIME BURST RESPONDED IZEKI TEACHES A COMPRESSION

6   WITHOUT TRANSMISSION PERIOD, FLATLY STATED WHAT'S IN IZEKI IS

7   NOT TRANSMISSION AS CLAIMED BY BURST.

8        THE EXAMINER REPEATED THE REJECTION, REPEATED THE

9   STATEMENT THAT OUTPUT MEANS 80 TEACHES SENDING THE INFORMATION

10  AWAY FROM THE APPARATUS, AND BURST REITERATED THE SAME POINT

11  DESCRIBE WHAT IZEKI DISCLOSED, SAID THAT INFORMATION CAN BE

12  IN -- IZEKI INFORMATION CAN BE CONVEYED VIA AN INTERFACE TO A

13  STORAGE DEVICE.  AND THEN SAID IZEKI DOES NOT PROVIDE FOR BURST

14  TRANSMISSION OF VIDEO PROGRAMS OVER A COMMUNICATIONS CHANNEL.

15       ALSO, SAID VERY SIMILAR TO WHAT WE'VE ALREADY SEEN,

16  OUTPUT MEANS OF 80 IS SIMPLY COMPRISED AS AN INTERFACE FOR

17  TRANSFERRING EDITED FILES TO MASTER TAPE, NOT ANALOGOUS TO THE

18  TRANSMISSION MEANS OR TRANSMISSION STEP OF THE CLAIMED

19  INVENTION.

20       SO THE ISSUE IS THE SCOPE OF THE DISCLAIMER THAT IS --

21       **THE COURT:**  IF YOU BACK UP TO PAGE 12 IN YOUR

22  SUBMISSION, TALKS ABOUT THE EDITING CAPABILITY, APPARENTLY, OR

23  THAT EDITING CAN OCCUR, THIS IS IN IZEKI, RIGHT?

24       **MR. BROWN:**  THAT'S CORRECT.

25       **THE COURT:**  AND THEN CONVEYED VIA INTERFACE TO A

Dockets.Justia.com

1  STORAGE DEVISE, AGAIN, TALKING ABOUT IZEKI?

2          **MR. BROWN:**  CORRECT.

3          **THE COURT:**  THAT DEVICE DOES NOT PROVIDE FOR BURST

4  TRANSMISSION OF VIDEO PROGRAMS OVER COMMUNICATION CHANNEL?

5          **MR. BROWN:**  EXACTLY.

6          **THE COURT:**  THAT'S BURST'S RESPONSE TO THE EXAMINER,

7  RIGHT?

8          **MR. BROWN:**  CORRECT.  SO WHAT BURST IS RECOGNIZING, IS

9  THAT IZEKI IS A DEVICE CAPABLE OF EDITING INFORMATION AND

10  OUTPUTTING IT ONTO A TAPE.  SAID THAT DEVICE DOES NOT PROVIDE

11  FOR TRANSMISSION OVER COMMUNICATIONS CHANNEL DISTINGUISHED

12  BETWEEN AN INTERFACE TO A STORAGE DEVISE AND COMMUNICATION

13  CHANNEL.

14          SO THE QUESTION, IS THE SCOPE OF THE DISCLAIMER THAT

15  WAS AFFECTED BY THESE STATEMENTS?

16          BURST'S ARGUMENT IS THAT THESE STATEMENTS DISCLAIMED

17  ONLY TRANSFERS TO STORAGE DEVICES THAT ARE INTERNAL, SO AS LONG

18  AS YOU SEND INFORMATION OUTSIDE THE APPARATUS THAT'S STILL

19  WITHIN THE SCOPE OF THEIR CLAIM.

20          BURST IS WRONG FOR TWO REASONS.  AND THESE REASONS ARE

21  INDEPENDENT AND THAT'S WORTH EMPHASIZING.  THE FIRST REASON IS

22  THAT BURST DID NOT DISTINGUISH BETWEEN INTERNAL AND EXTERNAL

23  TRANSFERS WHEN THEY WERE TALKING ABOUT IZEKI, SIMPLY SAID IZEKI

24  DIDN'T INVOLVED SENDING INFORMATION TO A STORAGE DEVICE.

25          AND THEY DISTINGUISH THAT FROM A COMMUNICATIONS

1    CHANNEL, THEY MADE NO MENTION OF INTERNAL VERSUS EXTERNAL.

2           THE SECOND REASON, IZEKI DOES DISCLOSE EXTERNAL

3    TRANSFERS.  BUT IT'S IMPORTANT TO UNDERSTAND, THESE ARE

4    INDEPENDENT REASONS TO FIND THERE WAS A DISCLAIMER OF SENDING

5    TO A LOCAL STORAGE DEVICE.

6           AND THE REASON THAT THEY'RE INDEPENDENT IS A CASE I

7    PUT UP A QUOTATION FROM ON THE SCREEN HERE, WHICH SAYS, THERE'S

8    NO PRINCIPLE OF PATENT LAW THAT THE SCOPE OF SURRENDER OF

9    SUBJECT MATTER DURING PROSECUTION IS LIMITED TO WHAT IS

10   ABSOLUTELY NECESSARY TO AVOID A PRIOR ART REFERENCE.

11          IT FREQUENTLY HAPPENS THAT PATENTEE SURRENDER MORE

12   THAN THEY HAVE TO.  WHEN THAT HAPPENS WE HAVE NOT ALLOWED THEM

13   TO ASSERT THE CLAIMS, SHOULD BE INTERPRETED AS IF THEY HAD

14   SURRENDERED ONLY WHAT THEY HAD TO.

15          THAT'S WHAT BURST'S ARGUMENT ABOUT IZEKI EFFECTIVELY

16   DOING HERE.  THEY ARE SAYING, WELL, IZEKI DOESN'T REALLY

17   DISCLOSE TRANSFER TO EXTERNAL DEVICES, THEREFORE, YOU SHOULDN'T

18   READ OUR STATEMENTS ABOUT IZEKI TO BE A DISCLAIMER OF TRANSFERS

19   TO AN EXTERNAL DEVICE.

20          BUT THAT IS SQUARELY CONTRADICTED BY THE LAW, BECAUSE

21   WHAT BURST SAID WHEN THEY DISTINGUISHED IZEKI, WAS THAT THE

22   INTERFACE, NOT MORE THAN INTERFACE TO A STORAGE DEVICE.  THEY

23   DIDN'T SAY IT'S NOTHING MORE AN INTERFACE TO AN INTERNAL

24   STORAGE DEVICE, WHICH IS WHAT THEY'RE NOW TRYING TO READ THE

25   PROSECUTION HISTORY TO SAY.

1        THE NEXT TIME THEY DISTINGUISH IZEKI, ANOTHER

2   STATEMENT THE SAME ISSUE, THEY COULD HAVE SAID IF THEY MEANT

3   WHAT THEY'RE SAYING NOW, THAT IZEKI SIMPLY COMPRISES AN

4   INTERNAL INTERFACE FOR TRANSFERRING EDITED FILES.

5        THAT'S NOT WHAT THEY SAID.  THEY SAID SIMPLY, IZEKI

6   DIDN'T DISCLOSE AN INTERFACE FOR TRANSFERRING FILES, THEY SAID

7   THE INTERFACE WAS NOT ANALOGOUS IF THE TRANSMISSION MEANS OR

8   TRANSMISSION STEP OF THE CLAIMED INVENTION.

9        THAT LANGUAGE IS A CLEAR DISCLAIMER OF INTERPHASES TO

10  STORAGE DEVISES, REGARDLESS WHETHER THEY'RE INTERNAL OR

11  EXTERNAL.  WHAT BURST IS NOW TRYING TO DO, REWRITE THE

12  STATEMENTS THEY MADE IN THE PUBLIC RECORD, THAT'S NOT

13  PERMISSIBLE.

14       **THE COURT:**  THE SPECIFICATION DIDN'T CHANGE, DID IT?

15  THAT FIGURE, WHATEVER IT IS, FIGURE 2 WHATEVER IT IS THAT SHOWS

16  THE MEMORY OR STORAGE DEVICE.

17       **MR. BROWN:**  ABSOLUTELY.  THE SPECIFICATION DIDN'T

18  CHANGE.  I THINK, I WILL TURN TO THE SPECIFICATION IN A MOMENT.

19  I THINK, THE SPECIFICATION IS VERY CLEAR.  IN FACT, IT SAYS IN

20  THE ABSTRACT OF THE '932 PATENT, THE '839 PATENT WHAT

21  TRANSMISSION IS, TRANSMISSION TO A REMOTE LOCATION.

22       AND, I THINK, THERE'S NO QUESTION THAT WHAT BURST

23  DESCRIBED IN THE SPECIFICATION AS TRANSMISSION, AND I'LL GET TO

24  THAT IN JUST A SECOND, IS TRANSMISSION OVER A DISTANCE AS

25  OPPOSED TO TRANSMISSION TO SOMETHING AS LOCAL ADJACENT TO A

1  DEVICE.  SO SPECIFICATION CONSISTENT WHAT THEY SAID IN THE FILE

2  HISTORY HERE.

3      **THE COURT:**  IF YOU'RE INTERPRETATION OF IZEKI AND

4  BURST'S INTERPRETATION AT THIS TIME WAS THAT THE STORAGE DEVICE

5  WAS NOT INTERNAL, RIGHT?

6      IN OTHER WORDS, IN IZEKI COULD BE INTERNAL STORAGE

7  DEVICE, RIGHT?

8      **MR. BROWN:**  I DISAGREE WITH THAT.  CLEARLY DISCLOSED,

9  THAT'S ABOUT -- THE POINT I'M ABOUT TO MAKE.

10     BUT THE FIRST POINT IS, IT DOESN'T MATTER WHAT IZEKI

11  DISCLOSES, WHETHER IT WAS INTERNAL ONLY OR INTERNAL AND

12  EXTERNAL, EITHER WAY WHEN BURST DISTINGUISH IZEKI THEY DIDN'T

13  MAKE THAT POINT, THEY MADE A DIFFICULT POINT.

14     THE POINT THEY MADE, IZEKI DOESN'T PROVIDE FOR

15  TRANSMISSION OVER COMMUNICATION CHANNEL SUCH AS FIBEROPTIC

16  SPECIFICATION, SUCH AS A MODEM, SUCH AS MICROWAVE, THAT WAS

17  ADDED LATER ON.

18     THAT'S WHAT THEY SAID WAS THE DISTINCTION BECAUSE THEY

19  DISTINGUISHED IZEKI ON THE GROUND THERE WAS NO COMMUNICATION

20  CHANNEL AND NOT OPEN GROUND, THERE WAS NO INTERNAL INTERFACE,

21  THAT'S WHAT THEY'RE HELD TO.

22     **THE COURT:**  BUT TO HAVE SOME KIND OF A COMMUNICATIONS

23  CHANNEL GENERALLY WOULD NOT BE WITHIN THE SAME DEVICE, RIGHT?

24     **MR. BROWN:**  EXACTLY RIGHT.

25     **THE COURT:**  BUT THAT DOESN'T MEAN IT HAS TO BE MILES

1  AWAY, IT COULD IT BE RIGHT NEXT TO IT, RIGHT?  STILL HAVE A

2  COMMUNICATIONS DEVICE?

3      **MR. BROWN:**  I THINK, A REASONABLE INTERPRETATION OF

4  COMMUNICATION CHANNEL IS NOT RIGHT NEXT TO IT, IT'S SOMETHING

5  LIKE WAS DESCRIBED IN THE SPECIFICATION.  BUT LET'S --

6      **THE COURT:**  WOULD BEAMING BE, THE ABILITY TO BEAM

7  WOULD THAT BE A COMMUNICATIONS CHANNEL?

8      **MR. BROWN:**  I GUESS, I DON'T UNDERSTAND WHAT YOU'RE --

9      **THE COURT:**  BEAMING, NOW YOU TAKE AND AIM IT AT

10  WHATEVER DEVICE AND YOU HAVE TRAVEL ALONG A BEAM, I GATHER, YOU

11  HAVE TO ASK YOUR EXPERTS WHAT ACTUALLY HAPPENS AS FAR AS THE

12  PHYSICS OF IT ARE CONCERNED, BUT THAT IS A COMMUNICATIONS

13  CHANNEL.

14      IF YOUR ABLE TO COMMUNICATE FROM ONE DEVICE TO ANOTHER

15  DEVICE BY AIMING IT AND BEAMING IT, AS IT'S CALLED, IS THAT A

16  COMMUNICATIONS CHANNEL?

17      **MR. BROWN:**  THAT TO ME DOESN'T SOUND LIKE INTERFACE TO

18  STORAGE DEVICE.

19      **THE COURT:**  I'M NOT ASKING THAT.  IS IT A

20  COMMUNICATIONS CHANNEL?

21      **MR. BROWN:**  I DON'T KNOW THE ANSWER TO THAT.

22      **THE COURT:**  LET'S ASK THE EXPERTS.  WHEN YOU HAVE THE

23  ABILITY TO BEAM FROM ONE DEVICE TO ANOTHER DEVICE AND THEREBY

24  COMMUNICATE INFORMATION FROM ONE DEVICE TO ANOTHER FROM THE

25  BEAMER TO THE BEAMEE, I GUESS, IS THAT A COMMUNICATIONS

1    CHANNEL?

2            **DR. HEMANI:**  YES, THAT WOULD BE CONSIDERED A VERY

3    TRADITIONAL OVER THE AIR COMMUNICATIONS CHANNEL.

4            **THE COURT:**  IS IT, MR. HALPERN?

5            **MR. HALPERN:**  I HAVE TO SAY, IT DEPENDS.  FOR EXAMPLE,

6    I USE MY PALM PILOT, ITS INFRARED TO EXCHANGE THINGS, THAT'S

7    COMMUNICATIONS CHANNEL.

8            I HAVE ALSO SEEN STORAGE DEVICES THAT USE INFRARED OR

9    RADIO AND IN THAT CASE IT'S A STORAGE INTERFACE.  AND SO ONE

10   HAS TO BE A LITTLE CAREFUL ABOUT WHAT KIND OF CHANNEL, BUT

11   CERTAINLY WHAT YOU'RE THINKING OF BEAMING MY BUSINESS CARD TO

12   YOU IS A COMMUNICATIONS CHANNEL.

13           **THE COURT:**  I GUESS, WE HAVE THE ANSWER THEN.  OKAY.

