```
 1    GLOBAL ISSUE HERE WHETHER OR NOT DEPENDS ON HOW YOU'RE GOING TO

 2    CONSTRUE THE FUNCTION.

 3         IF YOU'RE GOING TO REQUIRE TIME COMPRESSION AS APPLE

 4    PROPOSES, THEY TAKE THE POSITION THERE'S NO STRUCTURE, THAT'S

 5    WHY THEY HAVE KNOWN FOR STRUCTURE, IT'S BECAUSE BASED ON THEIR

 6    INTERPRETATION OF TIME OF THE LANGUAGE COMPRESSING SAID

 7    AUDIO/VIDEO SOURCE INFORMATION INTO A TIME-COMPRESSED

 8    REPRESENTATION BECAUSE THEY SAY THAT MEANS TIME COMPRESS.

 9         NOW, WE'RE INTO A SITUATION THERE NOT BEEN DISCLOSED

10    IN THE SPECIFICATION, THE SPECIFICATION IS FOCUSED ON DATA

11    COMPRESSION.

12         WITH RESPECT TO BURST CONSTRUCTION, THE COMPRESSING IS

13    FOR THE AUDIO/VIDEO STORES INFORMATION.  PARTIES AGREE THAT'S

14    AUDIO AND/OR VIDEO, EITHER ONE.

15         DR. HEMAMI HAS IDENTIFIED THAT THE STRUCTURE THAT'S

16    USED TO PERFORM THE VIDEO COMPRESSION, THE VIDEO DATA

17    COMPRESSION, IS THE COMPRESSOR DECOMPRESSION OR KODAK THAT'S

18    IMPLEMENTING EITHER THE CATEGORY ONE TYPE OF COMPRESSION AND/OR

19    THE CATEGORY TWO TYPE OF COMPRESSION.

20         EITHER OF THOSE WOULD BE SUFFICIENT FOR THE DATA

21    COMPRESSION FOR THE '995 CLAIM 1 OR BECAUSE THIS CLAIM COULD

22    ALSO COVER AUDIO, JUST AUDIO AND NOT VIDEO, WITH RESPECT TO

23    AUDIO DR. HEMAMI HAS IDENTIFIED THE COMPRESSOR DECOMPRESS OR

24    26, AGAIN, AND CATEGORY TWO TYPE COMPRESSION FOR THE AUDIO,

25    THAT'S ALL THAT'S DISCLOSED IN THE BURST PATENT.
```

```
1        SITUATION IS A LITTLE DIFFERENT IN THE '932 PATENT.

2   THE REASON IS THAT THE FUNCTIONAL LIMITATION IS A LITTLE

3   DIFFERENT.  THE VERY FIRST LIMITATION REQUIRES THAT THE

4   AUDIO/VIDEO STORES INFORMATION, COMPRISES VIDEO MULTIPLICITY OF

5   VIDEO FRAMES.

6        WHEN WE GET DOWN TO THE FUNCTION FOR COMPRESSING SAID

7   AUDIO/VIDEO SOURCE INFORMATION WE KNOW IT HAS TO HAVE VIDEO,

8   RIGHT?

9        SO THE FUNCTION, I MEAN, THE STRUCTURE THAT WE ARE

10  IDENTIFYING DOES NOT INCLUDE AUDIO.  IN THIS EXAMPLE IT'S

11  LIMITED TO JUST VIDEO.  AND, AGAIN, DR. HEMAMI HAS IDENTIFIED

12  EITHER CATEGORY ONE AND/OR CATEGORY TWO COMPRESSION TO BE

13  IMPLEMENTED ON THAT KODAK.

14       AND THEN FOR THE THIRD TERM, YOUR HONOR, THE

15  COMPRESSION MEANS, '705, CLAIM 1, AGAIN, THIS CLAIM HAS A

16  LITTLE BIT DIFFERENT STRUCTURE.

17       AGAIN, IT RECITES VIDEO JUST AS DID THE '932, BUT THIS

18  CLAIM IS A LITTLE DIFFERENT BECAUSE IT REQUIRES THAT THE

19  TRANSMISSION TIME PERIOD IS SUBSTANTIALLY SHORTER,

20  SUBSTANTIALLY SHORTER.

21       SO THE FUNCTION HERE IS NARROWER, RIGHT, REQUIRES

22  SUBSTANTIALLY SHORTER AND TO ACCOUNT FOR THAT NARROWER

23  FUNCTIONAL LANGUAGE IN THE '705 PATENT, YOUR HONOR, DR. HEMAMI

24  HAS IDENTIFIED AS THE STRUCTURE THE COMPRESSOR DECOMPRESSOR AND

25  BOTH CATEGORY ONE AND CATEGORY TWO ALGORITHMS TO BE IMPLEMENTED
```

1    ON THAT CODEC TO GET THE SUBSTANTIAL SHORTER TRANSMISSION

2    PERIOD.  SO YOU HAVE TO USE THEM BOTH WITH RESPECT TO THOSE

3    TERMS.

4            WITH RESPECT TO THE ISSUES BETWEEN THE PARTIES, REALLY

5    TWO ISSUES.  ONE IS -- ONE I JUST IDENTIFIED, AND THAT IS,

6    WHETHER OR NOT THE DESCRIPTIONS IN THE SPECIFICATIONS ADEQUATE

7    TO APPRIZE ONE SKILLED IN THE ART OF THE STRUCTURE FOR

8    IMPLEMENTING THAT CLAIM FUNCTION.  THAT'S THE FIRST ISSUE.

9            THE SECOND ISSUE APPLE HAS A FALLBACK POSITION, APPLE

10   TAKEN THE POSITION IF THEY'RE WRONG ON TIME COMPRESSION AS

11   BEING THE FUNCTION, THAT THEN THE STRUCTURE SHOULD BE LIMITED

12   TO THE A AND D COMPRESSION PROCESSOR THAT WAS IDENTIFIED IN THE

13   '995 PATENT SPECIFICATION.