14   THANK YOU.  MOVING RIGHT ALONG.

15           **MR. BROWN:**  MOVING RIGHT ALONG.  SO THE SECOND POINT

16   WHICH, I THINK, IS AN INDEPENDENT REASON TO FIND THAT BURST

17   DISCLAIMED TRANSFERS TO STORAGE DEVICE IS IN LIMITED, WHAT THEY

18   WERE CLAIMING TO TRANSFER TO REMOTE LOCATIONS IS THAT IZEKI, IN

19   FACT, DOES DISCLOSE TRANSFERS TO IN -- EXTERNAL DEVICES.

20           THE PLACE TO START WITH THIS IS THE EXAMINER'S

21   REPEATED STATEMENTS THAT IZEKI SENDS INFORMATION AWAY FROM THE

22   AUDIO/VIDEO APPARATUS, EVEN SAID ONCE TO ANOTHER AUDIO/VIDEO

23   APPARATUS.

24           SO THAT'S A CLEAR STATEMENT THAT IZEKI IS SENDING

25   SOMETHING OUTSIDE THE DEVICE, NOT JUST AN INTERNAL TRANSFER.

1    AND, IN FACT, THE EXAMINER WAS RIGHT, THE EXAMINER WAS

2    SPECIFICALLY REFERRING TO TAPE DRIVES, AS WE TALKED ABOUT

3    BEFORE.

4           AND IN 1988 IN ARTICLE THAT BURST SUBMITTED TO THE

5    EXAMINER BEFORE THESE REMARKS WERE MADE A DESCRIPTION OF TAPE

6    DRIVES WAS INCLUDED IN THAT ARTICLE AND THAT DESCRIPTION

7    INCLUDED A REFERENCE TO AN EXTERNAL TAPE DRIVE, THE IBM 34A,

8    WHICH WAS DESCRIBED THERE WAS EXTERNAL UNIT, THAT WAS TYPICAL

9    OF THE TAPE DRIVES AT THE TIME IN 1988.

10          SO THAT TRANSFER HERE IS JUST WHAT THE EXAMINER SAID

11   IT WAS, A TRANSFER AWAY FROM THE AUDIO/VIDEO APPARATUS TO

12   ANOTHER APPARATUS TO AN EXTERNAL DEVICE.

13          IZEKI ALSO DESCRIBES A REPRODUCTION DEVICE NUMBER 55,

14   AND THAT DEVICE WHICH WE'LL BLOWUP, SEEMS FROM THE FIGURE TO BE

15   A SEPARATE DEVICE AND IT SEEMS THAT WAY FOR A NUMBER OF

16   REASONS.

17          FIRST, AS YOU CAN SEE IT'S GOT ITS OWN FULL SET OF

18   COMPONENTS, IT'S GOT ITS OWN CPU, THE MAIN DEVICE ALSO HAS A

19   CPU, IT'S DESCRIBED AS A DEVICE.

20          IT'S GOT ITS OWN MEMORY, THE MAIN DEVICE ALSO HAS ITS

21   OWN MEMORY, HAS ITS OWN BUS, THE MAIN DEVICE HAS ITS OWN BUS,

22   THIS SIMPLY FROM ITS COLLECTION OF COMPONENTS, SEEMS CLEARLY TO

23   BE A SEPARATE DEVICE.  I DON'T SEE ANY REASON FOR IT TO HAVE

24   ITS OWN CPU RAM AND BUS IF IT WERE SIMPLY PART OF THIS LARGER

25   DEVICE.

1          SECOND, AND I'D LIKE TO REFER YOUR HONOR TO SLIDE 62

2     THAT MR. FOLSE USED, I DON'T KNOW IF YOU STILL HAVE THAT IN

3     FRONT OF YOU, BUT HE PUT UP A SLIDE WHICH IN -- WHICH HE STATED

4     THAT IZEKI HAD DEVISES EXTERNAL TO THE APPARATUS.

5          AND HIS SLIDE IDENTIFIED TWO DEVICES THAT HE SAID WERE

6     EXTERNAL TO THE APPARATUS THAT WERE DESCRIBED IN IZEKI.  THE

7     FIRST ONE WAS QUOTE "AN IMAGE PICK UP DEVICE SUCH AS A

8     TELEVISION CAMERA," AN IMAGE PICK UP DEVICE.

9          THE SECOND ONE WAS AN AUDIO REPRODUCTION DEVICE, SUCH

10    AS A TAPE RECORDER.  THAT SOUNDS A LOT LIKE THE REPRODUCTION

11    DEVICE HERE.

12         SO JUST FROM THE TERMINOLOGY, IN ADDITION TO THE

13    COMPONENTS IN THAT DEVICE, THIS CERTAINLY SEEMS TO BE AN

14    EXTERNAL DEVICE.  THERE'S NO QUESTION THAT IZEKI DISCLOSES

15    TRANSFERRING INFORMATION INTO THAT REPRODUCTION DEVICE.

16         WHAT THAT REPRODUCTION DEVICE DOES FOR BACKGROUND

17    PURPOSE, IT ALLOWS THE PERSON USING THE MAIN DEVICE IN IZEKI,

18    THIS DEVICE HERE WHICH IS AN EDITING APPARATUS AND USED TO EDIT

19    AUDIO/VIDEO INFORMATION, IT ALLOWS THE USER TO VIEW THE EDITED

20    INFORMATION ONCE IT'S COMPLETE.

21         AND IF YOU LOOK AT THIS DESCRIPTION, OPERATES

22    SIMULATION MEANS TO CHECK THE CONTENTS OF THE EDITED AND

23    PROCESSING INFORMATION FILE WERE CONVERTED CORRECTLY.  WHAT YOU

24    DO IN THE MAIN DEVICE, EDIT YOUR INFORMATION, YOU TRANSFER IT

25    OUT TO THE REPRODUCTION DEVICE WHERE IT CAN BE REPRODUCED AND

1   YOU CAN CHECK WHETHER YOU WERE SUCCESSFUL.

2          SO IN SUM, IZEKI DOES DISCLOSE TRANSFERS TO EXTERNAL

3   DEVICES, AND EVEN IF IT DIDN'T BURST STILL DISTINGUISHED

4   CLEARLY IN FILE HISTORY TRANSFERS TO STORAGE DEVISES, AND IT

5   MUST BE HELD TO THOSE STATEMENTS, DISTINGUISHED THEM FROM

6   COMMUNICATIONS CHANNEL NOT FROM INTERNAL TRANSMISSION.

7          TURNING NOW TO THE SPECIFICATION AS PROMISED.  THE

8   SPECIFICATION STATES THAT TRANSMISSION IS SENDING TO A REMOTE

9   LOCATION.  START WITH THE ABSTRACT.

10          **THE COURT:**  WHERE DOES THAT COME FROM?

11          **MR. BROWN:**  COMES FROM THE ABSTRACT OF THE PATENTS.

12          **THE COURT:**  RIGHT.  TRANSMITTING SUCH PROGRAMS TO A

13   REMOTE LOCATION.

14          **MR. BROWN:**  SO THAT IS WHERE THE REMOTE LOCATION

15   LANGUAGE CAME FROM.  IT WAS THE WORDS BURST USED TO DESCRIBE

16   WHERE THE INFORMATION IS SENT.

17          AND THE REMAINDER OF THE LANGUAGE IN THE SPECIFICATION

18   THAT DISCUSSES TRANSMISSION IS CONSISTENT WITH THAT.  IT

19   DOESN'T REPEAT REMOTE LOCATION, BUT IT TALKS ABOUT SENDING

20   INFORMATION OVER DISTANCES USING COMMUNICATIONS CHANNELS THAT

21   CLEARLY OPERATE OVER DISTANCES.

22          SO SPECIFICALLY TALKS ABOUT FIBEROPTIC LINES, TALKS

23   ABOUT PHONE LINES AND TALKS ABOUT MICROWAVE TRANSMISSION.

24          **THE COURT:**  BUT DON'T YOU HAVE A PROBLEM WITH TAKING

25   WHAT ESSENTIALLY WOULD BE A LIMITATION AND READING IT INTO THE

1    CLAIM OR THE ABSTRACT?

2           **MR. BROWN:**  I AGREE COMPLETELY, YOU CAN'T READ A

3    LIMITATION IN FROM THE SPECIFICATION.

4           THE REASON IT MAKES SENSE TO USE THAT CONSTRUCTION

5    HERE, IS BECAUSE WHAT BURST WAS DISTINGUISHING IN THE FILE

6    HISTORY, WHICH WAS CLEARLY A BASIS FOR LIMITING THE CLAIM, WHAT

7    THEY WERE DISTINGUISHING TRANSFERS TO STORAGE DEVICES.  BUT I

8    DON'T THINK IT WOULD BE FAIR SIMPLY TO EXCLUDE ALL TRANSFERS TO

9    STORAGE DEVICES REGARDLESS WHERE THEY ARE.

10          THAT'S BECAUSE THE SPECIFICATION, FOR EXAMPLE, TALKS

11   ABOUT SENDING ONE VCRET, AND AS BURST POINTED OUT, THE SECOND

12   ONE WHICH MIGHT HAVE IT WOULD BE CAPABLE OF STORAGE AND COULD

13   BE CONSIDERED A STORAGE DEVICE.

14          SO I DON'T THINK CAN YOU JUST BLANKETLY SAY THEY

15   EXCLUDE ALL STORAGE DEVICES, INSTEAD YOU SHOULD HOLD THEM TO

16   WHAT THEY SAID, WHICH IS THERE'S A DIFFERENCE BETWEEN AN

17   INTERFACE AND COMMUNICATIONS CHANNEL.

18          AND GIVEN THAT THEY DESCRIBE IN THE SPECIFICATION THE

19   COMMUNICATIONS CHANNEL AS TRANSMISSION TO REMOTE LOCATION,

20   THAT'S THE REASON FOR USING THAT LANGUAGE.

21          SO ON THE SPECIFICATION, THE ONLY OTHER POINT AND WE

22   COULD MOVE THROUGH IT FAIRLY QUICKLY, IS THAT IN EACH INSTANCE

23   WHERE THE PATENT TALKED ABOUT TRANSMISSION, IT'S TALKING ABOUT

24   TRANSMISSION IN THE CONTEXT OF SENDING IT OVER A DISTANCE.

25          SO HERE WE HAVE A DISCUSSION OF TRANSMITTING OVER

1    FIBEROPTIC LINES WHICH CARRIES IT OVER GREAT DISTANCES, SAME

2    THING IN THE SUMMARY OF THE INVENTION.  TALKS ABOUT TELEPHONE

3    LINES, MICROWAVE TRANSCEIVERS, ALL WHICH CARRY INFORMATION OVER

4    DISTANCES, ALL WHICH ARE COMMUNICATIONS CHANNELS.

5         TRANSMISSION CONVENTIONAL PHONE LINES, TRANSMIT VIA

6    MICROWAVE, ALL THE REFERENCE IN THE SPECIFICATION TO WHAT

7    TRANSMISSION IS AND THEY ARE ABOUT SENDING OVER DISTANCE.

8         THERE'S ONE EXCEPTION AND IMPORTANT TO POINT THIS OUT.

9    IN ONE PLACE IN THE SPECIFICATION IT DISCUSSES TRANSMITTING

10   INTERNAL TO THE DEVICE, TALKS ABOUT TRANSMITTING VIA BUS TO

11   MEMORY 13, THAT'S CLEARLY AN INTERNAL TRANSFER.

12        THAT ONE USE DOESN'T APPLY HERE BECAUSE BOTH PARTIES

13   HAVE AGREED THE CLAIM LANGUAGE TRANSMISSION MEANS SENDING IT

14   OUTSIDE THE DEVICE.  AND SO WITH THAT ONE EXCEPTION ALL THE USE

15   IN THE SPECIFICATION TRANSMISSION REFERS TO SENDING IT OVER A

16   DISTANCE TO REMOTE LOCATION USING A COMMUNICATIONS CHANNEL.

17        NOW, IF YOU HAVE ANY QUESTIONS ABOUT THAT PORTION OF

18   THE ARGUMENT, I'M HAPPY TO TAKE THEM.

19        **THE COURT:**  THE TERM REMOTE SHOWS UP IN THE '932, DOES

20   IT SHOW UP ELSEWHERE?

21        DOESN'T SHOW UP IN THE '995, DOES IT?

22        **MR. BROWN:**  THAT'S CORRECT, THEY AMENDED --

23        **THE COURT:**  SHOWS UP IN THE '839.

24        **MR. BROWN:**  IT'S IN THE THREE ABSTRACTS OTHER THAN THE

25   '995, WHICH ARE THE PATENTS THAT FOLLOW THE CONTINUATION IN

1    PART APPLICATION, SO THAT LANGUAGE TO A REMOTE LOCATION WAS

2    ADDED IN THE CIP.

3         **THE COURT:**  IS THERE ANYTHING IN THE PROSECUTION

4    HISTORY THAT TERM WAS ADDED?

5         **MR. BROWN:**  WHY THAT TERM WAS ADDED, NO.  BUT THE

6    PROSECUTION HISTORY TELLS YOU, IS THAT TRANSMISSIONS SOMETHING

7    OVER COMMUNICATIONS CHANNEL AND IS DIFFERENT FROM A TRANSFER

8    THROUGH AN INTERFACE TO A STORAGE DEVICE.

9         **THE COURT:**  YES.