14           BUT NOT IN EITHER OF THE TWO, EITHER OF THE OTHER TWO

15   PATENTS.  IT'S NOT MENTIONED IN THE '932, IT'S NOT MENTIONED IN

16   THE '705.  WE'LL GO THROUGH THAT IN JUST A SECOND AND WE'LL

17   POINT OUT THE DIFFERENCE BETWEEN THE TWO.

18           BUT APPLE'S POSITION THERE'S NO STRUCTURE, EVEN IF

19   WE'RE RIGHT ON THE DATA COMPRESSION, STILL NO STRUCTURE IN '705

20   AND '932, AND THE ONLY STRUCTURE IN THE '995 IS THIS

21   COMPRESSION PROCESSOR THAT'S MENTIONED AS AN EXAMPLE.

22           OKAY.  THE STANDARD HERE.  IN A SITUATION WHERE A

23   PARTY IS TAKING THE POSITION THAT A CLAIM IS IN -- THAT A CLAIM

24   DOESN'T HAVE ANY STRUCTURE, THEY'RE REALLY TAKING AN INVALIDITY

25   POSITION.

1    THAT'S WHAT THE COURTS HAVE RECOGNIZED, BUDDY VERSUS

2    HARLEY DAVIDSON, A NUMBER OF CASES THAT HAVE SAID THAT.  WITH

3    RESPECT TO THIS ISSUE THE BURDEN OF PROOF IS CLEAR AND

4    CONVINCING EVIDENCE.

5        LET'S SKIP THE NEXT SLIDE.  THE TEST, YOUR HONOR, TWO

6    PART TEST.  FIRST, WE HAVE TO ASK WHETHER OR NOT THEIR

7    STRUCTURE THAT IS DESCRIBED IN THE SPECIFICATION, AND THEN

8    SECONDLY FROM THAT IDENTIFICATION OF STRUCTURE WHAT WOULD ONE

9    SKILLED IN THE ART DETERMINE THAT THE STRUCTURE WAS TO

10   IMPLEMENT THE CLAIMED FUNCTION.

11       THERE ARE A NUMBER OF CASES THAT ARE INSTRUCTIVE ON

12   THIS ISSUE THE IN RE DOSELL CASE A CASE DECIDED A COUPLE YEARS

13   BACK, THE FEDERAL CIRCUIT CONCLUDED THERE WAS A FLUENT

14   STRUCTURE IN A SITUATION WHERE THE MATHEMATICAL ALGORITHM WAS

15   NOT IDENTIFIED AND NEITHER WAS THE UNIT WAS GOING TO -- THAT

16   WAS GOING TO IMPLEMENT THAT ALGORITHM.

17       IN THAT SITUATION NONETHELESS THE FEDERAL CIRCUIT

18   FOUND THAT THE DESCRIPTION WAS SUFFICIENT.  THE REASON IS, IT

19   REALLY TURNS ON THE UNDERSTANDING OF SOMEBODY OF ORDINARY SKILL

20   IN THE ART.

21       THIS SITUATION A LITTLE DIFFERENT THAN MOST CLAIM

22   CONSTRUCTION ISSUES REALLY BECAUSE WE'RE BRINGING IN EXPERT

23   TESTIMONY, I THINK, A LOT MORE THAN WE NORMALLY DO.

24       NEXT CASE THE S3 CASE, IT WAS A SELECTOR IN THAT CASE

25   AND WHAT THE FEDERAL CIRCUIT SAID THERE IN A SITUATION WHERE

1    THE EVIDENCE IS UNCONTRADICTED, THAT THE STRUCTURE IS

2    WELL-KNOWN, PERFORMS A COMMON FUNCTION, THAT'S SUFFICIENT,

3    DOESN'T MATTER WHETHER A LAY PERSON WOULD KNOW HOW TO IMPLEMENT

4    IT OR NOT, HAVE TO LOOK AT IT FROM THE EYES OF SOMEBODY

5    ORDINARY SKILL IN THE ART.

6         THEN IN THE ATMEL CASE, WAS THE CASE THAT SAID IF YOU

7    INCORPORATE BY ATMEL THAT DOESN'T CUT IT FOR 1126, YOU DON'T

8    GET TO BRING IN AN ARTICLE IF YOU SAY I'M GOING TO INCORPORATE

9    BY REFERENCE.

10        IN ATMEL WHAT HAPPENED IS THEY HAD A VERY BRIEF

11   STATEMENT THAT SAID THAT KNOWN CIRCUIT TECHNIQUES ARE USED TO

12   IMPLEMENT HIGH VOLTAGE CIRCUIT, THEN THEY CITED TO AN ARTICLE

13   THEY INCORPORATE BY REFERENCE.  FEDERAL CIRCUIT SAID, LISTEN,

14   DON'T GET TO USE THAT ARTICLE, YOU DON'T GET TO LOOK IN THAT

15   ARTICLE TO SEE WHAT THE STRUCTURE WAS.

16        NONETHELESS IN THAT CASE THE FEDERAL CIRCUIT SAID THE

17   STRUCTURE WAS SUFFICIENT BECAUSE THE TESTIMONY WAS THAT AN

18   EXPERT VIEWING THE TITLE ALONE WOULD BE ABLE TO DETERMINE WHAT

19   THE STRUCTURE WAS.

20        SO LET'S LOOK AT THE FACTS HERE.  THE STRUCTURE THAT'S

21   USED TO PERFORM THE DATA COMPRESSION IS KODAK 26.  I DON'T

22   THINK THERE'S ANY DISPUTE ABOUT THAT.  THE KODAK 26 HAS

23   INDICATED IN THE SPECIFICATION PERFORM BOTH COMPRESSION AND

24   DECOMPRESSION BY IMPLEMENTING VARIOUS ALGORITHMS.  IT SAYS

25   VARIOUS ALGORITHMS MAYBE EMPLOYED IN THE COMPRESSION PROCESS.

1    DR. HEMAMI IDENTIFIED COLUMNS 4 AND 5 AS THE RELEVANT

2    SECTION, SO IF WE TURN TO THOSE SECTIONS THERE ARE TWO

3    DIFFERENT CATEGORIES THAT ARE GIVEN, THESE ARE THE CATEGORIES 1

4    AND 2 THAT WE TALKED ABOUT LAST WEEK AND DR. HEMAMI IDENTIFIED.

5    THERE'S THE COMPRESSION ALGORITHMS LIKE THE CCI, THE

6    GROUP FOUR THAT'S TYPICAL OF THE GROUP ONE, THE INDEPENDENT

7    TYPE OF COMPRESSION ARE INTRAFRAMED TYPE COMPRESSION, THEN THE

8    FURTHER DESCRIPTION FURTHER DOWN IN COLUMN FIVE DESCRIBES THE

9    OTHER CATEGORY, THE OTHER CLASS OF VIDEO COMPRESSION, WHICH IS

10   THE DEPENDENT TYPE OF COMPRESSION, ALSO KNOWN AS TEMPORAL

11   COMPRESSION OR INTERFRAME COMPRESSION, SO BOTH OF THOSE TWO

12   TYPES OF ALGORITHMS DESCRIBED IN THE PATENT.

13   DR. HEMAMI IDENTIFIED THOSE TWO CATEGORIES THAT WE GOT

14   OUR EXPERT REPORT CITED THERE, AND ALSO IN ADDITION TO THAT DR.

15   HEMAMI IDENTIFIED NOT ONLY COULD BE USED, EITHER ONE OF THOSE

16   COMPRESSION TECHNIQUES YOU COULD USE THEM TOGETHER, AND THE

17   SPECIFICATION SAYS THE SAME THING FURTHER DOWN IN COLUMN FIVE

18   ABOUT LINES 15 TO 20, INDICATES THAT YOU CAN USE THE GROUP THAT

19   CATEGORY ONE WITH THE CATEGORY TWO, IF YOU USE THEM BOTH

20   TOGETHER YOU'RE GOING GET GREATER COMPRESSION.

21   APPLE ESSENTIALLY CONCURS THAT THOSE TWO TYPES OF

22   ALGORITHMS DISCLOSED IN THE PATENT LAST WEEK, MR. POWERS

23   INDICATED THE PATENTS DISCLOSED BOTH INTRAFRAME AND INFRAFRAME

24   TYPE COMPRESSION ALGORITHMS.  THAT'S ON PAGE 88 AND 9 OF THE

25   TRANSCRIPT.

1      APPLE'S EXPERT HAS ADMITTED THAT THESE COMPRESSION

2  TECHNIQUES WERE KNOWN IN 1988 AND THAT THEY WERE DISCLOSED IN

3  THE PATENT.

4      OKAY.  DR. HEMAMI HAS TESTIFIED, IF YOU KNOW THOSE

5  COMPRESSION ALGORITHMS AND KNOW YOU WANT TO IMPLEMENT THEM IN

6  CODEC IT MUST BE STRAIGHTFORWARD FOR SOMEBODY OF ORDINARY SKILL

7  IN THE ART TO DO THAT.

8      IT COULD BE DONE IN A NUMBER OF DIFFERENT WAYS, AND

9  SHE IDENTIFIED SPECIFICALLY FOUR DIFFERENT WAYS IT CAN BE DONE.

10  IF YOU'LL RECALL FROM LAST WEEK SHE SAID IT COULD BE DONE IN A

11  SIX PROGRAMMABLE LOGIC LINK FIELD PROGRAMMER DATA ARRAY, IT

12  COULD BE DONE IN SOFTWARE RUNNING OFF PROGRAMMABLE CHIPS OR

13  CHIP SETS.

14      AN EXAMPLE SHE GAVE WERE DSP TYPE PROCESSORS WERE

15  KNOWN AT THE TIME OR CPU'S OR YOU COULD USE A COMBINATION.  SO

16  AT THIS POINT IN TIME IN 1988 THOSE ALGORITHMS ARE KNOWN,

17  THEY'RE KNOWN HOW TO BE IMPLEMENTED, IT'S WELL WITHIN THE REALM

18  OF ONE OF ORDINARY SKILL IN THE ART.

19      THIS IS AN EXCERPT FROM DR. HEMAMI'S DEPOSITION

20  TESTIMONY WHERE SHE SAYS, IT'S UNQUESTIONABLE THERE'S HARDWARE

21  IN THE BOX 26, THAT'S THE COMPRESSOR DECOMPRESSOR FROM THE

22  SPECIFICATION, AND THEN SHE GOES ONTO SAY IT COULD BE CPU, DSP

23  CHIP HARDWARE, SHE'S SAYING ALL THE SAME THINGS WE SAW ON THE

24  SLIDE BEFORE.

25      SO WHERE DOES THAT LEAVE US?  THE PATENT DISCLOSED

1  USING CODEC, THEY DISCLOSED SPECIFIC ALGORITHMS FOR DESIGNING

2  CODEC.  SHE TESTIFIED, DR. HEMAMI TESTIFIED ALGORITHMS IN THE

3  MANNER OF IMPLEMENTING THOSE ALGORITHMS WERE IN CODECS IN 1998,

4  THAT'S ALL THAT'S REQUIRED.

5         THIS INFORMATION FAR MORE DETAILED THEN WE SAW IN THE

6  IN RE DOSELL CASE, THE S3 CASE, THE ATMEL CASE.  THE ONLY CASE,

7  I BELIEVE THE PRIMARY CASE THAT APPLE RELYING ON, I BELIEVE,

8  THE DEFAULT CASE.  THAT CASE IS DIFFERENT, IT INVOLVED A

9  SITUATION FOR A MEANS FOR DISPOSING THESE CARDS.

10         AND INSTEAD OF ARGUING THAT THE STRUCTURE WAS THE

11  DISPOSING MEANS THAT WAS IN THE BLACK BOX, THEY ARGUED IT WAS

12  SOMETHING ELSE SOMEWHERE ELSE IN THE DESIGN IN THE SYSTEM.

13         THE FEDERAL CIRCUIT WAS PUZZLED BY THAT, BUT THEY SAID

14  YOU DON'T HAVE ENOUGH STRUCTURE THEN, IF YOU'RE GOING TO POINT

15  TO SOMETHING OTHER THAN WHAT YOU'VE SHOWN US THE BOX, SO THE

16  DEFAULT PROOF IS EASILY DISTINGUISHABLE FROM IN RE DOSELL,

17  ATMEL, S3 WHICH WE RELY.

18         THE ISSUE WHETHER OR NOT THE AMD CHIP SHOULD BE

19  STRUCTURE, THIS IS WHERE IT COMES FROM.  THIS IS THE 9935

20  SPECIFICATION, THE AMD 7971 CHIP CITED IN THAT SPECIFICATION AS

21  AN EXAMPLE OF A SINGLE INTEGRATED CHIP SOLUTION FOR

22  IMPLEMENTING THE CATEGORY ONE, THE CCITT GROUP FOUR ALGORITHM,

23  THAT'S THE ONLY PLACE IT'S MENTIONED.

24         NOW WHEN WE FAST FORWARD TO THE LATTER PATENTS, THE

25  '932 AND THE '705, WE CAN SEE THAT THAT CHIP IS NO LONGER

1    DESCRIBED.  IT'S NOT MENTIONED ANYMORE.  OKAY.  IT'S NOT CITED

2    IN THE SUBSEQUENT PATENTS.  SO WHAT DO WE TAKE AWAY FROM THAT?

3            IT WAS MENTIONED IN THE '995 AN EXAMPLE OF CATEGORY

4    ONE, IT'S NOT MENTIONED AT ALL LATER.  THINK A LOGICAL THING TO

5    TAKE AWAY FROM THAT IS, YOU KNOW, WASN'T DEEMED TO BE A

6    CRITICAL FEATURE, IT WASN'T CONSIDERED TO BE A NOVEL ASPECT.

7            SO IF WE START WITH THE '932 AND THE '705 PATENT, WHAT

8    IS THE STRUCTURE?  WELL, INTELVIA INVOLVED A -- MR. POWERS WAS

9    INVOLVED IN THAT SITUATION REPRESENTING INTEL AND IN THAT CASE

10   THE FEDERAL CIRCUIT RULED THAT THE FAILURE TO DISCLOSE

11   CIRCUITRY THAT SHOWED HOW A CORE LOGIC WAS MODIFIED, SO THE

12   FAILURE TO SHOW THAT CIRCUITRY DID NOT RENDER THE MEANS PLUS

13   FUNCTION CLAIM INVALID OR INDEFINITE.

14           WHAT THE COURT SAID, THIS IS QUOTE, "THE NOVELTY OF

15   THE INVENTION AS CLAIMED LIES IN THE SIGNAL PROTOCOL, NOT IN

16   UNCLAIMED CIRCUITRY FOR CARRYING OUT THE SPECIFIED PROTOCOL."

17           THE FACT THE AM&D CHIP IS NOT MENTION IN THE '705 OR

18   '932 SHOULD NOT INVALIDATE THOSE CLAIMS OR RENDER THEM TO BE

19   INDEFINITE.  THAT WAS NOT CONSIDERED TO BE THE NOVEL ASPECT OF

20   THE INVENTION, THAT'S WHY IT WAS TAKEN OUT, THE PATENTS DON'T

21   CLAIM A SINGLE IC SOLUTION.

22           WITH RESPECT TO THE '995 ADMITTEDLY IT'S A TOUGHER

23   QUESTION WHETHER OR NOT THE AM&D CHIP DOES COMES IN.  IT IS

24   MENTIONED THERE, BUT ONLY MENTIONED AS AN EXAMPLE, IT'S ONLY

25   MENTIONED AS AN EXAMPLE FOR THE CATEGORY ONE TYPE OF

```
 1   COMPRESSION.

 2           IN OUR VIEW, YOUR HONOR, LOOKING AT THE BIG PICTURE,

 3   GIVEN THE FACT IT WAS JUST AN EXAMPLE, WE BELIEVE IT SHOULD NOT

 4   COME IN.

 5           WITH RESPECT TO THE COMPRESSION MEANS IN THE '995.

 6   AND JUST BRIEFLY ON THE DECOMPRESSION MEANS, YOUR HONOR,

 7   ESSENTIALLY THE SAME ISSUE, I JUST WANT TO POINT SOMETHING OUT

 8   AGAIN.

 9           WE HAVE THE SAME ORDER ISSUE THAT COMES INTO PLAY

10   AGAIN ON THE DECOMPRESSION MEANS, AND IT'S PERHAPS EVEN MORE

11   GLARING HERE.  IT IS APPARENT WHEN YOU LOOK AT THE

12   DECOMPRESSION MEANS THAT THIS WHOLE NOTION THAT YOU'RE GOING TO

13   STORE SOME SORT OF TIME COMPRESSION JUST DOESN'T MAKE SENSE.

14           THIS CLAIM REQUIRES THAT THE DECOMPRESSION MEANS IS

15   COUPLED TO THE RANDOM ACCESS STORAGE MEANS WHICH IS DIGITAL BY

16   NATURE, SELECTIVELY DECOMPRESSES THE TIME-COMPRESSED

17   REPRESENTATION AND IT DOES IT FOR THE PURPOSE OF EDITING, SO

18   THAT YOU CAN THEN EDIT THE SIGNAL.

19           WELL, IN THE TIME COMPRESSION DOMAIN, IN THE TIME

20   COMPRESSION WORLD THAT WOULD MAKE NO SENSE.  THERE'S NO REASON

21   TO DECOMPRESS BECAUSE THE BITS ARE IDENTICAL, IT'S ALL THE

22   ZEROES AND ONES, ARE IDENTICAL BETWEEN THE COMPRESSED SIGNAL,

23   IF YOU WILL, AND THE UNCOMPRESSED SIGNAL.

24           SO THERE'S NO REASON TO GO THROUGH THIS PROCESS IN

25   ORDER TO DECOMPRESS BEFORE EDITING, NOR IS THERE ANY REASON TO
```

1    DO WHAT'S DESCRIBED IN THE CLAIM 21 WHERE THE COMPRESSION MEANS

2    COMES BACK IN AND THEN RECOMPRESSES AGAIN.

3              SO WE GOT MULTIPLE STEPS INVOLVED HERE IN CLAIMS 20

4    AND 21 OF THE '995 WHERE THE CLAIM, WHERE YOUR DECOMPRESSING

5    THE TIME-COMPRESSED REPRESENTATION THAT'S STORED IN THE DIGITAL

6    MEMORY, YOU'RE EDITING IT AND THEN YOU'RE RECOMPRESSING IT.

7    YOU DON'T GO THROUGH ALL THOSE STEPS IN THE TIME COMPRESSION

8    AREA.

9              AND, YOUR HONOR, THAT'S ALL I HAVE.  THANK YOU.

10             **THE COURT:**  WELL, IT SAYS, THOUGH, UNLESS I

11   MISUNDERSTOOD SOMETHING YOU SAID FOR EDITING MEANS COUPLED TO,

12   ET CETERA, FOR EDITING SAID SELECTIVELY DECOMPRESSED

13   TIME-COMPRESSED REPRESENTATIONS, RIGHT?

14             **MR. HEIM:**  YES.

15             **THE COURT:**  SO WHAT ARE YOU DECOMPRESSING THERE, THE

16   TIME-COMPRESSED REPRESENTATION, RIGHT?

17             **MR. HEIM:**  ABSOLUTELY.  ABSOLUTELY.  THE TIME

18   COMPRESSION WORLD YOU DON'T SAVE ANY OF THAT TIME COMPRESSION

19   INFORMATION WHEN YOU STORE IT, ALL YOUR SAVING ARE THE ZEROES

20   AND ONES.

21             THERE'S NO REASON TO GO UNDO ANYTHING TO DECOMPRESS

22   ANYTHING BECAUSE ALL YOU HAVE IN THE TIME COMPRESSION DOMAIN,

23   TIME COMPRESSION WORLD, APPLE'S TIME COMPRESSION SITUATION ARE

24   JUST ZEROES AND ONES, THERE'S NO REASON TO GO IN AND DO

25   DECOMPRESSION IN THAT SITUATION.

1    **THE COURT:**  WELL, AND IN DOING DECOMPRESSION SOMEONE

2    SKILLED IN THE -- ORDINARY SKILL IN THE ART WOULD KNOW HOW TO

3    DO THAT AS WELL BY WHAT, REVERSE ALGORITHMS?

4    **MR. HEIM:**  EXACTLY, YOUR HONOR.  DR. HEMAMI SAID THE

5    APPROPRIATE STRUCTURE FOR THE DECOMPRESSION MEANS IS A

6    COMPRESSOR DECOMPRESSOR, THAT SAME KODAK EXECUTING THE

7    DECOMPRESSION ALGORITHM CONSISTENT WITH THE COMPRESSION

8    ALGORITHM, JUST THE SAME PROCESS.

9    **THE COURT:**  OKAY.  LET'S TRY TO KEEP IT TO FIVE.  TAKE

10   ME THAT LONG GET OFF THE BENCH.

11                     (RECESS TAKEN.)

12                   (PROCEEDINGS RESUMED.)

13   **MR. STEPHENS:**  GARLAND STEPHENS FOR APPLE.

14   **THE COURT:**  I'M GOING TO ATTEMPT TO COMPRESS.  ARE YOU

15   GOING TO BE ABLE TO WRAP IT UP QUICKLY?

16   **MR. STEPHENS:**  I'M GOING TO GO IN A SLIGHTLY DIFFERENT

17   ORDER.  I'M GOING TO START WITH DISPUTES ABOUT -- ONLY ABOUT

18   STRUCTURE AND THEN SAVE THE DISPUTES ABOUT 1126 APPLIES FOR

19   LAST.

20        AND I'M GOING TO START WITH COMPRESSION DECOMPRESSION

21   MEANS.  THIS IS SOMEWHAT MORE COMPLICATED THAN MR. HEIM MADE IT

22   SOUND.  WE ARE PROPOSING ALTERNATIVE CONSTRUCTIONS UNDER OUR

23   CONSTRUCTION, WE SAY THERE'S NO CORRESPONDING STRUCTURE UNDER A

24   CONSTRUCTION WHERE ONLY DATA COMPRESSION IS REQUIRED, NOTHING

25   MORE THAN DATA COMPRESSION IS REQUIRED, THEN HAVE ALTERNATIVE

1    CONSTRUCTION WHICH IS THE AMD 7971 CHIP FOR THE '995 PATENT AND

2    NOTHING FROM THE OTHER TWO.

3        **THE COURT:**  WELL, HOLD ON JUST A MINUTE.  I HAVE TO

4    GET MY PATENT OUT.  LOOK AT THE LANGUAGE OF THE PATENT.

5        **MR. STEPHENS:**  NO SHORTAGE OF THOSE HERE.