10        **MR. BROWN:**  BUT NOT THE WORD REMOTE, NO.  THE SECOND

11   DISPUTE, YOUR HONOR, IS THE LIMITATION THAT BURST IS SEEKING TO

12   ADD HERE TO A DEVICE CAPABLE OF PLAYBACK.

13        AND HERE I WOULD RETURN TO WHAT YOUR HONOR SAID A FEW

14   MINUTES AGO, WHICH IS YOU NEED A VERY COMPELLING REASON TO

15   IMPORT A LIMITATION FROM THE SPECIFICATION INTO THE CLAIMS.

16        AND GOOD EXAMPLE OF THE COMPELLING REASON LIKE THAT,

17   IS A CLEAR STATEMENT IN FILE HISTORY, WHICH WE CLEARLY HAVE IN

18   THE CONTEXT OF IZEKI, WHICH WE DON'T HAVE HERE, THERE SIMPLY

19   ISN'T JUSTIFICATION FOR ADDING A LIMITATION TO A DEVICE CAPABLE

20   OF PLAYBACK TO THE TRANSMISSION.  THAT'S TRUE FOR AT LEAST TWO

21   REASONS.

22        FIRST PLAYBACK TRANSMISSION ARE CLEARLY DIFFERENT

23   FUNCTIONS, THEY'RE SEPARATELY CLAIMED.  CLAIM 3, FOR EXAMPLE,

24   ADD THE FUNCTION OF PLAYBACK TO THE DEVICE.

25        THE SECOND REASON IS THAT THE CLAIMS, AND AS I THINK

1    YOUR HONOR RECOGNIZED THIS MORNING ARE ABOUT TRANSCEIVERS,

2    THEY'RE ABOUT A PARTICULAR APPARATUS, THE APPARATUS THAT DOES

3    THE TRANSMITTING, THEY'RE NOT ABOUT THE APPARATUS THAT DOES THE

4    RECEIVING AND THE LIMITATION.

5         A DEVICE CAPABLE OF PLAYBACK IS ATTEMPTING TO ADD A

6    LIMITATION OF -- ABOUT THE FUNCTIONALITY OF DEVICE THAT

7    RECEIVES THE TRANSMISSION, WHICH IS NOT THE DEVICE THAT'S

8    CLAIMED.

9              **THE COURT:**  THAT WE KNOW.

10             **MR. BROWN:**  WE DO.

11        TURNING TO THE TERM AUDIO/VIDEO SOURCE INFORMATION,

12   YOUR HONOR.  THERE ARE TWO DISPUTES ABOUT THIS TERM.  THE FIRST

13   IS THE DISPUTE ABOUT WHETHER OR NOT THE INFORMATION HAS TO BE

14   COMPLETE WORK OR WHETHER IT CAN BE SEGMENTS OR PORTIONS OF THAT

15   WORK.

16        AND THE SECOND DISPUTE WHETHER THE -- A SINGLE WORK

17   HAS TO BE RECEIVED FROM ONE OR MORE SOURCES.  THERE'S NO

18   DISPUTE --

19             **THE COURT:**  WHETHER IT CAN BE?

20             **MR. BROWN:**  WHETHER IT CAN BE, THAT'S RIGHT.  THERE'S

21   NO DISPUTE THAT THE PATENT DESCRIBES RECEIVING WORKS FROM A

22   VARIETY OF SOURCES.  SO ONE WORK COULD COME FROM A TAPE,

23   ANOTHER COULD COME FROM AN OPTICAL DRIVE, THAT'S CLEARLY

24   DISCLOSED.  THE QUESTION WHETHER A SINGLE WORK CAN COME FROM

25   MULTIPLE SOURCES?

 1          START BY ADDRESSING THE FIRST QUESTION, WHICH IS THE

 2     QUESTION OF WHETHER THE AUDIO/VIDEO SOURCE INFORMATION HAS TO

 3     BE A COMPLETE WORK.

 4          SO THIS ISSUE WAS SQUARELY BRIEFED AND DECIDED BY

 5     JUDGE MOTZ IN THE MARYLAND CASE.

 6          **THE COURT:**  ONLY ANOTHER DISTRICT COURT JUDGE, YOU

 7     KNOW.

 8          **MR. BROWN:**  THAT'S TRUE.

 9          **THE COURT:**  DIFFERENT DISTRICT.

10          **MR. BROWN:**  A VERY DIFFERENT DISTRICT.  AS MR. POWERS

11     SAID, WE'RE NOT ARGUING FOR ESTOPPEL HERE.  THE POINT HERE,

12     THOUGH, IS DIFFERENT FROM TIME DEPRESSION BECAUSE THIS WAS

13     EXACTLY THE SAME DISPUTE THAT IS PRESENT HERE.

14          AND AS YOU CAN TELL FROM THE FACT I'M RAISING THIS,

15     JUDGE MOTZ REJECTED BURST'S POSITION IN THAT CASE, AND HELD

16     THAT THE SOURCE INFORMATION WAS NOT SEGMENTS OF THE DATA.  AND

17     HE HAD A GOOD REASON FOR DOING THAT.

18          FIRST OF ALL, AND I PUT UP A SLIDE HERE FROM DR.

19     HEMAMI'S TUTORIAL FROM, YOUR HONOR, A WEEK AGO, AS DR. HEMAMI

20     EXPLAINED, THERE'S NO DISPUTE THAT WHAT THE AUDIO/VIDEO SOURCE

21     INFORMATION IS A WORK AND WHEN SHE DESCRIBED WHAT A WORK WAS

22     SHE DESCRIBED A SONG, PROMOTIONAL VIDEO, AND A TV SHOW, SHE

23     DIDN'T TALK ABOUT A SEGMENT, A STRIP OF FRAMES, WHICH IS WHAT

24     BURST IS ASKING FOR HERE.

25          **THE COURT:**  WHAT DO YOU MEAN BY THAT?

| | |
|---|---|
| 1 | I MEAN, WOULD IT HAVE TO BE THE ENTIRE, YOU KNOW, AN |
| 2 | ENTIRE WAGNERIAN OPERA OR JUST ACT I?  WHICH IS LONG ENOUGH AS |
| 3 | IT IS. |
| 4 | MR. BROWN:  THAT'S A GOOD QUESTION. |
| 5 | THE COURT:  I'M TRYING TO FIGURE OUT WHAT YOU REALLY |
| 6 | MEAN BY THAT. |
| 7 | MR. BROWN:  I THINK, THE BEST ANSWER IS, LET'S TALK |
| 8 | ABOUT WHAT WE'RE TRYING TO MAKE CLEAR IT'S NOT.  I THINK, THERE |
| 9 | WAS NO DISPUTE FROM BURST, AS YOU'LL RECALL, THAT THEIR |
| 10 | INVENTION ISN'T TIME COMPLEX MULTIPLEXING. |
| 11 | YOU'LL RECALL I PUT UP A SLIDE FROM THE FILE HISTORY |
| 12 | WHERE THEY SAY VERY CLEARLY WE'RE NOT, HASKELL TEACHES |
| 13 | TIME-COMPRESSION MULTIPLEXING, IT HAPPENS IN REAL TIME.  I WANT |
| 14 | TO WALK-THROUGH AND EXPLAIN WHY THIS MATTER IS HERE. |
| 15 | SO IF WHAT HASKELL DID, AND YOU MAY RECALL THE |
| 16 | ANIMATION IS HASKELL WOULD TAKE MULTIPLE DIFFERENT SIGNALS AND |
| 17 | MULTIPLEX THEM OVER A SINGLE LINE, SO YOU CAN GET MULTIPLE |
| 18 | SIGNALS TRANSFERRING OVER A SINGLE LINE IN REAL TIME. |
| 19 | AND THE WAY IT DID THAT WAS BY TAKING PIECES OF THE |
| 20 | SIGNAL, COMPRESS THEM IN TIME, SO THEY COULD ALL BE PUT ONTO |
| 21 | THE LINE IN THEIR OWN SLOT ONE AFTER ANOTHER. |
| 22 | IF YOU LOOK AT ANY OF THOSE PIECES, ANY ONE OF THOSE |
| 23 | PIECES GOES OVER THAT COMMUNICATIONS LINE MUCH FASTER THAN REAL |
| 24 | TIME.  THE ENTIRE WORK THAT'S BEING SENT GOES IN REAL TIME, AND |
| 25 | THE REASON IS THAT THE LINES BEING SHARED BY MULTIPLE |

1    TRANSMISSIONS.

2             AND BURST CLEARLY IN THE FILE HISTORY DISTINGUISHED

3    THEIR INVENTION FROM THAT TYPE OF SITUATION.  THEY TOLD YOU

4    HERE THAT THAT'S NOT WHAT THEIR INVENTION IS ABOUT.  AND YET IF

5    YOU LOOK AT THE CLAIMS, IF THE AUDIO/VIDEO SOURCE INFORMATION

6    IS JUST A FEW FRAMES OR JUST A PORTION OF A WORK, THEN WATCH

7    WHAT CAN HAPPEN.

8             YOU CAN COMPRESS A PORTION OF THE WORK, YOU CAN STORE

9    THAT, YOU CAN TRANSMIT THAT PORTION OF THE WORK BECAUSE WHAT

10   YOU'RE TRANSMITTING IS STORED TIME-COMPRESSED REPRESENTATION,

11   IF THAT'S -- AND WHAT THE TIME-COMPRESSED REPRESENTATION IS A

12   REPRESENTATION OF SOURCE INFORMATION.

13            SO IF YOU CAN SEND JUST A PIECE OF A WORK FASTER THAN

14   REAL TIME AND PRACTICE THIS CLAIM, THEN YOU'RE DOING EXACTLY

15   WHAT THEY SAID THEY WEREN'T DOING.

16            BECAUSE HASKELL SENDS LITTLE PIECE OF PIECES OF A WORK

17   FASTER THAN REAL TIME, BUT IT SENDS ONLY EACH PIECE FASTER, IT

18   THEN WAITS AFTER IT SEND ONE LITTLE PIECE FOR ALL THE OTHER

19   PEOPLE SHARING THE LINE WITH TO SEND THEIR OWN LITTLE PIECES.

20            SO THE REAL ANSWER TO YOUR HONOR'S QUESTION IS FOR

21   WAGNER, I THINK, ACT I WOULD BE ENOUGH.  WHAT WOULDN'T BE

22   ENOUGH IS SENDING FIVE-SECOND CLIP OR A 15-SECOND CLIP OF A

23   FIRST MOVEMENT OF ACT I.

24            **THE COURT:**  WELL, BUT SURELY THERE'S GOT TO BE A

25   BETTER WAY, IF IN FACT THAT POSITION IS CORRECT.  I'M NOT

1  SAYING IT IS, BUT IF IT IS, THERE'S CERTAINLY HAS TO BE A

2  BETTER WAY OF EXPRESSING THAT AND REFERRING TO IT AS A WORK, AS

3  IF IT HAD A COMPLETE WORK.

4        I MEAN, I THINK, THAT THAT REALLY IS, YOU KNOW,

5  THERE'S NOT A VERY GOOD WAY TO EXPRESS IT.

6        **MR. BROWN:**  YOUR HONOR, I THINK, THE WORD WORK ITSELF

7  DOES THE JOB FAIRLY WELL.  I THINK, WHEN WE WERE TALKING ABOUT

8  WORKS, WHAT WE THINK OF IS A SONG, A VIDEO, A TV PROGRAM.

9        THE REASON FOR THE DISPUTE IS BECAUSE, AND FRANKLY, I

10  HAD A CONVERSATION WITH BURST'S ATTORNEYS THE OTHER DAY, JUST A

11  FEW DAYS AGO TO SEE IF WE COULD RESOLVE THIS DISPUTE, WE

12  ADDRESSED THE QUESTION WHETHER OR NOT WE COULD AGREE IT

13  COULDN'T JUST BE SEGMENTS OF A WORK.

14        WE COULDN'T REACH AGREEMENT ON THAT, YOU HEARD THEM

15  ARGUE IT WOULD BE SEGMENTS OF A WORK, THAT'S WHERE WE'RE

16  STANDING HERE, I THINK, THE WORD WORK ITSELF IS ENOUGH TO MAKE

17  CLEAR WHAT'S BEING TRANSMITTED IS NOT JUST A PIECE OF THAT

18  WORK.

19        **THE COURT:**  BUT WHAT YOU'RE CONTEMPLATING IT WOULD BE

20  TRANSMITTED IN FRAGMENTS, RIGHT?

21        **MR. BROWN:**  WHAT I'M SAYING --

22        **THE COURT:**  IN OTHER WORDS, A WHOLE WORK, BUT WOULD BE

23  TRANSMITTED IN FRAGMENTS.

24        **MR. BROWN:**  THAT'S WHAT THEY CAN'T CLAIM, THAT'S WHAT

25  THEY SAID THEIR INVENTION WASN'T BECAUSE THEY DISTINGUISHED

1  FROM THIS INVENTION FROM SEGMENTS OF A WORK GOING FASTER THAN

2  REAL TIME, WHEREAS THE ENTIRE THING DOES NOT.

3       **THE COURT:**  BUT -- BUT, SEGMENTS COULD, IN FACT, BE

4  TRANSFERRED WITHOUT TRANSFERRING THE ENTIRE WORK, HAPPENS ALL

5  THE TIME.

6       **MR. BROWN:**  THAT'S TRUE.

7       **THE COURT:**  AND YOU DON'T -- YOU'RE NOT STRINGING THEN

8  THOSE SEGMENTS ESSENTIALLY HAVING TO, WHETHER IT'S BY VIRTUE OF

9  MULTIPLEXING OR SOME OTHER MEANS, WITH OTHER WORKS THAT ARE

10 BEING TRANSMITTED OR JOINING UP WITH, I GUESS, OTHER FRAGMENTS

11 OF THE SAME WORK THAT COME FROM OTHER SOURCES, SOURCES OF

12 INFORMATION, RIGHT?

13       I MEAN, COULD YOU JUST SEND A FRAGMENT AND THAT'S IT,

14 THAT'S ALL YOU'RE GOING TO SEND BECAUSE FOR SOME REASON THAT'S

15 ALL YOU WANT TO SEND?

16       **MR. BROWN:**  YOUR HONOR, THAT'S CLEARLY POSSIBLE AND

17 THE ARGUMENT AND, I THINK, THE REALITY WHAT THEY SAID, IS THAT

18 THAT'S NOT WHAT THEIR INTENTION WAS.  THAT'S WHAT HASKELL DID.

19 IT TOOK LITERALLY, THAT'S WHAT HASKELL DID, IT TOOK A PROGRAM

20 AND BROKE IT DOWN INTO PIECES.

21       **THE COURT:**  BUT I'M NOT TALKING ABOUT BREAKING IT DOWN

22 INTO PIECES.  YOU CAN JUST SEND A SEGMENT OF SOMETHING AND NOT

23 SEND THE REST OF IT, THAT'S WHY I THINK THE TERM WORK IS

24 MISLEADING.

25       BECAUSE SUGGESTED, IN FACT, YOU ARE SENDING THE ENTIRE

1    WORK, BUT YOUR -- BUT YOU'RE SAYING THAT -- AND BUT YOU'RE

2    SENDING IT IN FRAGMENTS AND, THEREFORE, YOU'RE ESSENTIALLY

3    READING ON HASKELL.

4           BUT THAT I'M NOT TALKING ABOUT THAT, I'M TALKING ABOUT

5    SENDING WHATEVER YOUR SENDING, THAT'S WHY THIS BIT OF

6    INFORMATION I DON'T KNOW WHY THAT'S SO.

7           **MR. BROWN:**  I HAVE A SUGGESTION.