6        **THE COURT:**  BUT IT SAYS IN COLUMN FIVE AFTER TALKING

7    ABOUT THE COMPRESSION ALGORITHM, ET CETERA, ONE EXAMPLE OF AN

8    APPROPRIATE COMPRESSION SLASH DECOMPRESSION CIRCUIT, TO ME THAT

9    MEANS, OKAY, HERE'S AN EXAMPLE, THIS ISN'T THE ONLY WAY TO DO

10   IT?

11       **MR. STEPHENS:**  THAT'S CORRECT, THERE'S A COUPLE

12   PROBLEMS WITH THAT.  THE FIRST ONE IS THE RECITED FUNCTION FOR

13   THE MEANS THAT WE'RE TALKING ABOUT IS NOT DATA COMPRESSION,

14   IT'S COMPRESSING INTO A TIME-COMPRESSED REPRESENTATION HAVING

15   AN ASSOCIATED BURST TIME PERIOD, ALL THAT LANGUAGE WHICH YOU

16   HEARD ABOUT ALL DAY.

17       IF THIS WERE SIMPLY A MEANS FOR PERFORMING DATA

18   COMPRESSION, THEN THAT MIGHT MAKE SENSE.  THE PROBLEM, OF

19   COURSE, WHAT'S DESCRIBED THERE ONLY PERFORMS DATA COMPRESSION,

20   THAT'S THE --

21       **THE COURT:**  THAT'S THE IF CLAUSE THAT WE HAVE TO GET

22   RESOLVED.

23       **MR. STEPHENS:**  INDEED, EXCEPT THAT WE HAVE STATEMENTS

24   MADE HERE TODAY AND IN THE BRIEFING FROM BURST THAT THE CLAIMS

25   ACTUALLY REQUIRE SOMETHING MORE THAN DATA COMPRESSION AND THAT

1    DATA COMPRESSION IS NOT THE EQUIVALENT OF THE CLAIMED TIME

2    COMPRESSION.

3         AND, I THINK, YOU HEARD MR. HEIM THIS MORNING MANY

4    HOURS AGO NOW SAY, THAT DATA COMPRESSION WAS A PART OF IT, BUT

5    THERE WAS SOMETHING ELSE THAT, I THINK, WAS THIS UNABLE OR

6    ALLOWING KIND OF THING THAT CLEAR UNDER THE CLAIM LANGUAGE

7    WE'RE CONSTRUING HERE IS PART OF THE PERFORMED FUNCTION.

8         SO DATA COMPRESSION IS NOT ENOUGH TO PERFORM THE

9    RECITED FUNCTION FOR THE COMPRESSION MEANS.  THAT'S, I THINK,

10   THE BIGGEST PROBLEM WITH THE PROPOSAL THAT BURST HAS MADE.

11   BECAUSE THEIR PROPOSAL IS NOTHING BUT DATA COMPRESSION.

12        QUITE EXPLICITLY, COMPRESSOR DECOMPRESS ARE EXECUTING

13   ONE OR BOTH OF FOLLOWING DATA COMPRESSION ALGORITHMS, WERE --

14   SO WHERE IS THE SOMETHING ELSE THAT THEY ADMIT IS REQUIRED TO

15   CREATE A TIME-COMPRESSED REPRESENTATION?

16        NOW, AS I JUST MENTIONED, THE ONLY THING THAT'S IN ANY

17   OF THE PATENTS ACTUAL STRUCTURE FOR PERFORMING COMPRESSION IS A

18   BLACK AND WHITE FAX CHIP, THAT'S THE 7971 CHIP, AND IT WORKED

19   WITH TWO TONE IMAGES, NOT VIDEO.

20        IT WAS DESIGNED TO WORK INSIDE OF A TYPICAL FAX

21   MACHINE, YOU PUT IN A BLACK AND WHITE IMAGE ON ONE END AND GET

22   IT OUT ON THE OTHER AND THERE'S SOME PROBLEMS WITH THAT CHIP

23   WHICH WE'LL ADDRESS IN A MOMENT.

24        BUT DR. HEMAMI ADMITTED THAT IS, IN FACT, THE ONLY

25   EXAMPLE OF A COMPRESSOR DECOMPRESSOR GIVEN IN THE ENTIRE

PATENT.  SHE ADMITTED THAT COMPRESSION IS NOT DONE BY THE CPU

WHICH ARE DISCLOSED, SO THE ONLY ACTUAL STRUCTURE, WHETHER IT'S

LABELED AN EXAMPLE OR NOT THE ONLY ACTUAL STRUCTURE DISCLOSED

IN THE '995 PATENT IS THIS FAX CHIP.  NOW, THERE'S

ADDITIONAL --

       **THE COURT:**  ONE OF ORDINARY SKILL IN THE ART, COULD

ONE OF ORDINARY SKILL IN THE ART USE THESE ALGORITHMS?

       ASSUME THIS INFORMATION WITH RESPECT TO THE AMD DEVICE

IS NOT IN THE PATENT, JUST IS NOT THERE, COULD ONE OF ORDINARY

SKILL IN THE ART TAKE THIS LANGUAGE WITH RESPECT TO THE

COMPRESSION ALGORITHMS THAT ARE RECITED THERE AND PERFORM DATA

COMPRESSION?

       **MR. STEPHENS:**  I BELIEVE THE ANSWER TO THAT IS, YES,

YOU COULD PERFORM DATA COMPRESSION WITH IT AS OPPOSED TO DATA

COMPRESSION.

       I WASN'T CORRECT, YOUR HONOR, MAY DO OVER?

       **THE COURT:**  THERE YOU GO.

       **MR. STEPHENS:**  YOU COULD PERFORM DATA COMPRESSION OF

SOME SORT, WHAT YOU COULD NOT DO COMPRESSION DECOMPRESSION INTO

A TIME-COMPRESSED REPRESENTATION OF VIDEO THAT'S DESCRIBED IN

THE PATENT BECAUSE THE CPU'S, FOR EXAMPLE, THAT ARE DESCRIBED

IN THE SPECIFICATION SIMPLY AREN'T FAST ENOUGH.

       IF YOU HAVE A SUPER COMPUTER YOU CAN IMPLEMENT IT,

THERE'S NO HARDWARE DISCLOSED IN THIS PATENT FOR EXECUTING

ALGORITHMS DESCRIBED IN THIS PATENT OR ALLUDED TO IN THIS

1    PATENT THAT'S ACTUALLY CAPABLE OF PERFORMING THE KIND OF VIDEO

2    COMPRESSION DESCRIBED IN THE PATENT.

3         THAT, BY THE WAY, APPLIES TO THE FAX CHIP AS WELL,

4    WASN'T FAST ENOUGH AS DR. HEMAMI ADMITTED DURING HER

5    DEPOSITION.

6         **THE COURT:**  WELL, THEN THE AMD CIRCUIT THAT IS

7    REFERRED TO HERE, THE AMD 971 PERFORMS SOMETHING DIFFERENT FROM

8    WHAT THESE ALGORITHMS THAT ARE CITED HERE PERFORM?

9         **MR. STEPHENS:**  WELL, IT DID IMPLEMENT THE CCITT GROUP

10   FOUR ALGORITHM, THAT ALGORITHM IS FOR FAX MACHINES.  THAT IS

11   NOT A VIDEO COMPRESSION ALGORITHM, THERE'S NO DISPUTE ABOUT

12   THAT, PARTIES HAVE AGREED THAT'S A FAX CHIP.

13        MR. LANGE THE INVENTOR ADMITTED IT'S A FAX CHIP, IT'S

14   NOT A CHIP THAT'S DESIGNED TO DO VIDEO COMPRESSION.  IN FACT,

15   THERE'S REALLY NO -- THAT THERE WAS A CHIP AVAILABLE AT THE

16   TIME THAT COULD PERFORM THE KIND OF REAL TIME VIDEO COMPRESSION

17   THAT'S DESCRIBED IN THE PATENT, THERE'S PRETTY GOOD EVIDENCE

18   THERE WASN'T.

19        **THE COURT:**  INCLUDING -- LET ME MAKE SURE I

20   UNDERSTAND, INCLUDING THE 7971 THAT'S CITED HERE?

21        **MR. STEPHENS:**  THAT'S CORRECT.

22        **THE COURT:**  THAT COULDN'T PERFORM THAT AS WELL.  AS

23   FAR AS --

24        **MR. STEPHENS:**  DR. HEMAMI ADMITTED THAT WE SEE THAT IN

25   THE SLIDE.  THERE'S ALSO A CALCULATION HERE WHICH REFLECTS THE

1    INFORMATION IN THE PATENT ABOUT THE AMOUNT OF DATA PER FRAME IN

2    THE VIDEO THAT'S DESCRIBED THERE.

3         SO YOU HAVE 1.89 MILLION BITS PER FRAME TIMES 30

4    FRAMES PER SECOND AND THAT YIELDS 56.7 MEGABYTES PER SECOND OF

5    DATA THAT YOU HAVE TO PROCESS IN ORDER TO PERFORM THE

6    COMPRESSION THAT'S DESCRIBED IN THE PATENT.

7         NOW, IF YOU LOOK AT THE SPECIFICATION FOR THE AMD

8    CHIP, PUBLICLY AVAILABLE SPECIFICATION DESCRIBING HOW THE CHIP

9    WORKS, IT WOULD ONLY PROCESS 12 MILLION PIXEL PER SECOND, SO

10   IT'S SIMPLY WASN'T FAST ENOUGH.

11        AND DURING HER DEPOSITION DR. HEMAMI WAS ASKED IF THE

12   DATA RATE WAS HIGHER THAN THE FAX CHIP AND SHE ADMITTED THAT IT

13   WAS.  SO THAT FAX CHIP IS NOT CAPABLE OF PERFORMING THE

14   COMPRESSION THAT'S DESCRIBED, AND THAT'S PROBABLY WHY IT WAS

15   DELETED FROM THE LATER PATENT, NOT THE REASON MR. HEIM GAVE.

16   BECAUSE THEY REALIZED THAT THAT EXAMPLE WAS SIMPLY INOPERABLE.

17        **THE COURT:**  WELL, IS THIS -- WAS THIS LANGUAGE ALSO

18   DELETED?

19        LET ME ASK YOU A COMPOUND QUESTION, SO I CAN GET IT

20   OVER WITH.  AND IS THIS LANGUAGE CORRECT, WHEN YOU GO ON IN THE

21   NEXT PARAGRAPH, WHEN PATENT GOES -- CONTINUES IN THE NEXT

22   PARAGRAPH TO SAY, IT IS ALSO ESTIMATED THAT ON THE AVERAGE THE

23   CCITT GROUP FOR ALGORITHMS COULD CUT MEMORY REQUIREMENT BY

24   5 PERCENT THUS NO DATA COMPRESSION, ET CETERA, BUT USING THE

25   ABOVE COMPRESSION TECHNIQUE ESTIMATED THAT MEMORY WILL REQUIRE

1    ONLY 250 MEGABYTES, IS ALL OF THAT CORRECT?

2         MR. STEPHENS:  NO, IT'S DEFINITELY NOT CORRECT.  SO IT

3    IS NOT POSSIBLE USING THE TECHNIQUES DESCRIBED HERE TO GET A

4    200 TO ONE DATA COMPRESSION RATIO.  THAT IS FAR HIGHER THAN

5    ANYTHING THAT'S ACHIEVED EVEN TODAY, MANY YEARS LATER IN

6    COMMERCIAL VIDEO COMPRESSION MECHANISM.  YOU MIGHT DO IT IN

7    SOME THEORETICAL SENSE, BUT CERTAINLY AS A PRACTICAL MATTER

8    WOULD NOT WORK.

9         THIS WAS VERY MUCH A BAILING WIRE TWINE KIND OF

10   DISCLOSURE HERE BECAUSE IT'S A FAX CHIP, IT'S NOT FOR VIDEO

11   COMPRESSION.

12        THE COURT:  DOES THAT LANGUAGE SHOW UP IN THE LATER,

13   ANY OF THE LATER PATENTS?

14        MR. STEPHENS:  YES, MA'AM, IT DOES.  SO THERE'S A

15   DESCRIPTION OF THE CCITT GROUP FOUR ALGORITHM AND THEN, IN

16   FACT, WE HAVE THE REDACTION SHOWN HERE, YOUR HONOR, ON THE

17   SCREEN.  IT TALKS ABOUT EXISTING COMPRESSION ALGORITHMS.  IF

18   YOU SEE THAT PHRASE THERE -- BEAR WITH ME FOR A MOMENT.

19        THE COURT:  SHOWS UP IN THE LANGUAGE I JUST REFERRED

20   TO, SHOWS UP IN THE '705 IN COLUMN FIVE AS WELL.

21        MR. STEPHENS:  THAT'S DELETED IS THE CHIP ITSELF,

22   WHICH IS THE ONLY ACTUAL HARDWARE THAT'S DESCRIBED IN ANY OF

23   THE PATENTS FOR ACTUALLY PERFORMING COMPRESSION.

24        SO THE REST OF THEM ARE ALGORITHMS, IF YOU HAD THE

25   RIGHT KIND OF HARDWARE, WHICH IS NOT DISCLOSE AS ADMITTED, THEN

1    YOU MIGHT BE ABLE TO PERFORM DATA COMPRESSION, BUT NOT IN

2    SOMETHING EXTRA THAT WE'VE HEARD ABOUT BEING NECESSARY TO

3    CREATE A TIME-COMPRESSED REPRESENTATION.

4            **THE COURT:**  I'LL LET YOU MOVE ON.