8           **THE COURT:**  WHY THAT'S AMBIGUOUS.  I THINK, IT'S

9    PERFECTLY CLEAR, THE SOURCE OF INFORMATION COULD BE PART OF A

10   WORK, COULD BE A WHOLE WORK, WHATEVER, THERE HAS TO BE A BETTER

11   WAY OF GETTING AT WHAT YOU'RE TRYING TO GET AT WITHOUT THAT

12   MISLEADING LANGUAGE.

13          **MR. BROWN:**  I HAVE AN ALTERNATIVE SUGGESTION.  IN

14   FACT, THE CONSTRUCTION WE ORIGINALLY PROPOSED.

15          IF YOU GO TO SLIDE 40.  BEFORE WE -- BEFORE I CHANGE

16   IT ON THE SCREEN, THE REASON I THINK THE SOLUTION IS THAT WHAT

17   IS BEING SENT IS THE SOURCE INFORMATION, IS WHAT IS ULTIMATELY

18   TRANSMITTED IN TIME-COMPRESSED FORM.  YOU CAN TELL THAT FROM

19   THE CLAIM LANGUAGE YOU START WITH SOURCE INFORMATION, YOU

20   COMPRESS IT, YOU STORE IT AND YOU TRANSMIT IT.

21          **THE COURT:**  SO YOU KNOW -- RIGHT.

22          **MR. BROWN:**  SO KNOW FROM CLAIM CHANGING WHAT YOUR

23   SENDING --

24          **THE COURT:**  IS WHAT YOU GOT.

25          **MR. BROWN:**  YOU KNOW, FROM THAT CLAIM LANGUAGE YOU'RE

1  NOT DOING WHAT HASKELL DID.  YOUR TAKING THIS THING YOU MEAN TO

2  SEND, BREAKING IT UP INTO MANY PIECES AND SENDING EACH PIECE

3  FASTER THAN REAL TIME.  SO IF WE COULD GO BACK TO SLIDE 40.

4          THE CONSTRUCTION PROPOSED ATTEMPTED TO CAPTURE EXACTLY

5  THAT.  THE ENTIRETY OF THE DATA INTENDED TO BE TRANSMITTED, NOT

6  SEGMENTS OF THE DATA.  WE TOOK THAT LANGUAGE FROM JUDGE MOTZ

7  AND I THINK THAT LANGUAGE CAPTURES WHAT YOUR HONOR IS SAYING.

8          **THE COURT:**  HE HAD A HARD TIME WITH IT, THE COMPLETE

9  WORK LANGUAGE AS WELL.

10         **MR. BROWN:**  THE WORK LANGUAGE WASN'T IN FRONT OF HIM,

11  YOUR HONOR.  THE WORK LANGUAGE WAS AN ATTEMPT TO REACH

12  AGREEMENT BETWEEN US, BUT THAT CONSTRUCTION WHICH WE PROPOSED,

13  I BELIEVE, CAPTURES THE CONCEPT YOU'RE TRYING TO ARTICULATE.

14         **THE COURT:**  WHY NOT JUST SAY THE SOURCE INFORMATION

15  TRANSMITTED, RECEIVED?

16         **MR. BROWN:**  RIGHT, THAT --

17         **THE COURT:**  THE ENTIRETY OF THE SOURCE INFORMATION

18  RECEIVED.

19         **MR. BROWN:**  THAT IS THE CONCEPT WE'RE TRYING TO

20  CONVEY, YOUR HONOR, EXACTLY THAT.

21         **THE COURT:**  OKAY.

22         **MR. BROWN:**  THE ENTIRETY OF THE DATA IS TO BE SENT OR

23  IS RECEIVED, THAT'S EXACTLY RIGHT.

24         **THE COURT:**  OKAY.  GO AHEAD.

25         **MR. POWERS:**  SO I'M GOING TO LEAVE THAT ISSUE.  WE

1    DON'T NEED TO DISCUSS THIS.  I'LL NOTE IN PASSING THAT THE

2    SPECIFICATION CONSISTENTLY REFERS TO WHAT IS SENT AS A PROGRAM.

3              **THE COURT:**  YES, COULD WE GET TO THE BUT NOT A PLAY

4    LIST LANGUAGE?

5              **MR. BROWN:**  LET'S GET TO NOT A PLAY LIST.  I THINK, I

6    DON'T HAVE MUCH TO SAY ABOUT THIS MULTIPLE SOURCES OTHER THAN

7    I --

8              **THE COURT:**  NO, I DON'T THINK YOU NEED TO SAY

9    ANYTHING.

10             **MR. BROWN:**  WE'LL TALK ABOUT THE PLAY LIST.

11             **THE COURT:**  THOROUGHLY BRIEFED.  MORE THAN THOROUGHLY

12   BRIEFED.  MY LAW CLERK WILL READ IT.

13             **MR. BROWN:**  SO THE ISSUE HERE, YOUR HONOR, IS THE

14   MEANING OF EDITING.  I THINK, MORE IMPORTANTLY WE SHOULD TALK

15   ABOUT WHAT WE AGREE ABOUT.

16             WHAT WE AGREE, EDITING MEANS MODIFYING SOMETHING.  WE

17   AGREE WHAT IS MODIFIED IS THE TIME-COMPRESSED REPRESENTATION.

18   SO I PUT A QUOTE ON THE SCREEN FROM BURST'S BRIEF WHERE THEY

19   CLEARLY STATE THAT EVERY ONE OF THE ASSERTED CLAIMS THAT USES

20   THE TERM EDITING ALREADY EXPRESSLY STATES SOME TYPE OF

21   TIME-COMPRESSED REPRESENTATION BEING EDITED.

22             THERE'S NO DISPUTE WHAT'S BEING EDITED IS THE

23   REPRESENTATION OF THE AUDIO/VIDEO INFORMATION.  SO THE DISPUTE

24   ABOUT PLAY LIST IS FAIRLY SUMMARIZED, AS CAN YOU CALL A PLAY

25   LIST A REPRESENTATION OF AUDIO/VIDEO SOURCE INFORMATION AND --

1      **THE COURT:**  WELL, IS THE TERM EDITING USED SEPARATE

2   AND APART FROM OR THAT CONTEXT?

3          IN OTHER WORDS, FOR EXAMPLE, WHERE IT SAYS IN CLAIM 2

4   OF THE '995, EDITING THE TIME-COMPRESSED REPRESENTATION, IT

5   TELLS YOU WHAT'S BEING EDITED.

6      **MR. BROWN:**  EXACTLY.

7      **THE COURT:**  EVERY TIME THE TERM EDITING BEING USED, IT

8   DOES ESSENTIALLY HAVE THAT MODIFIER.

9      **MR. BROWN:**  YES, THAT WAS UNDISPUTED.  THAT'S WHAT I

10  PUT ON THIS SLIDE, SLIDE 56.  THE PARTIES AGREE EDITING ALWAYS

11  APPLIES, THAT WHAT'S BEING EDITED IS ALSO THE TIME-COMPRESSED

12  REPRESENTATION.

13         AND SO THE QUESTION AT THAT POINT IS WHETHER

14  INFORMATION ABOUT HOW VARIOUS SONGS, LET'S JUST USE SONGS, CAN

15  BE ARRANGED, WHICH IS WHAT A PLAY LIST IS, WHETHER THAT IS A

16  REPRESENTATION OF AUDIO/VIDEO SOURCE INFORMATION OR WHETHER

17  IT'S SOMETHING ELSE.

18     **THE COURT:**  THAT'S --

19     **MR. BROWN:**  METADATA OR CATALOGUING, THAT'S EXACTLY

20  RIGHT.

21     **THE COURT:**  M-E-T-A-D-A-T.

22     **MR. BROWN:**  D-A-T-A, THAT'S RIGHT.

23     **THE COURT:**  METADATA, BUT I THOUGHT YOU USED THE INK,

24  METADATA, WHATEVER, YOU'RE RIGHT, OF THE METADATA MAKES IT

25  EASIER, WE ALL KNOW HOW TO SPELL THAT ONE.

1      **MR. BROWN:**  SO THE POINT WHICH, I THINK, EXACTLY WHAT

2  YOUR HONOR JUST SAID, IS THE INFORMATION THAT ABOUT THE ORDER

3  IN WHICH YOU PLAY SONGS IS CATALOGUING INFORMATION AND IT IS

4  NOT THE SONG INFORMATION, THE AUDIO/VIDEO INFORMATION ITSELF.

5      YOU CAN CHANGE THE ORDER IN WHICH YOU PLAY SONGS

6  WITHOUT CHANGING THE REPRESENTATIONS OF THE SONGS AND BECAUSE

7  OF THAT WE THINK THAT THE CLAIM LANGUAGE MAKES VERY CLEAR THAT

8  EDITING CAN'T INCLUDE CREATING A PLAY LIST ABOUT THE ORDER IN

9  WHICH YOU PLAY REPRESENTATIONS BECAUSE WHAT YOU EDIT HAS TO BE

10  THE TIME-COMPRESSED REPRESENTATION.

11      **THE COURT:**  WHAT IF ALL THAT YOU HAVE IS THE TITLE OF

12  THE SONG AND THE TIME COMPRESSED REPRESENTATION DOESN'T INCLUDE

13  THE TITLE, NOT TALKING ABOUT THEN ORDERING IT AS IN A PLAY

14  LIST, BUT JUST HAS A BUNCH OF TITLES, THEY'RE ALL ESSENTIALLY

15  IN THE ORDER IN WHICH THE SONGS ARE TRANSMITTED, JUST YOU KNOW,

16  IDENTICAL ORDER.

17      **MR. BROWN:**  SO, FOR EXAMPLE, I THINK WHAT YOUR HONOR

18  IS TALKING ABOUT IS EDITING A PLAY LIST AND THERE'S NO QUESTION

19  THAT YOU CAN EDIT A PLAY LIST.  I'VE DONE THAT ON MY COMPUTER,

20  I DECIDE I WANT TO PLAY SONGS IN A DIFFERENT ORDER.

21      **THE COURT:**  I'M TALKING ABOUT ORDER THEM NOW, I'M JUST

22  TALKING ABOUT THEY APPEAR ON THE -- WHEN THEY'RE RECEIVED

23  THROUGH THE TRANSMISSION THEY APPEAR IN THE SAME ORDER, WITH

24  THE SAME TITLE AS DESCRIBED TO THEM IN THE REPRESENTATION,

25  TIME-COMPRESSED REPRESENTATION IN THE TRANSMISSION, I SHOULD

1    SAY.

2            OKAY.  THE TRANSMISSION GIVES YOU A CERTAIN NUMBER OF

3    SONGS AND IT GIVES YOU THOSE SONGS IN A PARTICULAR ORDER AND

4    THEY HAVE TITLES ATTACHED TO THEM.  OKAY.

5            **MR. BROWN:**  YES.

6            **THE COURT:**  IF YOUR JUST LISTING THE TITLES IN THE

7    VERY SAME ORDER IN WHICH YOU RECEIVED THEM, IS THAT EDITING?

8            **MR. BROWN:**  LISTING TITLES?

9            **THE COURT:**  UH-HUH.

10           **MR. BROWN:**  I DON'T SEE HOW LISTING THE TITLES IS

11   EDITING.  I ALSO DON'T THINK THAT'S THE ISSUE, BECAUSE THE

12   ISSUE THE PARTIES HAVE AGREED WHAT IS EDITED IS A

13   REPRESENTATION.

14           THE CLAIMS ARE VERY CLEAR, IN EVERY CLAIM THAT'S AT

15   ISSUE WHAT IS BEING REPRESENTED IS AUDIO/VIDEO SOURCE

16   INFORMATION, SO WHAT THIS BOILS DOWN TO IS WHETHER TITLES ARE

17   AUDIO, WHICH ARE WORDS ARE AUDIO/VIDEO SOURCE INFORMATION  --

18           **THE COURT:**  IN OTHER WORDS, THEY'RE JUST EXTRACTED

19   FROM THE TRANSMISSION WITHOUT THE SONG, THEN THEY APPEAR ON A

20   LIST, BUT ALL ON THE SAME ORDER IN WHICH THEY'RE RECEIVED, IT

21   DOES THAT AMOUNT TO EDITING.

22           **MR. BROWN:**  NOT IN MY MIND, YOUR HONOR.  BUT ALSO

23   DOESN'T HAVE ANYTHING TO DO WITH THE CLAIM.  THE CLAIMS ARE

24   ABOUT AUDIO/VIDEO SOURCE INFORMATION, NOT THE TITLES OF THE

25   SONGS.  SO WHAT MATTERS TO THE CLAIM IS THAT YOU COMPRESS,

1    STORE, TRANSMIT AUDIO, A REPRESENTATION OF AUDIO/VIDEO SOURCE

2    INFORMATION.

3         **THE COURT:**  OKAY.  RIGHT.  OKAY.  BUT WHAT IS BEING

4    DISCUSSED IS A PLAY LIST, NOT THE WHOLE SONG.  I ASSUME, IT'S

5    THE ORDER IN WHICH THEY'RE PLAYED, BUT THEY HAVE TITLES, OR AM

6    I JUST TALKING ABOUT WHAT APPEARS ON THE DISPLAY?

7         **MR. BROWN:**  I THINK YOU'RE RIGHT, THAT'S WHAT A PLAY

8    LIST IS.  AND, I THINK, WHAT WE'RE TRYING TO MAKE CLEAR BECAUSE

9    THE CLAIMS SAY EDITING TIME-COMPRESSED REPRESENTATION.

10        **THE COURT:**  ON THE SOURCE INFORMATION.

11        **MR. BROWN:**  RIGHT, THAT'S NOT EDITING A PLAY LIST.