5            **MR. STEPHENS:**  NOW, YOU HEARD MR. HEIM, I THINK, ADMIT

6    JUST A FEW MINUTES AGO, THAT THE AMD CHIP WAS REALLY ONLY THE

7    ABOUT PART ONE OF THE VIDEO COMPRESSION THAT THEIR PROPOSING IS

8    PART OF THEIR CONSTRUCTION.

9            SO PART 2 OF THE VIDEO COMPRESSION AND THE AUDIO

10   COMPRESSION THERE'S SIMPLY NO DISCLOSURE OF ANY STRUCTURE AT

11   ALL.  THERE'S NO CHIPS, NO A6, NO CHIP SETS, THE CPU'S ARE NOT

12   TIED TO IT, THERE'S NO STRUCTURE AT ALL TIED TO PERFORMING

13   THESE ADDITIONAL COMPRESSION ALGORITHMS WHICH ARE MENTIONED.

14           AND THAT'S CERTAINLY TRUE IN THE LATER PATENTS WHERE

15   THE AMD CHIP WERE REMOVED, NO STRUCTURE AT ALL FOR ANY OF THE

16   ALGORITHMS THAT ARE DESCRIBED.

17           ALGORITHMS ARE NOT STRUCTURE, BURST ADMITS THAT IN ITS

18   BRIEFING, THAT THEY'RE NOT CLAIMING ALGORITHMS BY ITSELF ARE

19   SUFFICIENT STRUCTURE, HAS TO BE EXECUTED SOMEHOW.  WHAT THEY

20   SAY INSTEAD IS THAT THIS BOX HERE LABELED COMP DECOM 26 BY

21   ITSELF ALONG THE MINIMALISTIC DESCRIPTION OF IT IN THE TEXT IS

22   ENOUGH, TO BE THE STRUCTURE THAT CORRESPONDS TO THE CLAIMED

23   COMPRESSION MEANS.

24           AND THEY RELY ON THIS CASE AS S3 VERSUS VIDEO FOR THAT

25   PROPOSITION WHERE, INDEED, THERE WAS A COMPARABLE KIND OF BOX

1    WITH A LABEL ON IT, THAT WAS HELD TO BE SUFFICIENT STRUCTURE,

2    BUT THE CRITICAL DIFFERENCE IS THAT IN S3 THAT WAS A STANDARD

3    ELECTRONIC COMPONENT YOU COULD JUST GO OUT AND BUY AND HERE

4    THERE'S NO SUCH THING.  WE HAVE A DISCLOSURE OF A FAX CHIP THAT

5    WOULDN'T WORK AND NO OTHER HARDWARE DISCLOSURE.

6            SO YOU DON'T HAVE A SITUATION HERE WHERE THE

7    COMPRESSOR THAT IS THE SUBJECT OF THAT BOX 26 IS SOMETHING

8    THAT'S A STANDARD COMPONENT WHO'S STRUCTURE WELL-KNOWN.

9            AND IF YOU THINK ABOUT IT, THAT COULDN'T VERY WELL BE

10   SINCE THE FUNCTION THAT IT'S PERFORMING IS CREATING THAT

11   TIME-COMPRESSED REPRESENTATION WHICH IS PRECISELY WHAT BURST

12   SAYS ITS INVENTION IS.

13           SO IF YOU COULD BUY OFF-THE-SHELF THE COMPRESSOR FOR

14   CREATING A TIME-COMPRESSED REPRESENTATION YOU COULD HARDLY

15   CLAIM THAT WAS AN INVENTION.  SO THEY'RE KIND OF STUCK HERE,

16   THEY HAVE A BOX THAT'S THE ONLY STRUCTURE, BUT IT CAN'T

17   POSSIBLY BE AN OFF-THE-SHELF PRODUCT OR THERE'S NO INVENTION.

18           NOW, EVEN IF YOU ASSUME THAT THERE'S NOTHING MORE THAN

19   DATA COMPRESSION THAT'S REQUIRED THEN, AGAIN, THE ONLY

20   STRUCTURE IS THIS AMD 7971 CHIP WHICH WAS NOT FAST ENOUGH, AND

21   THAT'S PRECISELY WHAT JUDGE MOTZ HELD WAS THE ONLY

22   CORRESPONDING STRUCTURE IN ANY OF THE PATENTS.  HE SAYS THE

23   ONLY MEANS LINKED TO THE COMPRESSION FUNCTION WAS THE AMD 7971

24   HARDWARE CHIP, THERE'S NO REFERENCE TO THAT STRUCTURE IN THE

25   '705 PATENT.

1          AND, INDEED, THE OTHER PATENTS, THIS CASE HE SAID

2     SPECIFICALLY UNLESS AN ALGORITHM COMBINED WITH SUCH EXECUTED

3     MEANS IT DOES NOT CONSTITUTE A STRUCTURE WITHIN THE MEANING OF

4     SECTION 116.

5          SO THAT'S WHAT I HAVE FOR COMPRESSION MEANS.  I'LL

6     MOVE ON, UNLESS YOUR HONOR HAS ANYMORE QUESTIONS ABOUT IT.

7          **THE COURT:**  NO, THAT'S FINE.

8          **MR. STEPHENS:**  THE NEXT SECTION IS TRANSMISSION MEANS.

9     AGAIN, THERE'S NO DISPUTE HERE SECTION 1126 APPLIES.  THE

10    DISPUTE HERE ABOUT WHETHER OR NOT AUXILLARY  DIGITAL PORT

11    SHOULD BE INCLUDED IN THE CORRESPONDING STRUCTURE.

12         AND THE PROBLEM HERE IS WE'RE TALKING ABOUT

13    TRANSMISSION AWAY AS YOUR HONOR HEARD QUITE A BIT ABOUT EARLIER

14    TODAY, AND WHAT THEY'RE POINTING TO EXPRESSLY LABELED AS AN

15    INPUT, NO DESCRIPTION OF THIS AUXILIARY DIGITAL INPUT ANYWHERE

16    IN THE PATENT AND AS ALSO BEING AN OUTPUT, THERE JUST SIMPLY

17    ISN'T.

18         SO THERE'S NO CONCEIVABLE WAY THAT THAT SHOULD BE AN

19    APPROPRIATE CORRESPONDING STRUCTURE FOR TRANSMISSION AWAY, IT'S

20    NOT LINKED TO THE FUNCTION OF TRANSMITTING.  IT'S ONLY LINKED

21    TO THE FUNCTION RECEIVING INPUTTING.

22         **THE COURT:**  WELL, IT REFERS TO TRANSCEIVER, RIGHT?

23         **MR. STEPHENS:**  THE PATENT AS A WHOLE DOES AND THE

24    CLAIMS DO, AND THERE ARE, OF COURSE, OTHER PORTS, FOR EXAMPLE,

25    USE A DIFFERENT POINTER HERE.

1           **THE COURT:**  YOU'RE NOT SAYING THAT THE DEVICES

2    PARTICULARLY AS --

3           **MR. STEPHENS:**  THIS DEVICE IS OVER HERE.

4           **THE COURT:**  ARE INPUT ONLY, THEY HAD INPUT AND OUTPUT?

5           **MR. STEPHENS:**  THE DEVICE AS A WHOLE CERTAINLY HAD

6    BOTH, NO QUESTION.  THIS 21 HERE, FOR EXAMPLE, CLEARLY AN

7    OUTPUT.  ALSO, HIDDEN BEHIND THIS BOX IS THE FIBEROPTIC PORT

8    WHICH YOU HEARD SO MUCH ABOUT AND THAT CLEARLY COULD SEND OR

9    RECEIVE.

10          BUT I'M TALKING ABOUT NOW IS ONLY THE AUXILIARY

11   DIGITAL INPUT, AND THE QUESTION FOR YOUR HONOR TO RESOLVE,

12   WHETHER THAT IS ALSO AN OUTPUT AND, THEREFORE, SHOULD BE

13   INCLUDED IN THE TRANSMISSION MEANS CORRESPONDING STRUCTURE.

14          **THE COURT:**  I SEE.

15          **MR. STEPHENS:**  MOVING ONTO EDITING MEANS, HERE WE HAVE

16   A SUBSTANTIAL DISCLOSURE IN THE PATENT ABOUT STRUCTURE THAT IS

17   LINKED EXPRESSLY TO EDITING, AND BURST REALLY WANTS TO LIMIT IT

18   JUST TO SOFTWARE IN THE PROCESSOR.

19          NOW, THE PRECISE STRUCTURE VARIES WITH THE PATENT THAT

20   WE'RE TALKING ABOUT, BUT THE BASIC ISSUE IS PRETTY MUCH THE

21   SAME.  THIS IS THE DISCLOSURE FROM THE '975 PATENT WHERE IT

22   SAYS THROUGH THE USE OF DCU 14 VIDEO SEGMENTS MAYBE EDITED AND

23   REARRANGED.  THERE OTHER PLACES WHERE THE FUNCTION OF EDITING

24   IS TIED EXPRESSLY TO THIS DCU OR DIGITAL CONTROL UNIT, IT'S

25   LABELED 14 AS IT SAYS RIGHT THERE IN THE TEXT, YOU CAN SEE THE

1    BOX LABELED 14 WE COLORED YELLOW AND BLOWN IT UP THERE.

2

3            IF, FOR EXAMPLE, INCLUDES THE ROM THAT MR. PAYNE WAS

4    SUGGESTING TO YOUR HONOR WAS NOT PART OF THE MEANS FOR EDITING,

5    HERE IT'S CLEARLY LINKED AND, THEREFORE, MUST BE PART OF THE

6    STRUCTURE FOR PERFORMING THAT.

7            **THE COURT:**  WHAT FUNCTION DOES IT PERFORM?

8            **MR. STEPHENS:**  EDITING, YOUR HONOR.