12   RECEIVING A LIST OF SONGS WOULDN'T BE EDITING A PLAY LIST, BUT

13   ONCE YOU RECEIVED THEM, IF YOU MOVED THE SONGS AROUND THAT

14   WOULD BE EDITING THE PLAY LIST.  THAT'S DIFFERENT.

15        **THE COURT:**  I UNDERSTAND.  SO WHAT'S THE REASON FOR

16   INCLUDING THIS LANGUAGE OF PLAY LIST?

17        **MR. BROWN:**  THE REASON, YOUR HONOR, IS TO MAKE CLEAR

18   THAT WHEN YOU EDIT A PLAY LIST YOU'RE NOT EDITING SOURCE

19   INFORMATION.

20        FRANKLY, I THINK, IT'S CLEAR FROM THE CLAIM LANGUAGE

21   ITSELF, BUT BURST OBVIOUSLY DISAGREES.  THEY'RE SAYING A PLAY

22   LIST AND EDITING A PLAY LIST COULD BE INCLUDED WITHIN THE CLAIM

23   LANGUAGE, SO WE HAVE A DISPUTE ABOUT THE ISSUE.

24        THE FINAL TERM, YOUR HONOR, MULTIPLICITY, I WON'T SAY

25   MUCH ABOUT THIS.  OUR CONSTRUCTION, TWO OR MORE FAIRLY LARGE

1    NUMBER IS DRAWN STRAIGHT FROM THE ORDINARY MEANING OF THAT TERM

2    IN PATENT DRAFTED WE PUT IT UP HERE FROM CLAIM DRAFTING.

3    LITERALLY THE DEFINITION IN LANDIS THE TERM MULTIPLICITY WE'VE

4    INCLUDED IT.

5         **THE COURT:**  THANK YOU.

6         **MR. BROWN:**  THANK YOU, YOUR HONOR.

7         **THE COURT:**  NOW, THE NEXT SERIES THE FUN BEGINS,

8    RIGHT?  IF YOU WEREN'T ALREADY HAVING FUN.

9         **MR. PAYNE:**  GOOD AFTERNOON.

10        MY NAME IS LES PAYNE, I REPRESENT BURST.  THE

11   MATERIALS -- IF YOU LOOK IN THE BINDER MR. FOLSE HANDED UP TO

12   YOU, I BELIEVE, IT'S TAB FOUR IN THE MATERIALS.

13        THESE ARE EIGHT TERMS IN DISPUTE.  I'M GOING TO

14   ADDRESS EACH OF THESE TERMS, WITH ONE CAVEAT, WHICH IS MR. HEIM

15   WILL ADDRESS THE LAST TERM.  COMPRESSION MEANS.

16        **THE COURT:**  IS THERE ANYTHING YOU WANT TO SAY ABOUT,

17   IN ADDITION THERE'S ANY NEED TO SAY ANYTHING DO YOU THINK ABOUT

18   1126 ITSELF?

19        **MR. PAYNE:**  YES.

20        **THE COURT:**  SOMETHING YOU WANT TO SAY ABOUT THAT OR

21   COULD WE JUST LIVE WITH WHAT EVERYBODY HAS BRIEFED ON THAT AND

22   ASSUME WE KNOW WHAT THE CONSEQUENCES OF INCLUDING OR NOT

23   INCLUDING STRUCTURE IN THE CLAIM MEAN?

24        **MR. PAYNE:**  THE MAJORITY OF OUR PRESENTATION IS

25   DEVOTED TO THE THRESHOLD ISSUE, WHICH IS WHETHER 1126 APPLIES.

1      **THE COURT:**  AS TO EACH OF THESE TERMS THEN?

2      **MR. PAYNE:**  NO, ACTUALLY ONLY AS TO 1, 2, 3 AND 4,

3  WHICH IS GOOD POINT.  THE PARTIES AGREE 5, 6, 7 AND 8 BECAUSE

4  THEY'RE NOT STRUCTURAL IN NATURE ARE SUBJECT TO 1126.  BUT AS

5  TO ITEMS 1, 2, 3 AND 4 THE PARTIES DISAGREE, IT'S OUR

6  CONTENTION THAT BECAUSE THOSE TERMS HAVE STRUCTURE THAT 1126

7  DOES NOT APPLY.

8      THAT THE PRESUMPTION IS REBUTTED, IT'S APPLE'S

9  CONTENTION THAT 1126 DOES APPLY TO THE FIRST TERMS.  THAT'S THE

10  MAJORITY OF MY PRESENTATION TODAY.

11      THE FIRST SLIDE REALLY POINTS OUT THE VERY SIGNIFICANT

12  POINT, WHICH IS THAT THE FIRST FOUR TERMS ARE STRUCTURAL IN

13  NATURE.  IN FACT, THERE'S REALLY NO DISPUTE ABOUT THAT.

14      APPLE AGREES, CONNOTES SOME STRUCTURE.  THAT'S WHY

15  BURST HAS SAID THOSE TERMS ARE NOT SUBJECT TO 1126.  BURST HAS

16  TAKEN A VERY FAIR-MINDED REASONABLE APPROACH TO THIS ISSUE.  AS

17  TO THE LATTER TERMS 5, 6, 7 AND 8 WHERE THERE IS NO STRUCTURE

18  BURST AGREES THAT 1126 APPLIES.

19      BUT WHERE THERE IS STRUCTURE ITEMS 1, 2, 3 AND 4, 1126

20  DOES NOT APPLY.  ON THE OTHER HAND, APPLE HAS TAKEN A VERY

21  AGGRESSIVE APPROACH AS TO ALL OF THESE MEANS TERMS, EVEN THE

22  ONES THAT INCLUDE STRUCTURE THEY SAY 1126 APPLIES.

23      WE'LL SEE IN A MINUTE THAT AS TO THE FIRST FOUR TERMS

24  THERE IS A FUNDAMENTAL DISPUTE ON THE LAW AS TO THE THRESHOLD

25  ISSUE.  I'LL GET TO THAT IN A MINUTE.

1        IF THERE ARE FOUR CRITICAL POINTS I CAN MAKE TODAY

2   IT'S, NUMBER ONE, THAT THE FIRST FOUR TERMS ARE STRUCTURAL IN

3   NATURE AND THERE IS NO DISPUTE ABOUT THAT.

4        NUMBER TWO, THOSE FIRST FOUR TERMS VERY WELL

5   UNDERSTOOD MEANINGS IN THE ART IN THE RELEVANT TIME FRAME.  WE

6   HAVE PRESENTED EVIDENCE TO THAT EFFECT, THERE IS NO EVIDENCE

7   THAT APPLE'S PRESENTED TO THE CONTRARY.  WE'LL SEE THAT'S VERY

8   IMPORTANT UNDER THE GUIDING LEGAL PRINCIPLES.

9        NUMBER THREE, WE'LL ALSO SEE THAT THE BURST PATENT

10  DRAFTER, WAS QUOTE "ENAMORED" OF USING THE WORDS MEANS.  HE

11  USED THE WORD MEANS WITH STRUCTURE REPEATEDLY OVER AND OVER AND

12  OVER, WE'LL GET TO THAT SLIDE IN A MINUTE.

13       THE CASE LAW SAYS WHEN THAT HAPPENS, WHEN THE PATENT

14  DRAFTER IS A ENAMORED OF USING THE WORD MEANS OF STRUCTURE,

15  IT'S STRONG EVIDENCE THAT THE 1126 PRESUMPTION IS REBUTTED.

16       AND, FOURTH, AS I MENTIONED, APPLE JUST HAS THE LAW ON

17  THEIR THRESHOLD ISSUE WRONG.

18       SO THE THRESHOLD ISSUE RANDOM ACCESS, RANDOM ACCESS

19  STORAGE, STORAGE INPUT OUTPUT, THOSE TERMS HAVE SUFFICIENT

20  STRUCTURE IN AND OF ITSELF.  APPLE'S POSITION IS THAT THE 1126

21  APPLIES BECAUSE STRUCTURE -- BECAUSE LISTED IS NOT DEFINITE

22  ENOUGH, THE BASIC UNDERPINS 1126, YOU KNOW THIS LAW, I COULD GO

23  OVER QUICKLY?

24       1126 ALLOWS THE CLAIM DRAFTER, WITHOUT RECITING ANY

25  STRUCTURE IN THE MEANS PORTION OF THAT LIMITATION.  IT'S

1    CONSTRUED TO COVER ONLY THE CORRESPONDING STRUCTURE IN THE SPEC

2    AND EQUIVALENCE THEREOF.

3        I'M GIVING AN EXAMPLE OF A MEANS PLUS FUNCTION

4    ELEMENT.  THE BOTTOM OF THE SLIDE MEANS FOR CALCULATING, YOU'LL

5    SEE THAT'S PURELY FUNCTIONAL.  THAT'S WHAT THE STATUTE TEACHES

6    DRAFT CLAIMS THAT ARE PURELY FUNCTIONAL, AND IN SHORT CONTRAST

7    THE FIRST FOUR CLAIMS IN THE DISPUTE HERE IN TERMS IN DISPUTE

8    ARE STRUCTURAL IN NATURE.

9        THEY ARE NOT IN THE CLASSIC 1126 PARADIGM, THAT'S

10   BECAUSE THEY INCLUDE STRUCTURE AND THAT IS VERY TELLING.  THE

11   LAW SAYS THAT WHEN THEY INCLUDE STRUCTURE THE 1126 PRESUMPTION

12   IS REBUTTED AND 1126 DOES NOT APPLY.

13       HERE THE KEY LEGAL PRINCIPLES, NUMBER ONE, THE PARTIES

14   AGREE THAT WHEN THE WORD MEANS IS USED A PRESUMPTION ARISES

15   THAT 1126 APPLIES, BUT THE PARTIES ALSO AGREE THAT PRESUMES A

16   REBUTTABLE.

17       TWO, THE PARTIES AGREE WHEN CONSIDERING THE THRESHOLD

18   ISSUES THE REAL FOCUS IS THE UNDERSTANDING OF ONE OF ORDINARY

19   SKILL IN THE ART.

20       THREE, THE THREE CASES WE CITED IN OUR BRIEF ALLEN

21   ENGINEERING, COLON AND BERRY COULD STAND FOR THE PROPOSITION

22   THE PRESUMPTION IS REBUTTED IF THE TERM RECITES A SUFFICIENT

23   STRUCTURE FOR PERFORMING THE CLAIM FUNCTION.

24       FOUR, THIS IS VERY IMPORTANT POINT, THE TERM RECITES

25   SUFFICIENT STRUCTURE TO REBUT THE PRESUMPTION IF IT HAS A

1    REASONABLY WELL UNDERSTOOD MEANING IN THE ART.  THAT'S THE ALAN

2    ENGINEERING CASE.

3         THAT'S THE VERY IMPORTANT CASE BECAUSE IT SETS FORTH

4    ONE OF THE LITMUS TESTS, DOES THE STRUCTURE HAVE A REASONABLY

5    WELL UNDERSTOOD MEANING OF ART IN THE RELEVANT TIME FRAME?

6         LAW ALSO SAYS WE CAN LOOK AT DICTIONARIES TO DETERMINE

7    WHETHER THE TERM CONNOTES STRUCTURE.  PHILLIPS IS AN

8    INSTRUCTIVE CASE, WE TALKED ABOUT THAT, AND IN THAT CASE THE

9    FEDERAL CIRCUIT EN BANC SAID MEANS PLUS FUNCTION CLAIM APPLIES

10   ONLY TO PURELY FUNCTIONAL LIMITATIONS THAT DO NOT PROVIDE THE

11   STRUCTURE.

12        THE COURT IS EMPHASIZING 1126 APPLIES TO PURELY

13   FUNCTIONAL LIMITATIONS.  NOT LIMITATIONS LIKE OURS THAT

14   INCLUDES STRUCTURE, INPUT, OUTPUT, STORAGE, RANDOM ACCESS

15   STORAGE.

16        THE COLE CASE INSTRUCTIVE, IN THAT CASE THE FEDERAL

17   CIRCUIT HELD THAT THE PATENTEE SUCCESSFULLY REBUTTED THE 1126

18   PRESUMPTION.  THE TERM THERE WAS PERFORATION MEANS.  THE COURT

19   SAID 1126 WAS NOT APPLICABLE BECAUSE PERFORATION CONNOTE

20   SUFFICIENT STRUCTURE.  THE COURT REACHED ITS RULING ON SEVERAL

21   GROUNDS, HAD LOOKED AT DICTIONARY DEFINITION.

22        TWO, WE'LL SEE THEM THROUGHOUT THE CASE LAW, AND THE

23   COURT FOUND THE PRESUMPTION WAS WEAKENED BECAUSE THE CLAIM

24   DRAFTER THERE WAS ENAMORED OF USING THE WORD MEANS.

25        THAT IS AN EXTREMELY IMPORTANT PRINCIPLE IN OUR CASE

1    BECAUSE AS WELL SEE THE BURST PATENT CLAIM DRAFTER WAS ENAMORED

2    OF USING THE WORD MEANS WITH STRUCTURE OVER AND OVER AND OVER

3    AND IN THAT CONTEXT THE CASE LAW SAYS THE PRESUMPTION CAN BE

4    REBUTTED.

5            FINALLY, THE COURT RELIED ON THE FACT THE STRUCTURE

6    PERFORATION HAD A LOCATION RECITED CLAIMS.  THAT'S THE PLAY IN

7    OUR CASE, TOO, BECAUSE THE TERMS, THE FIRST FOUR TERMS FOCUSING

8    ON HAVE LOCATION IN THE CLAIMS.

9            I MENTIONED THE ALAN ENGINEERING CASE BEFORE, IN THIS

10   CASE THE FEDERAL CIRCUIT ALSO HELD THE 1126 PRESUMPTION

11   REBUTTED.  YOU CAN SEE THE TERMS IN THE FIRST BULLET CABLE

12   MEANS, CRANK MEANS, VERY BROAD TERMS THOSE TERMS WERE HELD NOT

13   TO BE SUBJECT TO 1126, THE PRESUMPTION WAS REPEATED IN THIS

14   CASE.

15           THE FEDERAL CIRCUIT SAID A TERM RECITES SUFFICIENT

16   STRUCTURE TO REBUT THE PRESUMPTION QUOTE "IF THE TERM AS THE

17   NAMED FOR STRUCTURE HAS A REASONABLY WELL UNDERSTOOD MEANING IN

18   THE ART."

19           AND THAT IS A CRITICAL TEST, EACH OF THE FOUR TERMS

20   I'M TALKING ABOUT HERE, RANDOM ACCESS STORAGE, STORAGE, INPUT

21   AND OUTPUT, BACK IN THE RELEVANT TIME FRAME, EACH HAVE A WELL

22   UNDERSTOOD MEANING.  WE'VE PRESENTED EVIDENCE ON THAT POINT,

23   THERE IS NO EVIDENCE, YOUR HONOR, TO THE CONTRARY.

24           **THE COURT:**  LET'S GO, IN FACT, TO THE TERMS THEMSELVES

25   NOW.  IF YOU CAN, PLEASE.

1    **MR. PAYNE:**  OKAY.  THE LEGAL POINT I WANT TO MAKE,

2    COULD I JUST MAKE THIS POINT ABOUT THIS, REALLY GOES TO THE

3    HEART OF THE DISPUTE?

4         **THE COURT:**  OF COURSE.