9            **THE COURT:**  NO, I'M TALKING ABOUT SPECIFICALLY THE

10   ROM, WHAT FUNCTION DOES THAT PERFORM?

11           **MR. STEPHENS:**  OKAY.  IT STORES THE EDITING PROGRAM

12   AND THE PROCESSOR, THE CPU THERE, YOU CAN SEE THAT BY THE LINE

13   THERE THAT JOINS 31 WITH 32, RETRIEVES INSTRUCTIONS FROM THE

14   ROM AS IT'S EXECUTING THE EDITING PROGRAM AND DISPLAYING THE

15   IMAGES ON THE SCREEN THAT THE USER INTERACT WITH IN ORDER TO

16   ACTUALLY EDIT PICTURES.

17           SO THOSE INSTRUCTIONS ARE STORED IN THE ROM, THEY'RE

18   RETRIEVED BY THE CPU IN THE PROCESS OF PERFORMING THE EDITING

19   FUNCTION.

20           **THE COURT:**  WELL, DO YOU -- YOU DON'T REALLY DISAGREE

21   WITH WHAT FUNCTION IT -- YOU DON'T AGREE -- DISAGREE WITH BURST

22   WHAT FUNCTION IT PERFORMS, YOU ONLY DISAGREE AS TO WHETHER OR

23   NOT THAT IS PART OF THE EDITING MEANS?

24           **MR. STEPHENS:**  I THINK, THAT'S A FAIR CHARACTERIZATION

25   OF IT, YES.  I DON'T THINK THERE'S A FUNDAMENTAL DISAGREEMENT

1    WITH THE FACT THE EDITING PROGRAM IS SO -- EDITING PROGRAM

2    STORED IN THE ROM RETRIEVED BY THE CPU DURING THE EDITING

3    PROCESS.

4         THE ONLY DISPUTE THAT IS THEN LINKED BY THE PATENT TO

5    THE FUNCTION OF EDITING WHICH SAY IT CLEARLY IS.  AND THE

6    SLIDES, I THINK, CLEARLY SHOW, THEREBY EXPRESSLY TYING DCU 14

7    TO EDITING AND THEN SPELLING OUT EXACTLY WHAT'S IN IT.

8         AND TALKING FURTHER BELOW ABOUT THERE -- ABOUT THE

9    USER INTERFACE THAT IS PART OF THE PROGRAM AND THE INPUTS THAT

10   ARE USED WITH THE PROGRAM, LIKE THE LIGHT PEN OR A MOUSE THAT

11   THE USER USES TO INTERACT WITH THAT EDITING PROGRAM.  SO IT'S

12   OUR VIEW THAT UNDER SECTION 1126 THOSE ARE ALL CLEARLY TIED TO

13   THE FUNCTION OF EDITING AND, THEREFORE, PART OF THE

14   CORRESPONDING STRUCTURE.

15   **MR. STEPHENS:**  NOW, THAT BRINGS ME TO THE SECTION

16   WHERE THERE'S A DISPUTE ABOUT WHETHER SECTION 1126 ACTUALLY

17   APPLIES.  AND, I GUESS, I WANT TO START HERE BY SAYING THAT

18   THIS IS REALLY ANOTHER EXAMPLE OF BURST SAYING ONE THING TO THE

19   PATENT OFFICE AND THEN COMING TO THE COURT WANTING TO CHANGE

20   THEIR MIND.

21        THEY USED THE WORD MEANS IN THE CLAIMS REPEATEDLY, BUT

22   NOT EXCLUSIVELY, WE'LL GET TO THAT IN A MOMENT.  NOW, THEY WANT

23   TO SAY, WELL, WE DIDN'T REALLY MEAN IT, SO DON'T USE 1126 TO

24   INTERPRET THESE CLAIMS, EVEN THOUGH THAT'S THE PRESUMPTION

25   BECAUSE WE DIDN'T REALLY MEAN IT.

1          NOW, ANOTHER THING I WANT TO ADDRESS IS YOU HEARD

2     MR. PAYNE SAY THAT APPLE HAS ADMITTED IN ITS BRIEF THAT THESE

3     WORDS THAT WE'RE GOING TO TALK ABOUT IN A MINUTE ALL STRUCTURAL

4     AND THAT SHOULD BE THE END THE MATTER.  I WANT TO READ FOR YOU

5     FROM PAGE 44 WHICH MR. PAYNE CITED WE DO SAY.

6          THE TERMS AT ISSUE INPUT MEANS, OUTPUT MEANS, STORAGE

7     MEANS ARE ALL LIKE THE TOP MEANS THE FEDERAL CIRCUIT FOUND TO

8     BE SUBJECT TO 1126.  INPUT, OUTPUT AND STORAGE ARE ALL

9     FUNCTIONAL NOUNS THAT IDENTIFIED GENERICALLY THE COMPLETE CLASS

10    OF STRUCTURES THAT PERFORM THEIR FUNCTION.

11         THAT'S WHAT WE SAID.  THAT'S NOT AN ADMISSION THAT

12    THERE'S ENOUGH STRUCTURE THERE THAT THEY'RE TAKING OUT OF 1126.

13    NOW, I DON'T WANT BELABOR THE LAW TOO MUCH, I KNOW YOUR HONOR

14    KNOWS IT, BUT THERE ARE A FEW POINTS, I THINK, WE NEED TO TOUCH

15    ON.

16         THE ISSUE HERE REALLY IS WHETHER OR NOT THE

17    PRESUMPTIONS HAS BEEN REBUTTED BY BURST, AND WE OBVIOUSLY CLAIM

18    IT HAS NOT, IT CAN BE REBUTTED WHERE THE CLAIM ITSELF RECITES A

19    FUNCTION AND THEN ELABORATE SUFFICIENT STRUCTURE TO PERFORM

20    ENTIRELY THE RECITED FUNCTION.

21         IT'S NOT ENOUGH JUST HAVE SOME STRUCTURE RECITED IN

22    COMBINATION WITH THE MEANS, AND I THINK THAT IS A FUNDAMENTAL

23    DISAGREEMENT WITH THE LAW.

24         IF I UNDERSTOOD MR. PAYNE CORRECTLY, BURST'S POSITION

25    IS THAT ANY STRUCTURE AT ALL IS ENOUGH TO REBUT THE

1    PRESUMPTION, AND THE CASE LAW CLEARLY DOES NOT GO ALONG WITH

2    THAT PROPOSITION.

3         SO ANOTHER IMPORTANT ISSUE HERE WHETHER OR NOT A CLAIM

4    THAT USES THE WORD MEANS CAN BE CONSTRUED SO BROADLY AS TO

5    COVER EVERY POSSIBLE WAY TO PERFORM THE FUNCTION, THAT'S

6    EXPRESSLY WHAT 1126 FORBIDS, THAT'S WHY YOU'RE LIMITED TO THE

7    STRUCTURES DISCLOSE IN THE PATENT ITSELF.

8         SO YOU KIND OF HAVE A CHOICE, 1126 GIVES YOU A CHOICE,

9    EITHER PUT STRUCTURE IN THE CLAIM OR YOU CAN FUNCTIONALLY CLAIM

10   EVERY POSSIBLE WAY OF PERFORMING THAT FUNCTION, BUT THEN YOU'RE

11   LIMITED TO WHAT'S DISCLOSED IN THE SPECIFICATION FOR PERFORMING

12   THOSE FUNCTIONS.  IT'S A QUID PRO QUO, YOU MAKE YOUR CHOICE AND

13   YOU LIVE WITH IT.

14        **THE COURT:**  BUT THE BOTTOM LINE QUESTION, EVEN IF THE

15   CLAIMS DOES NOT GIVE A DETAILED DESCRIPTION OF THE STRUCTURE,

16   IF -- IF THE TERM IS ONE THAT A PERSON OF ORDINARY SKILL IN THE

17   ART WOULD KNOW WHAT IT MEANS AND WOULD UNDERSTAND WHAT ITS

18   STRUCTURE IS AND IN ADDITION TO WHATEVER FUNCTION THEY PERFORM,

19   BUT MOSTLY UNDERSTANDS THE STRUCTURE WOULD BE ABLE TO CONSTRUCT

20   SUCH A DEVICE.

21        **MR. STEPHENS:**  SORRY, GO AHEAD.

22        **THE COURT:**  THEN A SINGLE WORD MAY BE SUFFICIENT,

23   RIGHT?

24        **MR. STEPHENS:**  UNDER SOME CIRCUMSTANCES, PERHAPS.  BUT

25   IT'S A DIFFERENT QUESTION THEN ENABLEMENT WHAT ONE OF ORDINARY

1    SKILL WOULD BE ABLE TO FIGURE OUT.

2         IT'S REALLY WHETHER THE WORD CARRIES WITH IT OR

3    DESCRIBES ENOUGH STRUCTURE TO PERFORM THE RECITED FUNCTION.

4    AND IT HAS TO BE A STRUCTURE THAT'S SUFFICIENTLY DEFINITE THAT

5    YOU'RE NOT GETTING BY ADDING THIS ONE ADDITIONAL WORD, WHAT

6    1126 SAYS YOU CAN'T HAVE, THAT IS EVERY POSSIBLE WAY OF

7    PERFORMING THE RECITED FUNCTION.

8         **THE COURT:**  BUT THE PERSON -- THE STANDARD BY WHICH

9    YOU DETERMINE WHETHER IT SENDS THAT STRUCTURE SIGNAL TO SOMEONE

10   IS SOMEONE OF ORDINARY SKILL IN THE ART?

11        **MR. STEPHENS:**  THAT IS CORRECT, YOUR HONOR, YES.  NOW,

12   IT'S OUR POSITION, I'LL TALK MORE SPECIFICALLY ABOUT THE TERMS

13   IN A MOMENT, BUT ALL OF THESE TERMS THAT WE'RE TALKING ABOUT

14   HERE, THAT THEY ARE FUNCTIONAL NOUNS THAT -- REALLY THEY'RE

15   NOUNS, BUT THEY'RE DESCRIBING THE FUNCTION OF THE UNDERLYING

16   DEVICES, THEREFORE, THEY ARE NOT SUFFICIENT STRUCTURE.

17        AND THEY'RE DESCRIBED -- AND THEY DON'T DESCRIBE A

18   SINGLE WELL DEFINED CLASS OF STRUCTURES LIKE YOU MIGHT BE ABLE

19   TO GO OUT AND BUY, THAT WOULD ALLOW YOU TO FULLY UNDERSTAND

20   WHAT'S BEING CLAIMED.  SO, THEREFORE, YOU NEED TO LOOK AT

21   WHAT'S DESCRIBED IN THE SPECIFICATION FOR PERFORMING THOSE

22   FUNCTIONS.

23        NOW, I WANT TO ADDRESS A COUPLE OF OTHER REASONS BURST

24   GAVE FOR NOT APPLYING 1126 HERE.  THE FIRST ONE, THE DRAFTER

25   WAS CLEARLY ENAMORED OF THE WORD MEANS.  I THINK, BURST IS

1    ENAMORED OF THE WORD ENAMORED, BUT I WOULD CALL THIS MY PATENT

2    LAWYER A DUMMY DEFENSE, YOU USE THE WORD MEANS BUT HE DIDN'T

3    REALLY MEAN IT OR DIDN'T KNOW WHAT IT MEANT, SO YOU SHOULD NOT

4    HOLD US TO IT.

5         THE SECOND ONE IS THE ELEMENTS CAN BE REWRITTEN TO

6    REMOVE THE WORD MEANS WHILE RETAINING THEIR MEANING.  I DIDN'T

7    HEAR THAT ARTICULATED HERE TODAY.  I DIDN'T SPEND MUCH TIME ON

8    IT, IT IS IN THE BRIEFS, I WANT TO TOUCH ON IT BRIEFLY.

9         LASTLY, THE TERMS ITSELF DESCRIBE SUFFICIENT

10   STRUCTURE.  THE FIRST ISSUE ABOUT WHETHER OR NOT THE DRAFTER

11   WAS ENAMORED WITH THE WORD MEANS, I THINK, IS BELIED BY THE

12   FACT SOMETIMES THEY USE MEANS AND SOMETIMES HE DIDN'T.

13        THIS IS JUST ONE EXAMPLE, THERE ARE MANY OTHERS, THIS

14   HAPPENS TO BE AN EXAMPLE WHERE HE SAID THAT SOMETHING THAT WAS

15   CLAIMED AS A MEANS IN A DEPENDENT CLAIM IS THEN NARROWED

16   SPECIFICALLY TO ONE OF THE STRUCTURES DESCRIBED IN THE PATENT.

17        BUT THE POINT IS THIS WAS NOT AN EXAMPLE WHERE HE JUST

18   PUT MEANS, WHERE IT WAS A CONSCIOUS DECISION MADE BY THE

19   DRAFTER.  HE UNDERSTOOD WHAT HE WAS DOING AND INTENTIONALLY

20   AVAILED HIMSELF OF 1126 AND SHOULD BE HELD TO IT.

21        THE SECOND ARGUMENT IS THAT YOU COULD REWRITE THESE

22   ELEMENTS, TAKE THE WORD MEANS OUT AND THE MEANING OF THOSE

23   PHRASES DOESN'T CHANGE.  THE PROBLEM WITH THAT, OF COURSE, IS

24   THAT THERE ARE PLENTY OF CASES OUT THERE WHERE PHRASES HAVE

25   BEEN HELD TO BE SUBJECT TO 1126 WHERE YOU COULD DO THE SAME

1    THING.

2            SO, FOR EXAMPLE, IN THE GREENBURG VERSUS ETHICAL CASE

3    WHICH WE CITE IN OUR BRIEF, AT THE MEANS FOR MOVING,

4    MAINTAINING THE MOVABLE MEMBER, TAKE THE MEANS OUT OF THAT YOUR

5    STILL GOING TO HAVE SOMETHING SENSIBLE.  FOR MOVING,

6    MAINTAINING MOVABLE MEMBER, YET THE COURT HELD THAT WAS SUBJECT

7    TO 1126.

8            SPRING MEANS INTENDING TO KEEP THE DOOR CLOSE.

9    THERE'S STRUCTURE DESCRIBED IN BOTH OF THOSE, SUFFICIENT

10   STRUCTURE THAT YOU COULD ACTUALLY TAKE THE WORD MEANS OUT AND

11   STILL UNDERSTAND WHAT'S BEING CLAIMED, AND YET IN BOTH CASES

12   THE COURT HELD THAT STRUCTURE DID NOT TAKE THOSE ELEMENTS OUT

13   OF SECTION 1126, THEY WERE NOT SUFFICIENT TO REBUT THE

14   PRESUMPTION.

15           NOW, THAT REALLY IS THE SAME POINT THIS SLIDE MAKES.

16   THAT IS -- IT'S PRETTY COMMON, IN FACT, TO PUT SOME STRUCTURE

17   INTO 1126 MEANS CLAIMS, AND THAT BY ITSELF IS NOT ENOUGH TO

18   REBUT THE PRESUMPTION.

19           I ALREADY ALLUDED TO THIS, THIS IS THE UNIDYNAMICS

20   CASE WHERE THE PHRASE AT ISSUE WAS SPRING MEANS TENDING TO KEEP

21   THE DOOR CLOSE, AND THE COURT SAID, WE DISAGREE WITH THE

22   DISTRICT COURT THAT RECITATION OF SPRING WHICH IS STRUCTURAL

23   LANGUAGE TAKES THE LIMITATION OUT OF THE AMBIT OF SECTION 1126.

24           YOU HEARD MR. PAYNE SAY THE PHRASE PERFORATION MEANS

25   HAD BEEN HELD, THIS IS THE COLE CASE, IS TO BE SUFFICIENT

1    STRUCTURE.  THAT IS, IN FACT, NOT REALLY WHAT COLE SAYS.  THERE

2    IS A LOT MORE STRUCTURE IN THE LIMITATION THAT WAS BEING

3    CONSTRUED IN COLE THEN JUST PERFORATION MEANS.  IT'S

4    PERFORATION MEANS EXTENDING TO THE MEANS THROUGH THE OUTER

5    IMPERMEABLE LAYER MEANS FOR TEARING A LOT OF STRUCTURE THERE.

6         IT'S DESCRIBING FOR YOU ALMOST A PICTURE THAT'S BEING

7    CLAIMED, SO FAR FROM PERFORATION MEANS BEING HELD SUFFICIENT,

8    WHAT WAS REALLY HELD SUFFICIENT WAS THERE VERY ELABORATE

9    STRUCTURE THAT'S DESCRIBED UNIDYNAMICS CASE WE CITE.

10        **THE COURT:**  I'M SORRY, BUT I HAVEN'T HAD A CHANCE TO

11   READ THE COLE CASE.  IT IS KIMBERLY CLARK.  OKAY.  SO EXACTLY

12   WHAT WAS IT DEFINING, FOR REMOVING THE TRAINING BRIEF, SO WAS

13   SOMETHING ALONG THE LINES OF WHAT YOU WERE JUST DESCRIBING.

14        **MR. STEPHENS:**  THAT'S RIGHT.  ONCE YOU KNOW THAT YOU

15   CAN KIND OF READ THAT AND GET A SENSE FOR WHAT'S BEING

16   DESCRIBED.

17        **THE COURT:**  WHY DON'T I GET THOSE SIMPLE CASES.

18        **MR. STEPHENS:**  OKAY.  SO THAT BRINGS US TO THE ACTUAL

19   TERMS HERE, AND THE POINT I WANT TO MAKE, THESE WORDS THAT

20   WE'RE LOOKING AT HERE ARE ALL REALLY FUNCTIONAL NOUNS.  THEY

21   REALLY -- THEY DON'T DESCRIBE SOME, YOU KNOW, BAR OR PIECE OF

22   METAL, OR PIECE OF SILICON THEY'RE, DESCRIBING A FUNCTION

23   STORAGE.  RIGHT.  THAT SOMETHING YOU STORED THINGS IN.

24        AND WE'LL SEE WHAT BURST IS PROPOSING FOR NON-1126

25   CONSTRUCTION FOR THESE TERMS SHOWS THAT DIRECTLY RANDOM ACCESS

1    STORAGE MEANS, INPUT MEANS, OUTPUT MEANS.  HOW DO GO BUY AN

2    INPUT, YOU CAN'T, INPUT MEANS SOMETHING YOU PUT THINGS INTO,

3    IT'S A FUNCTIONAL DESCRIPTION OF SOMETHING, SAME THING WITH

4    OUTPUT.

5         SO STARTING WITH STORAGE MEANS WE SEE THAT WHAT BURST

6    SAYS THAT IT SHOULD MEAN, NOT 1126 NOW, BUT CONSTRUCTION APART

7    FROM THAT IS A MEDIUM IN WHICH DATA IS RETAINED FOR SUBSEQUENT

8    RETRIEVAL.

9         NOW, IF THAT STRUCTURE THAT'S IT'S PRE-ETHERIAL,

10   ESSENTIALLY ATTEMPTING TO CLAIM EVERY POSSIBLE WAY OF STORING

11   DATA, AND THAT'S WHAT THEY'RE SAYING IS MEANT BY STORAGE MEANS.

12        SO, I THINK, THAT THEIR PROPOSED CONSTRUCTION SHOWS

13   YOU THAT THE WORD STORAGE BY ITSELF CAN'T POSSIBLY BE ENOUGH

14   STRUCTURE TO REBUT THE 1126 PRESUMPTION RAISED BY USING THE

15   WORD MEANS.

16        SAME THING FOR RANDOM ACCESS STORAGE MEANS, WHAT --

17        **THE COURT:**  WITH EACH OF THESE IF, IN FACT, YOU HAVE

18   TO COME UP WITH A DEFINITION OF -- IF IT IS A MEANS PLUS

19   FUNCTION, I DON'T SEE THAT YOUR DEFINITIONS ARE ALL THAT

20   DIFFERENT OTHER THAN THE PLUS EQUIVALENCE ASPECTS OF IT.

21        **MR. STEPHENS:**  THE PLUS EQUIVALENCE, YOUR HONOR,

22   THAT'S NOT CORRESPONDING STRUCTURE.  WE DON'T DISAGREE UNDER

23   1126 THEY'RE ENTITLED TO EQUIVALENCE OF THE DISCLOSURE

24   STRUCTURES, WE ARE JUST NOT SAYING THAT'S DISCLOSED, THE

25   STRUCTURE THAT'S A DIFFERENT PIECE OF THE ANALYSIS.

1          **THE COURT:**  I UNDERSTAND.  IN FACT, YOU HAVE TO DEFINE

2     THESE, YOU DON'T DISAGREE ALSO WHAT THAT STORAGE MEANS,

3     ESSENTIALLY THESE ARE THE KIND OF STORAGE MEANS THAT WOULD BE

4     EMBRACED.

5          **MR. STEPHENS:**  I BELIEVE THAT'S RIGHT.  I DON'T THINK

6     THERE'S A DISAGREEMENT ON THE ACTUAL STRUCTURE THAT'S DISCLOSED

7     FOR THESE TERMS, WE'RE GOING TO GET TO SOME WHERE THERE ARE,

8     BUT NOT FOR THESE TERMS.

9          **THE COURT:**  NOT FOR STORAGE OR RANDOM ACCESS?