5         **MR. PAYNE:**  THE FRAMEWORK WE'VE TALKED ABOUT.  THE

6    FRAMEWORK WE'VE TALKED ABOUT HAS ESSENTIALLY BEEN BY APPLE.

7    WHAT THEY'RE TRYING TO DO, THEY'RE TRYING TO ARGUE, EVEN THOUGH

8    THE TERMS MIGHT HAVE AN UNDERSTOOD MEANING, IT'S JUST TOO

9    BROAD, IT BRINGS IN TOO MUCH STRUCTURE.

10        AND THERE'S TWO BIG PROBLEMS WITH THAT, YOUR HONOR.

11   FIRST THEY IGNORED --

12        **THE COURT:**  BRINGS IN TOO MUCH STRUCTURE OR NOT

13   ENOUGH?

14        **MR. PAYNE:**  THEY SAY, IT BRINGS IN TOO MUCH, IT'S TOO

15   BROAD, COVERS TOO MANY CLASSES OF STRUCTURES.

16        THE FIRST PROBLEM WITH THAT, IT IGNORES THE REASONABLY

17   WELL UNDERSTOOD MEANING STANDARD WE JUST TALKED ABOUT.

18        BUT THE OTHER BIG PROBLEM, WHAT THEY'RE DOING IS

19   THEY'RE EFFECTIVELY IMPORTING A CONSTRAINT FROM SECTION 1126

20   FOR TERMS THAT ARE ACTUALLY SUBJECT TO THAT STATUTE, AND TAKING

21   IT OVER INTO THE THRESHOLD ISSUE.

22        THE BEST WAY I KNOW HOW TO EXPLAIN THIS PRINCIPLE TO

23   THE COURT, IS TO LOOK AT 1126 ONE SIDE AND LOOK AT THE

24   THRESHOLD ISSUE ON THE OTHER SIDE.

25        THE COURT'S FAMILIAR WITH 1126, THAT APPLIES WHEN THE

```
 1   TERM IS PURELY FUNCTIONAL.  AND THE STATUTE SAYS THE MEANS

 2   PORTION OF A PURELY FUNCTIONAL TERM IS LIMITED TO THE

 3   CORRESPONDING STRUCTURE IN THE SPEC.

 4         IN OTHER WORDS, IT CAN'T COVER EVERY CONCEIVABLE

 5   STRUCTURE THAT PERFORMS THE CLAIM FUNCTION BY STATUTE, IT IS

 6   LIMITED TO THE CORRESPONDING STRUCTURE.

 7         WHAT APPLE HAS DONE, IS THEY BORROWED THAT CONCEPT

 8   WITH THE CONSTRAINT BEING LIMITED TO THE CORRESPONDING

 9   STRUCTURE, THEY IMPORTED IT INTO THE THRESHOLD ISSUE.

10         THE TEST FOR THE THRESHOLD ISSUE IS WHETHER THERE'S A

11   REASONABLY WELL UNDERSTOOD MEANING WITH RESPECT TO THE

12   STRUCTURE.

13         IF THAT MEANING IS BROAD, THAT'S FINE, IT CAN COVER

14   ONE STRUCTURE, IT CAN COVER A THOUSAND STRUCTURES, AS LONG AS

15   THERE IS A WELL UNDERSTOOD MEANING.

16         THE THRESHOLD QUESTION COMES OUT IN FAVOR OF THE

17   PATENTEE, THE 1126 PRESUMPTION HAS BEEN REBUTTED.  THE BIG

18   PICTURE IN THE CLAIMS HERE, IF YOU LOOK AT THE PATENTS YOU'LL

19   SEE THAT THE BURST PATENT DRAFTER INCLUDED THE WORD MEANS IN

20   ALL OF THE STRUCTURAL APPARATUS CLAIM LIMITATION.

21         IN FACT, IF YOU LOOK AT THE '96 APPARATUS CLAIMS, HE

22   USED THE WORD MEANS 316 TIMES, THE '995 PATENT ALONE HE USED

23   THE WORD MEANS 224 TIMES, IN '80 APPARATUS CLAIMS THAT'S WHAT

24   THE FEDERAL CIRCUIT IS TELLING US WHEN A PATENT DRAFTER,

25   ENAMORED OF THE WORD MEANS AND USES IT OVER AND OVER AND OVER
```

1    AGAIN.

2           **THE COURT:**  DON'T BECOME ENAMORED OF THAT PHRASE.

3    LET'S MOVE ON.  OKAY.

4           **MR. PAYNE:**  FAIR ENOUGH.  THE FIRST TERM IS RANDOM

5    ACCESS STORAGE.

6           **THE COURT:**  WITH RESPECT TO EACH OF THESE TERMS, IT'S

7    YOUR CONTENTION THAT THE VERY TERM ITSELF DEFINES THE

8    STRUCTURE, ESSENTIALLY?

9           **MR. PAYNE:**  CORRECT.

10          **THE COURT:**  IS THERE ANYTHING AT ALL IN ANY OF THE

11   CLAIMS WHERE THAT THESE FOUR, LET'S TAKE THE FIRST TWO FOR

12   ACCESS -- FOR EXAMPLE, RANDOM ACCESS STORAGE, LET'S TAKE JUST

13   THAT ONE, IS THERE ANY PLACE IN ANY OF THESE PATENTS WHERE THE

14   CLAIM LANGUAGE ACTUALLY DESCRIBES OR DEFINES THE STRUCTURE OF

15   RANDOM ACCESS STORAGE?

16          **MR. PAYNE:**  IT DESCRIBES THE FUNCTION BUT THE --

17          **THE COURT:**  I'M TALKING ABOUT STRUCTURE NOW.

18          **MR. PAYNE:**  YOU MEAN, THE STRUCTURAL COMPONENTS?

19          **THE COURT:**  YES.

20          **MR. PAYNE:**  WHAT THE CLAIM LANGUAGE DOES, IT WILL

21   PROVIDE THE LOCATION OF THE STRUCTURE IN TERMS OF WHERE THE

22   STRUCTURE IS LOCATED RELATIVE TO OTHER STRUCTURES.

23          BUT IF YOUR HONOR IS ASKING ME WHETHER THE ACTUAL

24   STRUCTURE OF A MEMORY CHIP, FOR EXAMPLE, AS DESCRIBED IN THE

25   CLAIM LANGUAGE, NO, I DON'T SEE THAT.

1      **THE COURT:**  IN OTHER WORDS, YOUR -- IT'S YOUR POSITION

2  EACH OF THESE TERMS HAS INHERENT IN IT THE STRUCTURE?

3      WITHOUT REFERENCE TO AND, INDEED, THERE IS NO

4  REFERENCE TO ANY STRUCTURE OF THAT PARTICULAR TERM OR PHRASE IN

5  THE CLAIM LANGUAGE.

6      **MR. PAYNE:**  YES, THAT'S OUR POSITION, IT'S STRUCTURE.

7  IN FACT, APPLE DOES NOT DISAGREE WITH THAT.

8      **THE COURT:**  OKAY.

9      **MR. PAYNE:**  THEY ADMIT THAT THESE TERMS ARE STRUCTURAL

10  IN NATURE, BUT THEY SAY THEY'RE JUST TOO BROAD.  THEY SAY WE

11  VIOLATED WHAT THEY THINK THE PRINCIPLE IS, WHICH IS THAT IF THE

12  STRUCTURE EFFECTIVELY COVERS EVERY SINGLE STRUCTURE THAT CAN

13  PERFORM THAT FUNCTION, THEN THE THRESHOLD ISSUE SHOULD COME OUT

14  IN THEIR FAVOR.

15      BUT, IN FACT, THAT'S ONLY A REQUIREMENT UNDER 1126.

16  WE'RE ONLY TALKING ABOUT TERMS THAT ARE SUBJECT TO 1126, WHEN

17  WE TALK ABOUT CONSTRUING THE CLAIMS TO BE LIMITED TO THE

18  CORRESPONDING STRUCTURE.

19      SO THE FIRST TERM HERE IS RANDOM ACCESS STORAGE.  THIS

20  SHOWS THE PARTYS' PERSPECTIVE POSITIONS.  WE DO NOT THINK IT'S

21  SUBJECT TO 1126.  WE PROVIDED A DEFINITION OF STORAGE THAT

22  PROVIDES FOR RANDOM ACCESS TO ANY GIVEN SEGMENT OF STORED AUDIO

23  OR VIDEO SOURCE INFORMATION.

24      WE'LL SEE ON THE RIGHT APPLE HAS NOT PRESENTED THE

25  COURT WITH ALTERNATIVE CONSTRUCTION.  IF, IN FACT, THE COURT

 1   RULES IN THEIR FAVOR ON THE THRESHOLD ISSUE, AND IF THE COURT

 2   RULES AGAINST US ON THE THRESHOLD ISSUE, THE PARTIES ARE PRETTY

 3   MUCH IN AGREEMENT ON THE CORRESPONDING STRUCTURE.

 4          SO, THE REAL ISSUE HERE, IS WHETHER 1126 APPLIES OR

 5   NOT?  AND WE SAY IT DOESN'T APPLY.

 6          YOU HAVE TO START WITH THE CLAIM LANGUAGE, RANDOM

 7   ACCESS STORAGE MEANS.  AND IF I COULD, FOR JUST ONE MINUTE, I

 8   HEARD MR. POWERS SAY THAT THIS CLAIM, THE CLAIMS IN THE '995

 9   ARE NOT LIMITED TO DIGITAL SIGNALS.

10          YOUR HONOR, THE ONLY TYPE OF SIGNAL THAT IS STORED IN

11   RANDOM ACCESS STORAGE IS A DIGITAL SIGNAL.  THAT CLAIM

12   LIMITATION APPEARS IN EVERY SINGLE '995 CLAIM.  THESE CLAIMS

13   ARE CLEARLY LIMITED TO DIGITAL SIGNALS, AT LEAST, AT THE

14   STORAGE STEP.

15          LET'S LOOK AT THIS RANDOM ACCESS STORAGE MEANS COUPLED

16   TO SAID COMPRESSION MEANS FOR STORING THE TIME-COMPRESSED

17   REPRESENTATION OF SAID AUDIO/VIDEO SOURCE INFORMATION.

18          WE SEE IMMEDIATELY THAT'S NOT IN THE CLASSIC 1126

19   FORMAT, IT HAS STRUCTURE RANDOM ACCESS STORAGE.  IN FACT, IN

20   FACT, IF WE TAKE THE WORD "MEANS" OUT THE LIMITATION, STILL

21   READS PERFECTLY.

22          RANDOM ACCESS STORAGE COUPLED TO SAID COMPRESSION

23   MEANS FOR STORING THE TIME-COMPRESSED REPRESENTATION.

24          THAT SHOWS THE BURST PATENT DRAFTER WAS -- SIMPLY USED

25   THE WORD MEANS IN A PERFUNCTORY MANNER, NOT IN A MANNER WHERE

1    HE INTENDED TO INVOKE 1126.

2        FIGURE 2 GIVE SOME PERSPECTIVE.  THE PARTIES AGREE

3    THAT MEMORY 12 IS WHERE THE RANDOM ACCESS STORAGE IS, IT STORES

4    THE COMPRESSED REPRESENTATION.  THE PRESUMPTION REBUTTED FOR

5    NUMEROUS REASONS.

6        ONE, THE TERM ITSELF IS STRUCTURE.

7        TWO, APPLE AGREES THAT RANDOM ACCESS STORAGE IS

8    STRUCTURE.

9        THREE, LET'S LOOK AT THE PROSECUTION HISTORIES.

10        IN THOSE PROSECUTION HISTORY THE PATENT DRAFTER, FIRST

11    PATENT ATTORNEY USED THE WORDS RANDOM ACCESS STORAGE WITHOUT

12    THE WORD MEANS WHEN DESCRIBING THE CLAIMS.

13        FOR EXAMPLE, THIS IS A PAGE FROM THE '995 FILE WRAPPER

14    MARCH 12, 1990 OFFICE ACTION RESPONSE.  YOU SEE THAT THE WORDS

15    RANDOM ACCESS STORAGE APPEAR FIVE TIMES IN THE SINGLE PAGE, BUT

16    NOT IN CONNECTION WITH THE WORD MEANS.

17        THE PATENT DRAFTER DID NOT USE THE WORD MEANS IN THE

18    OFFICE ACTION RESPONSE WHEN HE'S DESCRIBING THE CLAIMED

19    INVENTIONS.

20        LOOK AT DR. HEMAMI'S REPORT, THAT'S EXHIBIT 5, AND

21    ALSO SOME ADMISSIONS FROM MR. HALPERN, WHICH I'LL GET TO IN A

22    MINUTE, TAKEN TOGETHER THAT SHOWS CONNOTES SUFFICIENT STRUCTURE

23    AND DOES HAVE A REASONABLY WELL UNDERSTOOD MEANING.

24        WE NEED TO LOOK AT THE LOCATION OF THE STRUCTURE, AND

25    I WON'T TALK ABOUT BEING ENAMORED BY THAT ANYMORE.  DR.

1    HEMAMI'S REPORT EXHIBIT 5, REFER YOU TO PAGES 43 AND 44.  SHE

2    FOUND THAT ONE OF ORDINARY SKILL WOULD LOOK AT THIS TERM RANDOM

3    ACCESS STORAGE AND KNOW THAT IT HAD A REASONABLY WELL

4    UNDERSTOOD MEANING.

5            MEANING, STORAGE THAT PROVIDES FOR RANDOM ACCESS TO

6    ANY GIVEN SEGMENT OF STORED AUDIO/VIDEO INFORMATION.

7            NOW, THAT'S REALLY ONE OF THE LITMUS TESTS, DOES THE

8    TERM, STRUCTURAL TERM HAVE A WELL UNDERSTOOD MEANING?

9            **THE COURT:**  DID MR. HALPERN DISAGREE WITH THAT?