10          **MR. STEPHENS:**  I BELIEVE THAT'S RIGHT.  YEAH, I

11     BELIEVE THAT'S RIGHT.  ALTHOUGH, THERE MAYBE AN ISSUE ABOUT

12     MAGNETIC DISK WHICH APPEARS IN THE LATER PATENTS AND NOT IN THE

13     '995 PATENT.

14          SO, I THINK, THERE MAYBE AN ATTEMPT, I'M NOT CERTAIN

15     OF THIS, BY BURST TO SAY THAT THE MAGNETIC DISK WHICH IS NOT

16     DISCLOSED IN THE '995 SHOULD STILL BE CORRESPONDING STRUCTURE

17     FOR THE '995, WE DISAGREE WITH THAT.

18          INPUT MEANS '995.  HERE'S FIVE DIFFERENCES ON

19     STRUCTURE EVEN IF WE GET PAST THE 1126 NOTION.  AGAIN, I THINK

20     IF YOU'RE TALKING ABOUT INPUT BEING SUFFICIENT STRUCTURE JUST

21     DOESN'T MAKE SENSE.  SO I GOT A FOCUS INSTEAD ON THE STRUCTURE

22     THAT WE'RE TALKING ABOUT HERE, THE PRIMARY DIFFERENCE IS A

23     MICROWAVE SATELLITE TRANSCEIVER.

24          AND I SHOULD POINT OUT THAT FOR INPUT MEANS THERE'S

25     ACTUALLY TWO DIFFERENT KINDS OF INPUT.  I DON'T THINK THERE'S A

1    DISPUTE ABOUT THIS.  SOME OF THE CLAIMS TALK ABOUT AN INPUT

2    MEANS FOR RETRIEVING INFORMATION THAT'S NOT COMPRESSED AND SOME

3    OF THEM TALK ABOUT AN INPUT MEANS FOR RECEIVING INFORMATION

4    THAT IS TIME-COMPRESSED.

5             AND AS YOU'LL SEE, I THINK, THERE ARE MEANINGFUL

6    DIFFERENCES IN THE APPROPRIATE CORRESPONDING STRUCTURE FOR

7    THOSE AS WE GO THROUGH THEM.

8             SO STARTING WITH THE NON-TIME COMPRESSED VERSION OF

9    THE INPUT MEANS, THIS IS AN EXAMPLE WHERE IT APPEARS IN CLAIM

10   1, IF THAT'S THE '995 PATENT.  HERE ARE THE STRUCTURES THAT ARE

11   DISCLOSED FOR RECEIVING UNCOMPRESSED FILES.

12            AND SO YOU SEE THE VARIOUS INPUTS INCLUDING THE

13   AUXILIARY DIGITAL INPUT THAT WE TALKED ABOUT EARLIER ON THE

14   LEFT SIDE, THERE'S ALSO A MODEM 22 ON THE LOWER RIGHT SIDE.

15            NOW, BURST PROPOSED CONSTRUCTION FOR THE '995 PATENT

16   ADDS A MICROWAVE SATELLITE TRANSCEIVER, WE DISAGREE WITH THAT,

17   JUST NOT PRESENT IN THE '995 PATENT AT ALL.

18            **THE COURT:**  TRANSCEIVER, WERE SUCH TRANSCEIVERS IN THE

19   SYSTEM IN 1998?

20            **MR. STEPHENS:**  YES, THEY CERTAINLY WERE.  THEY DIDN'T

21   NECESSARILY USE MICROWAVES AND THERE'S NO DESCRIPTION OF

22   MICROWAVE OR SATELLITE TRANSCEIVER HERE.  WHAT IT SAYS, YOU

23   MIGHT HAVE AN EXTERNAL DIGITAL MEANS SUCH AS SATELLITE

24   TRANSCEIVER OR RECEPTION.  IT'S COMPARING IT TO TELEPHONE

25   LINES.

```
 1              THEY'RE NOT SAYING TELEPHONE LINES ARE AN INPUT MEANS

 2    FOR RECEIVING UNCOMPRESSED REPRESENTATION, AND THE SATELLITE

 3    TRANSMISSION RECEPTION THAT'S DESCRIBED IN THE '995 THAT'S

 4    DESCRIBED IN THE SAME WAY.  JUST SOME MEDIUM OUT THERE EXTERNAL

 5    TO THE DEVICE, IT'S NOT AN INPUT TO THE DEVICE, IT'S SOMETHING

 6    YOU MIGHT HOOKUP TO AN INPUT ON THE DEVICE, PERHAPS, BUT IT'S

 7    NOT ITSELF AN INPUT.  THE WORD MICROWAVE DOESN'T APPEAR AT ALL.

 8              THE COURT:  BACKING UP, THOUGH, WITH RESPECT TO CLAIM

 9    1 AND AUDIO/VIDEO TRANSCEIVER APPARATUS.

10              MR. STEPHENS:  YES.

11              THE COURT:  COMPRISING INPUT MEANS FOR RECEIVING AUDIO

12    VISUAL SOURCE INFORMATION.  NOW, DOESN'T THAT SUGGEST THAT THE

13    INPUT MEANS IS A PART OF THIS TRANSCEIVER APPARATUS?

14              MR. STEPHENS:  ABSOLUTELY.

15              THE COURT:  OKAY.

16              MR. STEPHENS:  I AGREE WITH THAT.

17              THE COURT:  SOME GREAT MYSTERY AT THAT TIME AS TO, YOU

18    KNOW, WHAT A TRANSCEIVER WAS?

19              MR. STEPHENS:  I DON'T THINK SO.

20              THE COURT:  OKAY.  CERTAINLY YOU THOUGHT THAT NOT BEEN

21    UP FOR GRABS AS FAR AS THE DEFINITION IS CONCERNED, YOU'RE NOT

22    ASKING FOR CONSTRUCTION.

23              MR. STEPHENS:  I THINK, IT'S CONSTRUCTION FOR

24    CONTRACTION, MEANING SINGLE UNIT THAT DOES BOTH.

25              THE COURT:  AND THE INPUT MEANS THAT IS A PART OF OR
```

1    OF THAT TRANSCEIVER IS THERE SOME MYSTERY ABOUT WHAT THAT WOULD

2    BE?

3            ANY DIFFERENT FROM, YOU KNOW, THE PORTS THAT EVERY ONE

4    OF THESE DEVICES WOULD HAVE?

5            **MR. STEPHENS:**  NO, IN FACT --

6            **THE COURT:**  INPUT PORT, OUTPUT PORT?

7            **MR. STEPHENS:**  FIGURE 2 SHOWS THEM QUITE EXPLICITLY.

8    THERE ARE INPUT MEANS THAT ARE DISCLOSED AND EXTREMELY

9    DESCRIBED AS SUCH.  FOR EXAMPLE, THE AUXILIARY DIGITAL INPUT

10   THAT WE TALKED ABOUT EARLIER.

11           **THE COURT:**  BUT WOULD ANYONE NOT UNDERSTAND WHAT IS

12   MEANT, SOMEONE -- STRIKE THAT.  ONE OF ORDINARY SKILL IN THE

13   ART UNDERSTAND IN 1988 WHAT THE INPUT OF A TRANSCEIVER WAS?

14           **MR. STEPHENS:**  I THINK, THE PROBLEM, YOUR HONOR, WHAT

15   STRUCTURE THAT WOULD CORRESPOND TO, THAT COULD TAKE ON MANY

16   DIFFERENT FORMS.  AND THE WORD INPUT BY ITSELF DOES NOT CONNOTE

17   A STRUCTURE FOR SOMEBODY TO KNOW WHAT IS BEING REFERRED TO BY

18   THAT.

19           IF YOU REFERRED TO THE FIGURES IN THE PATENT, THEN

20   IT'S NO PROBLEM.  ONE OF THE THINGS I THINK BURST SAID IN THE

21   BRIEFING PEOPLE WHO HAVE TELEVISION AND VCR KNOW WHAT INPUT

22   ARE, THE THINGS ON THE BACK YOU GO PLUG IT INTO.

23           IF YOU'RE TALKING ABOUT THE VCR-LIKE DEVICE THAT'S

24   DESCRIBE IN THE PATENT, SURE, IT'S ONE OF THESE PORTS THAT'S

25   LISTED THERE IN FIGURE 2.  IF YOU'RE TALKING ABOUT WHETHER THE

1    WORD INPUT ON ITS OWN EVEN IN THE CONTEXT OF VIDEO DATA

2    TRANSMISSION --

3         **THE COURT:**  BUT IT'S NOT -- IT'S IN THE CONTEXT OF THE

4    TRANSCEIVER, RIGHT, NOT SOME FREE FLOATING INPUT OUT THERE OR

5    OUTPUT.

6         **MR. STEPHENS:**  YOUR QUITE RIGHT ABOUT THAT, BUT EVEN

7    WITHIN THE CONTEXT OF AUDIO/VIDEO TRANSCEIVER APPARATUS, I

8    DON'T THINK THAT THERE'S ANY SORT OF INPUT YOU CAN GO OUT AND

9    BUY.  YOU DON'T LIKE LOOK UP IN A CATALOG AND SAY, YOU KNOW, I

10   NEED AN INPUT FOR AN AUDIO/VIDEO TRANSCEIVER WHERE DO I FIND

11   THAT, THAT DOESN'T CONNOTE STRUCTURE LIKE THAT.

12        **THE COURT:**  WOULD YOU SAY, ESSENTIALLY, GO OUT AND GET

13   A TRANSCEIVER THAT HAS AN INPUT PORT?

14        **MR. STEPHENS:**  YOU COULD DO THAT.

15        **THE COURT:**  AND AN OUTPUT PORT?

16        **MR. STEPHENS:**  YOU COULD DO THAT.  THEY MAY TAKE MANY

17   DIFFERENT KIND OF FORMS.  THERE'S NO SINGLE CLASS OF STRUCTURE

18   THAT IS DESCRIBED IN THAT CONTEXT BY THAT WORD.  NOT A WELL

19   DEFINED CLASS OF STRUCTURES.

20        **THE COURT:**  WELL, MOVE ALONG.  I'M TRYING NOT TO SAY,

21   OKAY, I DON'T WANT TO SUGGEST WHETHER I AGREE WITH YOU OR NOT.

22        **MR. STEPHENS:**  UNDERSTOOD.

23        **THE COURT:**  BUT LET'S MOVE ALONG.