10           **MR. PAYNE:**  THERE'S BEEN NO EVIDENCE TO THE CONTRARY

11   ON THE OTHER SIDE.  IN FACT, HERE'S WHAT I ASKED MR. HALPERN ON

12   HIS DEPOSITION.

13           I ASKED HIM ABOUT THIS PARTICULAR TERM RANDOM ACCESS

14   STORAGE.  HE ADMITTED IT'S A GENERAL CLASS OF STRUCTURE.

15   AGAIN, THEY HAVE NOT OFFERED AN ALTERNATIVE DEFINITION, WHICH I

16   TAKE AS AN ADMISSION THEY AGREE WITH OUR DEFINITION.

17           **THE COURT:**  HE SAYS IT'S NOT SUFFICIENTLY SPECIFIC.

18           **MR. PAYNE:**  RIGHT, THAT GOES BACK TO MY LEGAL POINT

19   HERE, WHICH IS CRITICAL HERE.  THEY ARE TRYING TO TAKE A

20   CONSTRAINT FROM SECTION 1126 THAT APPLIES ONLY TO 1126 TERMS

21   AND IMPORT IT INTO THE THRESHOLD ISSUE AND THAT'S IMPROPER.

22           **THE COURT:**  I GATHER, THE AGREED UPON DEFINITION --

23   WELL, THE DEFINITION IS, FOR THE MOST PART, AGREED UPON, EXCEPT

24   FOR THAT EQUIVALENCE LANGUAGE THAT BURST HAS PUT IN, THAT

25   EVERYBODY AGREES THAT IS ESSENTIALLY MEMORY.

1        **MR. PAYNE:**  ACTUALLY, THE EQUIVALENCE LANGUAGE GOES TO

2   THE ALTERNATIVE 1126 CONSTRUCTION.  WE'RE SAYING --

3        **THE COURT:**  GOING BACK TO YOUR EARLIER CHART WHICH HAD

4   WHAT YOU -- RIGHT HERE.

5        **MR. PAYNE:**  RIGHT, SO THE FIRST ROW OF THE

6   CONSTRUCTIONS THAT APPLIED IF WE WENT ON TO WIN ON THE

7   THRESHOLD ISSUE, THE COURT FINDS 1126 DOES NO APPLY.

8        WE'VE GIVEN A DEFINITION THERE THAT'S THE WELL

9   UNDERSTOOD MEANING BACK IN THE RELEVANT TIME FRAME, THE LATE

10  80'S.  THAT'S WHAT ONE OF ORDINARY SKILL WOULD THINK ABOUT

11  RANDOM ACCESS STORAGE.

12       THERE'S NO EVIDENCE TO THE CONTRARY.  YOU CAN SEE THEY

13  HAVEN'T EVEN OFFERED AN ALTERNATIVE DEFINITION THERE.

14       LAST POINT, MR. HALPERN'S DEPOSITION, YOUR HONOR, I GO

15  BACK TO THIS ARGUMENT THAT APPLE REPEATEDLY MAKES IN THEIR

16  BRIEF, THEY SAY THAT THE PRESUMPTION IS NOT OVERCOME BECAUSE

17  THESE TERMS ARE JUST TOO BROAD.  THERE'S TOO MANY STRUCTURES.

18       WE'VE TRIED TO COVER EVERY SINGLE STRUCTURE UNDER THE

19  SUN, THAT'S FACTUALLY INACCURATE.  BUT I ASKED MR. HALPERN

20  ABOUT ALL OF THE DIFFERENT STRUCTURES THAT HE THOUGHT EXISTED

21  BACK IN THE LATE 80'S FOR RANDOM ACCESS STORAGE AND HE COULDN'T

22  IDENTIFY A SINGLE RANDOM ACCESS STORAGE STRUCTURE OTHER THAN

23  THE ONES CITED IN THE BURST PATENTS.

24       IN OTHER WORDS, THE BURST PATENTS PRESENTS A LIMITED

25  SET OF STRUCTURES.  AND THAT'S ALL WE'RE TRYING TO COVER.

1  THERE AREN'T THESE THOUSANDS DIFFERENT STRUCTURES, A MILLION

2  DIFFERENT STRUCTURES THAT APPLE TRYING TO PAINT THE PICTURE OF,

3  IT'S ACTUALLY FAIRLY LIMITED.

4          IF YOU LOOK AT OUR DEFINITION WE'VE, IN FACT, LIMITED

5  THE STRUCTURES TO THOSE THAT PROVIDE FOR RANDOM ACCESS STORAGE.

6  THAT'S A SPECIAL TYPE OF STORAGE.  IT HAS TO HAVE RANDOM

7  ACCESS.

8          **THE COURT:**  WELL, ONCE AGAIN, WHETHER YOU WANT TO LOOK

9  AT IT AS MEANS PLUS FUNCTION OR NOT, YOU STILL AGREE ON WHAT

10 THE DEFINITION IS, FOR ALL INTENTS AND PURPOSES, GOING BACK TO

11 THAT DEFINITION?

12         **MR. PAYNE:**  THERE'S -- NO, THEY HAVE NOT PROPOSED --

13         **THE COURT:**  ESSENTIALLY, THOSE THE TYPES OF DRAM AND

14 SRAM AND SO FORTH, THOSE ARE THE ONLY THING THAT IT COULD BE --

15         **MR. PAYNE:**  THOSE ARE EXAMPLES.

16         **THE COURT:**  BUT I THOUGHT I JUST UNDERSTOOD YOU TO

17 SAY, THESE WERE THE ONLY ONES THAT ESSENTIALLY YOU COULD COME

18 UP WITH.  THESE ARE THE EXAMPLES.  ARE THERE ANY DIFFERENT

19 EXAMPLES IN THE SPECIFICATION?

20         **MR. PAYNE:**  FOR EXAMPLE, HARD DRIVE THAT CAME LATER.