24        **MR. STEPHENS:**  I JUST WANTED TO FINISH UP THIS SLIDE

25   ABOUT THE SATELLITE TRANSMISSION OR RECEPTION.  IT EXPRESSLY

1    SAYS IT'S EXTERNAL, IT'S NOT PART OF THE TRANSCEIVER, SO REALLY

2    CAN'T BE ONE OF THE CORRESPONDING STRUCTURES BECAUSE IT'S NOT A

3    PART OF THE TRANSCEIVER, IT'S EXTERNAL TO IT.

4            AND WE'VE TALKED ABOUT HOW THERE'S TWO DIFFERENT

5    STRUCTURES, MOVING ONTO THE INPUT FOR RECEIVING TIME-COMPRESSED

6    REPRESENTATIONS, IT'S CLAIMED DIFFERENTLY AND EXPRESSLY LIMITED

7    TO INPUT MEANS FOR RECEIVING AUDIO/VIDEO SOURCE INFORMATION AS

8    A TIME-COMPRESSED REPRESENTATION.

9            I DON'T THINK THERE'S ANY DISPUTE ABOUT THE FACT THERE

10   ARE TWO DIFFERENT KINDS OF INPUTS HERE.  WE AGREE, PARTIES

11   AGREE THERE'S ONE STRUCTURE THAT'S CLEARLY LINKED TO THAT,

12   THAT'S THE FIBEROPTIC INPUT OUTPUT 18.

13           AND THE REASON WHY APPLE AGREES THAT IS APPROPRIATE

14   DISCLOSED CORRESPONDING STRUCTURE FOR RECEIVING COMPRESSED

15   MEDIA IS THAT IT ACTUALLY HAS A DATA RATE ASSOCIATED WITH IT.

16           WE HEARD DISCUSSION EVEN FROM BURST HOW THE

17   TIME-COMPRESSED REPRESENTATION IS SOMETHING MORE THAN DATA

18   COMPRESSION AND IT IS ALLOWING TRANSMISSION FASTER THAN REAL

19   TIME ACCORDING TO BURST.

20           SO YOU CAN'T TELL FROM LOOKING AT A PARTICULAR INPUT

21   DESCRIPTION IN THE PATENT WHETHER OR NOT IT CAN RECEIVE DATA

22   FASTER THAN REAL TIME, UNLESS IT TELLS YOU HOW FAST YOU CAN

23   RECEIVE IT.

24           AND THE ONLY PORT OR THE ONLY INPUT MEANS DESCRIBED IN

25   THE PATENT THAT HAS A DATA RATE ASSOCIATED WITH IT WHERE YOU

1    CAN RECEIVE A -- WHERE YOU CAN RECEIVE FASTER THAN REAL TIME IS

2    THE FIBEROPTIC PORT.

3         SO BURST HAS THESE ADDITIONAL STRUCTURES WHICH WE

4    DISAGREE WITH, MICROWAVE SATELLITE TRANSCEIVER.  THE MICROWAVE

5    TRANSCEIVER IS NOT IN THE '995 PATENT AS WE TALKED ABOUT, ALSO

6    NEITHER OF THESE PORTS ARE TIED TO ANY KIND OF DATA RATE, SO

7    YOU JUST CAN'T TELL WHETHER OR NOT THEY CAN RECEIVE COMPRESSED

8    REPRESENTATION BECAUSE YOU DON'T KNOW IF THEY CAN RECEIVE IT

9    FASTER THAN REAL TIME.

10        AND WITH THE '932 PATENT WE HAVE SOMEWHAT DIFFERENT

11   ISSUES, AND THIS IS A FILE WRAPPER ESTOPPEL ISSUE, BECAUSE

12   DURING PROSECUTION OF THE '932 PATENT THEY, BURST, EXPRESSLY

13   DISCLAIMED COVERAGE OF ANYTHING BUT MICROWAVE TRANSCEIVER

14   MEANS.

15        AND YOU CAN SEE THIS HERE THEY CANCELED ALL THE CLAIMS

16   IN THE PATENT IN RESPONSE TO A REJECTION, ADDED NEW CLAIMS,

17   EXCUSE ME, AND EXPRESSLY SAID THAT THESE CLAIMS HAVE THE

18   ABILITY TO RECEIVE AUDIO/VIDEO SOURCE INFORMATION OVER THE

19   MICROWAVE LINK.

20        AND THEY SAID THAT REPEATEDLY MAKING CLEAR THAT ALL

21   THE CLAIMS THAT WE'RE NOW TALKING ABOUT IN THIS CASE ARE ABOUT

22   MICROWAVE TRANSCEIVER.  SO THE POINT HERE THE '932 PATENT HAS

23   BEEN LIMITED BY DISCLAIMER DURING THE FILE HISTORY TO

24   MICROWAVE.

25        AT THE SAME TIME THEY MADE THOSE AMENDMENTS AND HID

```
1    THOSE STATEMENTS THEY AMENDED THE TITLE OF THE PATENT.  THIS IS

2    IN THE SAME AMENDMENT AND THIS WAS THE TITLE CHOSEN BY BURST,

3    AUDIO/VIDEO TRANSCEIVER APPARATUS INCLUDING COMPRESSION MEANS,

4    RANDOM ACCESS STORAGE MEANS, MICROWAVE TRANSCEIVERS MEANS.

5           SO, AND IN OUR VIEW THERE WAS A FILE WRAPPER ESTOPPEL

6    FOR THE '932, ALL THE CLAIM SHOULD BE LIMITED TO MICROWAVE.

7           GOING ONTO OUTPUT MEANS, THESE ISSUES ARE REALLY

8    PRETTY SIMILAR IN A LOT OF WAYS.  YOU CAN SEE THE STRUCTURES

9    THAT WE DISAGREE WITH ON THE RIGHT SIDE HERE.  THE REASONING IS

10   LARGELY SIMILAR, IF YOU'RE TALKING ABOUT TRANSMITTING

11   TIME-COMPRESSED YOU HAVE TO HAVE SOME SORT OF DATA RATE

12   ASSOCIATED WITH IT.

13          BURST ADDS AUXILIARY DIGITAL INPUT OUTPUT PORT

14   SATELLITE TRANSCEIVER, THERE NO DISCLOSURE THAT THE MICROWAVE

15   SATELLITE TRANSCEIVER FROM '995, NO TIE INTO THE -- TO A DATA

16   RATE.

17          ALSO, THE POINT TO THIS AUXILIARY DIGITAL INPUT AS AN

18   OUTPUT, THIS IS EXACTLY THE SAME ISSUE WE HAD WITH

19   TRANSMISSION, WHETHER AN INPUT CAN BE A CORRESPONDING

20   STRUCTURE.

21          FOR AN OUTPUT, AGAIN, THERE'S NO DISCLOSURE OF THAT

22   INPUT ACTUALLY BEING AN OUTPUT ANYWHERE.  THIS SHOWS HOW IN THE

23   CONTINUATION IN PART APPLICATION, THE '932 APPLICATION THERE

24   WAS A LOT OF MATERIAL ABOUT MICROWAVE SATELLITE NOT PRESENT IN

25   THE '995, THAT'S WHY THERE'S A DIFFERENCE BETWEEN THE
```

1   CORRESPONDING STRUCTURE OF THE '995 AND '932 PATENT.

2          THAT'S IT, YOUR HONOR.  I HOPE THAT WAS COMPRESSED

3   ENOUGH FOR YOU.

4          **THE COURT:**  I'M NOT SURE HOW IT WILL COME OUT IN REAL

5   TIME OR ANYTHING ELSE.  WE'LL SEE HOW IT COMES OUT.  I THINK,

6   IT WAS APPLE THAT WAS USING THE MODERN DICTIONARY OF

7   ELECTRONICS SOMETIMES IN ITS --

8          **MR. FOLSE:**  YES, YOUR HONOR.

9          **THE COURT:**  -- TO ASSIST IN THIS EFFORT.  AND WITH

10  RESPECT TO INPUT DEVICES THAT ARE LISTED IN THAT DICTIONARY,

11  COULD THOSE DEVICES PERFORM ALL OF THE FUNCTIONS THAT ARE

12  DESCRIBED IN THE PATENT?

13         **MR. STEPHENS:**  LET ME TAKE A LOOK, YOUR HONOR.

14         **MR. FOLSE:**  WHILE MR. STEPHENS IS LOOKING, IT DOES

15  OCCUR TO ME THAT WE HAVE IN THE COURTROOM MR. HALPERN AND DR.

16  HEMAMI.

17         **THE COURT:**  I KNOW THAT.

18         **MR. FOLSE:**  CERTAINLY ADDRESS QUESTIONS.

19         **THE COURT:**  I'M TRYING TO SHORT CIRCUIT ALL OF THIS.

20         **MR. FOLSE:**  OKAY.

21         **THE COURT:**  RIGHT NOW.  IT'S IN THEIR PAPERS, SO.

22         **MR. FOLSE:**  WE CITED IT FOR BURST TRANSMISSION AND I

23  NOW HAVE THE DEFINITION HERE.  I THOUGHT I DID.  SO WE CITED IT

24  FOR BURST, BUT NOT FOR INPUT, SO I DON'T HAVE IN OUR PAPERS, AT

25  LEAST, THE DEFINITION FOR INPUT.

1          **THE COURT:**  OKAY.

2          **MR. STEPHENS:**  IT MAY HAVE BEEN CITED IN BURST'S

3     MATERIALS FOR OUTPUT.

4          **THE COURT:**  EITHER DR. HEMAMI -- AND I'M GOING TO ASK

5     ONE OF YOU, I'M GOING TO ASK BOTH OF YOU, DO YOU KNOW THE

6     ANSWER TO THAT?

7          **DR. HEMANI:**  I'M GOING TO ASK TO YOU REPEAT THE

8     QUESTION?

9          **THE COURT:**  WITH RESPECT TO INPUT DEVISES, THERE IS A

10    LIST OF THEM THAT WAS CITED BY SOMEONE.

11         **MR. HEIM:**  IT'S EXHIBIT 17.

12         **THE COURT:**  THAT ARE LISTED IN THE MODERN DICTIONARY

13    OF ELECTRONICS.  MY QUESTION IS, COULD ALL OF THOSE DEVICES

14    THAT ARE INCLUDED IN THAT DEFINITION PERFORM THE FUNCTIONS

15    DESCRIBED IN THE CLAIMS?

16         **MR. STEPHENS:**  I FOUND IT IN BURST'S BRIEF WHERE THEY

17    REFERRED TERMINALS JACK OR RECEPTACLE, IS THAT WHAT YOU'RE

18    REFERRING TO?

19         **THE COURT:**  YES.

20         **MR. STEPHENS:**  I THINK, THE ANSWER TO THAT DEPENDS.  A

21    JACK, OR TERMINAL, OR RECEPTACLE, SEEMS, YOU KNOW, MAY OR MAY

22    NOT BE SOMETHING YOU CAN PLUG A FIBER INTO.  FIBER IS THE ONLY

23    DISCLOSED MEDIUM IN THE PATENT FOR TRANSMITTING FASTER THAN

24    REAL TIME, SO YOU WOULD NEED SOME SORT OF THING YOU COULD PLUG

25    THE FIBER INTO AND IT'S NOT CLEAR TO ME WHETHER THOSE WORDS

1    WOULD INCLUDE THAT.

2         **THE COURT:**  MR. HALPERN, WHAT IS YOUR -- DO YOU AGREE

3    WITH WHAT HE JUST SAID?

4         **MR. HALPERN:**  YOUR HONOR, I AGREE WITH WHAT HE SAID.

5    I WOULD GO FURTHER THAN THAT.  EVEN FOR ELECTRICAL SIGNAL TO BE

6    ABLE TO RECEIVE, FOR EXAMPLE, AN UNCOMPRESSED AUDIO AND VIDEO

7    SIGNAL, I NEED ONE THAT HAD QUITE A BIT OF CAPACITY, AND THERE

8    WERE RELATIVELY FEW ELECTRICAL CONNECTIONS, NONE AT ALL, A

9    TELEVISION CONNECTION WORD.

10        BUT RS 232 PORT, FOR EXAMPLE, WHICH WAS ANOTHER KIND

11   OF PORT AVAILABLE AT THAT TIME COULD NOT SEND AN UNCOMPRESSED

12   VIDEO SIGNAL, FOR EXAMPLE, AS AN IMPORT, COULD NOT ACCEPT SUCH

13   A THING OR TRANSMITTING.

14        SO THE EXACT QUESTION OF WHAT KIND OF STRUCTURE YOU

15   NEED AND WHAT WOULD BE GOOD ENOUGH TO MEET THE REQUIREMENTS OF

16   THE DIFFERENT ASPECTS OF THE CLAIM I COULDN'T JUST TAKE THIS

17   AND SAY IF I DID THAT IT WOULD WORK, OBVIOUSLY, NOT.

18        **THE COURT:**  YOU CAN'T SAY YOU TAKE ANY ONE OF THESE OR

19   THESE IN PARTICULARITY WOULD WORK?

20        **MR. HALPERN:**  I WOULD NEED SOMETHING MUCH MORE

21   SPECIFIC, SOME SPECIFIC SUB-SET THAT WAS GOOD ENOUGH.  JUST

22   EVERYTHING THAT MEETS THIS DEFINITION HERE ELECTRICAL JACK,

23   THERE'S A LOT OF ELECTRICAL JACKS IN DIFFERENT KINDS THAT WERE

24   USED AT THAT TIME.

25        **THE COURT:**  DR. HEMAMI, DO YOU UNDERSTAND MY QUESTION

1    AND WHAT IS YOUR RESPONSE TO THAT?

2         **DR. HEMANI:**  YES, YOUR HONOR.  I THINK, I UNDERSTAND

3    YOUR QUESTION AND I THINK I WOULD ALSO ANSWER A LITTLE BIT

4    DIFFERENTLY.

5         AS ONE OF ORDINARY SKILL TO ME, AND YOU POINTED OUT

6    THAT IT'S NOT JUST ANY RANDOM INPUT, IT'S AUDIO/VIDEO SOURCE

7    INFORMATION, IT'S COMPRESSED OR IT'S UNCOMPRESSED, AND THE FACT

8    THAT I KNOW THIS MEANS THAT I CAN IMMEDIATELY PICK UP WHICH

9    INPUT PORTS ARE GOING TO BE RELEVANT THAT I WOULD BE ABLE TO

10   USE.

11        I COULD GO TO FRY'S AND IMMEDIATELY LOOK AT THINGS AND

12   SAY THESE ARE NOT IN THE CLASSES THAT I WOULD USE AND THESE

13   ARE.  ETHERNET AND RS 449 WERE TWO EXAMPLES AT THE TIME FOR THE

14   AUXILIARY DIGITAL PORT THAT WE COULD CERTAINLY ACHIEVE THE

15   FASTER THAN REAL TIME TRANSMISSION.

16        SO IT'S NOT EVERY INPUT UNDER THE SUN, BUT WHEN WE

17   LIMIT IT TO THE CLASS OF INPUT THAT WE'RE DEALING WITH HERE,

18   THE INFORMATION AND WHAT WE WANTED TO DO WITH IT, I THINK, IT

19   IS CLEAR THAT THIS IS DESCRIPTIVE, I WOULD KNOW WHAT TO SELECT.

20        **THE COURT:**  COULD USING THE DICTIONARY, THE MODERN

21   DICTIONARY OF ELECTRONICS, USING THAT AS A GUIDE, FOR EXAMPLE,

22   AND THE DEVICES THAT ARE LISTED THERE, ITEMS THAT ARE LISTED

23   THERE, COULD ONE OF ORDINARY SKILL IN THE ART PICK OUT FROM

24   THAT THE DEVICES THAT WOULD, IN FACT, PERFORM THESE FUNCTIONS?

25        **DR. HEMANI:**  YES, I BELIEVE ONE OF ORDINARY SKILL

1    COULD DO SUCH A THING.

2        **THE COURT:**  OKAY.  THAT IS IT.

3        **MR. STEPHENS:**  IF I MAY, I NEGLECTED TO -- I'M NOT

4    GOING TO MAKE ANYMORE ARGUMENT.

5        **THE COURT:**  NO, WE'RE GOING TO FINISH THIS NOW.  IT'S

6    QUARTER TO 5:00, THIS GENTLEMAN HAS BEEN AT IT ALL DAY.  HIS

7    FINGERS ARE TIRED, HIS BRAIN IS RATTLED AND MAYBE ALL OF US ARE

8    TIRED.

9        **MR. STEPHENS:**  I WANT TO HAND-OUT THE DOCUMENT, I

10   DON'T WANT TO TALK ABOUT IT AT ALL.

11       **THE COURT:**  FINE, AS LONG AS YOU SHOW IT TO OPPOSING

12   COUNSEL, WHAT I DO IT WITH IS ANOTHER MATTER.

13       **MR. STEPHENS:**  UNDERSTOOD.