21 AND HE MENTIONED THAT AS WELL, BUT THAT'S IN THE PAST AS WELL.

22         SO THE POINT HERE, THOUGH, IS THAT IF MEANS PLUS

23 FUNCTION APPLIES, THAT CORRESPONDING STRUCTURES IN THE SPEC

24 HAVE TO BE PART OF THE CONSTRUCTION.

25         BUT IF MEANS PLUS FUNCTION DOES NOT APPLY, IT CAN BE

1    BROADER THAN THAT, IT CAN BE DEFINITIONAL, THAT'S WHAT --

2         **THE COURT:**  I UNDERSTAND THAT.  THAT HELPS US SORT OF

3    GET AN IDEA WHAT THEY HAVE IN MIND AND WHAT YOU HAVE IN MIND,

4    IN TERMS OF A DEFINITION FOR IT, IF IT'S NOT MEANS PLUS

5    FUNCTION.

6         **MR. PAYNE:**  I MENTIONED BEFORE, THE CASE LAW ALSO

7    CONSIDERS WHETHER THERE'S DECIDED LOCATION DECIDED IN THE

8    CLAIMS STRUCTURE.

9         HERE IF YOU LOOK AT CLAIM 1 OF THE '995, THE RANDOM

10   ACCESS STORAGE IS LOCATED NEXT TO THE COMPRESSION MEANS AND THE

11   OUTPUT MEANS AND THAT'S A FACTOR TO CONSIDER.

12        SO WE'VE TALKED ABOUT THE BURST CONSTRUCTION THAT'S

13   FOUND DIRECTLY IN THE SPEC WHERE IT SAYS IN COLUMN 2:

14        "THAT A STILL FURTHER OBJECT OF THIS INVENTION IS TO

15        PROVIDE AN IMPROVED AUDIO/VIDEO RECORDER WHICH

16        PROVIDES FOR RANDOM ACCESS TO ANY GIVEN SEGMENT OF

17        THE SELF-STORED AUDIO/VIDEO PROGRAM."

18        THAT IS ALMOST IDENTICAL TO OUR CONSTRUCTION.

19        THE NEXT TERM IS STORAGE MEANS.  MY ANALYSIS IS VERY

20   SIMILAR THERE, SO I DON'T WANT TO BELABOR THIS, BUT I'LL CUT

21   STRAIGHT TO THE CHASE.

22        **THE COURT:**  BACK UP THERE FOR A MOMENT.  I GUESS, I

23   COULD DO THIS IN MY BOOK.

24        **MR. PAYNE:**  THIS, AGAIN, CHART SHOWS THE RESPECTIVE

25   PARTYS' POSITION, POSITIONS, AND WE SAY THAT THE PRESUMPTION IS

1  OVERCOME, THAT 1126 DOES NOT APPLY.

2       WE ALSO SAY SOMETHING A LITTLE BIT DIFFERENT HERE, IN

3  THE SENSE WE DON'T THINK THE COURTS NEEDS TO CONSTRUE THIS

4  WORD.  WE THINK IT'S WELL UNDERSTOOD.

5       BUT IF THE COURT DECIDES TO CONSTRUE IT, THAT THE

6  CORRECT DEFINITION IS A MEDIUM IN WHICH DATA RETAINED FOR

7  SUBSEQUENT RETRIEVAL, AND APPLE HAS NOT OFFERED AN ALTERNATIVE

8  CONSTRUCTION FOR THAT.

9       IF WE GET TO THE MEANS PLUS FUNCTION ISSUE, WE'LL SEE

10  THAT THE PARTIES ARE, AGAIN, PRETTY SIMILAR IN THEIR

11  DEFINITIONS.  SO I'LL JUST CUT TO THE CHASE ON THIS ONE.

12       IT'S THE SAME LOGIC HERE, THE PRESUMPTION REBUTTED

13  BECAUSE STORAGE IS STRUCTURE.  THEY AGREE IT'S STRUCTURE.  IF

14  YOU LOOK AT DR. HEMAMI'S REPORT YOU'LL SEE ONE OF ORDINARY

15  SKILL WOULD HAVE KNOWN THAT THE STORAGE, A SPECIFIC DEFINITION

16  BACK IN THE LATE 80'S, THE CLAIM RECITE LOCATION OF THAT

17  STRUCTURE, WHICH IS ANOTHER FACTOR.  AND HERE THE BURST DRAFTER

18  CLEARLY USED THE WORD MEANS OVER AND OVER AGAIN IN A NON-1126

19  MANNER.

20       **THE COURT:**  DID MR. HALPERN DISAGREE WITH DEFINITION

21  OF WHAT ONE OF ORDINARY SKILL IN THE ART WOULD HAVE INTERPRETED

22  STORAGE TO MEAN DURING THAT PERIOD OF TIME 1988, ET CETERA?

23  THEY PRETTY MUCH IN AGREEMENT.?

24       **MR. PAYNE:**  I DON'T THINK THERE'S A DISAGREEMENT

25  THERE, BUT I MAY BE MISTAKEN ABOUT THAT.

1      THE COURT:  IF THERE IS, WE'LL HEAR ABOUT IT.

2      MR. PAYNE:  BUT I HAVE NOT SEEN ANY ARGUMENT FROM

3  APPLE TO THE EFFECT THAT OUR DEFINITION OR OUR POINT THAT THERE

4  WAS A REASONABLY WELL UNDERSTOOD MEANING DID NOT, IN FACT,

5  EXIST.

6      SO INPUT MEANS IS THE NEXT SECTION.  AND, AGAIN,

7  THERE'S A DISPUTE ABOUT THE THRESHOLD ISSUE.  WE DON'T THINK

8  1126 APPLIES.  AND WE'VE DEFINED INPUT MEANS TO MEAN AN INPUT

9  PORT OR TERMINAL CAPABLE OF RECEIVING AUDIO/VIDEO INFORMATION.

10     AGAIN, THEY HAVE NOT PROPOSED AN ALTERNATIVE

11 CONSTRUCTION HERE.  I'LL JUST CUT STRAIGHT ON THE CHASE.  IT'S

12 REALLY THE SAME FIVE REASONS WHY THE PRESUMPTION IS REBUTTED:

13     IT'S STRUCTURE, THEY ADMIT IT'S STRUCTURE, IT HAD A

14 WELL-KNOWN DEFINITION BACK IN THE LATE 80'S.

15     THERE'S LOCATION OF STRUCTURAL CLAIMS AND THE BURST

16 DRAFTER USED MEANS OVER AND OVER.

17     IT'S THE SAME LOGIC FOR OUTPUT MEANS, THAT IT'S

18 STRUCTURE --

19     THE COURT:  RIGHT.

20     MR. PAYNE:  NOW, THAT CONCLUDES THE PORTION OF MY

21 PRESENTATION ON THE THRESHOLD ISSUE, SO LET'S MOVE TO INPUT

22 MEANS IF, IN FACT, APPLE'S CORRECT THAT 1126 APPLIES.

23     THERE'S A BIG DEBATE HERE ABOUT THE CORRESPONDING

24 STRUCTURE THAT YOU HAVE TO BRING IN UNDER THE STATUTE 1126, I

25 DON'T HAVE TIME TO GO OVER ALL OF IT, BUT I DO WANT TO FOCUS ON

1  THIS ONE RIGHT HERE, THE AUXILIARY DIGITAL INPUT.

2          YOU CAN SEE THAT OUR CONSTRUCTION FOR 1126 IF IT

3  APPLIES AND WE SAY IT DOESN'T APPLY INCLUDES AN AUXILIARY

4  DIGITAL INPUT PORT, THEY SAY IT DOESN'T INCLUDE THAT.

5          YOU KNOW THE MEANS PLUS FUNCTION --

6          **THE COURT:**  THAT'S BECAUSE IT'S NOT IN THE

7  SPECIFICATION.

8          **MR. PAYNE:**  NO.  CLEARLY IN THE SPECIFICATION, THERE'S

9  NO DEBATE ABOUT THAT.  THE FUNCTION THERE IS RECEIVING

10  COMPRESSED AUDIO/VIDEO INFORMATION FASTER THAN REAL TIME.

11          IT'S FOUND IN FIGURE 2, ITEM 17, RIGHT THERE, NO

12  DEBATE ABOUT THAT.  THERE'S NO DISPUTE AMONG THE PARTIES THAT

13  IT RECEIVES DIGITAL/AUDIO INFORMATION.

14          THE REAL DEBATE WHETHER IT COULD RECEIVE THAT

15  INFORMATION FASTER THAN REAL TIME, THEY SAY IT CAN'T, WE SAY IT

16  CAN.

17          TO ANSWER THAT QUESTION WE GO STRAIGHT TO DR. HEMAMI'S

18  REPORT EXHIBIT 5.  LOOK AT PAGES 11 AND 31.  IT'S VERY CLEAR

19  THERE THAT ONE OF ORDINARY SKILL WOULD KNOW IN THE LATE 80'S,

20  THAT THAT TYPE OF PORT HAD SUFFICIENT BANDWIDTH TO, IN FACT,

21  HAVE AUDIO/VIDEO INFORMATION FASTER THAN REAL TIME.

22          SO THAT PARTICULAR STRUCTURE AUXILIARY DIGITAL INPUT

23  PORT SHOULD BE INCLUDED AS PART OF THE CONSTRUCTION FOR INPUT

24  MEANS, IF THE COURT FIND THAT 1126 APPLIES TO THAT TERM.

25          LET ME GO QUICKLY TO OUTPUT MEANS.  IF 1126 APPLIES,

1    AGAIN, WE DON'T THINK IT APPLIES, BUT IF IT DOES, THE REAL

2    DISPUTE THERE IS WE'VE INCLUDED AUXILIARY DIGITAL PORT AND THE

3    MICROWAVE SATELLITE TRANSCEIVER.  THEY SAY THOSE TERMS OR THOSE

4    STRUCTURES SHOULD NOT BE INCLUDED AS CORRESPONDING STRUCTURE.

5            SKIP TO THE AUXILIARY DIGITAL PORT.  THAT'S WHAT WE

6    JUST LOOKED AT.  THAT'S ITEM 17 THERE.

7            YOU'LL NOTICED IN THIS FIGURE 2, IT'S DENOTED AS AN

8    INPUT, BUT IF WE LOOK HOW IT'S DISCUSSED IN THE SPEC WE ALSO

9    SEE THAT IT'S ACTUALLY BIDIRECTIONAL.  IT CAN RECEIVE SIGNALS

10   AND IT CAN TRANSMIT SIGNALS.  HOW DO WE KNOW THAT?

11           WE LOOK AT THE SPEC, IT SAYS:

12       "AUXILLIARY DIGITAL INPUT PORT 17 EMPLOYED TO RECEIVE

13        ANY ACCEPTABLE DIGITAL SIGNAL SUCH AS MAY BE SUPPLIED

14        BY ANOTHER VCRET."

15           SO THAT SECTION IS TELLING US THAT THE TWO VCRET'S

16   COULD -- ARE COMMUNICATING WITH EACH OTHER.  THE TRANSMITTER IS

17   SENDING THE SIGNAL, IT'S BEING RECEIVED BY THE OTHER VCR AT THE

18   AUDIO INPUT.  THE DIGITAL INPUT, EXCUSE ME.

19           WE ALSO SEE IN THIS SECTION OF THE SPEC THAT ITEM 17,

20   WHICH IS THE DIGITAL PORT, CAN RECEIVE DIGITAL VIDEO AND AUDIO

21   INFORMATION.  THE ONLY TYPE OF PORT THAT EXISTED BACK IN THE

22   1980'S THAT COULD RECEIVE AUDIO AND VIDEO DIGITAL INFORMATION

23   WERE BY DEFINITION BIDIRECTIONAL.

24           SO WE KNOW THAT PORT 17 RIGHT HERE, IN FACT, CAN BOTH

25   RECEIVE AND TRANSMIT.  THE SPEC SAYS, AGAIN, THAT THE AUXILIARY

1    DIGITAL INPUT PORT 17 IS EMPLOYED TO RECEIVE ANY ACCEPTABLE

2    SIGNAL, DIGITAL SIGNAL, SUCH AS MAYBE SUPPLIED BY ANOTHER

3    VCRET.

4            SO THIS EFFECTIVELY IS WHAT THAT SENTENCE HAS SHOWN,

5    IT'S SHOWING ONE UNIT SENDING A SIGNAL TO A SECOND UNIT, IT'S

6    TALKING ABOUT THE SECOND UNIT RECEIVING IT RIGHT HERE AT THE

7    DIGITAL PORT.

8            WE KNOW THAT THE FIRST UNIT IS TRANSMITTING FROM THIS

9    PORT BECAUSE THESE TWO PORTS HAVE TO COMMUNICATE.  IF THEY'RE

10   CONNECTED THEY HAVE TO SPEAK THE SAME LANGUAGE, AND BY

11   DEFINITION THIS UNIT COULD ONLY COMMUNICATE WITH THIS UNIT IF

12   IT SENT THE SIGNAL OUT OF THE SAME PORT.  SO THERE, AGAIN, WE

13   KNOW THAT THAT PORT IS BIDIRECTIONAL.

14           IN DR. HEMAMI'S -- HAS GIVEN THAT OPINION IN A REPORT,

15   I DON'T THINK THERE'S REALLY ANY DISPUTE, THAT BACK IN THE LATE

16   1980'S THESE TYPES OF PORTS, THE AUDIO/VIDEO DIGITAL PORTS,

17   COULD RECEIVE FASTER THAN REAL TIME, WHICH IS WHAT WE JUST WENT

18   OVER, COULD TRANSMIT FASTER THAN REAL TIME, THEY HAD SUFFICIENT

19   BANDWIDTHS TO TRANSMIT FASTER THAN REAL TIME.

20           FOR THAT REASON OR THOSE REASONS IF THE COURT FINDS

21   THAT OUTPUT MEANS IS SUBJECT TO 1126, THEN ONE OF THE

22   CORRESPONDING STRUCTURES THAT SHOULD BE INCLUDED IS THIS

23   AUXILIARY DIGITAL PORT HERE.

24           THESE ARE THE MEANS PLUS FUNCTION TERMS THAT THE

25   PARTIES AGREE ARE SUBJECT TO 1126.  MR. HEIM'S GOING TO COVER

1    FOURTH COMPRESSION MEANS TERM OVER THE FIRST THREE VERY

2    QUICKLY.

3            TRANSMISSION MEANS, THE PARTIES ARE PRETTY MUCH IN

4    AGREEMENT ABOUT THE SCOPE OF THE CORRESPONDING STRUCTURE UNDER

5    1126 WITH ONE CAVEAT THERE, WHICH IS WHETHER THE AUXILIARY

6    DIGITAL PORT SHOULD BE INCLUDED.

7            WE JUST WENT OVER THAT.  THE SAME ISSUE.  THE SPEC

8    SHOWS THAT THE TWO VCR'S CAN COMMUNICATE AND THAT THE AUXILIARY

9    DIGITAL PORT IS BIDIRECTIONAL, CAN TRANSMIT FASTER THAN REAL

10   TIME, SO PART OF THE TRANSMISSION MEANS SHOULD INCLUDE THIS

11   AUXILIARY DIGITAL PORT.  THAT'S IN DR. HEMAMI'S REPORT AS WELL.

12           THE RECORDING MEANS, THERE'S REALLY JUST ONE DISPUTE

13   THERE.  APPLE'S INCLUDED A SHUNT SWITCH, THAT IS SHUNT I48

14   PRIME IN FIGURE TWO.

15           THE SPEC MAKES CLEAR THAT THE SHUNT SWITCH IS NOT

16   NECESSARY TO PERFORM THE CLAIM FUNCTION OF STORING THE

17   TIME-COMPRESSED REPRESENTATION TO THE REMOVABLE RECORDING

18   MEDIUM.

19           WHAT APPLE HAS DONE HERE THEY BROUGHT IN STRUCTURE

20   THAT DOES NOT CONFORM TO CLAIM FUNCTION UNDER THE 1126 LAW.

21   THE SCOPE OF THE CORRESPONDING STRUCTURE IS LIMITED TO WHAT'S

22   DISCLOSED IN THE SPEC FOR PERFORMING THE FUNCTION AND ONLY

23   PERFORMING THE FUNCTION.

24           YOU DON'T BRING IN EVERYTHING THAT ENABLES THE CLAIMED

25   INVENTION, IT'S JUST THE STRUCTURE THAT PERFORMS THE CLAIM

1    FUNCTION.

2          AND THAT'S WHAT THEY'VE DONE WITH EDITING MEANS, WHICH

3    IS THE LAST TERM, YOUR HONOR.  THEY HAVE INCLUDED A BUNCH OF

4    DIFFERENT STRUCTURES HERE, LIKE SPECIFIC CHIPS OR CPU'S, A ROM

5    USER INTERFACE CONTROL OR HOUSE THAT STRUCTURES THAT ARE NOT

6    NECESSARY TO PERFORM THE CLAIM FUNCTION.

7          THE ONLY STRUCTURE THAT WE NEED TO PERFORM THE CLAIM

8    FUNCTION OF EDITING IS WHAT WE HAVE IN OUR DEFINITION, WHICH IS

9    A PROCESSOR EXECUTING STORED EDITING SOFTWARE IN A CONTROLLER.

10         THOSE TWO ITEMS ARE SHOWN IN FIGURE 2 AS THE CPU 31,

11   THERE WHICH IS DEFINED AS A PROCESSOR AND CONTROLLER.  IT'S

12   THOSE TWO STRUCTURES AND ONLY THOSE TWO STRUCTURES THAT PERFORM

13   THE CLAIM FUNCTION OF EDITING THE TIME-COMPRESSED

14   REPRESENTATION AND RESTORING IT TO THE RANDOM ACCESS STORAGE.

15         AS I MENTIONED, THEY'VE INCLUDED A LOT OF OTHER

16   STRUCTURE.  LET'S LOOK AT THE SPEC HERE.  THIS IS THE CRITICAL

17   PASSAGE.

18         THEIR STRUCTURE, FOR EXAMPLE, SHOWN THIS GREEN,

19   THEY'RE TRYING TO BRING IN THE RAM AS NECESSARY STRUCTURE, BUT

20   THE SPEC SAYS YOU DON'T NEED THE ROM TO PERFORM EDITING

21   FUNCTION, THE SPEC SAYS SIMPLY THAT THE CPU 31 CAN BE A

22   MICROPOSSESSOR.

23         AND THEN IT GOES ON TO SAY CPU 31 AND CONTROLLER 33

24   TOGETHER CONTROL THE EDITING PROCESS AS THEY EXECUTE THE

25   PROGRAM STORED IN ROM.  THE CPU AND CONTROLLER THAT DO THE

1    CLAIM FUNCTION EDITING, THE ROM DOES NOT PERFORM THE CLAIM

2    FUNCTION, THEREFORE, SHOULD NOT BE INCLUDED AS PART OF THE

3    CORRESPONDING STRUCTURE.

4            I'M GOING TO TURN IT OVER TO MR. HEIM NOW TO ADDRESS

5    THE COMPRESSION MEANS.  IF THE COURT DOES HAVE ANY FURTHER

6    QUESTIONS.

7            **THE COURT:**  CAN THAT UNIT ACTUALLY PERFORM EDITING

8    USING SOMETHING OTHER THAN THE ROM?

9            **MR. PAYNE:**  WELL, THE ROM DOESN'T HAVE ANYTHING TO DO

10   WITH EDITING.  THE ROM SIMPLY STORES SOFTWARE, EDITING SOFTWARE

11   AND WHEN IT COMES TIME TO ACTUALLY DO THE EDITING THAT SOFTWARE

12   IS IMPORTED INTO THE PROCESSOR AND THE EDITING FUNCTIONALITY

13   OCCURS IN THE PROCESSOR.

14           **THE COURT:**  BUT THEN IT PLAYS SOME ROLE WITH RESPECT

15   TO VIS-A-VIS THE PROCESSOR AND HOW THAT INFORMATION OR SOFTWARE

16   GETS INFORMATION GETS INTO THE CPU, RIGHT?

17           **MR. PAYNE:**  IT PLAYS A ROLE IN THE SENSE THAT IT

18   STORES THE SOFTWARE, BUT THE CLAIM FUNCTIONALITY IS FOCUSED

19   ACTUALLY ON THE EDITING AND NO EDITING TAKES PLACE IN THE ROM.

20   INSTEAD THAT EDITING TAKES PLACE IN THE MICROPROCESSOR.

21           **THE COURT:**  BUT HOW DOES THE SOFTWARE GET TO THE

22   MICROPROCESSOR?

23           **MR. PAYNE:**  THE CONTROLLER THAT WE'VE INCLUDED WOULD

24   COMMAND THAT PROCESS.  IN OTHER WORDS, IT WOULD SEND A SIGNAL

25   FOR THE SOFTWARE THAT'S STORED IN THE ROM TO BE CONVEYED TO THE

1  PROCESSOR.

2        **THE COURT:**  IF YOU DID NOT HAVE THE ROM WOULD YOU HAVE

3  TO HAVE SOMETHING ELSE THERE TO PERFORM THAT FUNCTION,

4  VIS-A-VIS EDITING?

5        **MR. PAYNE:**  WELL, FOR EXAMPLE, THE SOFTWARE COULD BE

6  STORED DIRECTLY ON A CPU HARD DRIVE, FOR EXAMPLE, OR SOME OTHER

7  STORAGE.

8        YOU COULD HAVE SOME OTHER STORAGE FACILITY THAT WOULD

9  STORE THE EDITING SOFTWARE.  IT COULD BE STORED DIRECTLY IN THE

10  CPU THERE.

11        YOU DON'T HAVE TO HAVE THE ROM, IT'S SHOWN HERE, BUT

12  THAT'S JUST THE PREFERRED EMBODIMENT.  THAT'S THE POINT, YOU

13  SHOULDN'T BRING IN EVERY SINGLE FEATURE OF THE PREFERRED

14  EMBODIMENT, IT'S ONLY THE STRUCTURE THAT ACTUALLY PERFORM THE

15  CLAIM FUNCTIONALITY.

16        **THE COURT:**  LET ME HEAR VERY, VERY BRIEFLY FROM -- WE

17  HEARD A LOT ABOUT COMPRESSION, MR. HEIM, YOU'RE GOING TO TALK

18  ABOUT COMPRESSION MEANS OF?

19        **MR. HEIM:**  YES, YOUR HONOR, I'M BACK.

20        **THE COURT:**  DO VERY, VERY QUICKLY.  I WANT TO FINISH

21  THIS UP TODAY.

22        **MR. HEIM:**  UNDERSTAND.

23        COMPRESSION MEANS, THERE'S ACTUALLY ANOTHER TERM, VERY

24  QUICKLY DECOMPRESSION MEANS, WE'LL TRY TO FIT IN AS WELL.

25        WITH RESPECT TO COMPRESSION MEANS, I REALLY THINK THAT