14       **THE COURT:**  I DON'T KNOW WHETHER YOU HAVE ANOTHER DATE

15   IN THIS CASE, I SORT OF FORGOTTEN THE SCHEDULE, BUT I WILL TRY

16   TO GET AN ORDER OUT RELATIVELY SOON AND THEN FIGURE OUT WHERE

17   TO GO FROM THERE, I GATHER.

18       **MR. POWERS:**  TWO MINOR HOUSEKEEPING MATTER.  WITH

19   REGARD TO THE SUMMARY JUDGMENT MOTION YOU SAID YOU WERE GOING

20   TO SET THAT DATE TODAY.

21       **THE COURT:**  DID I SAY THAT?  THAT'S SUMMARY, TO BE

22   HONEST I HAVEN'T EVEN LOOKED AT THE SUMMARY JUDGMENT MOTION.  I

23   DECIDED I DIDN'T WANT TO BE DISTRACTED BY ACCUSED DEVICES AND

24   OTHER POSSIBLE THINGS THAT WERE NOT RELEVANT TO DECIDING THIS,

25   ALBEIT ULTIMATELY ONE HAS TO DECIDE THAT DOWN THE ROAD.

1        **MR. FOLSE:**  SPEAKING WHAT MAY OR MAY NOT BE RELEVANT,

2    I HAVE A QUESTION ABOUT THIS DOCUMENT.  MAYBE I'M TOO MUCH OF A

3    LAWYER, MR. STEPHENS JUST SHOVELED UP WHETHER THAT IS ALREADY

4    IN THE MARKMAN RECORD OR NOT.

5        **MR. STEPHENS:**  YOUR HONOR, IT'S NOT, THIS IS AN

6    EXHIBIT TO THE DEPOSITION OF MR. LANG THAT --

7        **MR. FOLSE:**  I WOULD OBJECT TO ITS RECEIPT.

8        **MR. STEPHENS:**  MAY I FINISH, PLEASE, WE HAVE A MOTION

9    PREPARED, YOUR HONOR, SUPPLEMENTAL SUBMISSION TO PROVIDE TO

10   YOUR HONOR.  BOTH THOSE TRANSCRIPTS AND THIS EXHIBIT SINCE THAT

11   DEPOSITION WAS NOT MADE AVAILABLE TO US UNTIL AFTER THE

12   BRIEFING WAS COMPLETED.

13       **THE COURT:**  THAT'S IN CONNECTION WITH, THIS IS IN

14   CONNECTION WITH THE CLAIM CONSTRUCTION?

15       **MR. STEPHENS:**  THIS DOCUMENT SHOWS THERE WAS NO KNOWN

16   COMPRESSION CHIP.

17       **THE COURT:**  NO, THIS IS IN CONNECTION WITH THE CLAIM

18   CONSTRUCTION?

19       **MR. STEPHENS:**  YES, MA'AM.

20       **MR. FOLSE:**  THIS RECORD HAS BEEN MADE FOR SOME TIME,

21   IF WE'RE GOING TO BE TALKING ABOUT REOPENING IT, IT OUGHT TO BE

22   A TWO-WAY STREET.

23       **THE COURT:**  THAT'S WHAT I'M AFRAID OF.

24       **MR. POWERS:**  WE SHOULD HAVE BEEN ALLOWED TO DEPOSE THE

25   INVENTOR BEFORE THE MARKMAN, WE COULDN'T.

1     **THE COURT:**  I THINK, YOU HAVE TO TOSS IT WITH THAT

2  DEGREE OF --

3          **MR. HEIM:**  I'M SORRY.

4          **MR. POWERS:**  WE DIDN'T COMPLAIN ABOUT THAT.

5          **MR. FOLSE:**  I SHOULD TAKE IT BACK.

6          **MR. POWERS:**  SEEMS TO ME NORMALLY THE COURT HAS THE

7  BENEFIT OF THE INVENTOR'S THOUGHT ABOUT CLAIM CONSTRUCTION, AND

8  WE REFERRED TO THE INVENTOR'S DEPOSITION IN THE PROCEEDING, SO

9  WE THOUGHT IT PRUDENT TO SUBMIT THE INVENTOR'S DEPOSITION TO

10  YOU.  IT SEEMS A BIT CHURLISH TO DENY US THE INVENTOR'S

11  DEPOSITION UNTIL AFTER MARKMAN BRIEFING, THEN TO OBJECT TO ITS

12  SUBMISSION TO YOU.

13          **THE COURT:**  HOW DID IT HAPPEN?

14          **MR. FOLSE:**  THERE'S SOME HISTORY TO THIS THAT'S WORTH

15  LEARNING ABOUT.  AND IN, BY THE WAY, THE REFERENCES TO THE

16  INVENTOR'S DEPOSITION, MR. POWERS' PRESENTATION WERE JUST AS

17  OBJECTIONABLE, HE SHOWED YOU SOME SLIDES OF DOCUMENTS THAT ARE

18  NOT IN THE MARKMAN RECORD THAT ARE NOW IN FRONT OF THE COURT.

19          IN THESE SLIDES WITHOUT ADVANCE WARNING TO US, WITHOUT

20  AN OPPORTUNITY FOR US TO ADDRESS IT BECAUSE THERE WAS NO

21  REBUTTAL TO WHAT MR. POWERS SAID.  THE DEPOSITION WAS SCHEDULED

22  AT A TIME WHEN WE ALREADY HAD THE MARKMAN SCHEDULE IN PLACE AND

23  THE DEPOSITION WAS SET TO ACCOMMODATE THE SCHEDULES OF A WHOLE

24  BUNCH OF PEOPLE, NOT THE LEAST OF WHICH WAS MR. LANG.

25          THE ORIGINAL DATE WAS PUT OFF BECAUSE HIS FATHER HAD

1    SERIOUS HEART TROUBLE AND HE FLEW TO LAS VEGAS TO BE WITH HIS

2    MOTHER.  FATHER IN THE HOSPITAL FOR A PERIOD OF SEVERAL DAYS,

3    THAT WAS THE REASON WHY THE DEPOSITION WAS POSTPONED.

4         IT'S UP TO APPLE IF THEY WANTED BECAUSE IT DELAY IN

5    TAKING MR. LANG'S DEPOSITION TO RAISE IT FIRST WITH US AND THEN

6    WITH THE COURT WHETHER THAT SHOULD JUSTIFY SUPPLEMENTAL

7    BRIEFING.

8         **THE COURT:**  I TELL YOU WHAT I'M GOING TO DO.

9         **MR. FOLSE:**  NONE OF THAT HAPPENED.

10        **THE COURT:**  I HATE TO HEAR THIS KIND OF STUFF, I JUST

11   HATE IT AND IT COMES UP MORE IN PATENT CASES THEN ANY OTHER

12   CASES.

13        **MR. FOLSE:**  ALL I'M SAYING, THE FIRST I HEARD ABOUT

14   THIS.

15        **THE COURT:**  I WILL GIVE YOU GIVE ALL A CHANCE TO

16   RESPOND TO THIS WITH APPROPRIATE EXCERPTS OF MR. LANG'S

17   DEPOSITION, LANG'S DEPOSITION AND DOCUMENTS RELATED THERETO,

18   BUT ONLY INSOFAR AS RELATES TO THE DOCUMENTS THAT'S BEEN HANDED

19   UP.

20        **MR. FOLSE:**  VERY WELL.

21        **THE COURT:**  OKAY

22        **MR. POWERS:**  MAY WE SUBMIT MR. LANG'S DEPOSITION TO

23   YOU?

24        **THE COURT:**  NO, THAT'S ENOUGH.  JUST THE EXCERPTS

25   RELATED TO THIS.  I WANT THE WHOLE DEPOSITION I'LL LET YOU

1  KNOW.

2          **MR. FOLSE:**  THANK YOU.

3          **THE COURT:**  THEN THE MOTION FOR SUMMARY JUDGMENT IS

4  PREMISED ON WHAT?

5          **MR. POWERS:**  TWO ISSUES.  ONE IS INVALIDITY AND ONE IS

6  NON-INFRINGEMENT.

7          **THE COURT:**  INVALIDITY IS BASED UPON?

8          **MR. POWERS:**  INVALIDITY IS BASED ON PRIOR ART, WHICH

9  IF THEIR CONSTRUCTION IS ADOPTED IT'S CLEARLY INVALID.

10  NON-INFRINGEMENT IS BASED ON OUR CONSTRUCTION OF TIME

11  COMPRESSION.

12          **THE COURT:**  OF WHAT?

13          **MR. BROWN:**  TIME COMPRESSION.

14          **THE COURT:**  LACK OF ENABLEMENT?

15          **MR. POWERS:**  NON-INFRINGEMENT.  THAT IF OUR

16  CONSTRUCTION OF TIME COMPRESSION IS ADOPTED CLEARLY NOT

17  INFRINGEMENT, IF THEIR CONSTRUCTIONS ARE ADOPTED ON VARIOUS

18  ISSUES THE CLAIMS ARE CLEARLY INVALID.  THAT'S THE ESSENCE OF

19  THOSE TWO MOTIONS.

20          **MR. FOLSE:**  THE REASON WE THOUGHT THEN AND THINK NOW

21  THAT THE MOTION SHOULD BE PUT OFF WAS BECAUSE UNTIL WE KNOW

22  WHAT THE COURT'S RULING WILL BE ON THESE CLAIM CONSTRUCTION

23  PRINCIPLES, ONE OR BOTH OF THESE MOTIONS COULD BE RENDERED

24  MOOT.

25          AND, I THINK, WHAT APPLE HAS DONE BY PUTTING THESE

1  MOTIONS IN FRONT OF THE COURT IS AN ATTEMPT TO INFLUENCE THE

2  COURT'S CLAIM CONSTRUCTION BASED --

3          **THE COURT:**  WHAT DO YOU MEAN THE SUMMARY JUDGMENT

4  MOTION?

5          **MR. FOLSE:**  YES.

6          **THE COURT:**  I HAVE NOT TAKEN A SINGLE LOOK.

7          **MR. FOLSE:**  I UNDERSTAND THAT.

8          **THE COURT:**  BELIEVE ME IT'S NOT -- IT'S NOT A MOTION I

9  CALENDARED, I'M NOT SPENDING MY TIME ON THE WEEKEND AND ANY

10 OTHER TIME TAKING A LOOK AT THINGS I DON'T HAVE TO LOOK AT.

11         **MR. FOLSE:**  I THINK, OUR PROPOSAL 30 DAYS AFTER THE

12 COURT ISSUES THE RULING, IF IT'S STILL NECESSARY TO RESPOND TO

13 IT.  RATHER THAN TRYING TO PICK AN EXACT DATE AT THIS POINT, WE

14 DON'T KNOW WHAT TIME WILL BE REQUIRED FOR THE COURT.

15         **THE COURT:**  HOW LONG WILL IT PREPARE -- TAKE YOU TO

16 PREPARE YOUR OPPOSITION?  I GATHER, YOU GOT ALL OF YOUR INITIAL

17 BRIEFING IN?

18         **MR. POWERS:**  YES, THE INITIAL BRIEFING WAS FILED A

19 MONTH AGO.

20         **MR. FOLSE:**  THE NATURE OF THE OPPOSITION SOME OF IT IS

21 QUITE -- DEPEND WHAT THE COURT, IN FACT, PROBABLY WILL DEPEND

22 WHAT THE COURT RULES ON THESE MATTERS ARGUED HERE TODAY.  AND

23 WE WON'T WANT TO CHANCE --

24         **THE COURT:**  30 DAYS, HOW MUCH TIME TO RESPOND?

25         **MR. POWERS:**  TWO WEEKS.

1          **THE COURT:**  OKAY.  SO 30 DAYS FROM THE DATE OF THE

2     FILING OF THE ORDER BECAUSE EVERYTHING GETS FILED YOU CAN PICK

3     IT UP IMMEDIATELY, AND I UNDERSTAND YOU GOT SOMETHING THAT

4     COMES ON YOUR E-MAIL AND TELLS YOU GOT LIKE WHAT I GET FROM THE

5     NINTH CIRCUIT, THEY LET ME KNOW WHAT THEY'VE DONE TO ME.

6          **MR. POWERS:**  WE THINK IT SORT OF LIKE PAVLOV'S DOGS

7     SORT OF LINK A SEPARATE QUESTION.

8          **THE COURT:**  AND THEN TWO WEEKS FOR THE REPLY AND THEN

9     APPROXIMATELY TWO WEEKS LATER, BUT I DON'T KNOW WHETHER WE'LL

10    DO THEM ON A MONDAY, WE MAY.  I THINK WE SHOULD PROBABLY

11    ESPECIALLY SET IT.  SO LET'S SEE WHEN THEY COME IN WE CAN SET A

12    DATE, IT BE EITHER A MORNING OR AFTERNOON DEPENDING ON MY TRIAL

13    CALENDAR, BUT IT WON'T BE ON A MONDAY.

14          I THINK, BETTER MAKE A NOTE NOT TO PUT IT ON THE

15    MONDAY CALENDAR BECAUSE WE HAVE TOO MANY OTHER THINGS ON MONDAY

16    CALENDAR TO ACCOMMODATE THIS.  OKAY.

17          **MR. POWERS:**  THANK YOU.

18          **MR. FOLSE:**  THANK YOU.

19               (PROCEEDINGS ADJOURNED.)

20

21

22

23

24

25

CERTIFICATE OF REPORTER

I, THE UNDERSIGNED, HEREBY CERTIFY THAT THE FOREGOING PROCEEDINGS WERE REPORTED BY ME, A CERTIFIED SHORTHAND REPORTER, AND WERE THEREAFTER TRANSCRIBED UNDER MY DIRECTION INTO TYPEWRITING; THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE RECORD OF SAID PROCEEDINGS.

I FURTHER CERTIFY THAT I AM NOT OF COUNSEL OR ATTORNEY FOR EITHER OR ANY OF THE PARTIES IN THE FOREGOING PROCEEDINGS AND CAPTION NAMED, OR IN ANY WAY INTERESTED IN THE OUTCOME OF THE CAUSE NAMED IN SAID CAPTION.

THE FEE CHARGED AND THE PAGE FORMAT FOR THE TRANSCRIPT CONFORM TO THE REGULATIONS OF THE JUDICIAL CONFERENCE.

FURTHERMORE, I CERTIFY THE INVOICE DOES NOT CONTAIN CHARGES FOR THE SALARIED COURT REPORTER'S CERTIFICATION PAGE.

IN WITNESS WHEREOF, I HAVE HEREUNTO SET MY HAND THIS 5TH DAY OF MARCH, 2007.

_____
JAMES YEOMANS, CSR, RPR